# FILED

J.N
NOV X 8 2007
NOV X8 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

JUDY WILLIAMS, individually and on behalf
of all others similarly situated,

                Plaintiff,

v.

WELLS FARGO BANK, N.A.

                Defendant.

07cv6342
JUDGE DER-YEGHIAYAN
MAG. JUDGE VALDEZ

**CLASS ACTION COMPLAINT**

## CLASS ACTION COMPLAINT

Plaintiff, on behalf of herself and a class of all others similarly situated, alleges as
follows:

## INTRODUCTION

1.     Wells Fargo Bank, N.A. ("Wells Fargo" or "Defendant"), one of the nation's
largest mortgage lenders, has demonstrated an established pattern and practice of racial
discrimination in the financing of residential home purchases. Through these actions, Defendant
has violated the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, the Equal Credit Opportunity Act,
15 U.S.C. § 1691, *et seq.* and the Civil Rights Act, 42 U.S.C. §§ 1981, 1982 *et seq.*

2.     This is a proposed national class action brought by Plaintiff on behalf of herself
and a class of all other similarly situated Minority (defined below) homeowners subjected to
Wells Fargo's discriminatory practices in obtaining their residential mortgage loans (hereinafter
referred to as the "Class" or "Class Members"). Plaintiff seeks relief for herself and all other

members of the Class from the indefensible injustice resulting from Defendant's unlawful business practices.

3.       For purposes of this Complaint, "Minority" or "Minorities" shall refer to any and all non-Caucasian/White racial groups protected under the Equal Credit Opportunity Act, the Fair Housing Act and the Civil Rights Act, including, without limitation, African-Americans and Latinos. Additionally, for the purposes of this Complaint, "mortgage" refers to any loan made for the purpose of purchasing, constructing, improving, repairing or maintaining a dwelling, or a loan secured by residential real estate.

4.       The mortgage lending industry has a long history of racial discrimination, offering Minorities products and terms that are drastically worse than those given to their similarly-situated Caucasian counterparts. Recently, the Federal Reserve Board confirmed that African-Americans and other Minorities are still more likely to pay higher prices for mortgages than Caucasians.

5.       According to the Federal Reserve Board's Survey of Consumer Finances, a triennial survey of the balance sheet, pension, income, and other demographic characteristics of U.S. families, 47% of African-Americans and Latinos are homeowners, compared with 74% of Caucasians.

6.       In 2003, the National Community Reinvestment Coalition ("NCRC") released a report on credit discrimination titled, "The Broken System: Discrimination and Unequal Access to Affordable Loans by Race and Age,"[1] that indicated that consumers living in areas with more Minority residents are more likely to have mortgages with interest rates higher than the "prevailing and competitive" rates, often because of discrimination in lending.

---

[1] This report is available at http://ncrc.org/policy/cra/documents/ncrcdiscrimstudy.pdf/.

7.      Home Mortgage Disclosure Act ("HMDA") Data for 2006 revealed that African-American and Latino borrowers are more likely to obtain higher priced loans than are Caucasian borrowers.[2]  The data indicated that African-American homeowners who received sub-prime mortgage loans were much more likely to be issued a higher-rate loan than Caucasian borrowers with the same qualifications.

8.      In 2006, the Center for Responsible Lending, a non-profit research organization, uncovered "large and statistically significant" differences between the rates of sub-prime loans offered to African-Americans and Caucasians, even when income and credit risk were taken into consideration.  Compared to their otherwise similarly-situated Caucasian counterparts, African-Americans were 31-34% more likely to receive higher rate fixed-rate loans and 6-15% more likely to receive adjustable-rate loans.  Those numbers were even higher for loans containing prepayment penalties, which accounted for over 60% of the loans issued to African-American mortgagees.[3]

9.      Findings in a study[4] released by the NCRC in July 2007 confirm that institutions in at least six urban areas engaged in "pervasive discriminatory and predatory practices." Such practices include offering high cost sub-prime loans to higher-qualified African-Americans 54% of the time, compared to 23% of the time for Caucasians, even when Caucasian applicants were similarly or less qualified.

10.      Sub-prime loans to African-Americans and other Minorities not only impose higher interest rates, they are typically laden with excessive, unreasonable and often improperly

---

[2] This report is available at www.ffiec.gov/hmda/.

[3] "Unfair Lending:  The Effect of Race and Ethnicity on the Price of Subprime Mortgages," available at www.responsiblelending.org.

[4] "Income is no Shield Against Racial Differences in Lending," available at http://ncrc.org

disclosed fees as well. Such fees include high prepayment penalties which make it impossible for borrowers to later refinance at a competitive and fairer rate. The Center for Responsible Lending estimates that families lose $2.3 billion each year from their home equity wealth because of prepayment penalties in sub-prime mortgage loans—representing a transfer of wealth from working families to large, institutional lenders. African-Americans are more than three times as likely as Caucasians to be put into one of these equity-draining sub-prime loans. *See* n. 3.

11.     Wells Fargo demonstrated the worst disparity for any individual lending group in a joint report conducted by the California Reinvestment Coalition, Community Reinvestment Association of North Carolina, Empire Justice Center, Massachusetts Affordable Housing Alliance, Neighborhood Economic Development Advocacy Project, and the Woodstock Institute in March of 2007 ("2007 Joint Report").[5]   The study discussed higher cost home purchase lending in six metropolitan areas (Boston, Charlotte, Chicago, Los Angeles, New York City and Rochester) during 2005. In Chicago, the study indicated that African-American borrowers were fourteen times more likely to receive a higher-cost home purchase loan from Wells Fargo than were Caucasian borrowers (35.3% versus 2.5%).

12.     These significant statistical disparities are not mere coincidences. They are the result of a systematic and predatory policy of targeting Minority borrowers for high cost loans. Wells Fargo's business practices include implementing and maintaining policies that discriminate against Minorities. Plaintiff brings this lawsuit to seek relief from the harms suffered as a result of Wells Fargo's practices and to enjoin Defendant from continuing its discriminatory practices.

---

[5] *See* "Paying More for the American Dream: A Multi-State Analysis of Higher Cost Home Purchase Lending," available at www.woodstockinst.org.

4

## THE PARTIES

**Plaintiff**

13.     Plaintiff Judy Williams is a Minority homeowner, gainfully employed by the Boys & Girls Clubs of Chicago. On June 29, 2006, Ms. Williams purchased a condominium unit located at 1360 E. Madison Park, #B, Chicago, Illinois. The purchase was financed by Wells Fargo. At the time of application, Ms. Williams was a current homeowner, was gainfully employed with an income of approximately $60,000/year and paid approximately $7,550 as a cash deposit.

14.     Ms. Williams was unaware of the costs of her loan until very shortly before or the day of closing. For instance, prior to the closing of her loan, Wells Fargo provided Ms. Williams with at least three different rate quotes for her loan. The first quote was for an interest rate of 7.1%; the second quote was for 9.3%; the third quote was for 8.3%. The first quote provided to Ms. Williams provided for one loan for the entire purchase price of $167,000, an interest rate of 7.1% and, importantly, no prepayment penalty. However, the financing package actually provided to Ms. Williams provided for two loans—which she did not request. The first loan was a 30-year ARM for 80% of the purchase price. The loan had an initial interest rate of 8.125% and is due to reset on July 1, 2008, at which time may increase to as high as 11.125%. The second loan, for the balance, was a 30-year fixed rate mortgage with an interest rate of 12.5%.

15.     Further, with respect to her first loan, despite language in her Promissory Note that provided for an unfettered right to prepay the loan in full or in part, Ms. Williams was instructed to sign a "Prepayment Rider." The Prepayment Rider burdened Ms. Williams with a harsh prepayment penalty, stating that if she made full repayment of her loan (i.e., refinanced) within the first two years after the date of her note (i.e., prior to June 29, 2008), she must pay a

5

"prepayment charge." The prepayment charge is equal to 3% of the *original principal amount* within the first year after closing and 2% of the original principal amount during the second year after closing. Thus, this provision essentially prohibited Ms. Williams from refinancing into a less expensive loan. Further, Ms. Williams' ARM was pegged to "reset" on July 1, 2008, but, as stated above, she was could not refinance prior to June 29, 2008 without incurring a prepayment penalty. Thus, in effect, Ms. Williams was truly trapped in her loan—her loan was purposefully designed so that the only way for her to refinance prior to the interest rate adjustment date (and, thus, avoid an increased mortgage payment), was to do so within the very narrow time period between June 29, 2008 and July 1, 2008.

16.     Prior to closing, Ms. Williams questioned Wells Fargo as to the reason that she was being charged such a high interest rate and attempted to obtain a lower rate. However, despite sending requested additional documents, calling Wells Fargo and leaving multiple messages, she received no response whatsoever. Ms. Williams also questioned the reason for her prepayment penalty, but was not provided with a legitimate justification.

17.     Ms. Williams is now trapped in a high cost loan, due to Wells Fargo's discriminatory practices and/or policies that have had a disparate impact upon Minority borrowers.

**Defendant**

18.     Wells Fargo is a corporation organized under the laws of the State of Delaware with its principal place of business located at 464 California St., San Francisco, California, 94104, and is engaged in the business of issuing sub-prime mortgage loans throughout the United States in a manner and standardized practice that violates the laws identified herein.

6

## JURISDICTION AND VENUE

19.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343.

This is an action for violation of the Fair Housing Act, 42 U.S.C. §3601 *et seq.*, the Equal Credit

Opportunity Act, 15 U.S.C. § 1691 *et seq.*, and the Civil Rights Act, 42 U.S.C. § 1981 *et seq.*

20.     Venue is proper in this district under 28 U.S.C. § 1391 because Defendant resides

in this district, within the meaning of 28 U.S.C. § 1391(c) and a substantial part of the events or

omissions giving rise to Plaintiff's claims occurred, or a substantial part of property that is the

subject of this action is situated, in this district.

## CLASS ACTION ALLEGATIONS

21.     Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(a) and

23(b)(2) and/or 23(b)(3) on behalf of the following (the "Class"):

> All Minority persons in the United States who obtained a residential mortgage
> loan from Wells Fargo between January 1, 2001 and the present with less
> favorable terms and higher costs as a result of Well's Fargo's racially
> discriminatory policies and/or practices.

22.     The Class is so numerous that joinder of all members is impracticable.

23.     A class action is superior to all other available methods for the fair and efficient

adjudication of this controversy.

24.     Plaintiff's claims are typical of the claims of the Class.  Plaintiff and the Class

were harmed by the same course of conduct and seek recovery under the same legal theories.

25.     There are questions of law and fact common to the Class, including but not

limited to:

> a)     Whether Defendant has a policy or practice of discriminating against Class
>        Members by charging them higher interest, fees and other costs for home
>        mortgage loans than it charges to Caucasians with similar credit scores or
>        creditworthiness;

7

b)    Whether Defendant has policies or practices that have had a disparate impact upon Minority borrowers

c)    Whether Defendant's policies and practices have caused damage and injury to Plaintiff and the Class entitling them to injunctive and declaratory relief, and the measure of that relief;

d)    Whether Defendant can articulate a legitimate non-discriminatory reason for its practices and procedures which are discriminatory;

e)    Whether Defendant has any business justification for its practices and procedures that cause a disparate impact upon Minorities;

f)    Whether there is a less discriminatory alternative to these practices;

g)    Whether Plaintiff and Class Members have sustained damages, and, if so, the proper measure of those damages.

26.    These and other questions of law and/or fact are common to the Class and predominate over any questions affecting only individual Class Members.

27.    Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has retained counsel competent and experienced in complex nationwide class action litigation. Plaintiff has no claims antagonistic to those of the Class. Plaintiff's counsel will fairly, adequately and vigorously protect the interests of the Class.

28.    Class action status is warranted under Rule 23(b)(1)(A) because the prosecution of separate actions by or against individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant.

29.    Class action status is also warranted under Rule 23(b)(1)(B) because the prosecution of separate actions by individual Class Members would create a risk of adjudications with respect to individual Class Members which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

30.    Class action status is also warranted under Rule 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

31.    Class action status is also warranted under Rule 23(b)(3) because questions of law or fact common to the Class Members predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## FRAUDULENT CONCEALMENT/EQUITABLE TOLLING

32.    Applicable statutes of limitation may be tolled based upon principles of equitable tolling, fraudulent concealment and/or the discovery rule. In this case, it would be inequitable to permit the applicable statutes of limitation to bar the claims of any absent Class Member.

33.    First, Wells Fargo knowingly and actively concealed the basis for the Plaintiff's claims by engaging in a scheme that was, by its very nature and purposeful design, self-concealing. Not only did Wells Fargo fail to disclose its discriminatory practices/policies and procedures that had a disparate impact upon Minority borrowers, but it took affirmative steps to conceal them.

34.    As one of the largest mortgage lenders in the United States, Wells Fargo knew or should have known that its policies and procedures, including, without limitation, its credit pricing system and the manner in which it trains and incentivizes its employees/agents causes Minorities to pay higher amounts for mortgage financing than similarly-situated Caucasian customers.

35.    Wells Fargo affirmatively and intentionally concealed its discriminatory practices. The Company spent millions of dollars annually on advertising and marketing,

9

intentionally targeting Minority borrowers with false and misleading information. These materials were designed to create and foster the image that Defendant offers all Minority borrowers competitive, low-cost residential mortgage loans that are objectively set. Upon information and belief, Wells Fargo also affirmatively concealed disproportionately high loan costs and fees, such as large prepayment penalties, the interest rate increases and prepayment penalties, add-on fees, unjustified interest rate hikes, etc. Wells Fargo never disclosed and affirmatively concealed the truth concerning the fact that: (a) its credit rates are subjective and can vary significantly among persons with identical credit profiles, and (b) it has authorized and provided a financial incentive to mortgage brokers to subjectively increase the credit rate above the rate otherwise available to homeowners, as well as increase other finance charges.

36.     Second, any delay by the Class Members is clearly excusable. In addition to the reasons stated above, as a practical matter, victims of lending discrimination may not even realize that they received disparate terms until—if ever—years after the loan closes. Here, the Class Members could not, despite the exercise of due diligence, have discovered the underlying basis for their claims. For these reasons, any delay by the Class Members whose claims accrued outside of any applicable statutes of limitation was excusable. Thus, to the extent that any applicable statute of limitations would bar the claim of any absent Class Members, such statute should be equitably tolled.

37.     Accordingly, Plaintiff respectfully submits that it would be inequitable to permit the applicable limitation periods to preclude the claim of any Plaintiff or member of the proposed Class, as doing so would, essentially reward Defendant for concealing its unlawful conduct.

10

## FACTUAL ALLEGATIONS

38.    Wells Fargo originates and funds mortgage loans through loan officers, brokers and a network of other lenders, serving all 50 states through approximately 2,400 mortgage and Wells Fargo banking stores, and the Internet.

39.    Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A.

40.    Wells Fargo Home Mortgage is one of the nation's largest retail mortgage lender and servicers of home mortgages.  It has a pervasive presence, through approximately 2,400 mortgage stores and bank branches, call centers, an Internet presence and wholesale lending operations. Wells Fargo Home Mortgage services loans for more than 7.8 million customers.

41.    Owning a home is fundamental for one's economic security and the chief means by which families build wealth.  Home equity accounts for more than one-third of the average net wealth of U.S. households.  Studies demonstrate that this percentage is even greater for Minorities.

42.    During the last decade, Minorities have been purchasing record numbers of homes, leading to a multi-year housing boom.  They account for 49% of the increase in home ownership from 1995 to 2005, according to Harvard University's Joint Center for Housing Studies.[6] Nonetheless, Minority home ownership is marred by sub-prime loans, excess fees and higher costs than their Caucasian counterparts.

43.    Sub-prime loans are higher-cost mortgage products that are in theory given to borrowers who are undesirable loan candidates.  In the last decade, an entire sub-prime industry has grown out of the greater profits generated by the higher rates and exorbitant fees charged to these "high-risk" borrowers.  This industry has inappropriately and unlawfully maximized its

---

[6] Available at www.jchs.harvard.edu/son/index.htm.

profits by directing borrowers with relatively good credit to sub-prime mortgages, especially Minority borrowers.

44.    In a recent study released on September 5, 2007, the Association of Community Organizations for Reform Now ("ACORN"), one of the nation's largest community organizations of low- and moderate-income families, found that, nationally, African-American home purchasers were **2.7 times more likely** and Latinos were **2.3 times more likely** than Caucasian borrowers to be issued a problematic, subprime loan.    Additionally, the ACORN study, available at www.acorn.org, found that nationally, for refinance loans, African-Americans were **1.8 times more likely** and Latinos were **1.4 times more likely** than Caucasian borrowers to be issued a problematic, subprime loan.

45.    Differences in economic status are not to blame.    These racial disparities were found to persist even among borrowers of the same income level.    The ACORN study found that, among upper-income home purchasers (defined as persons with incomes 120% or greater than the area median income for their metropolitan area), African-Americans  were **3.3 times more likely** and Latinos were **3 times more likely** than similarly-situated Caucasians to be issued a high-cost, subprime loan.    Further, the ACORN study found that, with respect to refinance loans, among upper-income borrowers, African-Americans and Latinos were **1.7 times more likely** than similarly-situated Caucasians to be issued a high-cost, subprime loan.

46.    While some borrowers in the sub-prime market are genuine credit risks, Minority borrowers have been preyed upon by mortgage lenders and illegally steered into sub-prime loans. Defendant has engaged in this predatory lending by refusing to offer Minority borrowers the prime loans offered to similarly-qualified Caucasian borrowers.

47.     Studies by Freddie Mac and Standard & Poor's have found that 20% to 30% of borrowers who receive sub-prime mortgages could have qualified for traditional mortgages at the lower rates offered by banks to prime borrowers. This seriously disadvantages the borrower by effectively diluting the equity of the property, placing the borrower in jeopardy of default, and forcing the borrower to spend years paying off additional loan balances without developing any equity in their home.

48.     Further, the U.S. Department of Housing and Urban Development found that in neighborhoods where at least 80 percent of the population is African-American, borrowers were 2.2 times as likely as borrowers in the nation as a whole to refinance with a sub-prime lender. Higher-income borrowers living in predominately African-American neighborhoods are twice as likely as lower-income Caucasian borrowers to have sub-prime loans.[7]

49.     The predatory lending practices of the Defendant and other mortgage lenders lead to dire financial consequences for borrowers.  Earlier this year, over eighty consumer groups wrote to federal banking agencies about a particular type of sub-prime loan, the adjustable rate mortgage (ARM).  An ARM typically contains an average built-in "shock payment" increase of 29%, even if interest rates remain unchanged. Fitch Ratings reports that the actual payment shock may be as high as 48%. The majority of sub-prime loans made to Minorities had these adjustable rates. The Center for Responsible Lending estimates that 2.2 million such sub-prime loans have ended or will end in foreclosure, a rate of 19%.

50.     Wells Fargo originates and funds mortgage loans through loan officers, brokers and through a network of correspondent lenders.   Loan officers, mortgage brokers and correspondent lenders that work with Wells Fargo are required to act in conformance with its

---

[7] *See* "All Other Things Being Equal:  A Paired Testing Study of Mortgage Lending Institutions," 2002, available at www.huduser.org.

credit-pricing policies and procedures. As Wells Fargo's website explains, mortgage brokers "match borrowers with lenders." (https://www.wellsFargo.com/mortgage/glossary/m (last viewed November 7, 2007).) Wells Fargo's website states that correspondent lenders "originate, underwrite, and close loans before sending them to Wells Fargo[.]" (https://www.wellsFargo.com/com/third_party_mortgage/ (last viewed November 7, 2007).)

51.    Wells Fargo has authorized and followed -- and continues to follow -- discretionary loan pricing procedures that cause a disproportionately large number of Minority borrowers to pay subjective fees such as yield spread premiums and other mortgage-related finance charges at higher rates than similarly situated non-Minority borrowers. Wells Fargo has intentionally discriminated against Plaintiff and Class Members through these policies and procedures- systematically giving them mortgage loans with less favorable conditions than were given to similarly situated non-Minority borrowers. This pattern of discrimination is not the result of random or non-discriminatory factors. Rather, it is a direct result of Wells Fargo's mortgage lending policies and procedures which vest subjectivity and discretion in its employees.

52.    Wells Fargo's authorized loan officers, mortgage brokers and correspondent lenders receive part or all of their compensation from Wells Fargo based on the interest rate charged to the borrower. Upon information and belief, Wells Fargo's loan officers, authorized brokers and correspondent lenders receive more compensation from Wells Fargo when they steer their clients into Wells Fargo loans with higher interest rates, and less compensation when they place their clients into Wells Fargo loans with lower interest rates.

53.    Wells Fargo intentionally and actively implements this discriminatory credit-pricing policy in a number of ways.

54. Wells Fargo actively educates its loan officers and brokers in Wells Fargo's credit policies and procedures. Wells Fargo conducts weekly training "webinars" (i.e., interactive Internet seminars) for its brokers concerning its loan products where it disseminates to brokers "detailed information on [Wells Fargo's] product guidelines[.]" (https://ilnet.wellsFargo.com/ildocs/ce/training.html (last viewed on November 7, 2007).) Wells Fargo also maintains an internet site called "Broker's First" that supplies brokers with rate sheets, a "Broker Guide," and underwriting guidelines.

55. Wells Fargo actively directs its loan officers and brokers in marketing Wells Fargo's loans. For example, Wells Fargo provides its authorized brokers with downloadable residential mortgage loan advertisements.[8]

56. Wells Fargo's credit-pricing policies permit and encourage its authorized loan officers, mortgage brokers and correspondent lenders to subjectively charge certain loan applicants yield spread premiums and other discretionary charges, including minority loan applicants.

57. Wells Fargo discriminates through its authorized mortgage brokers. Authorized mortgage brokers act as Wells Fargo's agents in originating mortgage loans. Authorized mortgage brokers: (a) enter into agreements with Wells Fargo to accept loan applications on behalf of Wells Fargo; (b) communicate to loan applicants financing terms and rates set by Wells Fargo; (c) tell loan applicants about Wells Fargo's various financing options; and (d) ultimately originate mortgage loans funded by Wells Fargo using Wells Fargo's forms and in accordance with Defendant's policies and procedures.

58. Likewise, Wells Fargo's authorized correspondent lenders and loan officers also act as Wells Fargo's agents in originating loans. Correspondent mortgage lenders and loan

officers that work with Wells Fargo make loans in accordance with Wells Fargo's credit policies and procedures. Wells Fargo funds correspondent-generated loans before or shortly after they go to closing.

59.     Wells Fargo, then, funds loans originated by its loan officers, authorized mortgage brokers and correspondent lenders, sets the terms and conditions of credit on those loans, and shoulders part or all of the credit risk on such loans. Wells Fargo actively and intentionally enforces its credit policies through its authorized loan officers, mortgage brokers and correspondent lenders in a variety of ways.  Among other things, Wells Fargo supplies its loan officers, correspondent lenders and mortgage brokers with an array of loan-related forms and agreements, including loan contracts, loan applications, and instructions on completing loan applications and contracts.

60.     Once a loan applicant has provided credit information to Wells Fargo through a loan officer, mortgage broker or correspondent lender, Wells Fargo evaluates numerous risk-related credit variables, including debt-to-income ratios, loan-to-value ratios, credit bureau histories, bankruptcies, automobile repossessions, prior foreclosures, payment histories, credit scores and the like.

61.     Wells Fargo derives a risk-based financing rate from these objective factors, which Wells Fargo and others in the mortgage industry simply call the "par rate." (Wells Fargo's brokers and correspondent lenders can also estimate the par rates by referring to an applicant's credit bureau-determined credit score.)

62.     Although Wells Fargo's initial analysis applies objective criteria to calculate this risk-related interest rate, Wells Fargo as a matter of policy and procedure authorizes its loan officers, brokers and correspondent lenders to mark up that rate later, and also impose additional

---

[8] https://ilnet.wellsFargo.com/ildocs/ee/marketing_tools.html (last view on November 7, 2007).

non-risk-based charges including yield spread premiums, and other discretionary fees. Wells Fargo regularly communicates applicable par rates, authorized yield spread premiums, and other discretionary fees to its loan officers, brokers and correspondent lenders via "rate sheets" and other communications.

63.     Wells Fargo gives its loan officers, authorized mortgage brokers and correspondent lenders discretion to impose yield spread premiums and other subjective fees on borrowers. When borrowers pay yield spread premiums, Wells Fargo shares in additional income generated by the premium because the yield spread premium-affected borrowers are locked into a higher interest rate going forward on their Wells Fargo loan than they would be if they had been placed in a par rate loan without a yield spread premium.

64.     Wells Fargo's policies and procedures authorizing the subjective assessment of yield spread premiums and other discretionary fees cause persons with identical or similar credit scores to pay differing amounts for obtaining credit. Such subjective loan pricing- which by design imposes differing finance charges on persons with the same or similar credit profiles- disparately impacts Wells Fargo's Minority borrowers.

65.     Wells Fargo's use of yield spread premiums and other discretionary fees disproportionately and adversely affects Minorities (relative to similarly situated non-minorities). Wells Fargo's credit policies cause Minorities to pay disparately more discretionary finance charges than similarly situated non-minorities. As the HMDA data and other studies cited *infra* indicate, Minorities are substantially more likely than similarly situated non-minorities to pay such charges.

66.     The March 2007 Joint Report (see n. 5) further notes that Wells Fargo's African-American home purchase loan borrowers were ten times more likely to get a higher-cost home

17

loan than Caucasian borrowers, overall, and 14.3% more likely to receive higher-cost home loans in Chicago, specifically. Further, in Chicago, Latino borrowers demonstrated a 5.2% lending disparity ratio when compared to Caucasian counterparts. *(See tables from study below)*

**Table 2. African American/White Home Purchase Lending Disparity Ratios by Lender Group and Metropolitan Area, 2005**

| Lender Group | Boston | Charlotte | Chicago | Los Angeles | New York | Rochester | Weighted Average |
|---|---|---|---|---|---|---|---|
| Citigroup | 0.0 | 5.0 | 4.2 | 7.9 | 5.6 | 1.8 | 5.0 |
| Countrywide | 3.1 | 2.9 | 5.6 | 5.9 | 5.3 | 3.3 | 4.9 |
| GMAC | 3.2 | 3.4 | 8.8 | 2.8 | 17.2 | 6.3 | 5.8 |
| HSBC | 3.1 | 5.6 | 1.6 | 2.1 | 8.8 | 3.4 | 3.0 |
| JP Morgan Chase | 3.7 | 2.2 | 4.0 | 5.7 | 5.7 | 4.7 | 3.5 |
| Washington Mutual | 4.4 | 1.3 | 3.3 | 5.9 | 9.8 | 1.0 | 4.0 |
| **Wells Fargo** | **9.1** | **5.4** | **14.3** | **11.2** | **9.1** | **4.5** | **10.0** |
| Seven Lenders Combined | 5.7 | 4.9 | 5.7 | 6.8 | 12.5 | 3.3 | 6.0 |

**Table 3. Latino/White Home Purchase Lending Disparity Ratios by Lender Group and Metropolitan Area, 2005**

| Lender Group | Boston | Charlotte | Chicago | Los Angeles | New York | Rochester | Weighted Average |
|---|---|---|---|---|---|---|---|
| Citigroup | 0.0 | 0.0 | 2.0 | 2.9 | 2.4 | 3.2 | 1.8 |
| Countrywide | 1.5 | 1.7 | 2.5 | 5.7 | 1.9 | 1.9 | 2.9 |
| GMAC | 1.2 | 4.5 | 4.2 | 1.8 | 13.8 | 6.3 | 2.4 |
| HSBC | 3.1 | 0.0 | 1.5 | 2.1 | 12.2 | 2.0 | 3.8 |
| JP Morgan Chase | 7.7 | 5.0 | 2.3 | 14.2 | 3.0 | 2.3 | 3.5 |
| Washington Mutual | 4.7 | 1.3 | 2.9 | 5.5 | 8.7 | 2.0 | 3.5 |
| **Wells Fargo** | **3.7** | **2.4** | **5.2** | **7.9** | **5.3** | **2.4** | **3.3** |
| Seven Lenders Combined | 5.0 | 3.1 | 4.1 | 6.9 | 7.8 | 2.6 | 4.8 |

67.     Wells Fargo's credit policy is in fact intentionally discriminatory. As described above, Wells Fargo's credit pricing policy by design discriminates against Minority borrowers.

68.     While long suspected, this discrimination has only recently been disclosed and quantified. It has only been in the last few years that mortgage lenders have been required to submit details of their sub-prime home loans under the Home Mortgage Disclosure Act. The groups that have studied predatory lending and the mortgage market have uncovered incredible racial disparities in the types of mortgages offered.

69.     By placing Minority mortgagors into higher-priced sub-prime loans because of their race, Defendant violates the Fair Housing Act, the Equal Credit Opportunity Act, and the Civil Rights Act. These violations entitle the Plaintiff and Class Members to the declaratory and injunctive relief provided under the Acts.

## COUNT I:
## VIOLATIONS OF THE FAIR HOUSING ACT
### (42 U.S.C. §3601 et seq.)

70.     Plaintiff hereby incorporates by reference the preceding paragraphs as if they were fully set forth herein.

71.     Plaintiff and her putative class members are members of a protected class under the Fair Housing Act.

72.     Plaintiff was qualified to receive a loan with more favorable credit terms and associated costs.  Yet Defendant issued her a loan with terms less favorable and with higher associated costs, despite her qualifications, while Defendant offered loans with more favorable terms and lower associated costs to non-minorities with the same or similar qualifications as Plaintiff.

73.     The Fair Housing Act was enacted in 1968 to prohibit discrimination in connection with real estate transactions such as purchasing and refinancing a home.  The Fair Housing Act has been broadly construed by the courts to protect consumers.

74.     The Fair Housing Act prohibits mortgage lenders from imposing different terms or conditions on a loan on the basis of race.  Defendant targeted Minorities for higher cost sub-prime mortgage loans, while directing similarly-qualified Caucasian applicants into lower cost loans.

75.     Defendant engaged in residential real estate-related transactions with respect to the Plaintiff and all prospective Class Members.

76.     Defendant's discretionary pricing policies have resulted in discrimination with respect to the Plaintiff and all prospective members of the Class.

77.     As a result of Defendant's discretionary pricing policies, Defendant has collected more in finance charges from Minorities than from similarly situated Caucasian persons, for reasons unrelated to credit risk.

78.     Defendant's discretionary pricing policies violate the Fair Housing Act and constitute actionable discrimination on the basis of race.

79.     Plaintiff and the Class Members are aggrieved persons as defined in the Fair Housing Act by virtue of having been subjected to Defendant's discriminatory discretionary pricing policies.

## COUNT II:
## VIOLATIONS OF THE EQUAL CREDIT OPPORTUNITY ACT
### (15 U.S.C. §1691 et seq.)

80.     Plaintiff hereby incorporates by reference the preceding paragraphs as if they were fully set forth herein.

20

81.     The Equal Credit Opportunity Act was first enacted in 1974 as a consumer protection statute prohibiting discrimination in the issuing of credit. The Equal Credit Opportunity Act has been broadly construed by the courts in order to protect consumers.

82.     Plaintiff is an applicant as defined in the Equal Credit Opportunity Act.

83.     Defendant is a creditor as defined in the Equal Credit Opportunity Act and in the ordinary course of its business, participated in the decision of whether or not to extend credit to the Plaintiff and all prospective members of the Class.

84.     Plaintiff and Defendant engaged in a credit transaction as defined by the Equal Credit Opportunity Act.

85.     Defendant designed, disseminated, controlled, implemented and profited from the discriminatory policies and practices alleged herein, which have had a disparate economic impact on Minorities as compared to similarly situated Caucasians.

86.     All actions taken by Defendant's employees and brokers were in accordance with the specific authority granted to them by Defendant and were in furtherance of Defendant's policies and practices.

87.     As a result of Defendant's discretionary pricing policies, Defendant has collected more in finance charges and other fees from Minorities than from similarly situated Caucasian persons, for reasons totally unrelated to credit risk.

88.     Defendant's discretionary pricing policies are discriminatory and violate the Equal Credit Opportunity Act.

89.     Plaintiff and prospective members of the Class are aggrieved persons as defined in the Equal Credit Opportunity Act by virtue of having been subjected to the discriminatory pricing policies of Wells Fargo.

21

## COUNT III:
## VIOLATIONS OF THE CIVIL RIGHTS ACT: RACIAL DISCRIMINATION
### (42 U.S.C. §§ 1981, 1982 et seq.)

90.     Plaintiff hereby incorporates by reference the preceding paragraphs as if they were fully set forth herein.

91.     The Civil Rights Act of 1866 and 1870, and later expanded in 1991, prohibits racial discrimination in the formation and issuance of contracts, and intentional interference to purchase and hold real property.

92.     Defendant intentionally discriminated against Plaintiff and the Class Members by charging them higher interest rates than those charged to similarly-situated Caucasian mortgagees.

93.     By charging higher rates to the Plaintiff and Class Members, Defendant unlawfully discriminated against them in the (i) formation of contracts, (ii) making, performance, modification, and termination of contracts, and/or (iii) the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship, and in their right to purchase and hold real property.

94.     Defendant's actions violate the Civil Rights Act. As a proximate result of Defendant's systematic violation of this statute, Plaintiff and the Class Members are entitled to the requested relief provided thereunder.


## PRAYER

WHEREFORE, Plaintiff, individually and on behalf of the putative Class Members, prays for entry of judgment as follows:

> A.     Certify this case as a class action and certify the named Plaintiff herein to be an adequate Class representative and her counsel to be Class counsel;

22

B.     Enter a judgment, pursuant to 15 U.S.C. 1691e(c) and/or 42 U.S.C. § 3613, declaring the acts and practices of Defendant, complained of herein to be in violation of the Equal Credit Opportunity Act, the Fair Housing Act and the Civil Rights Act;

C.     Grant a permanent or final injunction, pursuant to 15 U.S.C. § 1691e(c) and/or 42 U.S.C. § 3613(c), enjoining Defendant, and Defendant's agents, employees, affiliates and subsidiaries from continuing to discriminate against Plaintiff and the members of the Class because of their race through further use of any discretionary pricing policies or any non-risk-related discretionary pricing policy employed by Defendant;

D.     Order Defendant, pursuant to 15 U.S.C. §1691e(c) and/or 42 U.S.C. § 3613(c), to adopt and enforce a policy that requires appropriate training of Defendant's employees, mortgage specialists and network of mortgage brokers to prevent discrimination;

E.     Order Defendant, pursuant to. 15 U.S.C. §1691e(c) and/or 42 U.S.C. § 3613(c), to monitor and/or audit the racial pattern of its financings to ensure the cessation of discriminatory effects in its home mortgage transactions;

F.     Order disgorgement, pursuant to 15 U.S.C. §1691e (c), of all disproportionate non-risk charges imposed on Minorities by Defendant's discretionary pricing policies; and order the equitable distribution of such charges, as restitutionary relief, to all appropriate Class Members;

G.     Order actual and punitive damages to the Plaintiff and the Class pursuant to 42 U.S.C. §3613(c);

H.     Award Plaintiff the costs of this action, including the fees and costs of experts, together with reasonable attorneys' fees, pursuant to 15 U.S.C. §1691e(d) and/or 42 U.S.C. §3613(c); and

I.     Grant Plaintiff and the Class such other and further relief as this Court finds necessary and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all issues so triable.

Dated: November 7, 2007

Respectfully Submitted,

**SCHIFFRIN BARROWAY TOPAZ &
KESSLER, LLP**

By: _____
Joseph H. Meltzer
Edward W. Ciolko
Joseph A. Weeden
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

**ROBERT D. ALLISON & ASSOCIATES**
Robert D. Allison, I.D. #36749
Bruce C. Howard
Steven P. Schneck
122 S. Michigan Ave., Suite 1850
Chicago, IL 60603
Tel. 312 427-7600
Fax. 312 427-1850

LOCAL COUNSEL

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| JUDY WILLIAMS, individually and on behalf of all others similarly situated, | CASE NO.: 07-cv-6342 |
| Plaintiff, | |
| v. | **AMENDED NOTICE OF MOTION** |
| WELLS FARGO BANK, N.A. | |
| Defendant. | |

TO:    David Zev Smith, Esq.               Robert D. Phillips, Jr., Esq.
         Reed Smith, LLP                     Reed Smith, LLP
         10 South Wacker Drive,           Two Embarcadero Center
         40th Floor                           Suite 2000
         Chicago, IL 60606               San Francisco, CA 94111

PLEASE TAKE NOTICE that on Wednesday, March 26, 2008, at 9:00 a.m. or as soon thereafter as counsel may be heard, the undersigned shall appear before the Honorable Samuel Der-Yeghiayan or any other Judge sitting in his place in the courtroom usually occupied by him in Room 1903 of the Everett McKinley Dirksen Building, 219 South Dearborn Street, Chicago, IL 60604, and shall then and there present the attached Motion of Plaintiff to Dismiss.

Dated: March 19, 2008               Respectfully submitted,

                               **SCHIFFRIN BARROWAY
                               TOPAZ & KESSLER, LLP**

                           */s/ Edward W. Ciolko*
                             Joseph H. Meltzer
                             Edward W. Ciolko
                             Katherine B. Bornstein

Joseph A. Weeden
280 King of Prussia Road
Radnor, Pennsylvania 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

**ROBERT D. ALLISON &
ASSOCIATES**
Robert D. Allison, I.D. #36749
Bruce C. Howard
Steven P. Schneck
122 S. Michigan Ave., Suite 1850
Chicago, IL 60603
Telephone: (312) 427-7600
Facsimile: (312) 427-1850

*Attorneys for Judy Williams*

**ROBERT D. ALLISON &
ASSOCIATES**
Robert D. Allison, I.D. #36749
Bruce C. Howard
Steven P. Schneck
122 S. Michigan Ave., Suite 1850
Chicago, IL 60603
Telephone: (312) 427-7600
Facsimile: (312) 427-1850

*Attorneys for Judy Williams*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| JUDY WILLIAMS, individually and on behalf of all others similarly situated, | CASE NO.: 07-cv-6342 |
| Plaintiff, | |
| v. | **AMENDED NOTICE OF MOTION** |
| WELLS FARGO BANK, N.A. | |
| Defendant. | |

TO:    David Zev Smith, Esq.           Robert D. Phillips, Jr., Esq.
          Reed Smith, LLP               Reed Smith, LLP
          10 South Wacker Drive,       Two Embarcadero Center
          40th Floor                      Suite 2000
          Chicago, IL  60606           San Francisco, CA  94111

      PLEASE TAKE NOTICE that on Wednesday, March 26, 2008, at 9:00 a.m. or as soon thereafter as counsel may be heard, the undersigned shall appear before the Honorable Samuel Der-Yeghiayan or any other Judge sitting in his place in the courtroom usually occupied by him in Room 1903 of the Everett McKinley Dirksen Building, 219 South Dearborn Street, Chicago, IL 60604, and shall then and there present the attached Motion of Plaintiff to Dismiss.

Dated: March 19, 2008                Respectfully submitted,

                               **SCHIFFRIN BARROWAY**
                             **TOPAZ & KESSLER, LLP**


                           ___*/s/ Edward W. Ciolko*____
                           Joseph H. Meltzer
                           Edward W. Ciolko
                           Katherine B. Bornstein

Joseph A. Weeden
280 King of Prussia Road
Radnor, Pennsylvania  19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

**ROBERT    D.    ALLISON    &
ASSOCIATES**
Robert D. Allison, I.D. #36749
Bruce C. Howard
Steven P. Schneck
122 S. Michigan Ave., Suite 1850
Chicago, IL 60603
Telephone: (312) 427-7600
Facsimile: (312) 427-1850

*Attorneys for Judy Williams*

**ROBERT D. ALLISON &
ASSOCIATES**
Robert D. Allison, I.D. #36749
Bruce C. Howard
Steven P. Schneck
122 S. Michigan Ave., Suite 1850
Chicago, IL 60603
Telephone: (312) 427-7600
Facsimile: (312) 427-1850

*Attorneys for Judy Williams*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JUDY WILLIAMS, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No.: 07 cv 6342 |
| v. | ) ) ) | Judge Der-Yeghiayan |
| WELLS FARGO BANK, N.A., | ) ) ) | Magistrate Judge Valdez |
| Defendant. | ) ) ) | |

**DEFENDANT WELLS FARGO BANK, N.A.'S**
**ANSWER AND AFFIRMATIVE DEFENSES TO COMPLAINT**

Defendant Wells Fargo Bank N.A. ("Wells Fargo") hereby answers the allegations of the Complaint filed in this action by plaintiff Judy Williams ("Plaintiff").

Introduction

1.      Answering Paragraph 1 of the Complaint, Wells Fargo admits that Plaintiff purports to assert claims against Wells Fargo under the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.*, and the Civil Rights Act, 42 U.S.C. §§ 1981, 1982 *et seq.* but denies any liability under the referenced statutes. Except as expressly admitted herein, Wells Fargo denies the remaining allegations of Paragraph 1.

2.      Answering Paragraph 2 of the Complaint, Wells Fargo admits that Plaintiff purports to assert claims on behalf of herself and of a proposed national class. Except as expressly admitted herein, Wells Fargo denies the remaining allegations of Paragraph 2.

3.      Paragraph 3 of the Complaint does not make any material allegations concerning Wells Fargo and, on that basis, Wells Fargo does not respond to the statements contained therein.

4. Paragraph 4 of the Complaint does not make any material allegations concerning Wells Fargo and, on that basis, Wells Fargo does not respond to the statements contained therein. To the extent that Paragraph 4 is construed as requiring an answer, Wells Fargo denies that it participated in discriminatory treatment of minority borrowers.

5. Paragraph 5 of the Complaint does not make any material allegations concerning Wells Fargo and, on that basis, Wells Fargo does not respond to the statements contained therein.

6. Paragraph 6 of the Complaint does not make any material allegations concerning Wells Fargo and, on that basis, Wells Fargo does not respond to the statements contained therein. To the extent that Paragraph 6 is construed as requiring an answer, Wells Fargo denies that it participated in discriminatory treatment of minority borrowers.

7. Paragraph 7 of the Complaint does not make any material allegations concerning Wells Fargo and, on that basis, Wells Fargo does not respond to the statements contained therein. To the extent that Paragraph 7 is construed as requiring an answer, Wells Fargo denies that it participated in discriminatory treatment of minority borrowers.

8. Paragraph 8 of the Complaint does not make any material allegations concerning Wells Fargo and, on that basis, Wells Fargo does not respond to the statements contained therein. To the extent that Paragraph 8 is construed as requiring an answer, Wells Fargo denies that it participated in discriminatory treatment of minority borrowers.

9. Paragraph 9 of the Complaint does not make any material allegations concerning Wells Fargo and, on that basis, Wells Fargo does not respond to the statements contained therein. To the extent that Paragraph 9 is construed as requiring an answer, Wells Fargo denies that it participated in discriminatory treatment of minority borrowers.

10.     Paragraph 10 of the Complaint does not make any material allegations concerning Wells Fargo and, on that basis, Wells Fargo does not respond to the statements contained therein. To the extent that Paragraph 10 is construed as requiring an answer, Wells Fargo denies that it participated in discriminatory treatment of minority borrowers.

11.     Answering Paragraph 11 of the Complaint, Wells Fargo denies that it participated in discriminatory treatment of minority borrowers. As to the remaining allegations of Paragraph 11, Wells Fargo lacks sufficient information to admit or deny the allegations contained therein and, on that basis, denies the allegations.

12.     Answering Paragraph 12 of the Complaint, Wells Fargo denies that it participated in discriminatory treatment of minority borrowers. As to the remaining allegations of Paragraph 12, Wells Fargo lacks sufficient information to admit or deny the allegations contained therein and, on that basis, denies the allegations.

The Parties

13.     Answering Paragraph 13 of the Complaint, Wells Fargo admits that, on June 29, 2006, Plaintiff purchased a condominium unit located at 1360 East Madison Park, #B, Chicago, Illinois and that Wells Fargo entered into a loan transaction with Plaintiff in relation to that purchase. Further answering Paragraph 13, Wells Fargo admits that Plaintiff paid approximately $7,550.00 in earnest money. As to the remaining allegations of Paragraph 13, Wells Fargo lacks sufficient information to admit or deny the allegations contained therein and, on that basis, denies the allegations.

14.     Answering Paragraph 14 of the Complaint, Wells Fargo admits that Plaintiff entered into two loan transactions, the first a thirty-year ARM for $133,600.00 at an initial rate of 8.125% and the second a thirty-year loan for $33,400.00 at a fixed rate of 12.5%. Further

answering Paragraph 14, Wells Fargo admits that, on July 1, 2008, Plaintiff's first loan may adjust to new rate between 5.125% and 11.125%, per the terms of the loan Plaintiff executed. As to the remaining allegations of Paragraph 14, Wells Fargo lacks sufficient information to admit or deny the allegations contained therein and, on that basis, denies the allegations..

15. Answering Paragraph 15 of the Complaint, Wells Fargo admits that Plaintiff executed a Prepayment Rider that provides, "If within the first year after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge in an amount equal to three percent (3%) of the original principal amount. If within the second year after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge in an amount equal to two percent (2%) of the original principal amount." As to the remaining allegations of Paragraph 15, Wells Fargo lacks sufficient information to admit or deny the allegations contained therein and, on that basis, denies the allegations.

16. Answering Paragraph 16 of the Complaint, Wells Fargo lacks sufficient information to admit or deny the allegations contained therein and, on that basis, denies the allegations.

17. Answering Paragraph 17 of the Complaint, Wells Fargo denies that it participated in discriminatory treatment of minority borrowers. As to the remaining allegations of Paragraph 17, Wells Fargo lacks sufficient information to admit or deny the allegations contained therein and, on that basis, denies the allegations.

Defendant

18. Answering Paragraph 18 of the Complaint, Wells Fargo admits that it is a mortgage lender and that it maintains a branch at 464 California St., San Francisco, California,

94104.  Except as expressly admitted herein, Wells Fargo denies the remaining allegations of Paragraph 18.

## Jurisdiction and Venue

19.    Answering Paragraph 19 of the Complaint, Wells Fargo admits that this court has original jurisdiction over civil actions arising under federal law.

20.    Answering Paragraph 20 of the Complaint, Wells Fargo admits that venue is proper in this Court.  Except as expressly admitted herein, Wells Fargo denies the remaining allegations of Paragraph 20.

## Class Action Allegations

21.    Answering Paragraph 21 of the Complaint, Wells Fargo admits that Plaintiff purports to assert claims against Wells Fargo on behalf of a purported class of minority borrowers who allegedly entered into residential mortgage loans with Wells Fargo.  Except as expressly admitted herein, Wells Fargo denies the remaining allegations of Paragraph 21.

22.    Answering Paragraph 22 of the Complaint, Wells Fargo denies the allegations contained therein.

23.    Answering Paragraph 23 of the Complaint, Wells Fargo denies the allegations contained therein.

24.    Answering Paragraph 24 of the Complaint, Wells Fargo denies the allegations contained therein.

25.    Answering Paragraph 25 of the Complaint, Wells Fargo denies the allegations contained therein.

26.    Answering Paragraph 26 of the Complaint, Wells Fargo denies the allegations contained therein.

27.     Answering Paragraph 27 of the Complaint, Wells Fargo denies the allegations contained therein.

28.     Answering Paragraph 28 of the Complaint, Wells Fargo denies the allegations contained therein.

29.     Answering Paragraph 29 of the Complaint, Wells Fargo denies the allegations contained therein.

30.     Answering Paragraph 30 of the Complaint, Wells Fargo denies the allegations contained therein.

31.     Answering Paragraph 31 of the Complaint, Wells Fargo denies the allegations contained therein.

<u>Fraudulent Concealment/Equitable Tolling</u>

32.     The first sentence of Paragraph 32 of the Complaint does not make any material allegations concerning Wells Fargo and, on that basis, Wells Fargo does not respond to the statements contained therein.  To the extent that the first sentence of Paragraph 32 is construed as requiring an answer, Wells Fargo denies such allegations.  Answering the second sentence of Paragraph 32 of the Complaint, Wells Fargo denies the allegations contained therein.

33.     Answering Paragraph 33 of the Complaint, Wells Fargo denies the allegations contained therein.

34.     Answering Paragraph 34 of the Complaint, Wells Fargo denies the allegations contained therein.

35.     Answering Paragraph 35 of the Complaint, Wells Fargo denies the allegations contained therein.

- 6 -

36.    Answering Paragraph 36 of the Complaint, Wells Fargo denies the allegations contained therein.

37.    Answering Paragraph 37 of the Complaint, Wells Fargo denies the allegations contained therein.

Factual Allegations

38.    Answering Paragraph 38 of the Complaint, Wells Fargo lacks sufficient information to admit or deny the allegations contained therein and, on that basis, denies the allegations.

39.    Answering Paragraph 39 of the Complaint, Wells Fargo admits that Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A.

40.    Answering Paragraph 40 of the Complaint, Wells Fargo lacks sufficient information to admit or deny the allegations contained therein and, on that basis, denies the allegations.

41.    Paragraph 41 of the Complaint does not make any material allegations concerning Wells Fargo and, on that basis, Wells Fargo does not respond to the statements contained therein. To the extent that Paragraph 41 is construed as requiring an answer, lacks sufficient information to admit or deny the allegations contained therein and, on that basis, denies the allegations.

42.    Paragraph 42 of the Complaint does not make any material allegations concerning Wells Fargo and, on that basis, Wells Fargo does not respond to the statements contained therein. To the extent that Paragraph 42 is construed as requiring an answer, Wells Fargo admits that information produced by Harvard University's Joint Center for Housing Studies speaks for itself. Except as so admitted, Wells Fargo lacks sufficient information to admit or deny the allegations contained in Paragraph 42 and, on that basis, denies the allegations.

43.     Paragraph 43 of the Complaint does not make any material allegations concerning Wells Fargo and, on that basis, Wells Fargo does not respond to the statements contained therein. To the extent that Paragraph 43 is construed as requiring an answer, Wells Fargo denies such allegations.

44.     Paragraph 44 of the Complaint does not make any material allegations concerning Wells Fargo and, on that basis, Wells Fargo does not respond to the statements contained therein. To the extent that Paragraph 44 is construed as requiring an answer, Wells Fargo admits that the September 5, 2007 study released by ACORN speaks for itself.  Except as so admitted, Wells Fargo lacks sufficient information to admit or deny the allegations contained in Paragraph 44 and, on that basis, denies the allegations.

45.     Paragraph 45 of the Complaint does not make any material allegations concerning Wells Fargo and, on that basis, Wells Fargo does not respond to the statements contained therein. To the extent that Paragraph 45 is construed as requiring an answer, Wells Fargo lacks sufficient information to admit or deny the allegations contained therein and, on that basis, denies the allegations.

46.     Answering Paragraph 46 of the Complaint, Wells Fargo denies that it participated in discriminatory treatment of minority borrowers.  As to the remaining allegations of Paragraph 46, Wells Fargo lacks sufficient information to admit or deny the allegations contained therein and, on that basis, denies the allegations.

47.     Paragraph 47 of the Complaint does not make any material allegations concerning Wells Fargo and, on that basis, Wells Fargo does not respond to the statements contained therein. To the extent that Paragraph 47 is construed as requiring an answer, Wells Fargo lacks sufficient

information to admit or deny the allegations contained therein and, on that basis, denies the allegations.

48.    Paragraph 48 of the Complaint does not make any material allegations concerning Wells Fargo and, on that basis, Wells Fargo does not respond to the statements contained therein. To the extent that Paragraph 48 is construed as requiring an answer, Wells Fargo admits that U.S. Department of Housing and Urban Development study cited speaks for itself.  Except as so admitted, Wells Fargo lacks sufficient information to admit or deny the allegations contained in Paragraph 48 and, on that basis, denies the allegations.

49.    Paragraph 49 of the Complaint does not make any material allegations concerning Wells Fargo and, on that basis, Wells Fargo does not respond to the statements contained therein. To the extent that Paragraph 49 is construed as requiring an answer, Wells Fargo denies that it participated in discriminatory treatment of minority borrowers.

50.    Answering Paragraph 50 of the Complaint, Wells Fargo admits that its website speaks for itself.  As to the remaining allegations of Paragraph 50, Wells Fargo lacks sufficient information to admit or deny the allegations contained therein and, on that basis, denies the allegations.

51.    Answering Paragraph 51 of the Complaint, Wells Fargo denies the allegations contained therein.

52.    Answering Paragraph 52 of the Complaint, Wells Fargo lacks sufficient information to admit or deny the allegations contained therein and, on that basis, denies the allegations.

53.    Answering Paragraph 53 of the Complaint, Wells Fargo denies the allegations contained therein.

54.     Answering Paragraph 54 of the Complaint, Wells Fargo admits that its website speaks for itself.  As to the remaining allegations of Paragraph 54, Wells Fargo lacks sufficient information to admit or deny the allegations contained therein and, on that basis, denies the allegations.

55.     Answering Paragraph 55 of the Complaint, Wells Fargo lacks sufficient information to admit or deny the allegations contained therein and, on that basis, denies the allegations.

56.     Answering Paragraph 56 of the Complaint, Wells Fargo lacks sufficient information to admit or deny the allegations contained therein and, on that basis, denies the allegations.

57.     Answering Paragraph 57 of the Complaint, Wells Fargo admits that it enters into agreements with brokers to accept loan applications for Wells Fargo loans and communicates financing terms and rates to brokers.  Except as expressly admitted herein, Wells Fargo denies the allegations of Paragraph 57.

58.     Answering Paragraph 58 of the Complaint, Wells Fargo denies the allegations contained therein.

59.     Answering Paragraph 59 of the Complaint, Wells Fargo lacks sufficient information to admit or deny the allegations contained therein and, on that basis, denies the allegations.

60.     Answering Paragraph 60 of the Complaint, Wells Fargo lacks sufficient information to admit or deny the allegations contained therein and, on that basis, denies the allegations.

61.     Answering Paragraph 61 of the Complaint, Wells Fargo lacks sufficient information to admit or deny the allegations contained therein and, on that basis, denies the allegations.

62.     Answering Paragraph 62 of the Complaint, Wells Fargo lacks sufficient information to admit or deny the allegations contained therein and, on that basis, denies the allegations.

63.     Answering Paragraph 63 of the Complaint, Wells Fargo lacks sufficient information to admit or deny the allegations contained therein and, on that basis, denies the allegations.

64.     Answering Paragraph 64 of the Complaint, Wells Fargo lacks sufficient information to admit or deny the allegations contained therein and, on that basis, denies the allegations.

65.     Answering Paragraph 65 of the Complaint, Wells Fargo lacks sufficient information to admit or deny the allegations contained therein and, on that basis, denies the allegations.

66.     Answering Paragraph 66 of the Complaint, Wells Fargo denies that it participated in discriminatory treatment of minority borrowers.  As to the remaining allegations of Paragraph 66, Wells Fargo lacks sufficient information to admit or deny the allegations contained therein and, on that basis, denies the allegations.

67.     Answering Paragraph 67 of the Complaint, Wells Fargo denies the allegations contained therein.

68.     Answering Paragraph 68 of the Complaint, Wells Fargo denies that it participated in discriminatory treatment of minority borrowers.  As to the remaining allegations of Paragraph

68, Wells Fargo lacks sufficient information to admit or deny the allegations contained therein and, on that basis, denies the allegations.

69.     Answering Paragraph 69 of the Complaint, Wells Fargo denies the allegations contained therein.

Count I

70.     Answering Paragraph 70 of the Complaint, Wells Fargo repeats and realleges each of the answers in Paragraphs 1 through 69, above, as though the same were set forth in full herein.

71.     Answering Paragraph 71 of the Complaint, Wells Fargo denies the allegations contained therein.

72.     Answering Paragraph 72 of the Complaint, Wells Fargo denies the allegations contained therein.

73.     Paragraph 73 of the Complaint does not make any material allegations concerning Wells Fargo and, on that basis, Wells Fargo does not respond to the statements contained therein.

74.     Answering Paragraph 74 of the Complaint, Wells Fargo denies the allegations contained therein.

75.     Answering Paragraph 75 of the Complaint, Wells Fargo denies the allegations contained therein.

76.     Answering Paragraph 76 of the Complaint, Wells Fargo denies the allegations contained therein.

77.     Answering Paragraph 77 of the Complaint, Wells Fargo denies the allegations contained therein.

78.     Answering Paragraph 78 of the Complaint, Wells Fargo denies the allegations contained therein.

79.     Answering Paragraph 79 of the Complaint, Wells Fargo denies the allegations contained therein.

Count II

80.     Answering Paragraph 80 of the Complaint, Wells Fargo repeats and realleges each of the answers in Paragraphs 1 through 79, above, as though the same were set forth in full herein.

81.     Paragraph 81 of the Complaint does not make any material allegations concerning Wells Fargo and, on that basis, Wells Fargo does not respond to the statements contained therein.

82.     Answering Paragraph 82 of the Complaint, Wells Fargo lacks sufficient information to admit or deny the allegations contained therein and, on that basis, denies the allegations.

83.     Answering Paragraph 83 of the Complaint, Wells Fargo lacks sufficient information to admit or deny the allegations contained therein and, on that basis, denies the allegations.

84.     Answering Paragraph 84 of the Complaint, Wells Fargo lacks sufficient information to admit or deny the allegations contained therein and, on that basis, denies the allegations.

85.     Answering Paragraph 85 of the Complaint, Wells Fargo denies the allegations contained therein.

86.     Answering Paragraph 86 of the Complaint, Wells Fargo lacks sufficient information to admit or deny the allegations contained therein and, on that basis, denies the allegations.

87.     Answering Paragraph 87 of the Complaint, Wells Fargo lacks sufficient information to admit or deny the allegations contained therein and, on that basis, denies the allegations.

88.     Answering Paragraph 88 of the Complaint, Wells Fargo denies the allegations contained therein.

89.     Answering Paragraph 89 of the Complaint, Wells Fargo denies the allegations contained therein.

Count III

90.     Answering Paragraph 90 of the Complaint, Wells Fargo repeats and realleges each of the answers in Paragraphs 1 through 89, above, as though the same were set forth in full herein.

91.     Paragraph 91 of the Complaint does not make any material allegations concerning Wells Fargo and, on that basis, Wells Fargo does not respond to the statements contained therein.

92.     Answering Paragraph 92 of the Complaint, Wells Fargo denies the allegations contained therein.

93.     Answering Paragraph 93 of the Complaint, Wells Fargo denies the allegations contained therein.

94.     Answering Paragraph 94 of the Complaint, Wells Fargo denies the allegations contained therein.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

#### (Failure to State a Claim)

1.      Wells Fargo alleges as an affirmative defense that the Complaint, and each cause of action asserted therein, fails to allege sufficient facts to state any claim for which relief can be granted to Plaintiff because it fails to allege a discriminatory practice or disparate impact on Plaintiff.

### SECOND AFFIRMATIVE DEFENSE

#### (Statute of Limitations)

2.      Wells Fargo alleges as an affirmative defense that Plaintiff's claims are barred by any and all applicable statutes of limitations.

### THIRD AFFIRMATIVE DEFENSE

#### (Waiver)

3.      Wells Fargo alleges as an affirmative defense that Plaintiff has waived any and all claims, rights and demands made in the Complaint because she accepted the terms of any and all loans obtained from Wells Fargo.

### FOURTH AFFIRMATIVE DEFENSE

#### (Estoppel)

4.      Wells Fargo alleges as an affirmative defense that Plaintiff is barred by the doctrine of estoppel from asserting the claims, rights and demands made in the Complaint, because Wells Fargo reasonably and justifiably relied on its loan contracts with Plaintiff, and upon the terms and conditions stated therein, and funded the loans to Plaintiff's benefit.

## FIFTH AFFIRMATIVE DEFENSE

### (Business Necessity)

5.      Wells Fargo alleges as an affirmative defense that any alleged acts or omissions of Wells Fargo that gave rise to Plaintiff's alleged claims were and are justified by a legitimate business necessity and/or other legitimate non-discriminatory reason.

## SIXTH AFFIRMATIVE DEFENSE

### (Consent/Acquiescence)

6.      Wells Fargo alleges as an affirmative defense that Plaintiff acquiesced in and/or consented to the acts and omissions alleged in the Complaint herein, including by accepting any and all loan terms and conditions disclosed to plaintiff by Wells Fargo.

## SEVENTH AFFIRMATIVE DEFENSE

### (No Discriminatory Practice)

7.      Wells Fargo alleges as an affirmative defense that it has not engaged in any discriminatory practices as alleged in the Complaint and that discriminatory intent was not a factor in determining the terms or conditions of any loan made to Plaintiff.

## EIGHTH AFFIRMATIVE DEFENSE

### (No Disparate Impact)

8.      Wells Fargo alleges as an affirmative defense that its loan policies and procedures do not have a disparate impact on minority borrowers that is not related to risk-based factors.

## NINTH AFFIRMATIVE DEFENSE

### (Fault of Others)

9.      Wells Fargo alleges as an affirmative defense that Plaintiff's damages, if any, were proximately caused and/or contributed to by the acts, omissions, negligence and/or intentional misconduct of third parties, and were not caused by Wells Fargo.

## TENTH AFFIRMATIVE DEFENSE

### (No Damages)

10.      Wells Fargo alleges as an affirmative defense that Wells Fargo has committed no act or omission causing damage to Plaintiff.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Speculative Damage)

11.      Wells Fargo alleges as an affirmative defense that the damages claimed by Plaintiff in the Complaint are too speculative to support any cognizable claim for relief.

## TWELFTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate)

12.      Wells Fargo alleges as an affirmative defense that Plaintiff has failed, refused and/or neglected to take reasonable steps to mitigate her alleged damages, if any, thus barring or diminishing any recovery.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (No Sufficient Intent)

13.      Wells Fargo alleges as an affirmative defense that Wells Fargo had no sufficient intent for the commission of the matters alleged in the Complaint and did not act with intent to discriminate against Plaintiff.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Standing)

14.    Wells Fargo alleges as an affirmative defense that Plaintiff does not have standing to bring the causes of action alleged in her Complaint because she was not discriminated against and did not pay any fee or interest rate unrelated to creditworthiness or risk.

**WHEREFORE**, Wells Fargo prays for judgment as follows:

1.    That Plaintiff take nothing by reason of her Complaint;

2.    That no class be certified in this action;

3.    For its costs of suit herein;

4.    For its attorneys' fees according to proof; and

5.    For such other and further relief as this Court may deem just and proper.

Dated:  January 4, 2008                              Respectfully submitted,

**WELLS FARGO BANK, N.A.**
*Defendant*

By: /s/ David Z. Smith_____
                One of Its Attorneys

Robert D. Phillips, Jr. (*pro hac vice*)
REED SMITH LLP
Two Embarcadero Center, Suite 2000
San Francisco, CA  94111-3922
(415) 543-8700
(415) 391-8269 fax

David Z. Smith (ARDC# 6256687)
Marina C. Santini (ARDC# 6290668)
REED SMITH LLP
10 South Wacker Drive
Chicago, IL  60606-7507
Telephone:    (312) 207 1000
Facsimile:    (312) 207 6400
dzsmith@reedsmith.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 4, 2008, I electronically filed the foregoing **DEFENDANT WELLS FARGO BANK, N.A.'S ANSWER AND AFFIRMATIVE DEFENSES TO COMPLAINT** with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Robert D. Allison
Robert D. Allison & Associates
rdalaw@ix.netcom.com

Bruce C. Howard
Robert D. Allison & Associates
bchoward@ix.netcom.com

Steven Paul Schneck
Robert D. Allison & Associates
spschneckjazzlaw@yahood.com

Edward W. Ciolko
Schiffrin, Barroway, Topaz & Kessler LLP
eciolko@sbclasslaw.com

Joseph A. Weeden
Schiffrin, Barroway, Topaz & Kessler LLP
jweeden@sbtklaw.com

/s/ David Z. Smith_____
David Z. Smith (ARDC No. 6256687)
REED SMITH LLP
10 S. Wacker Drive, 40th Floor
Chicago, IL 60606-7507
(312) 207-1000
(312) 207-6400 fax
dzsmith@reedsmith.com

CHILIB-2129309

# BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

In re: Wells Fargo Mortgage Lending Practices : MDL No.: _____
Litigation                                      :
                                                :
                                                :

## CORPORATE DISCLOSURE STATEMENT OF DEFENDANT
## WELLS FARGO BANK, N.A.

Pursuant to Rule 5.3 of the Rules of Procedure of the Judicial Panel on Multidistrict

Litigation, defendant Wells Fargo Bank, N.A., by its undersigned counsel, hereby submits its

Corporate Disclosure Statement.


Wells Fargo Bank, N.A. is a wholly owned subsidiary of Wells Fargo & Company.

Wells Fargo & Company is a publicly traded company and is the ultimate parent (NYSE: WFC).

Dated: January 3, 2008

                    David Z. Smith
                    REED SMITH SACHNOFF & WEAVER
                    10 South Wacker Drive
                    40th Floor
                    Chicago, Illinois 60606-7507
                    (312) 207 1000
                    (312) 207 6400 facsimile

                    REED SMITH LLP

                    Robert D. Phillips, Jr.
                    Two Embarcadero Center
                    Suite 2000
                    San Francisco, California 94111
                    (415) 543-8700
                    (415) 391-8269 facsimile

                    Attorneys for Defendant Wells Fargo Bank, N.A.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| JUDY WILLIAMS, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 07 CV 6342 |
| v. | ) ) | Judge Der-Yeghiayan |
| | ) | Magistrate Judge Valdez |
| WELLS FARGO BANK, N.A., | ) ) | |
| Defendant. | ) ) | |

## DEFENDANT WELLS FARGO BANK, N.A.'S CORPORATE DISCLOSURE STATEMENT

Defendant Wells Fargo Bank, N.A., by and through its undersigned attorneys, furnishes the following information in compliance with Federal Rule of Civil Procedure 7.1 and Local Rule 3.2:

1.     Wells Fargo Bank, N.A.'s parent entities include WFC Holdings Corporation and the ultimate parent, Wells Fargo & Co., a publicly traded company.

2.     No publicly traded company owns more than 10% of the stock of Wells Fargo Bank, N.A.

Dated:  January 4, 2008                     Respectfully submitted,

**WELLS FARGO BANK, N.A.**
*Defendant*

By: \_\_\_\_/s/ David Z. Smith_____
                  One of Its Attorneys

Robert D. Phillips, Jr. (*pro hac vice*)       David Z. Smith (ARDC# 6256687)
REED SMITH LLP                           REED SMITH LLP
Two Embarcadero Center, Suite 2000     10 South Wacker Drive
San Francisco, CA  94111-3922          Chicago, IL  60606-7507
(415) 543-8700                            Telephone:     (312) 207 1000
(415) 391-8269 fax                     Facsimile:     (312) 207 6400
                                          dzsmith@reedsmith.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 4, 2008, I electronically filed the foregoing **DEFENDANT WELLS FARGO BANK, N.A.'S CORPORATE DISCLOSURE STATEMENT** with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Robert D. Allison
Robert D. Allison & Associates
rdalaw@ix.netcom.com

Bruce C. Howard
Robert D. Allison & Associates
bchoward@ix.netcom.com

Steven Paul Schneck
Robert D. Allison & Associates
spschneckjazzlaw@yahood.com

Edward W. Ciolko
Schiffrin, Barroway, Topaz & Kessler LLP
eciolko@sbclasslaw.com

Joseph A. Weeden
Schiffrin, Barroway, Topaz & Kessler LLP
jweeden@sbtklaw.com

/s/ David Z. Smith_____
David Z. Smith (ARDC  No. 6256687)
REED SMITH LLP
10 S. Wacker Drive, 40th Floor
Chicago, IL 60606-7507
(312) 207-1000
(312) 207-6400 fax
dzsmith@reedsmith.com

CHILIB-2129248.1

TERMED, TRANSFER, VALDEZ

# United States District Court
## Northern District of Illinois - CM/ECF LIVE, Ver 3.1.3 (Chicago)
## CIVIL DOCKET FOR CASE #: 1:07-cv-06342

Williams v. Wells Fargo Bank, N.A.        Date Filed: 11/08/2007
Assigned to: Honorable Samuel Der-Yeghiayan    Date Terminated: 04/10/2008
Cause: 42:1983 Civil Rights Act         Jury Demand: Plaintiff
                                    Nature of Suit: 440 Civil Rights: Other
                                    Jurisdiction: Federal Question

**Plaintiff**

| | | |
|---|---|---|
| **Judy Williams** | represented by | **Joseph A. Weeden** |
| *individually and on behalf of all others* | | Schiffrin,Barroway, Topaz & Kessler, |
| *similarly situated* | | LLP |
| | | 280 King of Prussia Road |
| | | Radnor, PA 19807 |
| | | (610) 667-7706 |
| | | Email: jweeden@sbtklaw.com |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |

                                         **Bruce C. Howard**
                                         Robert D. Allison & Associates
                                         122 South Michigan Avenue
                                         Suite 1850
                                         Chicago, IL 60603
                                         (312) 427-7600
                                         Email: bchoward@ix.netcom.com
                                         *ATTORNEY TO BE NOTICED*

                                         **Edward W Ciolko**
                                         Schiffrin, Barroway, Topaz & Kessler,
                                         LLP
                                         280 King of Prussia Road
                                         Radnor, PA 19807
                                         (610) 667-7706
                                         Email: eciolko@sbclasslaw.com
                                         *ATTORNEY TO BE NOTICED*

                                         **Joseph H Meltzer**
                                         Schiffrin, Barroway, Lopaz & Kessler,
                                         LLP
                                         280 King of Prussia Road
                                         Radnor, PA 19807

(610) 667-7706
Email: jmeltzer@sbtklaw.com
*ATTORNEY TO BE NOTICED*

**Katherine B Bornstein**
Schiffrin Barroway Topaz & Kessler,
LLP
280 King of Prussia Road
Radnor, PA 19087
610 667 7706
Email: kbornstein@sbtklaw.com
*ATTORNEY TO BE NOTICED*

**Robert D. Allison**
Robert D. Allison & Associates
122 S. Michigan Avenue
Ste 1850
Chicago, IL 60603
427-4500
Email: rdalaw@ix.netcom.com
*ATTORNEY TO BE NOTICED*

**Steven Paul Schneck**
Robert D. Allison & Associates
122 South Michigan Ave.
Suite 1850
Chicago, IL 60603
(312) 427-7600
Email: spschneckjazzlaw@yahoo.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Wells Fargo Bank, N.A.**          represented by   **David Zev Smith**
Reed Smith LLP
10 South Wacker Drive
40th Floor
Chicago, IL 60606
(312) 207-1000
Email: dzsmith@reedsmith.com
*ATTORNEY TO BE NOTICED*

**Robert D. Phillips, Jr.**
Reed Smith LLP
Two Embarcadero Center
Suite 2000
San Francisco, CA 94111
(415) 543-8700
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/08/2007 | 1 | COMPLAINT filed by Judy Williams; Jury Demand. Filing fee $ 350. (mjc, ) (Entered: 11/13/2007) |
| 11/08/2007 | 2 | CIVIL Cover Sheet. (mjc, ) (Entered: 11/13/2007) |
| 11/08/2007 | 3 | ATTORNEY Appearance for Plaintiff Judy Williams by Joseph A. Weeden. (mjc, ) (Entered: 11/13/2007) |
| 11/08/2007 | 4 | ATTORNEY Appearance for Plaintiff Judy Williams by Robert D. Allison. (mjc, ) (Entered: 11/13/2007) |
| 11/08/2007 | 5 | ATTORNEY Appearance for Plaintiff Judy Williams by Bruce C. Howard. (mjc, ) (Entered: 11/13/2007) |
| 11/08/2007 | 6 | ATTORNEY Appearance for Plaintiff Judy Williams by Steven Paul Schneck. (mjc, ) (Entered: 11/13/2007) |
| 11/08/2007 | 8 | SUMMONS Issued as to Defendant Wells Fargo Bank, N.A. (mjc, ) (Entered: 11/13/2007) |
| 11/14/2007 | 11 | MINUTE entry before Judge Samuel Der-Yeghiayan: Initial status hearing set for 1/9/2008 at 9:00 A.M. At least four working days before the initial status hearing, the parties shall conduct a FRCP 26(f) conference and file a joint written Initial Status Report, not to exceed five pages in length, and file the Court's Joint Jurisdictional Status Report and deliver courtesy copies to this Court's chambers three(3) days before the initial status hearing. The Court's standing orders on the Initial Status Report and Joint Jurisdictional Status Report may be obtained from Judge Der-Yeghiayan's web page or from this Court's Courtroom Deputy. Mailed notice by judge's staff. (srb) (Entered: 11/19/2007) |
| 11/15/2007 | 9 | ATTORNEY Appearance by Plaintiff Judy Williams. (mjc, ) (Entered: 11/19/2007) |
| 11/15/2007 | 10 | ATTORNEY Appearance for Plaintiff Judy Williams by Edward W Ciolko. (mjc, ) (Entered: 11/19/2007) |
| 11/28/2007 | 12 | CERTIFICATE of Service by Plaintiff Judy Williams *of Summons and Class Action Complaint on Defendant* (Ciolko, Edward) (Entered: 11/28/2007) |
| 12/06/2007 | 13 | ATTORNEY Appearance for Defendant Wells Fargo Bank, N.A. by David Zev Smith (Smith, David) (Entered: 12/06/2007) |
| 12/06/2007 | 14 | MOTION by Defendant Wells Fargo Bank, N.A. for extension of time to file answer *(AGREED)* (Smith, David) (Entered: 12/06/2007) |
| 12/06/2007 | 15 | NOTICE of Motion by David Zev Smith for presentment of motion for extension of time to file answer 14 before Honorable Samuel Der-Yeghiayan on 12/11/2007 at 09:00 AM. (Smith, David) (Entered: 12/06/2007) |

| | | |
|---|---|---|
| 12/11/2007 | 16 | MINUTE entry before Judge Samuel Der-Yeghiayan :Defendant's agreed motion for extension of time to respond to plaintiff's complaint is granted to and including 01/04/08. Initial status hearing reset to 01/16/08 at 9:00 a.m. Status hearing set for 01/09/08 is stricken. Mailed notice (mw, ) (Entered: 12/11/2007) |
| 12/13/2007 | 17 | APPLICATION for Leave to Appear Pro Hac Vice on behalf of Wells Fargo Bank, N.A. by Robert D. Phillips, Jr; Order entered granting leave by Judge Samuel Der-Yeghiayan. Filing fee $ 50 paid, receipt number 1115783. (mjc, ) (Entered: 12/18/2007) |
| 01/03/2008 | 18 | Defendant Wells Fargo Bank, N.A.'s Notice of Filing Copies of Its Motion to Transfer Before Judicial Panel on Multidistrict Litigation by Wells Fargo Bank, N.A. (Smith, David) (Entered: 01/03/2008) |
| 01/03/2008 | 19 | Notice of Motion of Wells Fargo Bank, N.A., to Transfer Actions for Consolidated and Coordinated Pretrial Proceedings Pursuant to 28 USC 1407 by Wells Fargo Bank, N.A. (Smith, David) (Entered: 01/03/2008) |
| 01/03/2008 | 20 | MOTION by Defendant Wells Fargo Bank, N.A. to transfer case *Under 28 U.S.C. 1407 to Transfer for Consolidated and Coordinated Pretrial Proceedings* (Smith, David) (Entered: 01/03/2008) |
| 01/03/2008 | 21 | Exhibit Volume In Support of Motion of Wells Fargo Bank, N.A. Under 28 USC 1407 to Transfer for Consolidated and Coordinated Pretrial Proceedings by Wells Fargo Bank, N.A. (Attachments: # 1 Exhibit a# 2 Exhibit B# 3 Exhibit C1# 4 Exhibit C2# 5 Exhibit C3# 6 Exhibit C4) (Smith, David) (Entered: 01/03/2008) |
| 01/03/2008 | 22 | MEMORANDUM *In Support of Motion of Wells Fargo, N.A. Under 28 U.S.C. 1407 to Transfer for Consolidated and Coordinated Pretrial Proceedings* (Smith, David) (Entered: 01/03/2008) |
| 01/03/2008 | 23 | ATTORNEY Appearance for Defendant Wells Fargo Bank, N.A. by David Zev Smith *Notice of Appearance of Robert D. Phillips Filed by David Zev Smith* (Smith, David) (Entered: 01/03/2008) |
| 01/03/2008 | 24 | Reasons Why Oral Argument Should Be Heard by Wells Fargo Bank, N.A. (Smith, David) (Entered: 01/03/2008) |
| 01/03/2008 | 25 | Corporate Disclosure STATEMENT by Wells Fargo Bank, N.A. (Smith, David) (Entered: 01/03/2008) |
| 01/03/2008 | 26 | CERTIFICATE of Service by Defendant Wells Fargo Bank, N.A. regarding MOTION by Defendant Wells Fargo Bank, N.A. to transfer case *Under 28 U.S.C. 1407 to Transfer for Consolidated and Coordinated Pretrial Proceedings* 20 , other 24 , memorandum in support of motion 22 , other 19 , attorney appearance 23 , statement 25 , other, 21 (Smith, David) (Entered: 01/03/2008) |
| 01/04/2008 | 27 | ANSWER to Complaint *(and Affirmative Defenses)* by Wells Fargo Bank, N.A.(Smith, David) (Entered: 01/04/2008) |
| 01/04/2008 | 28 | Local Rule 3.2 Corporate Disclosure STATEMENT by Wells Fargo |

| | | |
|---|---|---|
| | | Bank, N.A. (Smith, David) (Entered: 01/04/2008) |
| 01/10/2008 | 29 | STATUS Report *(INITIAL)* by Judy Williams, Wells Fargo Bank, N.A. (Smith, David) (Entered: 01/10/2008) |
| 01/11/2008 | 30 | STATUS Report *Joint Jurisdictional Status Report* by Judy Williams (Schneck, Steven) (Entered: 01/11/2008) |
| 01/16/2008 | 31 | MINUTE entry before Judge Samuel Der-Yeghiayan : Status hearing held and continued to 04/29/08 at 9:00 a.m. The MDL Panel having Defendant's motion to transfer, Defendant's motion to transfer case pending on this Court's docket 20 is hereby stricken as moot. The MDL Panel has advised this Court that it will take up Defendant's motion at its bimonthly meeting. Mailed notice (mw, ) (Entered: 01/16/2008) |
| 01/16/2008 | 32 | APPLICATION for Leave to Appear Pro Hac Vice on behalf of Judy Williams by Katherine B Bornstein; Order entered granting leave by Judge Samuel Der-Yeghiayan. Filing fee $ 50 paid, receipt number 10726662. (mjc, ) (Entered: 01/17/2008) |
| 01/16/2008 | 33 | APPLICATION for Leave to Appear Pro Hac Vice on behalf of Judy Williams by Joseph H Meltzer; Order entered granting leave by Judge Samuel Der-Yeghiayan. Filing fee $ 50 paid, receipt number 10726661. (mjc, ) (Entered: 01/17/2008) |
| 01/16/2008 | 34 | APPLICATION for Leave to Appear Pro Hac Vice on behalf of Judy Williams by Joseph A. Weeden; Order entered granting leave by Judge Samuel Der-Yeghiayan. Filing fee $ 50 paid, receipt number 10726659. (mjc, ) (Entered: 01/17/2008) |
| 01/16/2008 | 35 | APPLICATION for Leave to Appear Pro Hac Vice on behalf of Judy Williams by Edward W Ciolko; Order entered granting leave by Judge Samuel Der-Yeghiayan. Filing fee $ 50 paid, receipt number 1072660. (mjc, ) (Entered: 01/17/2008) |
| 03/19/2008 | 36 | MOTION by Plaintiff Judy Williams to dismiss *Pursuant to Fed. R. Civ. P. 41(a)(2)* (Attachments: # 1 Notice of Motion, # 2 Text of Proposed Order, # 3 Memorandum and Exhibits A-E, # 4 Certificate of Service) (Ciolko, Edward) (Entered: 03/19/2008) |
| 03/19/2008 | 37 | *Amended* NOTICE of Motion by Edward W Ciolko for presentment of motion to dismiss 36 before Honorable Samuel Der-Yeghiayan on 3/26/2008 at 09:00 AM. (Ciolko, Edward) (Entered: 03/19/2008) |
| 03/19/2008 | 38 | CERTIFICATE by Judy Williams of Service of Amended Notice of Motion *to Dismiss* (Ciolko, Edward) (Entered: 03/19/2008) |
| 03/19/2008 | 39 | CERTIFICATE by Judy Williams of Service *of Amended Notice of Motion, Plaintiff's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 41(a)(2), [Proposed] Order, and Memorandum of Law in Support of Plaintiff's Motion to Dismiss, with Exhibits* (Ciolko, Edward) (Entered: 03/19/2008) |
| 03/20/2008 | 40 | MEMORANDUM by Wells Fargo Bank, N.A. in Opposition to motion |

| | | |
|---|---|---|
| | | to dismiss 36 (Attachments: # 1 Exhibit A to WFB's Opposition to Plaintiff's Motion to Dismiss, # 2 Exhibit B to WFB's Opposition to Plaintiff's Motion to Dismiss)(Smith, David) (Entered: 03/20/2008) |
| 03/25/2008 | 41 | MINUTE entry before Judge Honorable Samuel Der-Yeghiayan: Plaintiff's motion to voluntarily dismiss pursuant to FRCP 41(a)(2) 36 and Defendant's memorandum in opposition 40 are taken under advisement. All dates previously set are to stand. Mailed notice (mw, ) (Entered: 03/25/2008) |
| 03/25/2008 | 42 | REPLY by Judy Williams to memorandum in opposition to motion, 40 , MOTION by Plaintiff Judy Williams to dismiss *Pursuant to Fed. R. Civ. P. 41(a)(2)* 36 *In Further Support of Plaintiff's Motion to Dismiss Pursuant to Fed.R.Civ.P. 41(a)(2)* (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Certificate of Service)(Ciolko, Edward) (Entered: 03/25/2008) |
| 04/10/2008 | 43 | CONDITIONAL TRANSFER ORDER from MDL Panel transferring case to (USDC Northern District of California.(kj, ) (Entered: 04/22/2008) |
| 04/22/2008 | 44 | TRANSFERRED to the USDC Northern District of California the transfer record. (kj, ) (Entered: 04/22/2008) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 04/29/2008 12:10:13 | | |
| **PACER Login:** | us4077 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:07-cv-06342 |
| **Billable Pages:** | 4 | **Cost:** | 0.32 |



**MICHAEL W. DOBBINS**
CLERK

# UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### 219 SOUTH DEARBORN STREET
### CHICAGO, ILLINOIS 60604

April 22, 2008

California Northern District Court
Phillip Burton United States
Courthouse, 16th Floor
450 Golden Gate Avenue
San Francisco, CA 94102-3434

RE: Williams v. Wells Fargo Bank, N.A.
Case No: 07-6342

Dear Clerk:

Pursuant to the order entered by the MDL Panel, on April 10, 2008, the above record

■    was electronically  transmitted to California Northern District Court

Please acknowledge receipt of any paper documents on the enclosed copy of this letter.

Sincerely yours,

Michael W. Dobbins, Clerk

By:      /s/ *Kinielle Johnson*
         Deputy Clerk

Enclosures

New Case No. _____     Date _____

cc:     Non-ECF Attorneys and Pro se Parties



**MICHAEL W. DOBBINS**
CLERK

# UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### 219 SOUTH DEARBORN STREET
### CHICAGO, ILLINOIS 60604

April 22, 2008

California Northern District Court
Phillip Burton United States
Courthouse, 16th Floor
450 Golden Gate Avenue
San Francisco, CA 94102-3434

RE: Williams v. Wells Fargo Bank, N.A.
Case No: 07-6342

Dear Clerk:

Pursuant to the order entered by the MDL Panel, on April 10, 2008, the above record

■    was electronically  transmitted to California Northern District Court

Please acknowledge receipt of any paper documents on the enclosed copy of this letter.

Sincerely yours,

Michael W. Dobbins, Clerk

By:     /s/ *Kinielle Johnson*
        Deputy Clerk

Enclosures

New Case No. _____     Date _____

cc:    Non-ECF Attorneys and Pro se Parties

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| JUDY WILLIAMS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A.<br><br>Defendant. | CASE NO.: 07-cv-6342<br><br><br>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS PURSUANT TO FED.R. CIV. P. 41(a)(2) |

### I. Introduction

For the reasons outlined herein, Plaintiff Judy Williams respectfully requests dismissal of this action, without prejudice. Fed. R. Civ. P. 41(a) governs the voluntary dismissal of actions by a plaintiff. Rule 41(a)(1)(A)(i) permits a unilateral voluntary dismissal by the plaintiff "before the opposing party serves either an answer or a motion for summary judgment." However, as Defendant Wells Fargo Bank, N.A. ("Wells Fargo") has served an answer in this action, Plaintiff seeks dismissal of this action pursuant to Rule 41(a)(2), which permits dismissal of an action at the plaintiff's request, pursuant to an order of the court. *See, e.g., Wojtas v. Capital Guardian Trust Co.*, 477 F.3d 924, 927 (7th Cir. 2007); *Chavez v. Ill. State Police*, 251 F.3d 612 , 654 (7th Cir. 2001).

Rule 41(a)(2) provides the court with broad discretion to grant the dismissal of this action at Plaintiff Williams' request. *See Tyco Laboratories, Inc. v. Koppers Co., Inc.*, 627 F.2d 54, 56 (7th Cir. 1980) ("The express language of the rule makes it clear

that the determination of whether to grant a motion for voluntary dismissal rests within the sound discretion of the district court"); *Pontenberg v. Boston Sci. Corp.*, 252 F.3d 1253 (11th Cir. 2001) ("The district court enjoys broad discretion in determining whether to allow a voluntary dismissal under Rule 41(a)(2)").

Further, a motion to dismiss pursuant to Fed. R. Civ. P. 41(a)(2) should be granted unless the defendant will suffer clear legal prejudice. *See United States of America v. OutBoard Marine Corp.,* 789 F.2d 497, 502 (7th Cir. 1986) (the Court abuses its discretion only when it can be established that the Defendant will suffer "plain legal prejudice" as a result of the dismissal of the Plaintiff's litigation). Even the mere prospect of subsequent litigation is insufficient for denial of a plaintiff's Rule 41(a)(2) motion. *See Pontenberg*, 252 F.3d 1253 (quoting *McCants v. Ford Motor Co., Inc.*, 781 F.2d 855, 856-57 (11th Cir. 1986) (court affirmed the district court's decision to dismiss the case without prejudice)); See also *In re Vale*, 180 B.R. 1017, 1023 (N.D. Ind. 1994).

## II. Background on the Williams Action

On November 8, 2007, Plaintiff Judy Williams filed this action (the "Williams Action") against Wells Fargo. The Williams Action alleges violations of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, the Equal Credit Opportunity Act, 15 U.S.C. § 1691, *et seq.*, and the Civil Rights Act, 42 U.S.C. §§ 1981, 1982 *et seq.* Specifically, Williams asserts that Wells Fargo has violated those statutes by, *inter alia*, having an established pattern and practice of discriminating against minority mortgage borrowers, including Williams and the putative class, on the basis of their race in the financing of residential home purchases by giving them mortgages with less favorable terms than it gave to similarly situated non-minority borrowers.

2

Williams, a resident of Chicago, filed her action in the Northern District of Illinois. Pursuant to 28 U.S.C. § 1391(b), venue was and is appropriate in the Northern District of Illinois because (a) Wells Fargo resides in this district and this division, (b) a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district and this division, and (c) a substantial part of property that is the subject of this action is situated in this district and this division.

On January 3, 2008, Wells Fargo filed a motion before the Judicial Panel on Multidistrict Litigation (the "MDL Motion") requesting transfer for consolidation and coordination of similar putative class actions pending in federal district courts against Wells Fargo to a single transferee district. Wells Fargo filed an answer to the Plaintiff Williams' complaint on January 4, 2008. Subsequently, the parties to the Williams action appeared before the Court for a status conference on January 16, 2008. At the status conference, the Court, in light of Defendant's MDL Motion, ordered that the parties return on April 29, 2008 (or possibly later, if the Panel has not yet issued its ruling).

## III. Similar Actions are Pending in California

Wells Fargo's MDL Motion is currently pending. In short, at least five federal class action lawsuits challenging Wells Fargo's alleged discriminatory lending practices are pending in three federal district courts. In addition to the Williams action, three cases were pending at the time Wells Fargo filed its MDL Motion, listed in order of filing:

1. *Jeffries v. Wells Fargo Bank N.A.*, No. 07cv3880 (N.D. Cal. 2007);

2. *Ventura v. Wells Fargo Bank, N.A.*, No. 07cv4309 (N.D. Cal. 2007); and

3. *Rodriguez v. Wells Fargo Bank, N.A.*, No. 07cv6780 (C.D. Cal. 2007).

Subsequent to the filing of the MDL Motion, a fifth case, *Brown v. Wells Fargo Bank, N.A.*, No. 08-cv0492 was filed against Wells Fargo in the Northern District of

California, alleging the same discriminatory lending practices, along with an administrative motion to relate the case to *Jeffries* and *Ventura*.

The cases each challenge Wells Fargo's mortgage pricing policies and procedures that result in minorities receiving home loans with higher fees, rates and costs than similarly situated non-minority borrowers. The cases are each national in scope and are brought on behalf of overlapping classes.

On January 8, 2008, Judge Martin J. Jenkins of the Northern District of California entered a pre-trial order consolidating *Jeffries* and *Ventura*. Further, Judge Jenkins appointed two firms to serve as Co-Lead and Liaison Interim Class Counsel, as further described in the order, a copy of which is attached hereto as Exhibit A.

On February 15, 2008, *Jeffries* and *Ventura* were reassigned from United States District Court Judges Martin J. Jenkins to United States District Court Judge Maxine M. Chesney. *Jeffries* was assigned new case number C 07-03880 MMC and *Ventura* was assigned new case number C 07-04309 MMC. On February 21, 2008, *Brown* was ordered related to *Jeffries* and *Ventura* and was reassigned from United States District Court Judges Jeffrey S. White to Judge Chesney. *See* Exhibit B attached hereto.

On reassignment, the then-scheduled second Case Management Conference in the *Jeffries* and *Ventura* actions was vacated.[1] Thereafter, on February 21 and 25, 2008, Judge Chesney issued Orders scheduling a joint Case Management Conference in the *Jeffries*, *Ventura* and *Brown* actions, on May 2, 2008, at 10:30 a.m. *See* Exhibits C, D and E attached hereto.

---

[1] Pursuant to Judge Jenkins' Pretrial Order on Case Management, a continued Case Management Conference in *Jeffries* and *Ventura* was to be held before Judge Jenkins on February 26, 2008.

4

With respect to the consolidated actions before Judge Chesney, a pretrial schedule is in place, the court has appointed co-lead counsel for plaintiffs, protective orders for the orderly advancement of discovery have been entered and comprehensive discovery requests have been served and are outstanding.

Thus, the three similar actions in the Northern District of California are currently in a more advanced stage of litigation than the Williams action.

## IV. Plaintiff Williams' Claims Will be Effectively Litigated in the Northern District of California

Plaintiff Judy Williams, through counsel, has met and conferred with the Co-Lead and Interim Class Counsel appointed by Judge Jenkins and pursuant to such good faith consultations, in the interests of the putative class and the efficient and expeditious prosecution of the putative class' claims, Plaintiff Williams, through counsel, has agreed that the most appropriate venue for this action at this time is the Northern District of California. In furtherance of the effective and zealous prosecution of this case, Plaintiff Williams, as a named plaintiff, and her undersigned counsel have agreed to labor amicably with the Co-Lead and Interim Class Counsel appointed by Judge Jenkins.

Further, the Northern District of California is unarguably an appropriate forum for the effective litigation of the claims of Plaintiff Williams and putative class. First, Wells Fargo issues more home loans to consumers in the State of California than in any other state. Second, Wells Fargo is headquartered in San Francisco. Plaintiff Williams believes that the "discretionary pricing policies" that resulted in minorities paying higher fees and interest rates on their home loans emanated from Wells Fargo's corporate San Francisco headquarters -- therefore relevant documentation and witnesses will likely be situated there, as well as in Chicago, Illinois. Plaintiff believes that it is Wells Fargo non-

5

delegable duty to ensure that its mortgage financing structure and policies do not have a disparate impact on legally protected minority groups—regardless of where they or any of its lending subsidiaries are located.

Lastly, the dismissal of this action will, essentially, moot the pending MDL Motion and, accordingly, conserve the resources of the MDL Panel. As this Court was awaiting the MDL Panel's decision before setting any schedule for the prosecution of the instant action, Defendant will suffer no prejudice by dismissal and the Court will not have expended significant resources in overseeing the litigation.

Accordingly, Plaintiff Williams believes that consenting to the litigation of her claims in the Northern District of California will expedite resolution of her and the proposed class' claims, conserve judicial resources, serve the convenience of both parties and reduce the risk of inconsistent pretrial rulings.

Thus, Plaintiff Williams' interests, at this time given the events that have transpired since the filing of the instant complaint, will be served—and her claims both effectively and more efficiently litigated—in the district where Wells Fargo is headquartered.

## V. Wells Fargo Will Not Be Prejudiced by the Dismissal of this Action

As described herein, at least four similar actions are pending against Wells Fargo, three of which have already been consolidated in the Northern District of California. Regardless of whether this action proceeds, Wells Fargo must defend the claims alleged herein. As: (a) Wells Fargo is headquartered in the Northern District of California; (b) the claims alleged herein allege conduct that emanated, in part, from Wells Fargo's San Francisco headquarters; and (c) the consolidated actions in California are currently

further advanced than this action, Wells Fargo will suffer no harm by the dismissal of this action. If anything, Wells Fargo will benefit by being able to litigate these claims in a more convenient forum vis-à-vis its national headquarters.

Further, Wells Fargo has accrued minimal expense with respect to this action. In *Tyco*, even where discovery had been taken and class certification had briefed, the Seventh Circuit held that, because the discovery pursued in the case had not been overly extensive, the amount of discovery which had taken place during the litigation did not render a voluntary dismissal of the litigation impermissibly prejudicial to the defendant. *See Tyco Laboratories, Inc.*, 627 F.2d at 56. In the *Williams* action, to date, no discovery requests have been served and no issues have been briefed. The parties have simply attended one status conference, where the Court essentially delayed further litigation of this action, pending the resolution of Wells Fargo's MDL Motion.

## VI. Conclusion

For the foregoing reasons, Plaintiff Williams respectfully submits that her action be dismissed, without prejudice.

Dated: March 19, 2008          Respectfully submitted,

               **SCHIFFRIN BARROWAY**
               **TOPAZ & KESSLER, LLP**


               */s/ Edward W. Ciolko*
               Joseph H. Meltzer
               Edward W. Ciolko
               Katherine B. Bornstein
               Joseph A. Weeden
               280 King of Prussia Road
               Radnor, Pennsylvania 19087
               Telephone: (610) 667-7706
               Facsimile: (610) 667-7056

**ROBERT D. ALLISON &
ASSOCIATES**
Robert D. Allison, I.D. #36749
Bruce C. Howard
Steven P. Schneck
122 S. Michigan Ave., Suite 1850
Chicago, IL 60603
Telephone: (312) 427-7600
Facsimile: (312) 427-1850

*Attorneys for Judy Williams*

**EXHIBIT A**

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
Andrew S. Friedman (*Pro Hac Vice*)
Wendy J. Harrison (CA SBN 151090)
2901 North Central Avenue, Suite 1000
Phoenix, Arizona 85012
Telephone: (602) 274-1100

CHAVEZ & GERTLER, L.L.P.
Mark A. Chavez (CA SBN 90858)
42 Miller Avenue
Mill Valley, California 94941
(415) 381-5599

RODDY KLEIN & RYAN
Gary Klein (*Pro Hac Vice*)
Shennan Kavanagh (*Pro Hac Vice*)
727 Atlantic Avenue
Boston, MA 02111-2810
Telephone: 617/357-5500

COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
Shawn A. Williams
100 Pine Street Suite 2600
San Francisco, CA 94111
Telephone: 415/288-4545

COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
Samuel H. Rudman (*Pro Hac Vice*)
Robert M. Rothman (*Pro Hac Vice*)
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: WELLS FARGO RESIDENTIAL MORTGAGE LENDING DISCRIMINATION LITIGATION | [PROPOSED] PRE-TRIAL ORDER NO. 1 |
| | Honorable Martin J. Jenkins |
| | Date Action Filed: July 30, 2007 |
| This document relates to: | |
| ALL ACTIONS | Lead Case No: C 07-03880 MJJ |
| | Related Case No: C 07-04309 MJJ |

In order to promote the just, expeditious and cost-effective resolution of this litigation, IT IS HEREBY ORDERED as follows:

I.      RULE 42 CONSOLIDATION, MASTER FILE AND MASTER DOCKET

A.      Pursuant to Federal Rule of Civil Procedure 42(a), the Clerk of Court shall consolidate the action *Jeffries et al. v. Wells Fargo Bank N.A. et al.,* C 07-03880 MJJ, and Related Case *Ventura et al. v. Wells Fargo Bank N.A.*, C 07-04309 MJJ for pretrial proceedings (the "Consolidated Actions").

B.      The *Jeffries* action, C 07-03880 MJJ, as the first filed action, is the lead case and will now be referred to as "In Re Wells Fargo Residential Mortgage Lending Discrimination Litigation."

C.      Pursuant to LR 3-4(b), when a pleading or other captioned document is filed which is intended to be applicable to all these Consolidated Actions, the paper shall be filed with a caption denoting the new title caption, further denoting the lead case number (C 07-03880 MJJ) above all consolidated case numbers, and indicating that it is applicable to "All Actions." Duplicate originals need not be submitted for associated cases.

D.      When such a pleading or other paper is filed stating that it is applicable to "All Actions," the Clerk of Court ("Clerk") is directed to file such pleading or paper in C 07-03880 MJJ as the Master File, and enter such filing in the docket for C 07-03880 MJJ as the Master Docket.

E.      An original of this Order and every subsequent Order shall be filed by the Clerk in the Master File and entered upon the Master Docket.

F.      When a pleading or other captioned document is intended to be applicable only to one or more, but fewer than all, of these Consolidated Actions, the paper shall be filed with a caption indicating the actions which it is applicable to through use of the last name of the first-named plaintiff in that action and that action's case-specific number, and with an additional duplicate original for each of the individual actions so identified.

G.      When such a pleading or other paper is filed stating that it is applicable to fewer than all of these Consolidated Actions, the Clerk is directed to file such pleading or paper in the docket(s) for such action(s). The Clerk shall also note on the Master Docket those actions to which the document relates.

II.     APPOINTMENT AND ORGANIZATION OF PLAINTIFFS' CO-LEAD AND LIAISON INTERIM CLASS COUNSEL

A.      The organizational structure of Plaintiffs' counsel established under paragraph III.B. hereof shall apply to all such Plaintiffs' counsel in all of these Consolidated Actions, and including subsequently filed actions.

B.      Pursuant to Federal Rule of Civil Procedure 23(g), the following counsel are designated to act on behalf of Plaintiffs and the Class in these Consolidated Actions and all subsequently filed actions unless otherwise ordered by the Court ("Co-Lead and Liaison Interim Class Counsel"):

4

1.   BONNETT FAIRBOURN FRIEDMAN & BALINT, P.C.
     ANDREW S. FRIEDMAN
     2901 N. Central Avenue
     Suite 1000
     Phoenix, AZ  85012
     Telephone:  602/274-1100

     *Co-Lead Interim Class Counsel*

2.   RODDY KLEIN & RYAN
     GARY KLEIN
     727 Atlantic Avenue
     Boston, MA  02111-2810
     Telephone:  617/357-5500

     *Co-Lead Interim Class Counsel*

3.   Coughlin Stoia Geller Rudman & Robbins LLP
     SHAWN A. WILLIAMS
     100 Pine Street Suite 2600
     San Francisco, CA 94111
     Telephone:  415/288-4545

     Coughlin Stoia Geller Rudman & Robbins LLP
     SAMUEL H.  RUDMAN
     ROBERT M. ROTHMAN
     58 South Service Road
     Suite 200
     Melville, NY 11747
     Telephone:  631/367-7100

     *Liaison Interim Class Counsel*

     C.   Co-Lead and Liaison Interim Class Counsel are directed to mail a

copy of this Order to all counsel of record in each of these consolidation actions.

     D.   Co-Lead and Liaison Interim Class Counsel are expected to maintain

communications and promote harmonious dealings among all Plaintiffs' counsel.

Co-Lead and Liaison Interim Class Counsel shall provide general supervision of the activities of Plaintiffs' counsel and shall have the following responsibilities and duties to perform or delegate as appropriate:

      1.      to brief and argue motions;

      2.      to initiate and conduct discovery, including, without limitation, coordination of discovery with Defendants' counsel, the preparation of written interrogatories, requests for admissions and requests for production of documents;

      3.      to direct and coordinate the examination of witnesses in depositions;

      4.      to act as spokesperson at pretrial conferences;

      5.      to call and chair meetings of counsel as appropriate or necessary from time to time;

      6.      to initiate and conduct any settlement negotiations with counsel for Defendants;

      7.      to provide general coordination of the activities of Plaintiffs' counsel and to delegate work responsibilities to selected counsel as may be required in such a manner as to lead to the orderly and efficient prosecution of this litigation and to avoid duplication or unproductive effort;

      8.      to consult with and employ experts;

      9.    to receive and review periodic time reports of all attorneys on behalf of Plaintiffs and to determine if the time is being spent appropriately and for the benefit of Plaintiffs; and

      10.    to perform such other duties as may be expressly authorized by further order of this Court.

    E.    Defendants' counsel may rely upon all agreements made with Plaintiffs' Co-Lead and Liaison Interim Class Counsel and such agreements shall be binding on Plaintiffs and Plaintiffs' counsel in these Consolidated Actions and any subsequent related actions.

## III.    <u>LATER FILED CASES IN THIS COURT</u>

    A.    When a case that relates to the same subject matter as these actions is hereafter filed in this Court or transferred here from another court, the Clerk of this Court shall:

      1.    File a copy of this Order in the separate file for such action.

      2.    Mail a copy of the Order of assignment to counsel for plaintiffs and counsel for each defendant in the actions consolidated herewith.

      3.    Make an appropriate entry in the Master Docket.

      4.    Mail to the attorneys for the plaintiff(s) in the newly filed or transferred case a copy of this Order.

5.     Upon the first appearance of any new defendant(s) mail to the attorneys for the defendant(s) in such newly filed or transferred case a copy of this Order.

B.     Counsel for plaintiffs and defendants in the consolidated actions shall cooperate in calling to the attention of the Clerk any newly filed or transferred case.

IV.     <u>APPLICATION OF THIS ORDER TO SUBSEQUENT ACTIONS</u>

A.     This Order shall apply to each case alleging claims similar to those set forth in these consolidated actions, which is filed in or transferred to this Court after the date of this Order, unless a party objecting to the consolidation of that case or to any other provision of this Order serves an application for relief from this Order or from any of its provisions within ten (10) days after the date on which the Clerk mails a copy of this Order to counsel for that party.

B.     Because additional cases may be consolidated with these Consolidated Actions in this Court, this Court will issue orders to the extent practicable calling for such matters to proceed in a manner consistent with the schedule in these Consolidated Actions.

C.     All future plaintiffs' counsel consolidated in this action must be authorized in advance by Co-Lead and Liaison Interim Class Counsel to assume

responsibilities related to those of the firms designated above as Co-Lead and Liaison Interim Class Counsel.

## V.     PRESERVATION OF EVIDENCE

A.     The Court reminds the parties of their duty to preserve evidence that may be relevant to these Consolidated Actions.

B.     This duty extends to documents, data and tangible things (to be interpreted broadly) in the possession, custody and control of the parties to this action, and the employees, agents, contractors or other non-parties who possess materials reasonably anticipated to be subject to discovery in these consolidated actions.  Counsel are under an obligation to exercise efforts to identify and notify such non-parties, including employees.

C.     Preservation of evidence is to be interpreted broadly to accomplish the goal of maintaining the integrity of all documents, data and tangible things reasonably anticipated to be subject to discovery in these Consolidated Actions.

D.     Counsel are directed to inquire of their respective clients if the business practices of any party involve the routine destruction, recycling, relocation or mutation of such materials and, if so, direct the party, to the extent practicable for the pendency of this order, either to (1) halt such business processes; (2) sequester or remove such material from the business process; or (3)

arrange for the preservation of complete and accurate duplicates or copies of such material, suitable for later discovery if requested.

      E.    The most senior lawyer or lead trial counsel representing Defendant and a representative for Co-Lead and Liaison Interim Class Counsel shall, not later than _____, 2008, submit to the Court under seal and pursuant to Federal Rule of Civil Procedure 11, a statement that the directive in paragraph IV(D) above, has been carried out.

VI.    <u>MISCELLANEOUS</u>

      A.    Counsel for all parties are directed to cooperate with one another, whenever possible, to promote the expeditious handling of pretrial proceedings in these Consolidated Actions.

      B.    All subsequent pretrial orders issued in these Consolidated Actions shall be numbered consecutively.  Any reference to an Order of this Court in any document filed with the Court shall include the proper number of the Order.

      C.    This Order may be amended by the Court on its own motion, and any party may apply at any time to this Court for a modification or exception to this Order.

      D.    Service of any pleading, motion or other paper shall be made by hand delivery, facsimile, overnight delivery or by United States mail to counsel for Defendant and to the firms appointed as Co-Lead and Liaison Interim Class

Counsel, as well as by e-mail to the designated e-mail distribution lists submitted by each party, as updated.

E.    All Plaintiffs' counsel in these Consolidated Actions and counsel of any future matter consolidated with this case shall submit a record of the time expended on these matters on a monthly basis in a manner prescribed by Co-Lead and Liaison Interim Class Counsel.

IT IS SO ORDERED.

DATED:  ___January 8_____, 2008.

_____
MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE

**EXHIBIT B**

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

### RELATED CASE ORDER

An Administrative Motion has been filed, stating that the following cases may be related within the meaning of Civil L.R. 3-12:

| | |
|---|---|
| C 07-3880 MMC | **Jeffries, et al. v. Wells Fargo Bank, N.A., et al.** |
| C 07-4309 MMC | **Ventura, et al. v. Wells Fargo Bank** |
| C 08-0492 JSW | **Brown v. Wells Fargo Bank, N.A.** |

### ORDER

On the basis of the material submitted to the Court, as the Judge assigned to the earliest filed case, I find that the cases:

[  ] **ARE NOT RELATED** as defined by Civil L.R. 3-12(a).

[ X ] **ARE RELATED** as defined by Civil L.R. 3-12(a). Counsel are instructed that all future filings in <u>Brown v. Wells Fargo Bank, N.A.</u> are to bear the initials **MMC** immediately after the case number. Any case management conference in the reassigned case will be rescheduled by the Court. Any dates for hearing noticed motions are vacated and must be re-noticed by the moving party before the undersigned; any deadlines set by the ADR Local Rules remain in effect; and any deadlines established in a case management order continue to govern, except dates for any appearance in court, which will be rescheduled by the undersigned.

**DATED:** February 21, 2008

MAXINE M. CHESNEY
United States District Judge

.

**<u>EXHIBIT C</u>**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| NANCY JEFFRIES, et al., | ) | |
| | ) | |
| | ) | |
| Plaintiff(s), | ) | NO.  C-07-3880  MMC |
| | ) | |
| vs. | ) | |
| | ) | **CASE MANAGEMENT** |
| WELLS FARGO BANK, et al., | ) | **CONFERENCE ORDER** |
| | ) | |
| Defendant(s), | ) | |
| | ) | |

**IT IS HEREBY ORDERED** that, pursuant to Rule 16(b), Federal Rules of Civil Procedure, and Civil L.R. 16-2, a Case Management Conference will be held in this case before the Honorable Maxine M. Chesney on ___Friday, May 2, 2008_____ at 10:30 a.m. in Courtroom No. 7, 19th floor Federal Building.

Plaintiff(s) shall serve copies of this Order and the Court's Standing Orders at once on all parties to this action, and on any parties subsequently joined, in accordance with the provisions of Fed. R. Civ. P. 4 and 5.  Following service, plaintiff(s) shall file a certificate of service with the Clerk of this Court.

Counsel are directed to confer in advance of the Case Management Conference with respect to all of the agenda items listed in the *Standing Order for All Judges of the Northern District of California/Contents of Joint Case Management Statement.* Not less than seven days before the conference, counsel shall file a joint case management statement addressing each agenda item.  Failure to file a joint statement shall be accompanied by a signed declaration setting forth the grounds for such failure.

Each party shall be represented at the Case Management Conference by counsel prepared to address all of the matters referred to in this Order, and with authority to enter stipulations and make admissions pursuant to this Order.

Any request to reschedule the above dates shall be made in writing, and, if

possible, by stipulation. Unless impracticable, such request shall be made not less than ten days before the conference date.  Good cause must be shown.

Failure to comply with this Order or the Local Rules of this Court may result in sanctions.  See Fed.R.Civ.P. 16(f); Civil L.R. 1-4.

IT IS SO ORDERED.

Dated:  February 27, 2007.

MAXINE M. CHESNEY
United States District Judge

**EXHIBIT D**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| GILBERT VENTURA, SR., et al., | ) | |
| | ) | |
| | ) | |
| Plaintiff(s), | ) | NO.  C-07-4309  MMC |
| | ) | |
| vs. | ) | |
| | ) | CASE MANAGEMENT |
| WELLS FARGO BANK, | ) | CONFERENCE ORDER |
| | ) | |
| Defendant(s), | ) | |
| | ) | |

IT IS HEREBY ORDERED that, pursuant to Rule 16(b), Federal Rules of Civil Procedure, and Civil L.R. 16-2, a Case Management Conference will be held in this case before the Honorable Maxine M. Chesney on   Friday, May 2, 2008          at 10:30 a.m. in Courtroom No. 7, 19th floor Federal Building.

Plaintiff(s) shall serve copies of this Order and the Court's Standing Orders at once on all parties to this action, and on any parties subsequently joined, in accordance with the provisions of Fed.R.Civ.P. 4 and 5.   Following service, plaintiff(s) shall file a certificate of service with the Clerk of this Court.

Counsel are directed to confer in advance of the Case Management Conference with respect to all of the agenda items listed in the *Standing Order for All Judges of the Northern District of California/Contents of Joint Case Management Statement*. Not less than seven days before the conference, counsel shall file a joint case management statement addressing each agenda item.  Failure to file a joint statement shall be accompanied by a signed declaration setting forth the grounds for such failure.

Each party shall be represented at the Case Management Conference by counsel prepared to address all of the matters referred to in this Order, and with authority to enter stipulations and make admissions pursuant to this Order.

Any request to reschedule the above dates shall be made in writing, and, if

possible, by stipulation. Unless impracticable, such request shall be made not less than ten days before the conference date.  Good cause must be shown.

      Failure to comply with this Order or the Local Rules of this Court may result in sanctions.  <u>See</u> Fed.R.Civ.P. 16(f); Civil L.R. 1-4.

      IT IS SO ORDERED.

Dated:   February 27, 2007.

**MAXINE M. CHESNEY**
**United States District Judge**

**EXHIBIT E**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RUBY KATHRYN BROWN, | ) | |
| | ) | |
| | ) | |
| Plaintiff(s), | ) | NO.  C-08-0492   MMC |
| | ) | |
| vs. | ) | |
| | ) | **CASE MANAGEMENT** |
| WELLS FARGO BANK, N.A., | ) | **CONFERENCE ORDER** |
| | ) | |
| Defendant(s), | ) | |
| | ) | |

IT IS HEREBY ORDERED that, pursuant to Rule 16(b), Federal Rules of Civil Procedure, and Civil L.R. 16-2, a Case Management Conference will be held in this case before the Honorable Maxine M. Chesney on ___Friday, May 2, 2008___ at 10:30 a.m. in Courtroom No. 7, 19th floor Federal Building.

Plaintiff(s) shall serve copies of this Order and the Court's Standing Orders at once on all parties to this action, and on any parties subsequently joined, in accordance with the provisions of Fed.R.Civ.P. 4 and 5.   Following service, plaintiff(s) shall file a certificate of service with the Clerk of this Court.

Counsel are directed to confer in advance of the Case Management Conference with respect to all of the agenda items listed in the *Standing Order for All Judges of the Northern District of California/Contents of Joint Case Management Statement*. Not less than seven days before the conference, counsel shall file a joint case management statement addressing each agenda item.  Failure to file a joint statement shall be accompanied by a signed declaration setting forth the grounds for such failure.

Each party shall be represented at the Case Management Conference by counsel prepared to address all of the matters referred to in this Order, and with authority to enter stipulations and make admissions pursuant to this Order.

Any request to reschedule the above dates shall be made in writing, and, if

possible, by stipulation. Unless impracticable, such request shall be made not less than ten days before the conference date. Good cause must be shown.

Failure to comply with this Order or the Local Rules of this Court may result in sanctions. See Fed.R.Civ.P. 16(f); Civil L.R. 1-4.

IT IS SO ORDERED.

Dated: February 27, 2007.

MAXINE M. CHESNEY
United States District Judge

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 3.0**
**Eastern Division**

Judy Williams

                                Plaintiff,

v.                                                          Case No.: 1:07−cv−06342
                                                            Honorable Samuel Der−Yeghiayan

Wells Fargo Bank, N.A.

                                Defendant.
_____

**NOTIFICATION OF DOCKET ENTRY**

This docket entry was made by the Clerk on Tuesday, December 11, 2007:

        MINUTE entry before Judge Samuel Der−Yeghiayan :Defendant's agreed motion
for extension of time to respond to plaintiff's complaint is granted to and including
01/04/08. Initial status hearing reset to 01/16/08 at 9:00 a.m. Status hearing set for
01/09/08 is stricken. Mailed notice (mw, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of
Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was
generated by CM/ECF, the automated docketing system used to maintain the civil and
criminal dockets of this District. If a minute order or other document is enclosed, please
refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our
web site at ***www.ilnd.uscourts.gov***.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUDY WILLIAMS, individually and on behalf of )
all others similarly situated,                )
                                              )
                                              )
                        Plaintiffs,            )    No. 07 CV 6342
                                              )    Judge Der-Yeghiayan
            v.                                )    Magistrate Judge Valdez
                                              )
WELLS FARGO BANK, N.A.,                        )
                                              )
                        Defendant.             )

**AGREED MOTION TO EXTEND TIME FOR DEFENDANT
TO ANSWER OR OTHERWISE PLEAD**

Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), by its undersigned counsel, and

pursuant to Federal Rule of Civil Procedure 6(b), respectfully requests that this Court extend the

time in which Wells Fargo must answer or otherwise respond to the class action Complaint filed

by Plaintiff Judy Williams ("Williams").  In support of this Motion, Wells Fargo states as

follows:

1.      On November 8, 2007, Williams filed her Complaint against Wells Fargo in the United

States District Court for the Northern District of Illinois.

2.      On November 19, 2007, Wells Fargo was served with the Summons and Complaint.

3.      Pursuant to Federal Rule of Civil Procedure 12(a)(1)(A), Wells Fargo must answer or

otherwise plead within 20 days following service of the summons; thus, Wells Fargo's

responsive pleading is due on December 10, 2007.

4.      Wells Fargo requests an additional 25 days, to and including January 4, 2008, in which to

file its responsive pleading to the Complaint.

5.      Counsel for Williams has agreed to Wells Fargo's request for an extension.

WHEREFORE, Wells Fargo respectfully requests that this Court grant this motion and enter an order allowing Wells Fargo to file its answer or otherwise respond to the Complaint on or before January 4, 2008, and grant such other relief as is just and appropriate in the circumstances.

Dated:  December 6, 2007

Respectfully submitted,

WELLS FARGO BANK, N.A.,
*Defendant*

By: /s/    David Z. Smith
One of Its Attorneys

David Z. Smith (ARDC  No. 6256687)
REED SMITH LLP
10 S. Wacker Drive, 40th Floor
Chicago, IL 60606-7507
(312) 207-1000
(312) 207-6400 fax
dzsmith@reedsmith.com

2125522

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| JUDY WILLIAMS, individually and on behalf of all others similarly situated, | CASE NO.: 07-cv-6342 |
| Plaintiff, | |
| v. | **PLAINTIFF'S MOTION TO DISMISS PURSUANT TO FED.R. CIV. P. 41(a)(2)** |
| WELLS FARGO BANK, N.A. | |
| Defendant. | |

For the reasons set forth in the attached memorandum, Plaintiff Judy Williams hereby moves the Court, pursuant to Fed. R. Civ. P. 41(a)(2), for an order granting Plaintiff's request to voluntarily dismiss this action without prejudice.

Dated: March 19, 2008

Respectfully submitted,

**SCHIFFRIN BARROWAY
TOPAZ & KESSLER, LLP**

_____/s/ Edward W. Ciolko_____
Joseph H. Meltzer
Edward W. Ciolko
Katherine B. Bornstein
Joseph A. Weeden
280 King of Prussia Road
Radnor, Pennsylvania 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

**ROBERT D. ALLISON &
ASSOCIATES**
Robert D. Allison, I.D. #36749
Bruce C. Howard
Steven P. Schneck
122 S. Michigan Ave., Suite 1850
Chicago, IL 60603
Telephone: (312) 427-7600
Facsimile: (312) 427-1850

*Attorneys for Judy Williams*

**EXHIBIT C**

CHAMBERS

MJJ

C 07 3880

```
 1   LERACH COUGHLIN STOIA GELLER
       RUDMAN & ROBBINS LLP
 2   SHAWN A. WILLIAMS (213113)
     100 Pine Street, 26th Floor
 3   San Francisco, CA  94111
     Telephone:  415/288-4545
 4   415/288-4534 (fax)
     shawnw@lerachlaw.com
 5
     LERACH COUGHLIN STOIA GELLER
 6     RUDMAN & ROBBINS LLP
     SAMUEL H. RUDMAN
 7   ROBERT M. ROTHMAN
     MARK S. REICH
 8   58 South Service Road, Suite 200
     Melville, NY  11747
 9   Telephone:  631/367-7100
     631/367-1173 (Fax)
10   srudman@lerachlaw.com
     rrothman@lerachlaw.com
11   mreich@lerachlaw.com

12   Attorneys for Plaintiffs

13   [Additional counsel appear on signature page.]

14
                  UNITED STATES DISTRICT COURT
15
                NORTHERN DISTRICT OF CALIFORNIA
16

17   NANCY and JOHNNY JEFFRIES on Behalf  )   Case No.
     of Themselves and All Others Similarly  )
18   Situated,                             )   CLASS ACTION COMPLAINT
                                           )
19                          Plaintiffs,    )
                                           )
20         vs.                             )
                                           )
21   WELLS FARGO BANK, N.A., and           )
     MORTGAGE DIRECT, INC.                 )
22                                         )
                          Defendants.      )
23                                         )

24

25

26

27

28
```

1     Plaintiffs, Nancy and Johnny Jeffries ("Plaintiffs"), on behalf of themselves and all others

2     similarly situated, by their undersigned attorneys, allege as follows:

3     1.     This is a class action brought by Plaintiffs, on behalf of themselves and other

4     similarly situated black homeowners, against Wells Fargo Bank, N.A., ("Wells Fargo") and

5     Mortgage Direct, Inc. ("Mortgage Direct") (collectively "Defendants"), under the Equal Credit

6     Opportunity Act, 15 U.S.C. §1691, *et seq.* ("ECOA") and the Fair Housing Act, 42 U.S.C. §3601 *et*

7     *seq.* ("FHA"). Plaintiffs seek remedies for themselves and the Class (defined in ¶¶9-17, below) for

8     the impact or effect of Defendants' discriminatory home financing policies and practices.

9     2.     As alleged below, Defendants have established a specific, identifiable and uniform

10     credit pricing system, a component of which authorizes an unchecked, subjective surcharge of

11     additional points and fees to an otherwise objective risk-based financing rate (the "Discretionary

12     Pricing Policy"). Meaning, after Defendants decide on an acceptable finance rate as determined by

13     objective criteria (*e.g.*, the individual's credit history, credit score, debt-to-income ratio and loan-to-

14     value ratios), Defendants' credit pricing policy authorizes additional discretionary financing charges

15     and interest mark-ups. These subjective, additional finance charges, in violation of the ECOA and

16     the FHA, have a widespread discriminatory impact on black applicants for home mortgage loans.

17     3.     Defendants established policies for access to their loan products in a manner which

18     subjects black applicants to a greater likelihood of assessments of discretionary points, fees and

19     interest mark-ups. These costs significantly increase the average cost of a mortgage loan made by

20     Defendants to black applicants.

21     4.     Plaintiffs seek declaratory and injunctive relief, disgorgement and restitution of

22     monies disparately obtained from black borrowers.

23     **JURISDICTION AND VENUE**

24     5.     Plaintiffs invoke the jurisdiction of this Court pursuant to 28 U.S.C. §1331, which

25     confers original jurisdiction upon this Court in a civil action arising under federal law. Venue is

26     proper in this Court pursuant to 28 U.S.C. 1391(b) inasmuch as the unlawful discriminatory practice

27     is alleged to have been committed in this District, Defendants regularly conduct business in this

28     District, and defendant Wells Fargo, N.A. maintains its principal place of business in this District.

**PARTIES**

6.     Plaintiffs, Nancy and Johnny Jeffries, are black homeowners who reside at 1409 S. Avers Avenue, Chicago, IL 60623.

7.     Defendant Wells Fargo Bank, N.A. is a mortgage lender with a principal place of business at 420 Montgomery Street, San Francisco, CA 94104.

8.     Defendant, Mortgage Direct, Inc. ("Mortgage Direct") is a mortgage broker with a principal place of business at 360 W. Butterfield Road, Suite 230, Elmhurst, IL 60126.

**CLASS ALLEGATIONS**

9.     Plaintiffs repeat and re-allege each and every allegation above as if set forth herein in full.

10.     This class action is brought pursuant to the ECOA and the FHA by the individual named Plaintiffs on behalf of themselves and all black consumers (the "Class") who obtained a Wells Fargo home mortgage loan in the United States between January 1, 2001 and the date of judgment in this action (the "Class Period") and who were subject to Wells Fargo's Discretionary Pricing Policy pursuant to which they paid discretionary points, fees or interest mark-ups in connection with their loan.

11.     Plaintiffs sue on their own behalf and on behalf of a Class of persons under Rules 23(a) and (b)(2) and (b)(3) of the Federal Rules of Civil Procedure. The phrase "Discretionary Pricing Policy" refers to Wells Fargo's policy of authorizing its network of mortgage brokers to impose subjective, discretionary charges and interest mark-ups as part of the finance charges for the loans they originate.

12.     Plaintiffs do not know the exact size or identities of the proposed Class, since such information is in the exclusive control of Defendants. Plaintiffs believe that the Class encompasses many thousands or tens of thousands of individuals who are geographically dispersed throughout the United States. Therefore, the proposed Class is so numerous that joinder of all members is impracticable.

13.     All members of the Class have been subject to and negatively affected by the same Discretionary Pricing Policy. There are questions of law and fact that are common to the Class, and

CLASS ACTION COMPLAINT -

1   predominate over any questions affecting only individual members of the Class. These questions

2   include, but are not limited to, the following:

3            (a)     the nature, scope and operations of Wells Fargo's Discretionary Pricing

4   Policy;

5            (b)     whether Wells Fargo is a creditor under the ECOA because, for example, in

6   the ordinary course of business they participate in the decision of whether or not to extend credit to

7   consumers;

8            (c)     whether Wells Fargo's Discretionary Pricing Policy is a facially neutral credit

9   pricing system that has effected racial discrimination in violation of the ECOA;

10           (d)     whether there are statistically significant disparities, specifically unrelated to

11   creditworthiness, between the amount of the discretionary charges imposed on black persons and the

12   amount of the discretionary charges imposed on white persons;

13           (e)     whether any legitimate business reason for the Discretionary Pricing Policy

14   can be achieved by a credit pricing system less discriminatory in its impact;

15           (f)     whether the Court can enter declaratory and injunctive relief; and

16           (g)     the proper measure of disgorgement or damages.

17       14.     The claims of the individual named Plaintiffs are typical of the claims of the Class

18   and do not conflict with the interests of any other members of the Class in that both the Plaintiffs and

19   the other members of the Class were subject to the same Discretionary Pricing Policy that has

20   disproportionately affected black homeowners.

21       15.     The individual named Plaintiffs will fairly and adequately represent the interests of

22   the Class. They are committed to the vigorous prosecution of the Class' claims and have retained

23   attorneys who are qualified to pursue this litigation and have experience in class actions – in

24   particular, consumer protection and discrimination actions.

25       16.     A class action is superior to other methods for the fast and efficient adjudication of

26   this controversy. A class action regarding the issues in this case does not create any problems of

27   manageability.

28

CLASS ACTION COMPLAINT -

17.     In the alternative, Wells Fargo has acted or refused to act on grounds generally applicable to the case, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## ALLEGATIONS OF CLASS-WIDE DISCRIMINATION

18.     Wells Fargo is one of the largest mortgage-lending companies in the United States. Wells Fargo publicly promotes its home financing expertise by means of nationwide advertising campaigns.  In its advertisements, Wells Fargo solicits persons to apply for financing with Wells Fargo either in one of its 2,400 locations or through one of the mortgage brokers whom Wells Fargo has authorized to accept applications on its behalf.

19.     Wells Fargo makes home-mortgage loans directly to consumers through its mortgage branches, which, according to Wells Fargo, include over 10,000 mortgage specialists at more than 2,400 locations.

20.     Wells Fargo also makes home-mortgage loans that are arranged by its network of mortgage brokers.  Those loans are made in reliance on Wells Fargo's policies and with the participation of Wells Fargo.

21.     Due to Wells Fargo's policies as to how to market its products, black borrowers are more likely than white borrowers to apply for credit from Wells Fargo's network of mortgage brokers.

22.     Because of the Discretionary Pricing Policy, loans obtained from Wells Fargo's network of mortgage brokers are more expensive, on average, than loans obtained directly from Wells Fargo.

23.     Based on the latest available Home Mortgage Disclosure Act ("HMDA") data, available from the Department of Housing and Urban Development ("HUD"), blacks who borrow from Wells Fargo are nearly 5 times more likely than whites to have received a high-APR loan to purchase a home and more than 3.5 times more likely to have received a high-APR to refinance their home.

24.     A high-APR loan is a loan whose APR is at least three percentage points higher than the interest rate on U.S. Treasury securities of the same maturity, at the time the loan was made.

CLASS ACTION COMPLAINT -

25.   While credit differences may explain a small portion of the disparities in rate and terms, Wells Fargo's Discretionary Pricing Policy accounts for a significant portion of the disparity.

26.   Wells Fargo's Discretionary Pricing Policy is unrelated to a borrower's objective credit characteristics such as credit history, credit score, debt-to-income ratio and loan-to-value ratios. Rather, Wells Fargo's Discretionary Pricing Policy results in purely subjective charges that affect the rate otherwise available to borrowers.

27.   Wells Fargo further provides authorized mortgage brokers with substantial information about its loan programs, rates and credit criteria, as well as its policies for compensating mortgage brokers who arrange business for it.

28.   Wells Fargo authorizes mortgage brokers who have signed a contract with it to accept applications on its behalf, quote financing rates and terms (within the limitations set by Wells Fargo), inform credit applicants of Wells Fargo's financing options and to originate finance transactions using Wells Fargo's forms, in accordance with its policies.

29.   In all of the home-mortgage-finance-transactions at issue, Wells Fargo advances the funds to make the loans and bears some or all of the risk of default. Wells Fargo provides its brokers with credit applications, loan contracts and other required financing forms, as well as instructions on filling out such documents necessary to complete home mortgage transactions.

30.   After a customer provides credit information to one of Wells Fargo's brokers, Wells Fargo computes a financing rate through an objective credit analysis that, in general, discerns the creditworthiness of the customer.

31.   These credit analyses consider numerous risk-related variables of creditworthiness, including credit bureau histories, payment amounts, debt ratio, bankruptcies, automobile repossessions, charge-offs, prior foreclosures, payment histories, credit scores, debt-to-income ratios, loan-to-value ratios and other risk-related attributes or variables. On information and belief, Wells Fargo uses these variables to determine a "mortgage score" for each credit applicant.

32.   Based on these objective risk-related variables and the resulting mortgage score, Wells Fargo derives a risk-based financing rate at which it would provide a home mortgage, often

CLASS ACTION COMPLAINT -

1    called the "Par Rate." Alternatively, experienced Wells Fargo brokers can estimate the risk-related

2    Par Rate by referring to the applicant's credit bureau determined credit score.

3        33.    Although Wells Fargo's initial analysis applies objective criteria to calculate this risk-

4    related Par Rate, Wells Fargo then authorizes a subjective component in its credit pricing system -

5    the Discretionary Pricing Policy - to impose additional non-risk charges. On information and belief,

6    the applicable Par Rates and authorized discretionary charges are communicated by Wells Fargo to

7    its broker network through rate sheets.  Such rate sheets are published by Wells Fargo via intranet

8    and/or internet.

9        34.    The discretionary charges are paid by the customer as a component of the total

10   finance charge (the "Contract APR"), without the homeowner knowing that a portion of their

11   Contract APR is a non-risk-related charge.

12       35.    Mortgage brokers have discretion, within the limits set by Wells Fargo, to impose

13   discretionary mark-ups as additional points in interest – "a rate mark-up".  When there is a rate

14   mark-up, Wells Fargo shares the additional income, even if the loan is originated by a broker.

15       36.    Wells Fargo's Discretionary Pricing Policy, by design, causes persons with identical

16   or similar credit scores to pay different amounts for the cost of credit.  As a result of using a

17   subjective pricing component that is designed to charge persons with the same credit profiles

18   different amounts of finance charges, the objective qualities of the initial credit analysis used to

19   calculate the Par Rate are undermined and the potential for race bias becomes inherent in the

20   transaction.

21       37.    The Discretionary Pricing Policy, although facially neutral (insofar as Wells Fargo

22   uses the same or effectively the same policy for all credit applicants), has a disproportionately

23   adverse effect on blacks compared to similarly situated whites in that blacks pay disparately more

24   discretionary charges (both in frequency and amount) than similarly situated whites.

25       38.    Statistical analysis of discretionary charges imposed on black and white customers of

26   other mortgage companies that use credit pricing systems structured like those of Wells Fargo has

27   revealed that blacks, after controlling for credit risk, are substantially more likely than similarly

28   situated whites to pay such charges.

CLASS ACTION COMPLAINT -

39.     Wells Fargo's mortgage brokers are agents of Wells Fargo for the purpose of setting credit price, which is always set based on Wells Fargo's policy.

40.     The disparate impact suffered by blacks is a direct result of Wells Fargo's Discretionary Pricing Policy in that Wells Fargo designed, disseminated, controlled, implemented and profited from the Discretionary Pricing Policy creating the disparate impact.

41.     Wells Fargo has a non-delegable duty to ensure that its mortgage financing structure and policies do not have a disparate impact on legally protected classes, such as blacks. Despite having such a non-delegable duty, Wells Fargo chose to use, and on information and belief, continues to use, a commission-driven, subjective pricing policy that it knows or should have known has a significant and pervasive adverse impact on black homeowners.

42.     The disparities between the mortgage terms of Wells Fargo's transactions involving black homeowners and the terms involving whites homeowners cannot be a product of chance and cannot be explained by factors unrelated to race, but, instead, are the direct causal result of the use of the discriminatory Discretionary Pricing Policy.

43.     There are no legitimate business reasons justifying Wells Fargo's discriminatory Discretionary Pricing Policy that could not be achieved by a policy that has no discriminatory impact or a vastly reduced discriminatory impact.

## ALLEGATIONS OF NON-DISCLOSURE –
## FRAUDULENT CONCEALMENT
## (TOLLING)

44.     Commission-driven, discretionary pricing systems – such as those in the real estate mortgage industry that are structurally similar to the system utilized by Wells Fargo – have been found to produce significant discriminatory effects. Knowledge concerning the significant and pervasive discriminatory impact of such commission-driven, discretionary credit pricing systems has been widely circulated throughout the financing industry for several years, particularly since 1994, as a result of numerous high profile actions by the United States Department of Justice and federal regulatory agencies. Wells Fargo, as one of the largest mortgage companies in the United States, has known or should have known that its credit pricing system causes blacks to pay Defendants more for mortgage financing than the amounts paid by white customers with identical or effectively identical

CLASS ACTION COMPLAINT -

1  credit scores. The following various regulatory settlements involved discriminatory pricing policies

2  structurally similar to Wells Fargo's pricing policy and were widely reported through the financing

3  industry:

4       *United States v. Blackpipe State Bank*, Civ. Act. No. 93-5115 (D. S.D. filed

5       November 16, 1993)(charging American Indians higher interest rates)

6       *United States v. First National Bank of Vicksburg*, No. 5:94 CV 6(B)(N) (S.D. Miss.
     filed Jan. 21, 1994) (charging African-Americans higher interest rates)

7       *United States v. Huntington Mortgage Co.*, No. 1:95 CV 2211 (N.D. Ohio filed

8       October 18, 1995)(charging African-Americans higher fees)

9       *United States v. Security State Bank of Pecos*, No. SA 95 CA 0996 (W.D.Tex. filed
     October 15, 1995)(charging Hispanics higher interest rates)

10       *United States v. First National Bank of Gordon*, No. CIV-96-5035 (W.D.S.D. filed

11       April 15, 1996)(charging American Indians higher interest rates)

12       *United States v. Fleet Mortgage Corp.*, No. 96-2279 (E.D.N.Y. filed May 7,
     1996)(charging African-Americans and Hispanics higher interest rates)

13       *United States v. Long Beach Mortgage Co.*, No. CV-96-6159 (C.D. Cal. filed Sept. 5,
     1996)(charging African-Americans, Latinos, women and persons over age 55 higher

14       interest rates)

15      45.    Despite the fact that Wells Fargo has known or should have known of the

16  discriminatory effect of its credit pricing policy, none of the loan documents inform the customer

17  that its finance rates are subjective and not based solely on risk-related characteristics.

18      46.    Although, pursuant to Wells Fargo's Discretionary Pricing Policy, the final credit rate

19  that a customer pays for credit is subjective, Wells Fargo's advertisements, marketing materials and

20  financing documents universally create and foster the image that Wells Fargo offers non-negotiable,

21  competitive finance rates that are objectively set by Wells Fargo based on credit-risk factors.

22      47.    Despite spending millions of dollars annually on advertising, marketing materials,

23  and the creation and distribution of Wells Fargo financing documents that falsely create and foster

24  the image that Wells Fargo offers competitive rates that are objectively set, Defendants never

25  disclose the truth to their credit applicants concerning the fact that: (a) their credit rates are

26  subjective and can vary significantly among persons with identical credit profiles, and (b) that they

27  have authorized and provided a financial incentive to mortgage brokers to subjectively increase the

28  credit rate above the rate otherwise available to homeowners.

CLASS ACTION COMPLAINT -

48.     Wells Fargo's black customers, due to the inherent nature of Wells Fargo's undisclosed pricing system and due to Wells Fargo's deception and concealment, have no way of knowing or suspecting: (a) the existence of Wells Fargo's subjective credit pricing policy; (b) that they were charged additional subjective credit charges; and (c) that they were charged a disproportionately greater amount for their cost of credit than similarly situated white persons.

## FACTUAL ALLEGATIONS

### Facts Relating to Plaintiffs Nancy and Johnny Jeffries

49.     Nancy and Johnny Jeffries (the "Jeffries"), are black homeowners who reside at 1409 S. Avers Avenue, Chicago, IL 60623.

50.     The Jeffries refinanced their Chicago home on April 28, 2006 with a loan arranged by Mortgage Direct.

51.     The lender in the transaction was Wells Fargo Bank, N.A.

52.     The April 28, 2006 refinance transaction (Loan No. 0151568789) was a 30-year, adjustable rate loan with a disclosed APR of 8.875%. The principal loan amount was $335,700.00.

53.     According to the HUD-One Settlement Statement, the Jeffries paid $8912.50 in settlement charges to Mortgage Direct in connection with their loan, including, a $4,392.50 broker fee and $520.00 in processing and courier fees.  The broker fee, which was paid outside closing, represented a 2.65% yield spread premium.

54.     Then, on August 1, 2006, the Jeffries – once again – refinanced their home with a loan arranged by Mortgage Direct.

55.     The lender in the transaction was Wells Fargo Bank, N.A.

56.     The August 1, 2006 refinance transaction (Loan No. 0154254924) was a 30-year, adjustable rate loan with a disclosed APR of 10.950%. The principal loan amount was $354,350.00.

57.     According to the HUD-One Settlement Statement, the Jeffries paid $11,450.5 in settlement charges to Mortgage Direct in connection with their loan, including, a $10,630.50 broker fee and $820 in application, processing and courier fees.  The broker fee, which was paid outside closing, represented a 3% yield spread premium.

CLASS ACTION COMPLAINT -

58. On information and belief, unbeknownst to the Jeffries, the contract APR on the mortgage loans was actually a combination of an objective, risk-based calculation and a totally subjective, discretionary component added pursuant to Wells Fargo's Discretionary Pricing Policy.

59. On information and belief, the Jeffries were subject to Wells Fargo's Discretionary Pricing Policy.

60. On information and belief, the Jeffries were charged a disproportionately greater amount in non-risk-related credit charges and fees than similarly situated white persons.

## COUNT I
### (Discrimination In Violation of the Equal Credit Opportunity Act Against All Defendants Except Summit By Plaintiffs on Behalf of The Class)

61. Plaintiffs repeat and reallege every allegation above as if set forth herein in full.

62. Wells Fargo is a creditor as defined in the ECOA, and in the ordinary course of its business, participated in the decision of whether or not to extend credit to the Plaintiffs, the proposed Class representatives herein, and all prospective Class members.

63. Wells Fargo designed, disseminated, controlled, implemented and profited from the discriminatory policy and practice alleged herein – the Discretionary Pricing Policy – which has had a disparate economic impact on blacks compared to similarly situated whites.

64. All actions taken by the Wells Fargo's employees and Wells Fargo brokers were in accordance with the specific authority granted to them by Wells Fargo and were in furtherance of Wells Fargo's policies and practices.

65. As a result of Wells Fargo's Discretionary Pricing Policy, Wells Fargo has collected more in finance charges from blacks than from similarly situated white persons, for reasons totally unrelated to credit risk.

66. Wells Fargo's Discretionary Pricing Policy violates the ECOA.

67. Plaintiff and prospective Class members are aggrieved persons as defined in the ECOA by virtue of having been subject to the discriminatory Discretionary Pricing Policy.

## COUNT II
### (Discrimination in Violation of the Fair Housing Act Against all Defendants Except Summit by Plaintiffs on Behalf of the Class)

68. Plaintiffs repeat and reallege every allegation above as if set forth herein in full.

CLASS ACTION COMPLAINT -

- 10 -

69.     Wells Fargo engaged in residential real estate-related transactions with respect to the Plaintiffs, the proposed Class representatives herein, and all prospective Class members.

70.     Wells Fargo's Discretionary Pricing Policy has resulted in discrimination with respect to the Plaintiffs, the proposed Class representatives herein, and all prospective members of the Class.

71.     As a result of Wells Fargo's Discretionary Pricing Policy, Wells Fargo has collected more in finance charges from blacks than from similarly situated white persons, for reasons totally unrelated to credit risk.

72.     Wells Fargo's Discretionary Pricing Policy violates the FHA and constitutes actionable discrimination on the basis of race.

73.     Plaintiff and the Class are aggrieved persons as defined in the FHA by virtue of having been subject to the discriminatory Wells Fargo's Discretionary Pricing Policy.

**COUNT III**
**(Discrimination in Violation of the Equal Credit Opportunity Act**
**Against Mortgage Direct by Plaintiffs Nancy and Johnny Jeffries**
**on Behalf of Themselves, Individually)**

74.     Plaintiffs repeat and reallege every allegation above as if set forth herein in full.

75.     Mortgage Direct is a creditor as defined in the ECOA, and in the ordinary course of its business, participated in the decision of whether or not to extend credit to the Plaintiffs.

76.     The Jeffries are members of a protected class.

77.     Following their credit application, Mortgage Direct discriminated against the Jeffries by charging them discretionary fees in amounts in excess of fees they charged similarly situated white borrowers.

78.     Mortgage Direct's conduct violates the ECOA.

79.     The Jeffries are aggrieved persons as defined in the ECOA by virtue of having been subject to this disparate treatment.

**COUNT IV**
**(Discrimination in Violation of the Fair Housing Act**
**Against Mortgage Direct by Plaintiffs Nancy and Johnny Jeffries**
**on Behalf of Themselves, Individually)**

80.     Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

CLASS ACTION COMPLAINT -

- 11 -

81. Mortgage Direct engaged in residential real estate-related transactions with respect to the Jeffries.

82. The Jeffries are members of a protected class.

83. Following their credit application, Mortgage Direct discriminated against the Jeffries by charging them discretionary fees in amounts in excess of fees they charged similarly situated white borrowers.

84. Mortgage Direct's conduct violates the FHA.

85. The Jeffries are aggrieved persons as defined in the FHA by virtue of having been subject to this disparate treatment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief:

*On behalf of the Class:*

A. Certify this case as a class action and certify the named Plaintiffs herein to be adequate Class representative and their counsel to be Class counsel;

B. Enter a judgment, pursuant to 15 U.S.C. 1691e(c) and/or 42 U.S.C. §3613, declaring the acts and practices of Defendants complained of herein to be in violation of the ECOA and the FHA;

C. Grant a permanent or final injunction, pursuant to 15 U.S.C. 1691e(c) and/or 42 U.S.C. §3613(c), enjoining Defendants, and Defendants' agents and employees, affiliates and subsidiaries, from continuing to discriminate against Plaintiffs and the members of the Class because of their race through further use of the Discretionary Pricing Policy or any non-risk-related Discretionary pricing policy employed by Defendants;

D. Order Defendants, pursuant to 15 U.S.C. §1691e(c) and/or 42 U.S.C. §3613(c), to adopt and enforce a policy that requires appropriate training of Defendants' employees, mortgage specialists and their network of mortgage brokers to prevent discrimination;

E. Order Wells Fargo, pursuant to 15 U.S.C. §1691e(c) and/or 42 U.S.C. §3613(c), to monitor and/or audit the racial pattern of its financings to ensure the cessation of discriminatory effects in its home mortgage transactions;

CLASS ACTION COMPLAINT -

- 12 -

1    F.    Order disgorgement, pursuant to 15 U.S.C. §1691e (c), of all disproportionate non-

2 risk charges imposed on blacks by Defendants' Discretionary Pricing Policy; and order the equitable

3 distribution of such charges, as restitutionary relief, to all appropriate Class members;

4    G.    Order actual and punitive damages to the Plaintiffs and the Class pursuant to 42

5 U.S.C. §3613(c);

6    H.    Award Plaintiffs the costs of this action, including the fees and costs of experts,

7 together with reasonable attorneys' fees, pursuant to 15 U.S.C. §1691e(d) and/or 42 U.S.C.

8 §3613(c); and

9    I.    Grant Plaintiffs and the Class such other and further relief as this Court finds

10 necessary and proper.

11    *On behalf of the Jeffries:*

12    J.    Order actual and punitive damages to the Jeffries pursuant to 42 U.S.C. §3613(c);

13    K.    Award the Jeffries the costs of this action, including the fees and costs of experts,

14 together with reasonable attorneys' fees, pursuant to 15 U.S.C. §1691e(d) and/or 42 U.S.C.

15 §3613(c); and

16    L.    Grant the Jeffries such other and further relief as this Court finds necessary and

17 proper.

18                    **JURY TRIAL DEMANDED**

19    Plaintiffs demand a trial by jury on all issues so triable.

20 DATED: July 27, 2007

                         LERACH COUGHLIN STOIA GELLER
21                          RUDMAN & ROBBINS LLP
                         SHAWN A. WILLIAMS

22

23

24                            SHAWN A. WILLIAMS

25                         100 Pine Street, 26th Floor
                         San Francisco, CA 94111
26                         Telephone: 415/288-4545
                         415/288-4534 (fax)

27

28

CLASS ACTION COMPLAINT -

                                                               - 13 -

1
2      SAMUEL H. RUDMAN
       ROBERT M. ROTHMAN
3      MARK S. REICH
       LERACH COUGHLIN STOIA GELLER
4        RUDMAN & ROBBINS LLP
       58 South Service Road, Suite 200
5      Melville, NY  11747
       Telephone:  631/367-7100
6      631/367-1173 (fax)

7      RODDY KLEIN & RYAN
       Gary Klein (BBO # 560769)
8      Shennan Kavanagh (BBO # 655174)
       Gillian Feiner (BBO # 664152)
9      727 Atlantic Avenue
       Boston, MA  02111-2810
10     Telephone:  617/357-5500 ext. 15
       617/357-5030 (fax)

11
       MILLER LAW LLC
12     MARVIN A. MILLER
       MATTHEW E. VANTINE
13     LORI A. FANNING
       115 South Lasalle Street, Suite 2910
14     Chicago, IL  60603
       Telephone:  312/332-3400
15
       HAGENS BERMAN SOBOL SHAPIRO LLP
16     THOMAS M. SOBOL (BBO # 471770)
       GREGORY MATTHEWS (BBO # 653316)
17     One Main Street, 4th Floor
       Boston, MA 02142
18     Telephone: 617/475-1950
       617/482-3003 (fax)
19
       T:\CptDraft\wellsfargo.cpt.doc        Attorneys for Plaintiffs
20
21
22
23
24
25
26
27
28

CLASS ACTION COMPLAINT -

1  BONNETT, FAIRBOURN, FRIEDMAN
   & BALINT, P.C.
2  Andrew S. Friedman (seeking pro hac vice)
3  Wendy J. Harrison (CA SBN 151090)
   2901 North Central Avenue, Suite 1000
4  Phoenix, Arizona 85012
   (602) 274-1100
5
6  CHAVEZ & GERTLER, L.L.P.
7  Mark A. Chavez (CA SBN 90858)
   42 Miller Avenue
8  Mill Valley, California 94941
   (415) 381-5599
9

ORIGINAL
FILED

AUG 21 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

10              UNITED STATES DISTRICT COURT
11              NORTHERN DISTRICT OF CALIFORNIA

12  GILBERT VENTURA, SR., and          C 07    4309
    TRACY D. VENTURA,
13                                      EMC
                                        CLASS ACTION
14            Plaintiffs,
                                        CLASS ACTION COMPLAINT FOR:
15  v.
                                        1. Violations of the Equal Credit
16                                         Opportunity Act; 15 U.S.C. § 1691
    WELLS FARGO BANK, N.A.,             2. Violations of the Fair Housing Act;
17                                         42 U.S.C. § 3601
              Defendant.                3. Violations of the Civil Rights Act, 42
18                                         U.S.C §1981; and
19                                      4. Violations of the Civil Rights Act, 42
                                           U.S.C. §1982.
20
21                                      **DEMAND FOR JURY TRIAL**
22
23          1.    Plaintiffs Gilbert Ventura, Sr., and Tracy D. Ventura ("Plaintiffs"), by
24  and through their attorneys, bring this action against Wells Fargo Bank, N.A. (referred
25  to herein as "Wells Fargo" or "Defendant") seeking redress for racially discriminatory
26  lending practices under the Equal Credit Opportunity Act, 15 U.S.C. § 1691, et seq.
27  ("ECOA"), the Fair Housing Act, 42 U.S.C. § 3601 et seq. ("FHA"), and the Civil
28

- 1 -

Received Time Aug 21  4:18PM

1  Rights Act, 42 U.S.C. §§ 1981 and 1982, on behalf of themselves and all others
2  similarly situated.

3  **INTRODUCTION**

4      2.    This class action challenges Defendant Wells Fargo's racially
5  discriminatory mortgage lending practices. Defendant Wells Fargo has engaged in
6  both intentional and disparate impact discrimination through its development and
7  implementation of mortgage pricing policies and procedures that provide financial
8  incentives to its authorized loan officers, mortgage brokers and correspondent lenders
9  to make subjective decisions to increase interest rates and charge additional fees and
10 costs to minority borrowers.

11     3.    Defendant Wells Fargo's authorized loan officers, mortgage brokers and
12 correspondent lenders are given discretion – and are actually encouraged and
13 incentivized – to increase interest rates and charge additional fees to certain
14 borrowers. These policies directly lead to minorities receiving home loans with
15 higher interest rates and higher fees and costs than similarly situated non-minority
16 borrowers.

17     4.    As used in this Complaint, "minority" or "minorities" shall refer to all
18 non-Caucasians and other minority racial groups protected under 42 U.S.C. §§ 1981,
19 1982, and 3604, and 15 U.S.C. § 1691.

20     5.    Plaintiffs bring this action on behalf of all minorities (hereinafter
21 collectively referred to as the "Class" or "members of the Class") who have entered
22 into residential mortgage loan contracts that were financed or purchased by Defendant
23 Wells Fargo, and who have been subjected to racial discrimination.

24     6.    Plaintiffs seek injunctive, declaratory, and equitable relief and other
25 remedies for Defendant Wells Fargo's racially discriminatory conduct.

26 **JURISDICTION AND VENUE**

27     7.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331, which gives
28 this Court original jurisdiction over civil actions arising under federal law.

- 2 -

8.     Venue is proper in this Court pursuant to 28 U.S.C. 1391(b) because a substantial part of the events giving rise to Plaintiffs' and the Class's claims occurred in this District. Defendant's corporate headquarters are located in this District, and the practices complained of herein were formulated and structured in this District.

### PARTIES

9.     Plaintiffs Gilbert Ventura, Sr., and Tracy D. Ventura are Latino homeowners who reside at 1136 East Avenida Isabella, Casa Grande, AZ 85222.

10.     Defendant Wells Fargo is a mortgage lender whose principal place of business is at 464 California St., San Francisco, CA 94104.

### FACTS

### I.    HISTORICAL DISCRIMINATION IN AMERICAN MORTGAGE LENDING

11.     Racial discrimination in America's mortgage lending industry has a long legacy. As this Complaint attests, that unfortunate history continues to this day due to discriminatory treatment of minority borrowers by mortgage banks such as Defendant Wells Fargo.

12.     The Joint Center for Housing Studies at Harvard University conducted a study in 2005 called "The Dual Mortgage Market: The Persistence of Discrimination in Mortgage Lending," which summarizes that history well. It states that "[i]n the immediate post-World War II period, racial discrimination in mortgage lending was easy to spot. From government-sponsored racial covenants in the Federal Housing Administration (FHA) guidelines to the redlining practices of private mortgage lenders and financial institutions, minorities were denied access to home mortgages in ways that severely limited their ability to purchase a home. Today, mortgage lending discrimination is more subtle. . . . [M]ore than three decades after the enactment of national fair lending legislation, minority consumers continue to have less-than-equal access to loans at the best prices and on the best terms that their credit history, income, and other individual financial considerations merit."

- 3 -

13.     The federal Home Mortgage Disclosure Act ("HMDA") requires mortgage lenders to report information about the home loans they process each year. In 2005, lenders reported information on more than 30 million home loan applications pursuant to HMDA.   In 1989, Congress required lenders to begin disclosing information about mortgage borrowers' race and ethnicity.  In 2004, concerned with potential racial discrimination in loan pricing, and recognizing that racial or other types of discrimination can occur when loan officers and mortgage brokers have latitude in setting interest rates, the Federal Reserve Board began requiring lenders to also report information concerning rates, points, and fees, charged to borrowers on high-cost loans.

14.     HMDA data for 2004 reveals profound loan pricing disparities between Hispanic borrowers and non-Hispanic whites even after controlling for borrowers' gender, income, property location, and loan amount.  After accounting for those differences in the 2004 HMDA data, Hispanic borrowers were still almost twice as likely to receive a higher-rate home loan as non-Hispanic whites. (http://www.responsiblelending.org/pdfs/Testimony-Ernst061306.pdf (last viewed August 14, 2007).)  In a speech last year, the Vice-Chairman of the Federal Deposit Insurance Corporation, Martin Gruenberg, discussed the 2004 HMDA data and observed that that data "clearly indicated" that Hispanics are more likely to receive high-cost home loans than are non-Hispanic whites. (http://www.fdic.gov/news/news/speeches/archives/2006/chairman/spoct1806.html (last viewed August 15, 2007).)

15.     Likewise, HMDA data for 2005 shows that "for conventional home-purchase loans, the gross mean incidence of higher-priced lending was 54.7 percent for blacks and 17.2 percent for non-Hispanic whites, a difference of 37.5 percentage points." Id. at A159.  The situation is similar for refinancings, where there is a difference of 28.3 percentage points between blacks and non-Hispanic whites. Avery, Brevoort, and Canner, Federal Reserve Bulletin, A124, A159.

- 4 -

16.    The Association of Community Organizations for Reform Now (ACORN) released a report entitled "The High Cost of Credit: Disparities in High-priced Refinanced Loans to Minority Homeowners in 125 American Cities," dated September 27, 2005, which found that "[i]n every metropolitan area where at least 50 refinances were made to African-American homeowners, African-Americans were more likely to receive a high-cost loan than White homeowners."

17.    Defendant Wells Fargo's lending practices are of a piece with the foregoing history.

## II.    PAST AS PROLOGUE: DEFENDANT WELLS FARGO'S DISCRIMINATORY LENDING POLICIES

### A.    DEFENDANT WELLS FARGO'S RELATIONSHIPS WITH ITS LOAN OFFICERS, MORTGAGE BROKERS AND CORRESPONDENT LENDERS

18.    Defendant Wells Fargo originates and funds mortgage loans through loan officers, brokers and through a network of correspondent lenders. Loan officers, mortgage brokers and correspondent lenders that work with Defendant Wells Fargo broker and fund loans in collaboration with Defendant Wells Fargo and in conformance with Defendant Wells Fargo's credit-pricing policies and procedures. As Defendant Wells Fargo's website explains, mortgage brokers "match borrowers with lenders." (https://www.wellsfargo.com/mortgage/glossary/m (last viewed August 14, 2007).) Defendant Wells Fargo's website states that correspondent lenders "originate, underwrite, and close loans before sending them to Wells Fargo[.]" (https://www.wellsfargo.com/com/third_party_mortgage/) (last viewed August 14, 2007).)

19.    Defendant Wells Fargo has followed – and continues to follow – discretionary loan pricing procedures that cause minority borrowers to pay subjective fees such as yield spread premiums and other mortgage-related finance charges at higher rates than similarly situated non-minority borrowers. Defendant Wells Fargo

- 5 -

1  has intentionally discriminated against Plaintiff and Class Members through these

2  policies and procedures – systematically giving them mortgage loans with less

3  favorable conditions than were given to similarly situated non-minority borrowers.

4  This pattern of discrimination is not the result of random or non-discriminatory

5  factors. Rather, it is a direct result of Defendant Wells Fargo's mortgage lending

6  policies and procedures.

7      20.     Defendant Wells Fargo's authorized loan officers, mortgage brokers and

8  correspondent lenders receive part or all of their compensation from Defendant Wells

9  Fargo based on the interest rate charged to the borrower. Defendant Wells Fargo's

10  loan officers, authorized brokers and correspondent lenders receive more

11  compensation from Defendant Wells Fargo when they steer their clients into Wells

12  Fargo loans with higher interest rates, and less compensation when they place their

13  clients into Wells Fargo loans with lower interest rates.

14      21.     Defendant Wells Fargo intentionally and actively implements this

15  discriminatory credit-pricing policy in a number of ways.

16      22.     Defendant Wells Fargo actively educates its loan officers and brokers in

17  Defendant Wells Fargo's credit policies and procedures. Defendant Wells Fargo

18  conducts weekly training "webinars" (i.e., interactive Internet seminars) for its brokers

19  concerning its loan products where it disseminates to brokers "detailed information on

20  [Defendant          Wells        Fargo's]         product        guidelines[.]"

21  (https://ilnet.wellsfargo.com/ildocs/ee/training.html (last viewed on August 15,

22  2007).) Defendant Wells Fargo also maintains an Internet site called "Broker's First"

23  that supplies brokers with rate sheets, a "Broker Guide," and underwriting guidelines.

24      23.     Defendant Wells Fargo also actively directs its loan officers and brokers

25  in marketing Defendant Wells Fargo's loans. Defendant Wells Fargo provides its

26  authorized       brokers      downloadable        mortgage         advertisements.

27  (https://ilnet.wellsfargo.com/ildocs/ee/marketing_tools.html (last viewed on August 7,

28  2007).)

24.   These credit-pricing policies and procedures permit Defendant Wells Fargo's authorized loan officers, mortgage brokers and correspondent lenders subjectively to charge certain loan applicants yield spread premiums and other discretionary charges, including minority loan applicants.

25.   This pattern of discrimination cannot be justified by business necessity, and could be avoided through the use of alternative policies and procedures that have less discriminatory impact and no less business efficacy.

## B.   DEFENDANT WELLS FARGO'S DISCRETIONARY CREDIT PRICING SYSTEM: DESIGNED TO DISCRIMINATE

26.   Defendant Wells Fargo discriminates through its authorized mortgage brokers. Authorized mortgage brokers act as Defendant Wells Fargo's agents in originating mortgage loans. Authorized mortgage brokers enter into agreements with Defendant Wells Fargo to accept loan applications on behalf of Defendant Wells Fargo; communicate to loan applicants financing terms and rates set by Defendant Wells Fargo; tell loan applicants about Defendant Wells Fargo's various financing options; and ultimately originate mortgage loans funded by Defendant Wells Fargo using Defendant Wells Fargo's forms and in accordance with Defendant Wells Fargo's policies and procedures.

27.   Likewise with Defendant Wells Fargo's authorized correspondent lenders and loan officers, who also act as Defendant Wells Fargo's agents in originating loans. Correspondent mortgage lenders and loan officers that work with Defendant Wells Fargo make loans in accordance with Defendant Wells Fargo's credit policies and procedures. Defendant Wells Fargo funds correspondent-generated loans before or shortly after they go to closing.

28.   Defendant Wells Fargo, then, funds loans originated by its loan officers, authorized mortgage brokers and correspondent lenders, sets the terms and conditions of credit on those loans, and shoulders part or all of the risk on such loans. Defendant

- 7 -

1   Wells Fargo actively and intentionally enforces its credit policies through its
2   authorized loan officers, mortgage brokers and correspondent lenders in a variety of
3   ways.  Among other things, Defendant Wells Fargo supplies its loan officers,
4   correspondent lenders and mortgage brokers with an array of loan-related forms and
5   agreements, including loan contracts, loan applications, and instructions on
6   completing loan applications and contracts.  And, as noted above, Wells Fargo
7   actively trains its authorized brokers to follow Wells Fargo's policies and procedures,
8   and reinforces that training with marketing support.

9          29.    Once a loan applicant has provided credit information to Defendant
10  Wells Fargo through a loan officer, mortgage broker or correspondent lender,
11  Defendant Wells Fargo performs an initial objective credit analysis.  At this point,
12  Defendant Wells Fargo evaluates numerous risk-related credit variables, including
13  debt-to-income ratios, loan-to-value ratios, credit bureau histories, debt ratios,
14  bankruptcies, automobile repossessions, prior foreclosures, payment histories, credit
15  scores, and the like.

16         30.    Defendant Wells Fargo derives a risk-based financing rate from these
17  objective factors, which Defendant Wells Fargo and others in the mortgage industry
18  simply call the "par rate." (Defendant Wells Fargo's brokers and correspondent
19  lenders can also estimate the par rates by referring to an applicant's credit bureau-
20  determined credit score.)

21         31.    Although Defendant Wells Fargo's initial analysis applies objective
22  criteria to calculate this risk-related interest rate, Defendant Wells Fargo as a matter of
23  policy and procedure authorizes its loan officers, brokers and correspondent lenders to
24  mark up that rate later, and also impose additional non-risk-based charges including
25  yield spread premiums, and other discretionary fees. Defendant Wells Fargo regularly
26  communicates applicable par rates, authorized yield spread premiums, and other
27  discretionary fees to its loan officers, brokers and correspondent lenders via "rate
28  sheets" and other communications.

- 8 -

32.     Defendant Wells Fargo gives its loan officers, authorized mortgage brokers and correspondent lenders discretion to impose yield spread premiums and other subjective fees on borrowers. When borrowers pay yield spread premiums, Defendant Wells Fargo shares in additional income generated by the premium because the yield spread premium-affected borrower is locked into a higher interest rate going forward on their Wells Fargo loan than they would be if they had been placed in a par rate loan without a yield spread premium.

33.     Defendant Wells Fargo's borrowers pay yield spread premiums and other discretionary fees that inflate their finance charges not knowing that a portion of their finance charges are non-risk-related.

34.     Defendant Wells Fargo's policies and procedures concerning the assessment of yield spread premiums and other discretionary fees cause persons with identical or similar credit scores to pay differing amounts for obtaining credit. Such subjective loan pricing - which by design imposes differing finance charges on persons with the same or similar credit profiles - disparately impacts Defendant Wells Fargo's minority borrowers.

35.     While Defendant Wells Fargo's use of a common credit policy for all loan applicants might appear to be racially neutral, Defendant Wells Fargo's use of yield spread premiums and other discretionary fees disproportionately and adversely affects minorities (relative to similarly situated non-minorities). Defendant Wells Fargo's credit policy causes minorities to pay disparately more discretionary finance charges than similarly situated non-minorities. As the HMDA data cited herein indicates, minorities are substantially more likely than similarly situated non-minorities to pay such charges.

36.     Defendant Wells Fargo's credit policy is in fact intentionally discriminatory. As described above, Defendant Wells Fargo's credit pricing policy by design discriminates against minority borrowers.

- 9 -

**III.  DEFENDANT WELLS FARGO IMPOSED DISCRIMINATORY FEES ON PLAINTIFF**

37.    Defendant Wells Fargo's discriminatory credit pricing policy directly damaged Plaintiffs. On or about September 27, 2005, Plaintiffs refinanced their home with a mortgage loan issued by Defendant Wells Fargo in the amount of $175,500. Phoenix Home Loans ("PHL"), was the mortgage broker on Plaintiffs' home refinancing.

38.    According to their HUD-I closing statement (attached hereto as Exhibit I), Plaintiffs at closing were subjected to a charge described as "Mtg Broker Comp by WFB to Phoenix Home Loans" in the amount of $2,632.50 on a "POC" basis (i.e., paid outside of closing) by Defendant Wells Fargo. On information and belief, this fee was in fact a yield spread premium. This yield spread premium was assessed pursuant to Defendant Wells Fargo's credit pricing policy.

39.    PHL and Defendant Wells Fargo knew that Plaintiffs were minority borrowers.  The PHL employee who brokered Plaintiffs' Wells Fargo loan in conformance with Defendant Wells Fargo's discriminatory credit pricing policy was aware that Plaintiffs are Hispanics when brokering Plaintiffs' loan.

40.    As a result of Defendant Wells Fargo's discriminatory conduct, Plaintiffs received a loan on worse terms with higher costs than similarly situated non-minority borrowers.

**CLASS ACTION ALLEGATIONS**

41.    Plaintiffs repeat and re-allege each allegation above as if set forth herein in full.

42.    This class action is brought pursuant to ECOA, the FHA and the Civil Rights Act by Plaintiffs on behalf of themselves and all minority borrowers (the "Class") who entered into residential mortgage loan contracts that were financed or purchased by Defendant Wells Fargo, and who were harmed by Defendant's discriminatory conduct.

- 10 -

43.  Plaintiffs sue on their own behalf, and on behalf of a class of persons under Rule 23(a) and (b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure.

44.  Plaintiffs do not know the exact size of the Class or identities of the members of the Class, since that information is in the exclusive control of Defendant Wells Fargo. Plaintiffs believe that the Class includes many thousands, or tens of thousands of individuals, who are geographically dispersed throughout the United States. Therefore, the Class is so numerous that joinder of all members is impracticable.

45.  All members of the Class have been subjected to and affected by Defendant Wells Fargo's practice of assessing yield spread premiums and other discretionary fees on mortgage loans. There are questions of law and fact that are common to the Class, and that predominate over any questions affecting only individual members of the Class. These questions include, but are not limited to the following:

a.  the nature and scope of Defendant Wells Fargo's policies and procedures concerning the assessment of yield spread premiums and other discretionary fees on mortgage loans it funds;

b.  whether Defendant Wells Fargo discriminated against Class Members by charging them higher interest, fees, and costs, than Defendant Wells Fargo charges similarly situated non-minority borrowers;

c.  whether Defendant Wells Fargo's intent in its discriminatory policies and procedures was racially motivated;

d.  whether Defendant Wells Fargo can articulate any legitimate non-discriminatory reason for its policies and procedures;

e.  whether Defendant Wells Fargo and its subsidiaries are creditors under the ECOA because, in the ordinary course of

- 11 -

business, they participate in the decision of whether or not to
extend credit to consumers;

f.  whether Defendant Wells Fargo's policies and procedures
regarding yield spread premiums and other discretionary fees
have a disparate impact on minority borrowers;

g.  whether Defendant Wells Fargo has any business justification
for its policies and procedures.

h.  whether there is a less discriminatory alternative to these
policies and procedures;

i.  whether Defendant Wells Fargo devised and deployed a
scheme or common course of conduct that acted to deceive
Plaintiff and members of the Class;

j.  whether the Court can enter declaratory and injunctive relief;
and

k.  the proper measure of disgorgement or monetary relief.

46.  Plaintiffs' claims are typical of the claims of the Class, and do not
conflict with the interests of any other members of the Class in that both Plaintiffs,
and the other members of the Class, were subjected to the same yield spread
premiums and other discretionary fees that have disproportionately affected minority
borrowers.

47.  Plaintiffs will fairly and adequately represent the interests of the Class.
Plaintiffs are committed to vigorous prosecution of the Class's claims, and have
retained attorneys who have extensive experience in consumer protection and credit
discrimination actions.

48.  Defendant Wells Fargo has acted or refused to act on grounds generally
applicable to the Class, thereby making appropriate final injunctive relief or
corresponding declaratory relief with respect to the class as a whole.

- 12 -

49.   A class action is superior to other methods for the speedy and efficient adjudication of this controversy. A class action regarding the issues in this case does not create any problems of manageability.

## ACCRUAL, FRAUDULENT CONCEALMENT, CONTINUING VIOLATION, AND EQUITABLE TOLLING

50.   Plaintiffs and Class Members did not know, and could not reasonably have known, that they would receive from Defendant Wells Fargo mortgage loans with worse terms and higher costs and fees than non-minorities. Their claims did not accrue until shortly before the filing of this action.

51.   Defendant Wells Fargo's discriminatory conduct was inherently self-concealing. Defendant Wells Fargo knew that Plaintiffs and Class Members could not determine the relationship between the terms, fees, and costs of their loans to those available to non-minorities. Defendant Wells Fargo knew that the terms, fees, and costs provided to minorities, unbeknownst to them, were substantially worse than the loans provided to non-minorities.

52.   Defendant Wells Fargo has not released or provided information about its discrimination against Plaintiffs and Class Members, and has actively and fraudulently concealed its discriminatory practices.

53.   As a result of the foregoing, Plaintiffs and Class Members in the exercise of due diligence could not have reasonably discovered the discriminatory practices, and did not do so until just recently. For the reasons alleged above, the members of the Class still do not know that they have been and continue to be injured by Defendant Wells Fargo's discriminatory conduct.

54.   Defendant Wells Fargo's discriminatory conduct is continuing in nature, and Defendant Wells Fargo has committed discriminatory acts throughout the limitations period.

55.   There is a substantial nexus between the acts of discrimination occurring within the limitation periods prior to filing suit, and the acts of discrimination before

- 13 -

1  that time.  The acts involve the same type of discrimination and are recurring, not

2  isolated events.

3      56.    Defendant Wells Fargo specifically misled Plaintiffs and Class Members

4  into believing that the mortgage-related terms, fees, and costs they were offered were

5  fair, reasonable, and the same as offered to non-minorities, and took steps to conceal

6  its fraudulent and unfair conduct.

7      57.    The statute of limitations applicable to any claims that Plaintiffs or other

8  Class Members have brought or could bring as a result of the unlawful and fraudulent

9  concealment and course of conduct described herein, have been tolled as a result of

10 Defendant Wells Fargo's fraudulent concealment. In addition, Plaintiffs and the Class

11 did not and could not have discovered their causes of action until the time alleged

12 below, thereby tolling any applicable statute of limitations.

13                          **COUNT I**

14          **RACIAL DISCRIMINATION (42 U.S.C. § 1981)**

15     58.    Plaintiffs repeat, re-allege, and incorporate the allegations contained in

16 paragraphs 1 through 57 above as if fully set forth herein.

17     59.    Defendant Wells Fargo intentionally discriminated against Plaintiffs and

18 Class Members by charging higher interest rates and other fees and costs than were

19 charged to similarly situated non-minority borrowers.

20     60.    Defendant Wells Fargo unlawfully discriminated against Plaintiffs and

21 Class Members in (i) formation of contracts, (ii) making, performance, modification,

22 and termination of contracts, (iii) the enjoyment of all benefits, privileges, terms and

23 conditions of the contractual relationship, and/or (iv) conduct that interferes with the

24 right to establish and enforce contract obligations.

25     61.    Defendant Wells Fargo's actions violate 42 U.S.C. § 1981, as well as the

26 rights of Plaintiffs and the Class under the Fifth, Thirteenth, and Fourteenth

27 Amendments to the Constitution of the United States.

28

- 14 -

1      62.    Plaintiffs and Class Members are entitled to injunctive and declaratory

2 relief and damages, or make whole equitable relief as a result of Defendant Wells

3 Fargo's discriminatory conduct.

4      63.    At no time has Defendant Wells Fargo undertaken corrective action to

5 ameliorate its racially discriminatory practices. Defendant Wells Fargo continues to

6 reap the profits of its discriminatory practices and continues to discriminate.

7 Defendant Wells Fargo's conduct as alleged herein was intentional, willful, wanton,

8 reckless, malicious, outrageous, or otherwise aggravated beyond mere negligence.

9 Defendant Wells Fargo has acted with malice and reckless indifference to the

10 federally protected rights of Plaintiffs and members of the Class. As a result,

11 Plaintiffs and members of the Class are entitled to punitive damages.

12                     **COUNT II**

13         **RACIAL DISCRIMINATION (42 U.S.C. § 1982)**

14      64.    Plaintiffs repeat, re-allege, and incorporate the allegations contained in

15 paragraphs 1 through 63 above as if fully set forth herein.

16      65.    Section 42 U.S.C. §1982 provides that all citizens of the United States

17 "shall have the same right, in every State and Territory, as is enjoyed by White

18 citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal

19 property."

20      66.    Defendant Wells Fargo has discriminated against Plaintiffs and the Class

21 with respect to their home mortgage loans by charging Plaintiffs and the Class higher

22 interest rates and other discretionary fees than Defendant Wells Fargo has charged

23 similarly situated non-minority consumers. As a result of Defendant Wells Fargo's

24 conduct, Plaintiffs and the Class have not had the same right as Caucasians to inherit,

25 purchase, sell, hold, and convey real property. Defendant Wells Fargo has thereby

26 violated 42 U.S.C. § 1982.

27      67.    Defendant Wells Fargo's violation of 42 U.S.C. § 1982 was intentional

28 and malicious.

68.    As a proximate result of Defendant Wells Fargo's violation of 42 U.S.C. § 1982, Plaintiffs and members of the Class have been injured, and are entitled to injunctive and declaratory relief and damages, or make whole equitable relief.  In addition, Defendant Wells Fargo's conduct as alleged herein was intentional, willful, wanton, reckless, malicious, outrageous, or otherwise aggravated beyond mere negligence. Defendant Wells Fargo acted with malice and reckless indifference to the federally protected rights of Plaintiffs and members of the Class.  As a result, Plaintiffs and members of the Class are entitled to punitive damages.

**COUNT III**

**VIOLATION OF THE FAIR HOUSING ACT (42 U.S.C. §§ 3601 – 3619)**

69.    Plaintiffs repeat, re-allege and incorporate the allegations in paragraphs 1 through 68 above as if fully set forth herein.

70.    Mortgage lending and the providing of residential mortgage loans is a "residential real estate-related transaction" within the meaning of the FHA. 42 U.S.C. § 3605(b).

71.    By imposing higher interest rates and other discretionary fees on residential mortgage loans to Plaintiffs and Class Members than it imposed on non-minority mortgage borrowers, Defendant Wells Fargo has discriminated against Plaintiffs and members of the Class concerning their ability to participate in real estate-related transactions, and in the terms and conditions of such transactions, in violation of the FHA. 42 U.S.C. § 3605(a).

72.    In addition, Defendant Wells Fargo's pricing policies and procedures (including yield spread premiums), which provide financial incentives to its mortgage brokers and correspondent lenders to make subjective decisions to increase interest rates and charge additional fees and costs, had a disparate impact upon Plaintiffs and Class Members.

- 16 -

73. As a proximate result of Defendant Wells Fargo's violation of 42 U.S.C. § 3605, Plaintiffs and members of the Class have been injured and are entitled to injunctive and declaratory relief and damages, or make whole equitable relief.

74. In addition, Defendant Wells Fargo's conduct as alleged herein was intentional, willful, wanton, reckless, malicious, outrageous, or otherwise aggravated beyond mere negligence. Defendant Wells Fargo acted with malice and reckless indifference to the federally protected rights of Plaintiffs and members of the Class. As a result, Plaintiffs and members of the Class are entitled to punitive damages.

75. Moreover, Defendant Wells Fargo continues to discriminate in violation of the FHA against members of the Class every time Defendant Wells Fargo provides a home mortgage loan as described herein. If not enjoined from such violation by the Court, Defendant Wells Fargo will continue to engage in conduct that disregards the rights of Plaintiffs and members of the Class, and cause Plaintiffs and members of the Class irreparable injury for which there is no adequate remedy at law. 42 U.S.C. § 3613(c).

76. Plaintiffs and members of the Class ask this Court to declare the rights of the parties herein regarding Defendant Wells Fargo's obligation to participate in credit transactions without discriminating against applicants for credit on the basis of the applicants' race.

## COUNT IV
## VIOLATION OF THE EQUAL CREDIT OPPORTUNITY ACT
## (15 U.S.C. §§ 1691 - 1691f)

77. Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 76 above as if fully set forth herein.

78. Defendant Wells Fargo engages in credit transactions through its offering, granting, and purchasing of residential mortgage loans.

- 17 -

79.    By imposing higher interest rates and other discretionary fees on residential mortgage loans to Plaintiffs and Class Members than it imposed on non-minority mortgage borrowers, Defendant Wells Fargo has discriminated against Plaintiffs and members of the Class with respect to a credit transaction on the basis of race in violation of the ECOA. 15 U.S.C. § 1691(a).

80.    In addition, Defendant Wells Fargo's pricing policies and procedures (including yield spread premiums), which provide financial incentives to its mortgage brokers and correspondent lenders to make subjective decisions to increase interest rates and charge additional fees and costs, have a disparate impact on Plaintiffs and Class Members.

81.    As a proximate result of Defendant Wells Fargo's violation of 15 U.S.C. § 1691, Plaintiffs and members of the Class have been injured and are entitled to injunctive and declaratory relief and damages, or make whole equitable relief.

82.    In addition, Defendant Wells Fargo's conduct as alleged herein was intentional, willful, wanton, reckless, malicious, outrageous, or otherwise aggravated beyond mere negligence.  Defendant Wells Fargo acted with malice and reckless indifference to the federally protected rights of Plaintiffs and members of the Class. As a result, Plaintiffs and members of the Class are entitled to punitive damages.

83.    Moreover, Defendant Wells Fargo continues to discriminate in violation of the ECOA against Class Members every time Defendant Wells Fargo provides a home mortgage loan as described herein.  If not enjoined from such violation by the Court, Defendant Wells Fargo will continue to engage in conduct that disregards the rights of Plaintiffs and members of the Class, and cause Plaintiffs and members of the Class irreparable injury for which there is no adequate remedy at law. 15 U.S.C. § 1691(e).

84.    Plaintiffs and members of the Class ask this Court to declare the rights of the parties herein regarding Defendant Wells Fargo's obligation to participate in credit

- 18 -

1    transactions without discriminating against applicants for credit on the basis of the

2    applicants' race.

3                              **PRAYER FOR RELIEF**

4         WHEREFORE PREMISES CONSIDERED, Plaintiffs requests the following

5    relief:

6         A.    An order determining that the action is a proper class action pursuant to

7    Rule 23 of the Federal Rules of Civil Procedure;

8         B.    A Judgment awarding Plaintiffs and Class Members costs and

9    disbursements incurred in connection with this action, including reasonable attorneys'

10   fees, expert witness fees and other costs;

11        C.    A Judgment granting extraordinary equitable and/or injunctive relief as

12   permitted by law or equity, including rescission, restitution, reformation, attaching,

13   impounding, or imposing a constructive trust upon, or otherwise restricting, the

14   proceeds of Defendant's ill-gotten funds to ensure that Plaintiffs and Class Members

15   have an effective remedy;

16        D.    A Judgment awarding damages, including punitive damages, to Plaintiffs

17   and Class Members;

18        E.    A Judgment granting declaratory and injunctive relief and all relief that

19   flows from such injunctive and declaratory relief; and

20        F.    A Judgment or other Order granting such other and further relief as the

21   Court deems just and proper including, but not limited to, recessionary relief and

22   reformation.

23                            **JURY TRIAL DEMANDED**

24        85.   Plaintiff demands a trial by jury on all issues so triable.

25

26

27

28

1    DATED this 21 day of August, 2007.

2

3                                    BONNETT, FAIRBOURN,
                                     FRIEDMAN, & BALINT, P.C.
4

5

6                                    Andrew S. Friedman
                                     Wendy J. Harrison
7                                    2901 North Central Avenue, Suite 1000
8                                    Phoenix, Arizona 85012

9                                    CHAVEZ & GERTLER, L.L.P.
10                                   Mark A. Chavez
                                     42 Miller Avenue
11                                   Mill Valley, California 94941

12

13                                   Attorneys for Plaintiff

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 20 -

# EXHIBIT 1

| | Paid from Borrower's Funds at Settlement | Paid from Seller's Funds at Settlement |
|---|---|---|
| Based on Price $ @ % = | | |
| Division of Commission (line 700) follows: | | |
| 701. $         to | | |
| 702. $         to | | |
| $         to | | |
| 703. Commission paid at settlement | | |
| 704. | | |
| 801. Loan Origination Fee 1.5%  to Phoenix Home Loans | 2,632.50 | |
| 802. Loan Discount Fee | | |
| 803. Appraisal Fee to Phoenix Home Loans | 400.00 | |
| 804. Credit Report to Phoenix Home Loans | 14.75 | |
| 805. Lenders Inspection Fee | | |
| 806. Mortgage Insurance Application Fee | | |
| 807. Assumption Fee | | |
| 808. Underwriting Fee to Wells Fargo Bank, N.A. | 495.00 | |
| 809. Processing Fee to Phoenix Home Loans | 995.00 | |
| 810. Flood Certification to Wells Fargo Bank, N.A. | 16.00 | |
| 811. **See attached for breakdown | 75.00 | |
| 901. Interest from 09/27/06 to 10/01/06 @$33.42/day (4 days) | 133.68 | |
| 902. Mortgage Insurance Premium | | |
| 903. Hazard Insurance Premium | | |
| 904. | | |
| 905. | | |
| 1001. Hazard Insurance 7 months @$46.54 per month | 325.78 | |
| 1002. Mortgage Insurance | | |
| 1003. City Property Taxes | | |
| 1004. County Property Taxes 2 months @$134.99 per month | 269.98 | |
| 1005. Annual Assessments | | |
| 1006. | | |
| 1007. | | |
| 1008. Aggregate Adjustment   months @$ | 135.00- | |
| 1101. Settlement or closing fee to Transnation Title Insurance Company | 280.00 | |
| 1102. Abstract or title search | | |
| 1103. Title examination | | |
| 1104. Title insurance binder | | |
| 1105. Document preparation | | |
| 1106. Notary fees to On the Run Notary | 100.00 | |
| 1107. Attorney's Fees | | |
| (includes above item numbers: ) | | |
| 1108. Title Insurance | | |
| (includes above item numbers: ) | | |
| 1109. Lender's coverage $   175,500.00 | | |
| 1110. Owner's coverage $ | 459.00 | |
| Lender's coverage $ | | |
| Lender's coverage $ | | |
| 1111. 3r, 4, 8.1, ARM Rhqts to Transnation Title Insurance Company | 150.00 | |
| 1112. Courier Fee to Transnation Title Insurance Company | 40.00 | |
| 1113. EDoc Fee to Transnation Title Insurance Company | 25.00 | |
| 1201. Recording Fees | | |
| 1202. City/County tax/stamps | | |
| 1203. State tax/stamps | | |
| 1204. City Transfer Tax | | |
| 1205. County Transfer Tax | | |
| 1206. Recording Service Fee to Transnation Title Insurance Company | 30.00 | |
| 1207. Recording of Deeds to Transnation Title Insurance Company | 20.00 | |
| 1301. Survey to | | |
| 1302. Pest Inspection | | |
| 1303. 1st Half 2005 Property Taxes to Pinal County Treasurer | 505.87 | |
| 1304. Account Payoff to Capital One Bank | 1,640.00 | |
| 1305. Account Payoff to CBUSA Sears | 358.00 | |
| 1306. Account Payoff to GEMB Care Credit | 1,583.00 | |
| 1307. **See attached for breakdown | 5,059.00 | |
| 1400. Total Settlement Charges (Enter on line 103,Section J and- line 502, Section K) | 16,795.56 | 0.00 |

Hud4.rpt (12/17/2003)

Printed by Tonjah Wildine on 09/27/2006 at 04:31:50 PM

ase 3:07-cv-04909-MM Document 1-2 Filed 06/21/20 Page 23 of 2

**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
**SETTLEMENT STATEMENT**

Transnation Title Insurance Company
7310 N. 19th St.
Suite 135
Phoenix, AZ 85020

FINAL

| B. TYPE OF LOAN | | |
|---|---|---|
| 1. ☐ FHA | 2. ☐ FmHA | 3. ☐ CONV. UNINS. |
| 4. ☐ VA | 5. ☐ CONV. INS. | |

6. FILE NUMBER: 01475635-238 T02
7. LOAN NUMBER: 0147839203
8. MORTGAGE INSURANCE CASE NUMBER:

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(P.O.C.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

D. NAME OF BORROWER: Gilbert Ventura Sr. and Tracy D. Ventura

ADDRESS OF BORROWER: 1136 East Avenida Isabela, Casa Grande, AZ 85222

E. NAME OF SELLER:

ADDRESS OF SELLER:

THIS IS TO CERTIFY THAT THIS
IS A TRUE FULL AND COMPLETE
COPY OF THE ORIGINAL
LANDAMERICA TRANSNATION
BY:

F. NAME OF LENDER: Wells Fargo Bank, N.A.
ADDRESS OF LENDER: 2701 Wells Fargo Way
Minneapolis MN 55467-8000

G. PROPERTY LOCATION: 1136 East Avenida Isabela
Casa Grande, AZ 85222
Pinal 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
Lot(s) 227, of Rancho Grande Unit 5 Recial Cab C Sld 077; Sec 4-9S-6E

H. SETTLEMENT AGENT: Transnation Title Insurance Company
PLACE OF SETTLEMENT: 7310 N. 19th St., Suite 135, Phoenix, AZ 85020

I. SETTLEMENT DATE: 09/27/2006   PRORATION DATE: 09/27/2006   FUNDING DATE: 09/27/2006

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| 100. Gross Amount Due From Borrower: | | 400. Gross Amount Due to Seller: | |
| 101. Contract Sales Price | | 401. Contract Sales Price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement charges to Borrower (line 1400) | 15,795.56 | 403. | |
| 104. Payoff to National City Bank | 132,871.24 | 404. | |
| 105. | | 405. | |
| Adjustments For Items Paid By Seller in Advance: | | Adjustments For Items Paid By Seller in Advance: | |
| 106. City/Town Taxes | | 406. City/Town Taxes | |
| 107. County Taxes | | 407. County Taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 113. | | 413. | |
| 114. | | 414. | |
| 115. | | 415. | |
| 120. Gross Amount Due from borrower: | 148,666.80 | 420. Gross Amount Due to Seller | |
| 200. Amounts Paid By Or In Behalf Of Borrower: | | 500. Reductions In Amount Due to Seller: | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 175,500.00 | 502. Settlement charges to Seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. Cash Payment & Closing Costs | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments For Items Unpaid By Seller: | | Adjustments For Items Unpaid By Seller: | |
| 210. City/Town Taxes | | 510. City/Town Taxes | |
| 211. County Taxes | | 511. County Taxes | |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. Total Paid By/For Borrower | 175,500.00 | 520. Total Reductions In Amount Due Seller | |
| 300. Cash At Settlement From/To Borrower: | | 600. Cash At Settlement To/From Seller: | |
| 301. Gross amount due from borrower (line 120) | 148,666.80 | 601. Gross amount due to Seller (line 420) | |
| 302. Less amount paid by/for Borrower (line 220) | 175,500.00 | 602. Less reductions in amount due Seller (line 520) | |
| 303. Cash TO Borrower: | 26,833.20 | 603. Cash TO/FROM Seller: | 0.00 |

Hudc.rpx (12/17/2003)

Printed by Tonjah Wilkins at 09/27/2005 at 04:31:59 PM

Attachments:

Loan Number: 0147-06-06-236 YGE

| Description | Buyer Amount | Seller Amount |
|---|---|---|
| Wells Fargo Bank, N.A., 2701 Wells Fargo Way, Minneapolis MN 55467-6000, Loan# 0147639G | 175,500.00 | |
| Total of New Loans. | 175,500.00 | |

| Description | Buyer Amount | Seller Amount |
|---|---|---|
| 812. Tax Service Fee to Wells Fargo Bank, N.A. | 78.00 | |
| 813. Mtg Broker Comp by WFB to Phoenix Home Loans      (Lender (\$2,632.50) POC) | | |
| Total as shown on HUD Page 2 Line #811. | 78.00 | |

| Description | Buyer Amount | Seller Amount |
|---|---|---|
| 1308. Account Payoff to The HelpCard Process | 4,069.00 | |
| 1309. Account Payoff to Capital One Bank. | 455.00 | |
| 1310. Account Payoff to RC Willey Home Furniture | 313.00 | |
| 1311. Account Payoff to Macy | 231.00 | |
| Total as shown on HUD Page 2 Line #1307. | 5,068.00 | |

Escrow Number: 014796835-238  T02

Payoff to:    National City Bank
              Payoff Department
              3232 Newmark Drive
              Miamisburg, OH  45342

Loan #:  992958-1

| Description | Amount |
|---|---|
| Principal Balance | 132,871.24 |
| Total Payoff | 132,871.24 |

Total as shown on HUD line #104.    132,871.24

Hudo.rpt (12/17/2003)

Printed by Tonjah Wilkins on 09/27/2006 at 04:31:59 PM

**JUDGES COPY**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NOV 0 8 2007

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

JUDY WILLIAMS, individually and on behalf
of all others similarly situated,

               Plaintiff,

v.

WELLS FARGO BANK, N.A.

               Defendant.

CASE NO.:

**CLASS ACTION COMPLAINT**

07cv6342
JUDGE DER-YEGHIAYAN
MAG. JUDGE VALDEZ

**CLASS ACTION COMPLAINT**

Plaintiff, on behalf of herself and a class of all others similarly situated, alleges as
follows:

**INTRODUCTION**

1.     Wells Fargo Bank, N.A. ("Wells Fargo" or "Defendant"), one of the nation's
largest mortgage lenders, has demonstrated an established pattern and practice of racial
discrimination in the financing of residential home purchases. Through these actions, Defendant
has violated the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, the Equal Credit Opportunity Act,
15 U.S.C. § 1691, *et seq.* and the Civil Rights Act, 42 U.S.C. §§ 1981, 1982 *et seq.*

2.     This is a proposed national class action brought by Plaintiff on behalf of herself
and a class of all other similarly situated Minority (defined below) homeowners subjected to
Wells Fargo's discriminatory practices in obtaining their residential mortgage loans (hereinafter
referred to as the "Class" or "Class Members"). Plaintiff seeks relief for herself and all other

members of the Class from the indefensible injustice resulting from Defendant's unlawful business practices.

3.      For purposes of this Complaint, "Minority" or "Minorities" shall refer to any and all non-Caucasian/White racial groups protected under the Equal Credit Opportunity Act, the Fair Housing Act and the Civil Rights Act, including, without limitation, African-Americans and Latinos.  Additionally, for the purposes of this Complaint, "mortgage" refers to any loan made for the purpose of purchasing, constructing, improving, repairing or maintaining a dwelling, or a loan secured by residential real estate.

4.      The mortgage lending industry has a long history of racial discrimination, offering Minorities products and terms that are drastically worse than those given to their similarly-situated Caucasian counterparts.  Recently, the Federal Reserve Board confirmed that African-Americans and other Minorities are still more likely to pay higher prices for mortgages than Caucasians.

5.      According to the Federal Reserve Board's Survey of Consumer Finances, a triennial survey of the balance sheet, pension, income, and other demographic characteristics of U.S. families, 47% of African-Americans and Latinos are homeowners, compared with 74% of Caucasians.

6.      In 2003, the National Community Reinvestment Coalition ("NCRC") released a report on credit discrimination titled, "The Broken System:  Discrimination and Unequal Access to Affordable Loans by Race and Age,"[1] that indicated that consumers living in areas with more Minority residents are more likely to have mortgages with interest rates higher than the "prevailing and competitive" rates, often because of discrimination in lending.

---

[1] This report is available at http://ncrc.org/policy/cra/documents/ncrcdiscrimstudy.pdf/.

2

7.  Home Mortgage Disclosure Act ("HMDA") Data for 2006 revealed that African-American and Latino borrowers are more likely to obtain higher priced loans than are Caucasian borrowers.[2] The data indicated that African-American homeowners who received sub-prime mortgage loans were much more likely to be issued a higher-rate loan than Caucasian borrowers with the same qualifications.

8.  In 2006, the Center for Responsible Lending, a non-profit research organization, uncovered "large and statistically significant" differences between the rates of sub-prime loans offered to African-Americans and Caucasians, even when income and credit risk were taken into consideration. Compared to their otherwise similarly-situated Caucasian counterparts, African-Americans were 31-34% more likely to receive higher rate fixed-rate loans and 6-15% more likely to receive adjustable-rate loans. Those numbers were even higher for loans containing prepayment penalties, which accounted for over 60% of the loans issued to African-American mortgagees.[3]

9.  Findings in a study[4] released by the NCRC in July 2007 confirm that institutions in at least six urban areas engaged in "pervasive discriminatory and predatory practices." Such practices include offering high cost sub-prime loans to higher-qualified African-Americans 54% of the time, compared to 23% of the time for Caucasians, even when Caucasian applicants were similarly or less qualified.

10. Sub-prime loans to African-Americans and other Minorities not only impose higher interest rates, they are typically laden with excessive, unreasonable and often improperly

---

[2] This report is available at www.ffiec.gov/hmda/.

[3] "Unfair Lending: The Effect of Race and Ethnicity on the Price of Subprime Mortgages," available at www.responsiblelending.org.

[4] "Income is no Shield Against Racial Differences in Lending," available at http://ncrc.org

disclosed fees as well. Such fees include high prepayment penalties which make it impossible for borrowers to later refinance at a competitive and fairer rate. The Center for Responsible Lending estimates that families lose $2.3 billion each year from their home equity wealth because of prepayment penalties in sub-prime mortgage loans—representing a transfer of wealth from working families to large, institutional lenders. African-Americans are more than three times as likely as Caucasians to be put into one of these equity-draining sub-prime loans. *See* n. 3.

11.     Wells Fargo demonstrated the worst disparity for any individual lending group in a joint report conducted by the California Reinvestment Coalition, Community Reinvestment Association of North Carolina, Empire Justice Center, Massachusetts Affordable Housing Alliance, Neighborhood Economic Development Advocacy Project, and the Woodstock Institute in March of 2007 ("2007 Joint Report").[5] The study discussed higher cost home purchase lending in six metropolitan areas (Boston, Charlotte, Chicago, Los Angeles, New York City and Rochester) during 2005. In Chicago, the study indicated that African-American borrowers were fourteen times more likely to receive a higher-cost home purchase loan from Wells Fargo than were Caucasian borrowers (35.3% versus 2.5%).

12.     These significant statistical disparities are not mere coincidences. They are the result of a systematic and predatory policy of targeting Minority borrowers for high cost loans. Wells Fargo's business practices include implementing and maintaining policies that discriminate against Minorities. Plaintiff brings this lawsuit to seek relief from the harms suffered as a result of Wells Fargo's practices and to enjoin Defendant from continuing its discriminatory practices.

---

[5] *See* "Paying More for the American Dream: A Multi-State Analysis of Higher Cost Home Purchase Lending," available at www.woodstockinst.org.

## THE PARTIES

**Plaintiff**

13.     Plaintiff Judy Williams is a Minority homeowner, gainfully employed by the Boys & Girls Clubs of Chicago.  On June 29, 2006, Ms. Williams purchased a condominium unit located at 1360 E. Madison Park, #B, Chicago, Illinois.  The purchase was financed by Wells Fargo.  At the time of application, Ms. Williams was a current homeowner, was gainfully employed with an income of approximately $60,000/year and paid approximately $7,550 as a cash deposit.

14.     Ms. Williams was unaware of the costs of her loan until very shortly before or the day of closing.  For instance, prior to the closing of her loan, Wells Fargo provided Ms. Williams with at least three different rate quotes for her loan.  The first quote was for an interest rate of 7.1%; the second quote was for 9.3%; the third quote was for 8.3%.  The first quote provided to Ms. Williams provided for one loan for the entire purchase price of $167,000, an interest rate of 7.1% and, importantly, no prepayment penalty.  However, the financing package actually provided to Ms. Williams provided for two loans—which she did not request.  The first loan was a 30-year ARM for 80% of the purchase price.  The loan had an initial interest rate of 8.125% and is due to reset on July 1, 2008, at which time may increase to as high as 11.125%.  The second loan, for the balance, was a 30-year fixed rate mortgage with an interest rate of 12.5%.

15.     Further, with respect to her first loan, despite language in her Promissory Note that provided for an unfettered right to prepay the loan in full or in part, Ms. Williams was instructed to sign a "Prepayment Rider."  The Prepayment Rider burdened Ms. Williams with a harsh prepayment penalty, stating that if she made full repayment of her loan (i.e., refinanced) within the first two years after the date of her note (i.e., prior to June 29, 2008), she must pay a

5

"prepayment charge." The prepayment charge is equal to 3% of the *original principal amount* within the first year after closing and 2% of the original principal amount during the second year after closing. Thus, this provision essentially prohibited Ms. Williams from refinancing into a less expensive loan. Further, Ms. Williams' ARM was pegged to "reset" on July 1, 2008, but, as stated above, she was could not refinance prior to June 29, 2008 without incurring a prepayment penalty. Thus, in effect, Ms. Williams was truly trapped in her loan—her loan was purposefully designed so that the only way for her to refinance prior to the interest rate adjustment date (and, thus, avoid an increased mortgage payment), was to do so within the very narrow time period between June 29, 2008 and July 1, 2008.

16.    Prior to closing, Ms. Williams questioned Wells Fargo as to the reason that she was being charged such a high interest rate and attempted to obtain a lower rate. However, despite sending requested additional documents, calling Wells Fargo and leaving multiple messages, she received no response whatsoever. Ms. Williams also questioned the reason for her prepayment penalty, but was not provided with a legitimate justification.

17.    Ms. Williams is now trapped in a high cost loan, due to Wells Fargo's discriminatory practices and/or policies that have had a disparate impact upon Minority borrowers.

**Defendant**

18.    Wells Fargo is a corporation organized under the laws of the State of Delaware with its principal place of business located at 464 California St., San Francisco, California, 94104, and is engaged in the business of issuing sub-prime mortgage loans throughout the United States in a manner and standardized practice that violates the laws identified herein.

## JURISDICTION AND VENUE

19.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343. This is an action for violation of the Fair Housing Act, 42 U.S.C. §3601 *et seq.*, the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.*, and the Civil Rights Act, 42 U.S.C. § 1981 *et seq.*

20.     Venue is proper in this district under 28 U.S.C. § 1391 because Defendant resides in this district, within the meaning of 28 U.S.C. § 1391(c) and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred, or a substantial part of property that is the subject of this action is situated, in this district.

## CLASS ACTION ALLEGATIONS

21.     Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2) and/or 23(b)(3) on behalf of the following (the "Class"):

> All Minority persons in the United States who obtained a residential mortgage loan from Wells Fargo between January 1, 2001 and the present with less favorable terms and higher costs as a result of Well's Fargo's racially discriminatory policies and/or practices.

22.     The Class is so numerous that joinder of all members is impracticable.

23.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.

24.     Plaintiff's claims are typical of the claims of the Class. Plaintiff and the Class were harmed by the same course of conduct and seek recovery under the same legal theories.

25.     There are questions of law and fact common to the Class, including but not limited to:

> a)     Whether Defendant has a policy or practice of discriminating against Class Members by charging them higher interest, fees and other costs for home mortgage loans than it charges to Caucasians with similar credit scores or creditworthiness;

7

    b)    Whether Defendant has policies or practices that have had a disparate impact upon Minority borrowers

    c)    Whether Defendant's policies and practices have caused damage and injury to Plaintiff and the Class entitling them to injunctive and declaratory relief, and the measure of that relief;

    d)    Whether Defendant can articulate a legitimate non-discriminatory reason for its practices and procedures which are discriminatory;

    e)    Whether Defendant has any business justification for its practices and procedures that cause a disparate impact upon Minorities;

    f)    Whether there is a less discriminatory alternative to these practices;

    g)    Whether Plaintiff and Class Members have sustained damages, and, if so, the proper measure of those damages.

26.    These and other questions of law and/or fact are common to the Class and predominate over any questions affecting only individual Class Members.

27.    Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has retained counsel competent and experienced in complex nationwide class action litigation. Plaintiff has no claims antagonistic to those of the Class. Plaintiff's counsel will fairly, adequately and vigorously protect the interests of the Class.

28.    Class action status is warranted under Rule 23(b)(1)(A) because the prosecution of separate actions by or against individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant.

29.    Class action status is also warranted under Rule 23(b)(1)(B) because the prosecution of separate actions by individual Class Members would create a risk of adjudications with respect to individual Class Members which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

8

30.     Class action status is also warranted under Rule 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

31.     Class action status is also warranted under Rule 23(b)(3) because questions of law or fact common to the Class Members predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## FRAUDULENT CONCEALMENT/EQUITABLE TOLLING

32.     Applicable statutes of limitation may be tolled based upon principles of equitable tolling, fraudulent concealment and/or the discovery rule. In this case, it would be inequitable to permit the applicable statutes of limitation to bar the claims of any absent Class Member.

33.     First, Wells Fargo knowingly and actively concealed the basis for the Plaintiff's claims by engaging in a scheme that was, by its very nature and purposeful design, self-concealing. Not only did Wells Fargo fail to disclose its discriminatory practices/policies and procedures that had a disparate impact upon Minority borrowers, but it took affirmative steps to conceal them.

34.     As one of the largest mortgage lenders in the United States, Wells Fargo knew or should have known that its policies and procedures, including, without limitation, its credit pricing system and the manner in which it trains and incentivizes its employees/agents causes Minorities to pay higher amounts for mortgage financing than similarly-situated Caucasian customers.

35.     Wells Fargo affirmatively and intentionally concealed its discriminatory practices. The Company spent millions of dollars annually on advertising and marketing,

9

intentionally targeting Minority borrowers with false and misleading information. These materials were designed to create and foster the image that Defendant offers all Minority borrowers competitive, low-cost residential mortgage loans that are objectively set. Upon information and belief, Wells Fargo also affirmatively concealed disproportionately high loan costs and fees, such as large prepayment penalties, the interest rate increases and prepayment penalties, add-on fees, unjustified interest rate hikes, etc. Wells Fargo never disclosed and affirmatively concealed the truth concerning the fact that: (a) its credit rates are subjective and can vary significantly among persons with identical credit profiles, and (b) it has authorized and provided a financial incentive to mortgage brokers to subjectively increase the credit rate above the rate otherwise available to homeowners, as well as increase other finance charges.

36.     Second, any delay by the Class Members is clearly excusable. In addition to the reasons stated above, as a practical matter, victims of lending discrimination may not even realize that they received disparate terms until—if ever—years after the loan closes. Here, the Class Members could not, despite the exercise of due diligence, have discovered the underlying basis for their claims. For these reasons, any delay by the Class Members whose claims accrued outside of any applicable statutes of limitation was excusable. Thus, to the extent that any applicable statute of limitations would bar the claim of any absent Class Members, such statute should be equitably tolled.

37.     Accordingly, Plaintiff respectfully submits that it would be inequitable to permit the applicable limitation periods to preclude the claim of any Plaintiff or member of the proposed Class, as doing so would, essentially reward Defendant for concealing its unlawful conduct.

## FACTUAL ALLEGATIONS

38.    Wells Fargo originates and funds mortgage loans through loan officers, brokers and a network of other lenders, serving all 50 states through approximately 2,400 mortgage and Wells Fargo banking stores, and the Internet.

39.    Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A.

40.    Wells Fargo Home Mortgage is one of the nation's largest retail mortgage lender and servicers of home mortgages.  It has a pervasive presence, through approximately 2,400 mortgage stores and bank branches, call centers, an Internet presence and wholesale lending operations. Wells Fargo Home Mortgage services loans for more than 7.8 million customers.

41.    Owning a home is fundamental for one's economic security and the chief means by which families build wealth.  Home equity accounts for more than one-third of the average net wealth of U.S. households.  Studies demonstrate that this percentage is even greater for Minorities.

42.    During the last decade, Minorities have been purchasing record numbers of homes, leading to a multi-year housing boom.  They account for 49% of the increase in home ownership from 1995 to 2005, according to Harvard University's Joint Center for Housing Studies.[6] Nonetheless, Minority home ownership is marred by sub-prime loans, excess fees and higher costs than their Caucasian counterparts.

43.    Sub-prime loans are higher-cost mortgage products that are in theory given to borrowers who are undesirable loan candidates.  In the last decade, an entire sub-prime industry has grown out of the greater profits generated by the higher rates and exorbitant fees charged to these "high-risk" borrowers.  This industry has inappropriately and unlawfully maximized its

---

[6] Available at www.jchs.harvard.edu/son/index.htm.

profits by directing borrowers with relatively good credit to sub-prime mortgages, especially Minority borrowers.

44.     In a recent study released on September 5, 2007, the Association of Community Organizations for Reform Now ("ACORN"), one of the nation's largest community organizations of low- and moderate-income families, found that, nationally, African-American home purchasers were **2.7 times more likely** and Latinos were **2.3 times more likely** than Caucasian borrowers to be issued a problematic, subprime loan.  Additionally, the ACORN study, available at www.acorn.org, found that nationally, for refinance loans, African-Americans were **1.8 times more likely** and Latinos were **1.4 times more likely** than Caucasian borrowers to be issued a problematic, subprime loan.

45.     Differences in economic status are not to blame.  These racial disparities were found to persist even among borrowers of the same income level.  The ACORN study found that, among upper-income home purchasers (defined as persons with incomes 120% or greater than the area median income for their metropolitan area), African-Americans  were **3.3 times more likely** and Latinos were **3 times more likely** than similarly-situated Caucasians to be issued a high-cost, subprime loan.  Further, the ACORN study found that, with respect to refinance loans, among upper-income borrowers, African-Americans and Latinos were **1.7 times more likely** than similarly-situated Caucasians to be issued a high-cost, subprime loan.

46.     While some borrowers in the sub-prime market are genuine credit risks, Minority borrowers have been preyed upon by mortgage lenders and illegally steered into sub-prime loans. Defendant has engaged in this predatory lending by refusing to offer Minority borrowers the prime loans offered to similarly-qualified Caucasian borrowers.

12

47.     Studies by Freddie Mac and Standard & Poor's have found that 20% to 30% of borrowers who receive sub-prime mortgages could have qualified for traditional mortgages at the lower rates offered by banks to prime borrowers. This seriously disadvantages the borrower by effectively diluting the equity of the property, placing the borrower in jeopardy of default, and forcing the borrower to spend years paying off additional loan balances without developing any equity in their home.

48.     Further, the U.S. Department of Housing and Urban Development found that in neighborhoods where at least 80 percent of the population is African-American, borrowers were 2.2 times as likely as borrowers in the nation as a whole to refinance with a sub-prime lender. Higher-income borrowers living in predominately African-American neighborhoods are twice as likely as lower-income Caucasian borrowers to have sub-prime loans.[7]

49.     The predatory lending practices of the Defendant and other mortgage lenders lead to dire financial consequences for borrowers. Earlier this year, over eighty consumer groups wrote to federal banking agencies about a particular type of sub-prime loan, the adjustable rate mortgage (ARM). An ARM typically contains an average built-in "shock payment" increase of 29%, even if interest rates remain unchanged. Fitch Ratings reports that the actual payment shock may be as high as 48%. The majority of sub-prime loans made to Minorities had these adjustable rates. The Center for Responsible Lending estimates that 2.2 million such sub-prime loans have ended or will end in foreclosure, a rate of 19%.

50.     Wells Fargo originates and funds mortgage loans through loan officers, brokers and through a network of correspondent lenders. Loan officers, mortgage brokers and correspondent lenders that work with Wells Fargo are required to act in conformance with its

---

[7] *See* "All Other Things Being Equal: A Paired Testing Study of Mortgage Lending Institutions," 2002, available at www.huduser.org.

13

credit-pricing policies and procedures. As Wells Fargo's website explains, mortgage brokers "match borrowers with lenders." (https://www.wellsFargo.com/mortgage/glossary/m (last viewed November 7, 2007).) Wells Fargo's website states that correspondent lenders "originate, underwrite, and close loans before sending them to Wells Fargo[.]" (https://www.wellsFargo.com/com/third_party_mortgage/ (last viewed November 7, 2007).)

51.     Wells Fargo has authorized and followed -- and continues to follow -- discretionary loan pricing procedures that cause a disproportionately large number of Minority borrowers to pay subjective fees such as yield spread premiums and other mortgage-related finance charges at higher rates than similarly situated non-Minority borrowers. Wells Fargo has intentionally discriminated against Plaintiff and Class Members through these policies and procedures- systematically giving them mortgage loans with less favorable conditions than were given to similarly situated non-Minority borrowers. This pattern of discrimination is not the result of random or non-discriminatory factors. Rather, it is a direct result of Wells Fargo's mortgage lending policies and procedures which vest subjectivity and discretion in its employees.

52.     Wells Fargo's authorized loan officers, mortgage brokers and correspondent lenders receive part or all of their compensation from Wells Fargo based on the interest rate charged to the borrower. Upon information and belief, Wells Fargo's loan officers, authorized brokers and correspondent lenders receive more compensation from Wells Fargo when they steer their clients into Wells Fargo loans with higher interest rates, and less compensation when they place their clients into Wells Fargo loans with lower interest rates.

53.     Wells Fargo intentionally and actively implements this discriminatory credit-pricing policy in a number of ways.

14

54.     Wells Fargo actively educates its loan officers and brokers in Wells Fargo's credit policies and procedures. Wells Fargo conducts weekly training "webinars" (i.e., interactive Internet seminars) for its brokers concerning its loan products where it disseminates to brokers "detailed information on [Wells Fargo's] product guidelines[.]" (https://ilnet.wellsFargo.com/ildocs/ee/training.html (last viewed on November 7, 2007).) Wells Fargo also maintains an internet site called "Broker's First" that supplies brokers with rate sheets, a "Broker Guide," and underwriting guidelines.

55.     Wells Fargo actively directs its loan officers and brokers in marketing Wells Fargo's loans. For example, Wells Fargo provides its authorized brokers with downloadable residential mortgage loan advertisements.[8]

56.     Wells Fargo's credit-pricing policies permit and encourage its authorized loan officers, mortgage brokers and correspondent lenders to subjectively charge certain loan applicants yield spread premiums and other discretionary charges, including minority loan applicants.

57.     Wells Fargo discriminates through its authorized mortgage brokers. Authorized mortgage brokers act as Wells Fargo's agents in originating mortgage loans. Authorized mortgage brokers: (a) enter into agreements with Wells Fargo to accept loan applications on behalf of Wells Fargo; (b) communicate to loan applicants financing terms and rates set by Wells Fargo; (c) tell loan applicants about Wells Fargo's various financing options; and (d) ultimately originate mortgage loans funded by Wells Fargo using Wells Fargo's forms and in accordance with Defendant's policies and procedures.

58.     Likewise, Wells Fargo's authorized correspondent lenders and loan officers also act as Wells Fargo's agents in originating loans. Correspondent mortgage lenders and loan

officers that work with Wells Fargo make loans in accordance with Wells Fargo's credit policies and procedures. Wells Fargo funds correspondent-generated loans before or shortly after they go to closing.

59.     Wells Fargo, then, funds loans originated by its loan officers, authorized mortgage brokers and correspondent lenders, sets the terms and conditions of credit on those loans, and shoulders part or all of the credit risk on such loans. Wells Fargo actively and intentionally enforces its credit policies through its authorized loan officers, mortgage brokers and correspondent lenders in a variety of ways.  Among other things, Wells Fargo supplies its loan officers, correspondent lenders and mortgage brokers with an array of loan-related forms and agreements, including loan contracts, loan applications, and instructions on completing loan applications and contracts.

60.     Once a loan applicant has provided credit information to Wells Fargo through a loan officer, mortgage broker or correspondent lender, Wells Fargo evaluates numerous risk-related credit variables, including debt-to-income ratios, loan-to-value ratios, credit bureau histories, bankruptcies, automobile repossessions, prior foreclosures, payment histories, credit scores and the like.

61.     Wells Fargo derives a risk-based financing rate from these objective factors, which Wells Fargo and others in the mortgage industry simply call the "par rate." (Wells Fargo's brokers and correspondent lenders can also estimate the par rates by referring to an applicant's credit bureau-determined credit score.)

62.     Although Wells Fargo's initial analysis applies objective criteria to calculate this risk-related interest rate, Wells Fargo as a matter of policy and procedure authorizes its loan officers, brokers and correspondent lenders to mark up that rate later, and also impose additional

---

[8] https://ilnet.wellsFargo.com/ildocs/ee/marketing_tools.html (last view on November 7, 2007).

16

non-risk-based charges including yield spread premiums, and other discretionary fees. Wells Fargo regularly communicates applicable par rates, authorized yield spread premiums, and other discretionary fees to its loan officers, brokers and correspondent lenders via "rate sheets" and other communications.

63.     Wells Fargo gives its loan officers, authorized mortgage brokers and correspondent lenders discretion to impose yield spread premiums and other subjective fees on borrowers. When borrowers pay yield spread premiums, Wells Fargo shares in additional income generated by the premium because the yield spread premium-affected borrowers are locked into a higher interest rate going forward on their Wells Fargo loan than they would be if they had been placed in a par rate loan without a yield spread premium.

64.     Wells Fargo's policies and procedures authorizing the subjective assessment of yield spread premiums and other discretionary fees cause persons with identical or similar credit scores to pay differing amounts for obtaining credit. Such subjective loan pricing- which by design imposes differing finance charges on persons with the same or similar credit profiles- disparately impacts Wells Fargo's Minority borrowers.

65.     Wells Fargo's use of yield spread premiums and other discretionary fees disproportionately and adversely affects Minorities (relative to similarly situated non-minorities). Wells Fargo's credit policies cause Minorities to pay disparately more discretionary finance charges than similarly situated non-minorities. As the HMDA data and other studies cited *infra* indicate, Minorities are substantially more likely than similarly situated non-minorities to pay such charges.

66.     The March 2007 Joint Report (see n. 5) further notes that Wells Fargo's African-American home purchase loan borrowers were ten times more likely to get a higher-cost home

17

loan than Caucasian borrowers, overall, and 14.3% more likely to receive higher-cost home loans in Chicago, specifically. Further, in Chicago, Latino borrowers demonstrated a 5.2% lending disparity ratio when compared to Caucasian counterparts. *(See tables from study below)*

**Table 2. African American/White Home Purchase Lending Disparity Ratios by Lender Group and Metropolitan Area, 2005**

| Lender Group | Boston | Charlotte | Chicago | Los Angeles | New York | Rochester | Weighted Average |
|---|---|---|---|---|---|---|---|
| Citigroup | 0.0 | 5.0 | 4.2 | 7.9 | 5.6 | 1.8 | 5.0 |
| Countrywide | 3.1 | 2.9 | 5.6 | 5.9 | 5.3 | 3.3 | 4.9 |
| GMAC | 3.2 | 3.4 | 8.8 | 2.8 | 17.2 | 6.3 | 5.8 |
| HSBC | 3.1 | 5.6 | 1.6 | 2.1 | 8.8 | 3.4 | 3.0 |
| JP Morgan Chase | 3.7 | 2.2 | 4.0 | 5.7 | 5.7 | 4.7 | 3.5 |
| Washington Mutual | 4.4 | 1.3 | 3.3 | 5.9 | 9.8 | 1.0 | 4.0 |
| **Wells Fargo** | **9.1** | **5.4** | **14.3** | **11.2** | **9.1** | **4.5** | **10.0** |
| Seven Lenders Combined | 5.7 | 4.9 | 5.7 | 6.8 | 12.5 | 3.3 | 6.0 |

**Table 3. Latino/White Home Purchase Lending Disparity Ratios by Lender Group and Metropolitan Area, 2005**

| Lender Group | Boston | Charlotte | Chicago | Los Angeles | New York | Rochester | Weighted Average |
|---|---|---|---|---|---|---|---|
| Citigroup | 0.0 | 0.0 | 2.0 | 2.9 | 2.4 | 3.2 | 1.8 |
| Countrywide | 1.5 | 1.7 | 2.5 | 5.7 | 1.9 | 1.9 | 2.9 |
| GMAC | 1.2 | 4.5 | 4.2 | 1.8 | 13.8 | 6.3 | 2.4 |
| HSBC | 3.1 | 0.0 | 1.5 | 2.1 | 12.2 | 2.0 | 3.8 |
| JP Morgan Chase | 7.7 | 5.0 | 2.3 | 14.2 | 3.0 | 2.3 | 3.5 |
| Washington Mutual | 4.7 | 1.3 | 2.9 | 5.5 | 8.7 | 2.0 | 3.5 |
| **Wells Fargo** | **3.7** | **2.4** | **5.2** | **7.9** | **5.3** | **2.4** | **3.3** |
| Seven Lenders Combined | 5.0 | 3.1 | 4.1 | 6.9 | 7.8 | 2.6 | 4.8 |

67.      Wells Fargo's credit policy is in fact intentionally discriminatory. As described above, Wells Fargo's credit pricing policy by design discriminates against Minority borrowers.

68.      While long suspected, this discrimination has only recently been disclosed and quantified. It has only been in the last few years that mortgage lenders have been required to submit details of their sub-prime home loans under the Home Mortgage Disclosure Act. The groups that have studied predatory lending and the mortgage market have uncovered incredible racial disparities in the types of mortgages offered.

69.      By placing Minority mortgagors into higher-priced sub-prime loans because of their race, Defendant violates the Fair Housing Act, the Equal Credit Opportunity Act, and the Civil Rights Act. These violations entitle the Plaintiff and Class Members to the declaratory and injunctive relief provided under the Acts.

## COUNT I:
## VIOLATIONS OF THE FAIR HOUSING ACT
### (42 U.S.C. §3601 et seq.)

70.      Plaintiff hereby incorporates by reference the preceding paragraphs as if they were fully set forth herein.

71.      Plaintiff and her putative class members are members of a protected class under the Fair Housing Act.

72.      Plaintiff was qualified to receive a loan with more favorable credit terms and associated costs.  Yet Defendant issued her a loan with terms less favorable and with higher associated costs, despite her qualifications, while Defendant offered loans with more favorable terms and lower associated costs to non-minorities with the same or similar qualifications as Plaintiff.

19

73.     The Fair Housing Act was enacted in 1968 to prohibit discrimination in connection with real estate transactions such as purchasing and refinancing a home. The Fair Housing Act has been broadly construed by the courts to protect consumers.

74.     The Fair Housing Act prohibits mortgage lenders from imposing different terms or conditions on a loan on the basis of race. Defendant targeted Minorities for higher cost sub-prime mortgage loans, while directing similarly-qualified Caucasian applicants into lower cost loans.

75.     Defendant engaged in residential real estate-related transactions with respect to the Plaintiff and all prospective Class Members.

76.     Defendant's discretionary pricing policies have resulted in discrimination with respect to the Plaintiff and all prospective members of the Class.

77.     As a result of Defendant's discretionary pricing policies, Defendant has collected more in finance charges from Minorities than from similarly situated Caucasian persons, for reasons unrelated to credit risk.

78.     Defendant's discretionary pricing policies violate the Fair Housing Act and constitute actionable discrimination on the basis of race.

79.     Plaintiff and the Class Members are aggrieved persons as defined in the Fair Housing Act by virtue of having been subjected to Defendant's discriminatory discretionary pricing policies.

## COUNT II:
## VIOLATIONS OF THE EQUAL CREDIT OPPORTUNITY ACT
### (15 U.S.C. §1691 et seq.)

80.     Plaintiff hereby incorporates by reference the preceding paragraphs as if they were fully set forth herein.

20

81. The Equal Credit Opportunity Act was first enacted in 1974 as a consumer protection statute prohibiting discrimination in the issuing of credit. The Equal Credit Opportunity Act has been broadly construed by the courts in order to protect consumers.

82. Plaintiff is an applicant as defined in the Equal Credit Opportunity Act.

83. Defendant is a creditor as defined in the Equal Credit Opportunity Act and in the ordinary course of its business, participated in the decision of whether or not to extend credit to the Plaintiff and all prospective members of the Class.

84. Plaintiff and Defendant engaged in a credit transaction as defined by the Equal Credit Opportunity Act.

85. Defendant designed, disseminated, controlled, implemented and profited from the discriminatory policies and practices alleged herein, which have had a disparate economic impact on Minorities as compared to similarly situated Caucasians.

86. All actions taken by Defendant's employees and brokers were in accordance with the specific authority granted to them by Defendant and were in furtherance of Defendant's policies and practices.

87. As a result of Defendant's discretionary pricing policies, Defendant has collected more in finance charges and other fees from Minorities than from similarly situated Caucasian persons, for reasons totally unrelated to credit risk.

88. Defendant's discretionary pricing policies are discriminatory and violate the Equal Credit Opportunity Act.

89. Plaintiff and prospective members of the Class are aggrieved persons as defined in the Equal Credit Opportunity Act by virtue of having been subjected to the discriminatory pricing policies of Wells Fargo.

21

## COUNT III:
### VIOLATIONS OF THE CIVIL RIGHTS ACT: RACIAL DISCRIMINATION
### (42 U.S.C. §§ 1981, 1982 et seq.)

90.     Plaintiff hereby incorporates by reference the preceding paragraphs as if they were fully set forth herein.

91.     The Civil Rights Act of 1866 and 1870, and later expanded in 1991, prohibits racial discrimination in the formation and issuance of contracts, and intentional interference to purchase and hold real property.

92.     Defendant intentionally discriminated against Plaintiff and the Class Members by charging them higher interest rates than those charged to similarly-situated Caucasian mortgagees.

93.     By charging higher rates to the Plaintiff and Class Members, Defendant unlawfully discriminated against them in the (i) formation of contracts, (ii) making, performance, modification, and termination of contracts, and/or (iii) the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship, and in their right to purchase and hold real property.

94.     Defendant's actions violate the Civil Rights Act. As a proximate result of Defendant's systematic violation of this statute, Plaintiff and the Class Members are entitled to the requested relief provided thereunder.

### PRAYER

WHEREFORE, Plaintiff, individually and on behalf of the putative Class Members, prays for entry of judgment as follows:

A.      Certify this case as a class action and certify the named Plaintiff herein to be an adequate Class representative and her counsel to be Class counsel;

22

B.     Enter a judgment, pursuant to 15 U.S.C. 1691e(c) and/or 42 U.S.C. § 3613, declaring the acts and practices of Defendant, complained of herein to be in violation of the Equal Credit Opportunity Act, the Fair Housing Act and the Civil Rights Act;

C.     Grant a permanent or final injunction, pursuant to 15 U.S.C. § 1691e(c) and/or 42 U.S.C. § 3613(c), enjoining Defendant, and Defendant's agents, employees, affiliates and subsidiaries from continuing to discriminate against Plaintiff and the members of the Class because of their race through further use of any discretionary pricing policies or any non-risk-related discretionary pricing policy employed by Defendant;

D.     Order Defendant, pursuant to 15 U.S.C. §1691e(c) and/or 42 U.S.C. § 3613(c), to adopt and enforce a policy that requires appropriate training of Defendant's employees, mortgage specialists and network of mortgage brokers to prevent discrimination;

E.     Order Defendant, pursuant to. 15 U.S.C. §1691e(c) and/or 42 U.S.C. § 3613(c), to monitor and/or audit the racial pattern of its financings to ensure the cessation of discriminatory effects in its home mortgage transactions;

F.     Order disgorgement, pursuant to 15 U.S.C. §1691e (c), of all disproportionate non-risk charges imposed on Minorities by Defendant's discretionary pricing policies; and order the equitable distribution of such charges, as restitutionary relief, to all appropriate Class Members;

G.     Order actual and punitive damages to the Plaintiff and the Class pursuant to 42 U.S.C. §3613(c);

H.     Award Plaintiff the costs of this action, including the fees and costs of experts, together with reasonable attorneys' fees, pursuant to 15 U.S.C. §1691e(d) and/or 42 U.S.C. §3613(c); and

I.     Grant Plaintiff and the Class such other and further relief as this Court finds necessary and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all issues so triable.

Dated: November 7, 2007

Respectfully Submitted,

**SCHIFFRIN BARROWAY TOPAZ &
KESSLER, LLP**

By: _____
    Joseph H. Meltzer
    Edward W. Ciolko
    Joseph A. Weeden
    280 King of Prussia Road
    Radnor, PA 19087
    Telephone: (610) 667-7706
    Facsimile: (610) 667-7056

**ROBERT D. ALLISON & ASSOCIATES**
Robert D. Allison, I.D. #36749
Bruce C. Howard
Steven P. Schneck
122 S. Michigan Ave., Suite 1850
Chicago, IL 60603
Tel. 312 427-7600
Fax. 312 427-1850

LOCAL COUNSEL

**ORIGINAL**

1  Timothy P. Dillon (CSB No. 123953)
2  LAW OFFICES OF
   TIMOTHY P. DILLON
3  361 Forest Avenue, Suite 205
   Laguna Beach, California 92651
4  (949) 376-2800
   (949) 376-2808  Facsimile
5  timothy@dillonlaw.net

6  Attorneys for Plaintiffs
   Juan Rodriguez and Josefina Rodriguez
7

8

9              UNITED STATES DISTRICT COURT
10
             CENTRAL DISTRICT OF CALIFORNIA
11

12                                        CV07-6780 CAS (AJWx)

13  JUAN RODRIGUEZ and JOSEFINA       | Case No.
    RODRIGUEZ, individually, and on the |
14  class of all others similarly situated, | **COMPLAINT**
15              Plaintiffs,           | CLASS ACTION
16        v.                          | 1.  Violations of the Equal Credit
                                      |     Opportunity Act; 15 U.S.C. § 1691
17  WELLS FARGO BANK, N.A.,           | 2.  Violations of the Fair Housing
                                      |     Act; 42 U.S.C. § 3601
18              Defendant.            | 3.  Violations of the Civil Rights Act,
19                                    |     42 U.S.C. §1981; and
20                                    | 4.  Violations of the Civil Rights Act,
                                      |     42 U.S.C. §1982.
21
22
23
24
25
26
27
28

FILED
CLERK, U.S. DISTRICT COURT
OCT 18 2007
CENTRAL DISTRICT OF CALIFORNIA
BY                        DEPUTY

DOCKETED ON CM
OCT 29 2007
BY                 067

1    1.    Jurisdiction is based on 28 U.S.C. section 1331 as an action arising
2    under federal law.

3    2.    For their Complaint, Plaintiffs Juan Rodriguez and Josefina Rodriguez
4    ("Plaintiffs") bring this class action against Wells Fargo Bank, N.A. ("Wells
5    Fargo" or "Defendant") to redress racially discriminatory lending practices under
6    the Equal Credit Opportunity Act, 15 U.S.C. section 1691, *et seq.* ("ECOA"), the
7    Fair Housing Act, 42 U.S.C. section 3601 *et seq.* ("FHA"), and the Civil Rights
8    Act, 42 U.S.C. sections 1981 and 1982, on behalf of themselves and all others
9    similarly situated.

10                          INTRODUCTION

11    3.    This action is based on the racially discriminatory mortgage lending
12    practices of Wells Fargo. Through its development and implementation of
13    mortgage pricing policies and procedures, Wells Fargo has engaged in both
14    intentional and disparate impact discrimination against minorities. Wells Fargo
15    does so by providing financial incentives to its authorized loan officers, mortgage
16    brokers and correspondent lenders thereby encouraging them to make subjective
17    decisions to increase interest rates and charge additional fees and costs to minority
18    borrowers.

19    4.    With substantial financial incentives made available by Wells Fargo
20    to motivate them, Wells Fargo's authorized loan officers, mortgage brokers and
21    correspondent lenders are given the discretion and thereby are actually encouraged,
22    to increase interest rates and charge additional fees to certain borrowers as set forth
23    in this Complaint. These policies directly lead to minorities receiving home loans
24    with higher interest rates and higher fees and costs than similarly situated non-
25    minority borrowers. By design of Wells Fargo, loan pricing policy discriminates
26    against minority borrowers.

27    5.    As used in this Complaint, "minority" or "minorities" shall refer to all
28    non-Caucasians and other minority racial groups protected under 42 U.S.C.

1

1 || sections 1981, 1982, and 3604, and 15 U.S.C. section 1691.

2 | 6. As set forth in more detail in the "Class Allegations" below, Plaintiffs

3 | bring this action on behalf of all minorities (collectively referred to as the "Class"

4 | or "Members of the Class") who have entered into residential mortgage loan

5 | contracts that were financed or purchased by Wells Fargo, and who have been

6 | subjected to racial discrimination as set forth in this Complaint.

7 | 7. By this action, Plaintiffs and Members of the Class seek injunctive,

8 | declaratory, and equitable relief and other remedies against Wells Fargo.

9 | <u>JURISDICTION AND VENUE</u>

10 | 8. This Court has jurisdiction over this action in accordance with 28

11 | U.S.C. section 1331 as a civil action arising under federal law.

12 | 9. Venue is proper in this Court pursuant to 28 U.S.C. 1391(b) because a

13 | substantial part of the events giving rise to Plaintiffs' claim occurred within this

14 | District.

15 | <u>PARTIES</u>

16 | 10. Plaintiffs are, and at all times herein mentioned were, residents and

17 | citizens of the state of California. At all times relevant, Plaintiffs Juan Rodriguez

18 | and Josefina Rodriguez are Latinos and own the residence located at 947 West 80th

19 | Street, Los Angeles, California, 90044.

20 | 11. Wells Fargo is, and at all times relevant times, was, a national banking

21 | corporation duly organized and existing under and by virtue of the laws of the state

22 | of California and engaged in the business of banking, including the making of

23 | loans as alleged in this Complaint, within the state of California and within this

24 | judicial district.

25 | <u>BACKGROUND</u>

26 | A. <u>History of Discrimination</u>

27 | 12. Racial discrimination in America's mortgage lending industry is long

28 | established. As set forth in this Complaint, the unfortunate history of

2

1  discrimination continues to this day because of the discriminatory treatment of
2  minorities when obtaining mortgage loans from banks such as Wells Fargo.
3      13.   The Joint Center for Housing Studies at Harvard University
4  summarized the history of racial discrimination in mortgage lending in a study in
5  2005 called "The Dual Mortgage Market: The Persistence of Discrimination in
6  Mortgage Lending." This study concludes:
7              [i]n the immediate post-World War II period, racial
8              discrimination in mortgage lending was easy to spot.
9              From government-sponsored racial covenants in the
10             Federal Housing Administration (FHA) guidelines to the
11             redlining practices of private mortgage lenders and
12             financial institutions, minorities were denied access to
13             home mortgages in ways that severely limited their
14             ability to purchase a home. Today, mortgage lending
15             discrimination is more subtle. . . . [M]ore than three
16             decades after the enactment of national fair lending
17             legislation, minority consumers continue to have less-
18             than-equal access to loans at the best prices and on the
19             best terms that their credit history, income, and other
20             individual financial considerations merit.
21     14.   In 2004, concerned with potential racial discrimination in loan
22  pricing, and recognizing that racial or other types of discrimination can occur when
23  loan officers and mortgage brokers have latitude in setting interest rates, the
24  Federal Reserve Board began requiring lenders to also report information
25  concerning rates, points, and fees, charged to borrowers on high-cost loans.
26     15.   In 1989, Congress required lenders to begin disclosing information
27  about mortgage borrowers' race and ethnicity. The Federal Home Mortgage
28  Disclosure Act ("HMDA") requires mortgage lenders to report information about

3

the home loans they process each year. In 2005, lenders in this country reported information on more than 30 million home loan applications as required by the HMDA.

16.    For 2004, the HMDA data discloses profound loan pricing disparities between Hispanic borrowers and non-Hispanic whites even after accounting for borrowers' gender, income, property location, and loan amount. After accounting for those differences in the 2004 HMDA data, Hispanic borrowers were still almost twice as likely to receive a higher-rate of interest on their home loan as non-Hispanic whites. (http://www.responsiblelending.org/pdfs/Testimony-Ernst061306.pdf (last viewed October 11, 2007).) The Center for Responsible Lending testified:

> Our findings were striking. We found that race and ethnicity—two factors that should play no role in pricing—are significant predictors of whether a subprime loan falls into the higher-rate portion of the market. Race and ethnicity remained significant predictors even after we accounted for the major factors that lenders list on rate sheets to determine loan pricing.
>
> In other words, even after controlling for legitimate loan risk factors, including borrowers' credit score, loan-to-value ratio, and ability to document income, race and ethnicity matter. African American and Latino borrowers continue to face a much greater likelihood of receiving the most expensive subprime loans—even with the same loan type and the same qualifications as their white counterparts. Across a variety of different loan types, African American and Latino borrowers were commonly

4

30% more likely to receive a high-rate loan than White
borrowers. (emphasis added).

17.     Indeed, a speech in 2006, the Vice-Chairman of the Federal Deposit
Insurance Corporation, Martin Gruenberg, discussed the 2004 HMDA data and
observed that that data "clearly indicated" that Hispanics are more likely to receive
high-cost home loans than are non-Hispanic whites. (http://www.fdic.gov/
news/news/speeches/archives/2006/chairman/spoct1806.html (last viewed October
11, 2007).) Mr. Gruenberg concluded:

> A number of studies have been conducted using new
> Home Mortgage Disclosure Act ("HMDA") data that have
> revealed significant disparities in the incidence of higher
> priced loans across racial and ethnic groups. . . .
>
> Based on 2004 data, it clearly indicated that certain
> minority groups, including Hispanic whites and African
> Americans, are more likely to receive high-priced
> mortgage loans than non-minority groups.  The study
> attempted to explain these disparities by taking
> differences in income, loan amounts, and other borrower-
> specific HMDA information into consideration, but was
> not able to fully explain the differentials between racial
> groups.  Numerous studies conducted by other
> organizations since then were also unable to fully account
> for the pricing disparities using data on borrower
> creditworthiness and other factors.
>
> Last month an updated Federal Reserve study was
> released using 2005 HMDA data that again revealed that

5

Hispanic whites and African Americans are significantly
more likely to receive higher priced loans than non-
Hispanic Whites. Relative to the earlier Federal Reserve
study, it revealed a significant increase in the incidence of
high priced loans as well as significantly larger disparities
in the proportion of minorities receiving high-priced loans
compared to non-Hispanic Whites. <u>The study found that
the incidence of higher priced conventional home
purchase loans was 54.7 percent for blacks and 46.1
percent for Hispanic whites compared to 17.2 percent for
non-Hispanic whites. The researchers attempted to
control for borrower-related factors but found that such
factors accounted for only one-fifth of these differences.</u>
This evidence of even greater disparities in the incidence
of high-priced loans across racial groups contained in the
2005 data further heightens concerns about lending
practices and the pricing of credit. (emphasis added;
footnotes omitted).

18. Thus, for 2005, the HMDA data shows that "for conventional home-
purchase loans, the gross mean incidence of higher-priced lending was 54.7
percent for blacks and 17.2 percent for non-Hispanic whites, a difference of 37.5
percentage points." *Id.* at A159. The situation is similar for refinancings, where
there is a difference of 28.3 percentage points between blacks and non-Hispanic
whites. Avery, Brevoort, and Canner, Federal Reserve Bulletin, A124, A159.

19. In addition, the Association of Community Organizations for Reform
Now ("ACORN") released a report entitled "The High Cost of Credit: Disparities
in High-priced Refinanced Loans to Minority Homeowners in 125 American
Cities," dated September 27, 2005, which found that "[i]n every metropolitan area

6

where at least 50 refinances were made to African-American homeowners, African-Americans were more likely to receive a high-cost loan than White homeowners."

B.   Wells Fargo's Discriminatory Lending Policies

    1.   The Loan Officers, Mortgage Brokers and Correspondent
         Lenders Act For and at the Direction of Wells Fargo

    20.   Through loan officers, brokers and a network of correspondent lenders, Wells Fargo originates and funds mortgage loans. These loan officers, mortgage brokers and correspondent lenders work with Wells Fargo to broker and fund loans to borrowers under the direction of Wells Fargo and in conformance with Wells Fargo's credit-pricing policies and lending procedures. Indeed, Wells Fargo stated on its website that "mortgage broker[s] . . ." match borrowers with lenders. (https://www.wellsfargo.com/mortgage/glossary/m) (last viewed October 11, 2007). According to Wells Fargo's website, these correspondent lenders "originate, underwrite, and close loans before sending them to Wells Fargo . . ." (https://www.wellsfargo.com/com/third_party_mortgage/) (last viewed October 11, 2007).)

    21.   Authorized mortgage brokers act as the agents of Wells Fargo in originating mortgage loans and Wells Fargo discriminates through its authorized mortgage brokers.

    22.   These authorized mortgage brokers enter into agreements with Wells Fargo to accept loan applications on behalf of Wells Fargo. They also communicate to the loan applicants the financing terms and rates set by Wells Fargo and inform the loan applicants of the various financing options of Wells Fargo. Ultimately, the authorized mortgage brokers originate mortgage loans funded by Wells Fargo using the paperwork supplied by Wells Fargo and in strict accordance with Wells Fargo's policies and procedures.

    23.   The authorized correspondent lenders and loan officers of Wells

7

Fargo act as the agents of Wells Fargo in originating loans. These correspondent mortgage lenders and loan officers of Wells Fargo act in accordance with Wells Fargo's credit policies and procedures. Wells Fargo funds these loans before or shortly after these loans with the borrowers close.

24.     Wells Fargo funds loans originated by its loan officers, authorized mortgage brokers and correspondent lenders, establishes the terms and conditions respecting these loans, and absorbs part or all of the risk on these loans. Wells Fargo actively and intentionally enforces and encourages its lending policies through its authorized loan officers, mortgage brokers and correspondent lenders.

25.     Thus, Wells Fargo provides to its loan officers, correspondent lenders and mortgage brokers with loan-related forms and agreements, including loan contracts, loan applications, and instructions for completing loan applications and contracts. In addition, Wells Fargo instructs and directs its authorized brokers to follow policies and procedures of Wells Fargo and encourages that training with marketing support and policies.

        2.     <u>Through Training and Financial Incentives, Wells Fargo</u>
           <u>Fosters and Encourages Discretionary Charges to Minorities</u>

26.     At all relevant times, Wells Fargo employed discretionary loan pricing procedures that cause minority borrowers to pay subjective and additional fees such as yield spread premiums and other mortgage-related finance charges at higher rates than similarly situated non-minority borrowers. In doing so, Wells Fargo has intentionally discriminated against Plaintiffs and Members of the Class by systematically extending mortgage loans to minorities with less favorable conditions than were given to similarly situated non-minority borrowers. This pattern of discrimination is not the result of random or non-discriminatory factors. The discrimination is a direct result of the mortgage credit lending policies and procedures of Wells Fargo.

27.     Wells Fargo authorized its loan officers, mortgage brokers and

8

correspondent lenders to receive their compensation from Wells Fargo based on the rate of interest on a loan charged to the borrower. Loan officers, authorized brokers and correspondent lenders of Wells Fargo receive more compensation from Wells Fargo when they sell their clients loans of Wells Fargo with higher interest rates and less compensation from Wells Fargo when their clients obtain loans from Wells Fargo with lower interest rates.

28. In several important ways, Wells Fargo intentionally and actively implements this discriminatory loan pricing procedure.

29. Wells Fargo instructs and educates its loan officers and brokers in Wells Fargo's credit policies and procedures. Wells Fargo conducts weekly "training" sessions online (i.e., interactive Internet seminars) for its brokers concerning its loan products where it disseminates to brokers "detailed information on [Wells Fargo's] product guidelines[.]" (https:// ilnet.wellsfargo.com/ildocs /ee/training.html (last viewed on October 11, 2007).)

30. Further, Wells Fargo also maintains an Internet site called "Broker's First" that supplies brokers with rate sheets, a "Broker Guide," and underwriting guidelines.

31. In addition, Wells Fargo instructs its loan officers and brokers in marketing Wells Fargo's loans. For example, Wells Fargo provides its authorized brokers downloadable mortgage advertisements. (https://ilnet.wellsfargo.com /ildocs/ee/marketing_tools.html (last viewed on October 11, 2007).)

32. The loan pricing policies and procedures of Wells Fargo permit its authorized loan officers, mortgage brokers and correspondent lenders to charge at their discretion certain loan applicants including minority loan applicants, yield spread premiums and other additional discretionary charges.

33. This pattern of discrimination of Wells Fargo cannot be justified by business necessity, and the discrimination could be avoided through the use of alternative policies and procedures that have less discriminatory impact and no less

9

1   business efficacy.

2           3.      Wells Fargo's Practice of Discretionary and Subjective
3                   Additional Charges Are Designed to Discriminate Against
4                   Minorities

5           34.     When a mortgage loan applicant has provided credit information to
6   Wells Fargo through a loan officer, mortgage broker or correspondent lender,
7   Wells Fargo performs an objective credit analysis. To do so, Wells Fargo
8   evaluates numerous risk-related credit variables, such as debt-to-income ratios,
9   credit bureau histories, debt ratios, loan-to-value ratios, bankruptcies, automobile
10  repossessions, prior foreclosures, payment histories, credit scores, and similar
11  objective criteria.

12          35.     From these factors, Wells Fargo develops a risk-based financing rate.
13  Wells Fargo and the mortgage industry in general refer to this risk-based financing
14  rate as the "par rate." The brokers and correspondent lenders of Wells Fargo can
15  also estimate the "par rates" with reference to a loan applicant's credit bureau-
16  determined credit score.

17          36.     Wells Fargo applies objective criteria to calculate this risk-related
18  interest rate. However, as part of its established procedures, Wells Fargo
19  authorizes its loan officers, brokers and correspondent lenders to subsequently
20  increase that rate and, in addition, impose additional non-risk-based charges
21  including yield spread premiums, and other discretionary fees. As a matter of
22  course, Wells Fargo routinely communicates applicable par rates, authorized yield
23  spread premiums, and other discretionary fees to its loan officers, brokers and
24  correspondent lenders through "rate sheets" and other established communications
25  and directives.

26          37.     As a matter of policy, Wells Fargo grants its loan officers, authorized
27  mortgage brokers and correspondent lenders the discretion to impose yield spread
28  premiums and other additional subjective fees on borrowers. When borrowers pay

10

yield spread premiums, Wells Fargo shares in additional income generated by the increased cost because borrower with the yield spread premium is required to pay a higher rate in the future on their loan than they would have paid if they had been placed in a par rate loan without a yield spread premium.

38.     The borrowers of Wells Fargo pay yield spread premiums and other discretionary fees that inflate their finance charges not knowing that a portion of their finance charges are non-risk-related.

39.     The policies and procedures of Wells Fargo concerning the assessment of yield spread premiums and other discretionary fees cause persons with identical or similar credit scores to pay differing amounts for obtaining the same loan. Such subjective loan pricing—which by design imposes differing finance charges on persons with the same or similar credit profiles—disparately impacts minorities who obtain loans from Wells Fargo.

40.     Relative to similarly situated non-minorities, Wells Fargo's use of yield spread premiums and other discretionary fees disproportionately and adversely affects minorities. The credit policy of Wells Fargo causes minorities to pay disparately more discretionary finance charges than similarly situated non-minorities. As the HMDA data referenced above confirms, minorities are substantially more likely than similarly situated non-minorities to pay such increased charges.

41.     The credit policy of Wells Fargo is in fact intentionally discriminatory.

C.     As Part of Its Pattern of Discrimination, Wells Fargo Imposed Discriminatory Fees on Plaintiffs

42.     The discriminatory credit pricing policy of Wells Fargo directly impacted and damaged the Plaintiffs. With a closing date of August 1, 2006, Plaintiffs purchased a residence with a mortgage loan issued by Wells Fargo in the amount of $620,500. Schaefer Financial Services ("Schaefer") was the mortgage

11

1    loan broker with respect to the loan of Plaintiffs obtained from Wells Fargo.

2          43.      According to their HUD-I closing statement, at the closing of the loan,

3    Plaintiffs were subjected to a charge described as "Mortgage Broker Compensation

4    By WFB To: SCHAEFER FINANCIAL SERVICE" in the amount of $6,205.00

5    on a "POC" basis (*i.e.*, paid outside of closing) by Wells Fargo. A true and correct

6    copy of the HUD-I closing statement is attached hereto as Exhibit "A." On

7    information and belief, this "compensation" to Schaefer, was in fact a yield spread

8    premium. This yield spread premium was assessed pursuant to Wells Fargo's

9    credit loan pricing policy as alleged in this Complaint.

10         44.      At all relevant times, Schaefer and Wells Fargo knew that Plaintiffs

11    were minority borrowers. The Schaefer employee who brokered Plaintiffs' Wells

12    Fargo loan in conformance with Wells Fargo's discriminatory credit pricing policy

13    was aware that Plaintiffs are Latinos when arranging the loan to Plaintiffs from

14    Wells Fargo.

15         45.      As a result of Wells Fargo's discriminatory conduct, Plaintiffs

16    received a loan with more expensive terms and higher costs than similarly situated

17    non-minority borrowers of Wells Fargo.

18                      <u>CLASS ALLEGATIONS</u>

19         46.      This class action is brought in accordance with the to ECOA, the FHA

20    and the Civil Rights Act by Plaintiffs on behalf of themselves and all minority

21    borrowers (the "Class") who entered into residential mortgage loan contracts that

22    were financed or purchased by Wells Fargo, and who were harmed by the

23    discriminatory conduct of Wells Fargo.

24         47.      Plaintiffs sue on their own behalf, and on behalf of a class of similarly

25    situated persons in accordance with Rule 23(a) and (b)(2) and/or (b)(3) of the

26    Federal Rules of Civil Procedure.

27         48.      Plaintiffs do not know the exact number of persons in the Class or

28    identities of the Members of the Class, because that information is in the exclusive

1  control of Wells Fargo.  Plaintiffs believe that the Class includes many thousands,

2  or tens of thousands of individuals, who are geographically dispersed throughout

3  the United States.  Therefore, the Class is so numerous that joinder of all members

4  is impracticable.

5       49.    All Members of the Class have been subjected to and impacted by

6  Wells Fargo's practice of assessing yield spread premiums and other discretionary

7  fees on mortgage loans.  There are questions of law and fact that are common to

8  the Class, and that predominate over any questions affecting only individual

9  Members of the Class.  These common issues include, but, are not limited to, the

10  following:

11       a.    the nature and scope of Wells Fargo's policies and procedures

12           concerning discretionary mortgage loan fees;

13       b.    whether Wells Fargo used a scheme or common course of conduct

14           that acted to deceive Plaintiffs and Member of the Class;

15       c.    whether Wells Fargo discriminated against Plaintiffs and Members of

16           the Class by charging them higher interest, fees, and costs, than Wells

17           Fargo charges similarly situated non-minority borrowers;

18       d.    whether Wells Fargo policies and procedures regarding other

19           discretionary mortgage loan-related fees have a disparate impact on

20           minority borrowers;

21       e.    whether Wells Fargo has any legitimate non-discriminatory reason for

22           its policies and procedures;

23       f.    whether Wells Fargo's mortgage credit-pricing policies and

24           procedures are racially motivated;

25       g.    whether Wells Fargo and its subsidiaries participate in decisions

26           concerning whether or not to extend credit to consumers (and thus are

27           creditors under ECOA);

28       h.    whether Wells Fargo has a less discriminatory alternative to these

13

policies and procedures;

i.  whether the Court should enter declaratory and injunctive relief; and

j.  the proper measure of disgorgement and/or monetary relief for Plaintiffs and Members of the Class.

50.  Plaintiffs' claims are typical of the claims of the Class, and do not conflict with the interests of any Members of the Class in that both Plaintiffs, and the Members of the Class, were subjected to the same yield spread premiums and other discretionary fees that have disproportionately affected minority borrowers.

51.  Plaintiffs will fairly and adequately represent the interests of the Class. Plaintiffs are committed to vigorous prosecution of the claims of the Class, and have retained attorneys who have extensive experience in consumer protection and credit discrimination actions.

52.  Wells Fargo has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

53.  A class action is superior to other methods for the speedy and efficient adjudication of this controversy. A class action regarding the issues as alleged in this action does not create any problems of manageability.

## FRAUDULENT CONCEALMENT, CONTINUING VIOLATIONS AND EQUITABLE TOLLING OF CLAIMS

54.  Plaintiffs and Members of the Class did not know, and could not reasonably have known, that they would receive from mortgage loans Wells Fargo with more burdensome terms and higher costs and fees than non-minorities. Therefore, the claims of Plaintiffs and Members of the Class did not accrue until shortly before the filing of this action.

55.  The discriminatory conduct of Wells Fargo was concealed. Wells Fargo knew that Plaintiffs and Members of the Class did not know the terms, fees, and costs of their loans relative to those available to non-minorities. Wells Fargo

14

1    knew that the terms, fees, and costs provided to minorities were substantially more
2    burdensome and expensive than the loans provided to non-minorities and Wells
3    Fargo knew that these minorities did not know these facts.

4         56.    Wells Fargo has not released or provided information about its
5    discrimination against Plaintiffs and Members of the Class, and Wells Fargo has
6    actively and fraudulently concealed its discriminatory practices and policies.

7         57.    Accordingly, Plaintiffs and Members of the Class in the exercise of
8    due diligence could not have reasonably discovered the discriminatory practices,
9    and they did not do so until just recently.  Thus, the Members of the Class still do
10   not know that they have been and continue to be injured by Wells Fargo's
11   discriminatory conduct.

12        58.    The discriminatory conduct of Wells Fargo is continuing in nature,
13   and, at all times relevant, Wells Fargo has committed discriminatory acts
14   throughout the limitations period.

15        59.    There is a substantial connection between the acts of discrimination
16   occurring within the limitation periods prior to the filing of this action, and the acts
17   of discrimination before that time.  The acts involve the same type of
18   discrimination and are recurring, not isolated events.

19        60.    Wells Fargo specifically misled Plaintiffs and Members of the Class
20   into believing that the mortgage-related terms, fees, and costs they were offered
21   were fair, reasonable, and the same as offered to non-minorities, and Wells Fargo
22   took steps to conceal its fraudulent and unfair conduct.

23        61.    The statute of limitations applicable to any claims that Plaintiffs or
24   other Members of the Class have brought or could bring as a result of the unlawful
25   and fraudulent concealment and course of conduct described herein, have been
26   tolled as a result of Wells Fargo's fraudulent concealment.  In addition, Plaintiffs
27   and the Class did not and could not have discovered their causes of action until the
28   time alleged below, thereby tolling any applicable statute of limitations.

15

## FIRST CAUSE OF ACTION

(Violation of the Equal Credit Opportunity Act

(15 U.S.C. §§1691-1691f)

62.     Plaintiffs refer to the prior paragraphs of this Complaint and incorporate those paragraphs as though set forth in full in this cause of action.

63.     Wells Fargo engages in credit transactions through its offering, granting, and purchasing of residential home mortgage loans.

64.     By imposing higher interest rates and other discretionary fees on residential home mortgage loans to Plaintiffs and Members of the Class than it imposed on non-minority mortgage borrowers, Wells Fargo has discriminated against Plaintiffs and Members of the Class with respect to a credit transaction on the basis of race in violation of the ECOA.  15 U.S.C. section 1691(a).

65.     In addition, Wells Fargo's pricing policies and procedures (including yield spread premiums), which provide financial incentives to its mortgage brokers and correspondent lenders to make subjective decisions to increase interest rates and charge additional fees and costs, have a disparate impact on Plaintiffs and Members of the Class.

66.     As a proximate result of Wells Fargo's violation of 15 U.S.C. section 1691, Plaintiffs and Members of the Class have been injured and are entitled to injunctive and declaratory relief and damages, or make whole equitable relief.

67.     In addition, Wells Fargo's conduct as alleged herein was intentional, willful, wanton, reckless, malicious, outrageous, or otherwise aggravated beyond mere negligence.  Wells Fargo acted with malice and reckless indifference to the federally protected rights of Plaintiffs and Members of the Class.  As a result, Plaintiffs and Members of the Class are entitled to punitive damages.

68.     Moreover, Wells Fargo continues to discriminate in violation of the ECOA against Members of the Class every time Wells Fargo provides a residential home mortgage loan as described herein.  If not enjoined from such violation by

16

1  the Court, Wells Fargo will continue to engage in conduct that disregards the rights
2  of Plaintiffs and Members of the Class, and cause Plaintiffs and Members of the
3  Class irreparable injury for which there is no adequate remedy at law. 15 U.S.C.
4  section 1691(e).

5      69.   Plaintiffs and Members of the Class respectfully request that this
6  Court to declare the rights of the parties herein regarding Wells Fargo's obligation
7  to participate in credit transactions without discriminating against applicants for
8  credit on the basis of the applicants' race.

9                    SECOND CAUSE OF ACTION
10              (Racial Discrimination (42 U.S.C. §1981))

11     70.   Plaintiffs refer to the prior paragraphs of this Complaint and
12  incorporate those paragraphs as though set forth in full in this cause of action.

13     71.   Wells Fargo intentionally discriminated against Plaintiffs and
14  Members of the Class by charging higher interest rates and other fees and costs
15  than were charged to similarly situated non-minority borrowers.

16     72.   Wells Fargo unlawfully discriminated against Plaintiffs and Members
17  of the Class in (i) formation of contracts; (ii) making, performance, modification,
18  and termination of contracts; (iii) the enjoyment of all benefits, privileges, terms
19  and conditions of the contractual relationship; and/or (iv) conduct that interferes
20  with the right to establish and enforce contract obligations.

21     73.   Wells Fargo's actions violate 42 U.S.C. section 1981, as well as the
22  rights of Plaintiffs and the Class under the Fifth, Thirteenth, and Fourteenth
23  Amendments to the Constitution of the United States.

24     74.   Plaintiffs and Members of the Class are entitled to injunctive and
25  declaratory relief and damages, or make whole equitable relief as a result of Wells
26  Fargo's discriminatory conduct.

27     75.   At no time has Wells Fargo undertaken corrective action to ameliorate
28  its racially discriminatory practices. Wells Fargo continues to reap the profits of

17

1 its discriminatory practices and continues to discriminate. Wells Fargo's conduct
2 as alleged herein was intentional, willful, wanton, reckless, malicious, outrageous,
3 or otherwise aggravated beyond mere negligence. Wells Fargo has acted with
4 malice and reckless indifference to the federally protected rights of Plaintiffs and
5 Members of the Class. As a result, Plaintiffs and Members of the Class are entitled
6 to punitive damages.

THIRD CAUSE OF ACTION

(Racial Discrimination (42 U.S.C. §1982))

9      76.    Plaintiffs refer to the prior paragraphs of this Complaint and
10 incorporate those paragraphs as though set forth in full in this cause of action.

11     77.    42 U.S.C. section 1982 provides that all citizens of the United States
12 "shall have the same right, in every State and Territory, as is enjoyed by White
13 citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal
14 property."

15     78.    Wells Fargo has discriminated against Plaintiffs and the Class with
16 respect to their mortgage loans for their homes by charging Plaintiffs and the Class
17 higher interest rates and other discretionary fees than Wells Fargo has charged
18 similarly situated non-minority consumers. As a result of Wells Fargo's conduct,
19 Plaintiffs and the Class have not had the same right as Caucasians to inherit,
20 purchase, sell, hold, and convey real property. Wells Fargo has thereby violated 42
21 U.S.C. section 1982.

22     79.    Wells Fargo's violation of 42 U.S.C. section 1982 was intentional and
23 malicious.

24     80.    As a proximate result of Wells Fargo's violation of 42 U.S.C. section
25 1982, Plaintiffs and Members of the Class have been injured, and are entitled to
26 injunctive and declaratory relief and damages, or make whole equitable relief. In
27 addition, Wells Fargo's conduct as alleged herein was intentional, willful, wanton,
28 reckless, malicious, outrageous, or otherwise aggravated beyond mere negligence.

18

1  Wells Fargo acted with malice and reckless indifference to the federally protected

2  rights of Plaintiffs and Members of the Class.  As a result, Plaintiffs and Members

3  of the Class are entitled to punitive damages.

4  FOURTH CAUSE OF ACTION

5  (Violation of the Fair Housing Act (42 U.S.C. §§3601-3619))

6      81.    Plaintiffs refer to the prior paragraphs of this Complaint and

7  incorporate those paragraphs as though set forth in full in this cause of action.

8      82.    Mortgage lending and the providing of residential mortgage loans is a

9  "residential real estate-related transaction" within the meaning of the FHA.  42

10  U.S.C. section 3605(b).

11      83.    By imposing higher interest rates and other discretionary fees on

12  residential home mortgage loans to Plaintiffs and Members of the Class than it

13  imposed on non-minority mortgage borrowers, Wells Fargo has discriminated

14  against Plaintiffs and Members of the Class concerning their ability to participate

15  in real estate-related transactions, and in the terms and conditions of such

16  transactions, in violation of the FHA.  42 U.S.C. section 3605(a).

17      84.    In addition, Wells Fargo's pricing policies and procedures (including

18  yield spread premiums), which provide financial incentives to its mortgage brokers

19  and correspondent lenders to make subjective decisions to increase interest rates

20  and charge additional fees and costs, had a disparate impact upon Plaintiffs and

21  Members of the Class.

22      85.    As a proximate result of Wells Fargo's violation of 42 U.S.C. section

23  3605, Plaintiffs and Members of the Class have been injured and are entitled to

24  injunctive and declaratory relief and damages, or make whole equitable relief.

25      86.    In addition, Wells Fargo's conduct as alleged herein was intentional,

26  willful, wanton, reckless, malicious, outrageous, or otherwise aggravated beyond

27  mere negligence.  Wells Fargo acted with malice and reckless indifference to the

28  federally protected rights of Plaintiffs and Members of the Class.  Accordingly,

19

1   Plaintiffs and Members of the Class are entitled to punitive damages.

2        87.   Moreover, Wells Fargo continues to discriminate in violation of the
3   FHA against Members of the Class every time Wells Fargo provides a home
4   mortgage loan as described in this Complaint. If not enjoined from such violation
5   by the Court, Wells Fargo will continue to engage in conduct that disregards the
6   rights of Plaintiffs and Members of the Class, and cause Plaintiffs and Members of
7   the Class irreparable injury for which there is no adequate remedy at law. 42
8   U.S.C. section 3613(c).

9        88.   Plaintiffs and Members of the Class respectfully request this Court to
10   declare the rights of the parties herein regarding Wells Fargo's obligation to
11   participate in credit transactions without discriminating against applicants for
12   credit on the basis of the applicants' race.

13      WHEREFORE, Plaintiffs and Members of the Class respectfully pray for
14   judgment as follows:

15      A.     An order determining that the action is a proper class action pursuant
16           to Rule 23 of the Federal Rules of Civil Procedure;

17      B.     A Judgment granting extraordinary equitable and/or injunctive relief
18           as permitted by law or equity, including rescission, restitution,
19           reformation, attaching, impounding, or imposing a constructive trust
20           upon, or otherwise restricting, the proceeds of Defendant's ill-gotten
21           funds to ensure that Plaintiffs and Members of the Class have an
22           effective remedy;

23      C.     A Judgment awarding damages, including punitive damages, in favor
24           of Plaintiffs and Members of the Class;

25      D.     A Judgment granting declaratory and injunctive relief and all relief
26           that flows from such injunctive and declaratory relief;

27      E.     A Judgment awarding Plaintiffs and Members of the Class costs and
28           disbursements incurred in connection with this action, including

1     reasonable attorneys' fees, expert witness fees and other costs; and

2    F.    A Judgment or other Order granting such other and further relief as

3     the Court deems just and proper including, but not limited to,

4     recessionary relief and reformation.

5

6  Dated: October 18, 2007      LAW OFFICES OF TIMOTHY P. DILLON

7

8         By:_____

9            Timothy P. Dillon

            Attorneys for Plaintiffs

10         Juan Rodriguez and Josefina Rodriguez

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

21

# DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable by jury.

Dated:  October 18, 2007          LAW OFFICES OF TIMOTHY P. DILLON

By: _____
          Timothy P. Dillon
          Attorneys for Plaintiffs
          Juan Rodriguez and Josefina Rodriguez

22

## Greenleaf Escrow, Inc.

6528 Greenleaf Ave., Ste. 100
Whittier, CA 90601
Phone: (562) 309-0028 • Fax: (562) 693-0342

BUYER/BORROWER STATEMENT
Final

| | | | |
|---|---|---|---|
| ..umber: | 06-053-SH | Title Order Number: | 600005346 |
| .ow Officer: | Sonya Harrell | Date: | 04/19/2007 - 1:02:54PM |
| | | Closing Date: | 08/01/2006 |

Buyer/Borrower: Juan Rodriguez and Josefina Rodriguez

Seller: UNIVERSAL DEVEOPMENT, INC., A CALIFORNIA CORPORATION

Property: 947 W. 80th St., Los Angeles, CA 90044

| | | |
|---|---|---|
| TOTAL CONSIDERATION | 730,000.00 | |
| Initial Deposit | | 10,000.00 |
| Initial Deposit | | 101,863.04 |
| **PRORATIONS/ADJUSTMENTS:** | | |
| Property Tax @ 2,395.19 per 6 month(s) 7/01/2006 to 8/01/2006 | | 399.20 |
| Seller credit to Borrower(2%) | | 14,600.00 |
| **COMMISSION(S):** | | |
| Debits to Commission | | 2,500.00 |
| **TITLE CHARGES** | | |
| Lender/Mortgage Premium for 620,500.00: SECURITY UNION TITLE COMPANY. | 672.00 | |
| Deed Recording Fee (2): SECURITY UNION TITLE COMPANY. | 12.00 | |
| Mortgage Recording Fee: SECURITY UNION TITLE COMPANY. | 89.00 | |
| Endorsement: SECURITY UNION TITLE COMPANY. | 50.00 | |
| Wire/Express: SECURITY UNION TITLE COMPANY. | 11.50 | |
| Subescrow: SECURITY UNION TITLE COMPANY. | 37.50 | |
| Special messenger: SECURITY UNION TITLE COMPANY. | 21.85 | |
| **ESCROW CHARGES TO: Greenleaf Escrow, Inc.** | | |
| Escrow Fee | 1,295.00 | |
| Doc/Copy/Pkg | 150.00 | |
| Loan Tie In | 75.00 | |
| Courier | 75.00 | |
| Wire Fee | 50.00 | |
| **LENDER CHARGES** | | |
| New to WELLS FARGO BANK: | | 620,500.00 |
| Interest Adjustment From 7/31/2006 To 8/01/2006, 1 Days, @ 157.2500/per day: WELLS FARGO BANK | 157.25 | |
| Underwriting Fee: WELLS FARGO BANK | 695.00 | |
| Appraisal Review: WELLS FARGO BANK | 135.00 | |
| Tax Registration: WELLS FARGO BANK | 85.00 | |
| Flood Determination: WELLS FARGO BANK | 19.00 | |
| Processing Fee: SCHAEFER FINANCIAL SERVICE | 595.00 | |
| Origination Fee: SCHAEFER FINANCIAL SERVICE | 12,410.00 | |
| Mortgage Broker Compensation By WFB: SCHAEFER FINANCIAL SERVICE POC $6,205.00 | | |
| **ADDITIONAL DISBURSEMENTS:** | | |
| Notary Fee: REBECCA GARCIA | 200.00 | |
| Hazard Insurance: Oscar Jimenez Insurance Agency | 1,056.00 | |
| BALANCE DUE YOU | 1,971.08 | |
| TOTALS | 749,862.24 | 749,862.24 |

THIS IS A FINAL CLOSING STATEMENT

EXHIBIT A, PAGE 23

☎ OMB No. 2502-0265

| A. U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT | B. | | TYPE OF LOAN | |
|---|---|---|---|---|
| SETTLEMENT STATEMENT | 1. ☐ FHA | 2. ☐ FMHA | 3. ☒ CONV. UNINS. | |
| | 4. ☐ VA | 5. ☐ CONV. INS. | | |
| | 6. FILE NUMBER: 06-053-BH | 7. LOAN NUMBER: 0153739026 | | |
| | 8. MORTGAGE INS. CASH NO.: | | | |

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown here. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

D. NAME & ADDRESS OF BORROWER: Juan Rodriguez and Josefina Rodriguez
947 W. 80th St., Los Angeles, CA 90044

E. NAME & ADDRESS OF SELLER: UNIVERSAL DEVELOPMENT, INC., A CALIFORNIA CORPORATION

F. NAME & ADDRESS OF LENDER: WELLS FARGO BANK
711 W. BROADWAY ROAD, Tempe, AZ 85282

G. PROPERTY LOCATION: 947 W. 80th St., Los Angeles, CA 90044

H. SETTLEMENT AGENT: Greenleaf Escrow, Inc.
PLACE OF SETTLEMENT: 6528 Greenleaf Ave., Ste. 100, Whittier, CA 90601 (562) 309-0028

I. SETTLEMENT DATE: 8/01/2006 Final

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| 100. Gross Amount Due From Borrower: | | 400. Gross Amount Due To Seller: | |
| 101. Contract sales price | 730,000.00 | 401. Contract sales price | |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower: (line 1400) | 17,891.16 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| | | | |
| | | | |
| | | | |
| | | | |
| Adjustments For Items Paid By Seller In Advance: | | Adjustments For Items Paid By Seller In Advance: | |
| 106. City/town taxes to | | 406. City/town taxes to | |
| 107. County taxes to | | 407. County taxes to | |
| 108. Assessments to | | 408. Assessments to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 113. | | 413. | |
| 114. | | 414. | |
| 115. | | 415. | |
| 116. | | 416. | |
| 120. Gross Amount Due From Borrower: | 747,891.16 | 420. Gross Amount Due To Seller: | |
| 200. Amounts Paid By Or In Behalf Of Borrower: | | 500. Reductions In Amount Due To Seller: | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 620,500.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. Debits to Commission | 2,500.00 | 504. Payoff 1st Mtg. Ln. | |
| 205. Initial Deposit To Escrow | 101,863.04 | 505. Payoff 2nd Mtg. Ln. | |
| 206. Initial Deposit To Escrow | 10,000.00 | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| | | | |
| | | | |
| | | | |
| Adjustments For Items Unpaid By Seller: | | Adjustments For Items Unpaid By Seller: | |
| 210. City/town taxes to | | 510. City/town taxes to | |
| 211. County taxes 07/01/06 to 08/01/06 | 399.20 | 511. County taxes to | |
| 212. Assessments to | | 512. Assessments to | |
| 213. Seller credit to Borrower (3%) | 14,600.00 | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| | | | |
| 220. Total Paid By/For Borrower: | 749,862.24 | 520. Total Reductions In Amount Due Seller: | |
| 300. Cash At Settlement From/To Borrower: | | 600. Cash At Settlement From/To Seller: | |
| 301. Gross amount due from borrower (line 120) | 747,891.16 | 601. Gross amount due to seller (line 420) | |
| 302. Less amount paid by/for borrower (line 220) | 749,862.24 | 602. Less reduction in amount due seller (line 520) | |
| 303. Cash (☐FROM) (☒TO) Borrower: | 1,971.08 | 603. Cash (☐TO) (☐FROM) Seller: | 0.00 |

Previous Edition is Obsolete
Form No. 1581
3/86

Page 1 of 2

SD-4-3538-000-1
HUD-1 (3-86)
RESPA, HB 4305.2

EXHIBIT A, PAGE 24

| L. | 700. Total Sales/Broker's Com. | n: | SETTLEMENT | CHARGES | | Escrow: 06-053-SH | Paid From Borrower's Funds At Settlement | Paid From Seller's Funds At Settlement |
|---|---|---|---|---|---|---|---|---|
| | Based On Price – | | 730,000.00 | @ 5.00 | % = | 36,500.00 | | |
| | Division of Commission (line 700) As Follows: | | | | | | | |
| 701. | $ | to | | | | | | |
| 702. | $ | to | | | | | | |
| 703. | Commission paid at settlement | | | | | | | |
| 704. | | | | | | | | |
| | 800. Items Payable In Connection With Loan: | | | | | | | |
| 801. | Loan Origination fee  2.0000 | | % SCHAEFER FINANCIAL SERVICE 2% Origination fee to Bro | | | | 12,410.00 | |
| 802. | Loan Discount | % | | | | | | |
| 803. | Appraisal fee to: | | | | | | | |
| 804. | Credit report to: | | | | | | | |
| 805. | Lender's inspection fee | | | | | | | |
| 806. | Mortgage insurance application fee to | | | | | | | |
| 807. | Assumption fee | | | | | | | |
| 808. | Tax Registration To: WELLS FARGO BANK | | | | | | 85.00 | |
| 809. | Flood Determination To: WELLS FARGO BANK | | | | | | 19.00 | |
| 810. | Processing Fee To: SCHAEFER FINANCIAL SERVICE | | | | | | 595.00 | |
| 811. | Mortgage Broker Compensation By WFB To: SCHAEFER FINANCIAL SERVICE POC  $6,205.00 | | | | | | | |
| 812. | Underwriting Fee To: WELLS FARGO BANK | | | | | | 625.00 | |
| 813. | Appraisal Review To: WELLS FARGO BANK | | | | | | 135.00 | |
| 814. | | | | | | | | |
| 815. | | | | | | | | |
| 816. | | | | | | | | |
| | 900. Items Required By Lender To Be Paid In Advance: | | | | | | | |
| 901. | Interest from  7/31/2006 to  8/01/2006 @$  157.2500/day  (1 days) | | | | | | 157.25 | |
| 902. | Mortgage insurance premium for  mo. to | | | | | | | |
| 903. | Hazard insurance premium for  yrs. to | | | | | | | |
| 904. | Flood insurance premium for  yrs. to | | | | | | | |
| 905. | | | | | | | | |
| 906. | | | | | | | | |
| | 1000. Reserves Deposited With Lender: | | | | | | | |
| 1001. | Hazard insurance  months @ $  per month | | | | | | | |
| 1002. | Mortgage insurance  months @ $  per month | | | | | | | |
| 1003. | City property taxes  months @ $  per month | | | | | | | |
| 1004. | County property taxes  months @ $  per month | | | | | | | |
| 1005. | Annual assessments  months @ $  per month | | | | | | | |
| 1006. | Flood insurance  months @ $  per month | | | | | | | |
| 1007. | months @ $  per month | | | | | | | |
| 1008. | Aggregate Adjustment | | | | | | | |
| 1009. | | | | | | | | |
| | 1100. Title Charges: | | | | | | | |
| 1101. | Settlement or closing fee to Greenleaf Escrow, Inc. | | | | | | 1,295.00 | |
| 1102. | Abstract or title search to | | | | | | | |
| 1103. | Title examination to | | | | | | | |
| 1104. | Title insurance binder to | | | | | | | |
| 1105. | Document preparation to | | | | | | | |
| 1106. | Notary fees to | | | | | | | |
| 1107. | Attorney's fees to | | | | | | | |
| | (includes above item Numbers: | | | | | ) | | |
| 1108. | Title insurance to SECURITY UNION TITLE COMPANY. | | | | | | | |
| | (includes above item Numbers: | | | | | ) | 672.00 | |
| 1109. | Lender's coverage  $ 620,500.00 Premium  $672.00 | | | | | | | |
| 1110. | Owner's coverage  $ | | | | | | | |
| 1111. | Deed Recording Fee (2) to SECURITY UNION TITLE COMPANY | | | | | | 12.00 | |
| 1112. | Endorsement to SECURITY UNION TITLE COMPANY | | | | | | 50.00 | |
| 1113. | Wire/Express to SECURITY UNION TITLE COMPANY | | | | | | 11.50 | |
| 1114. | Exhibit "A" Attached Hereto | | | | | | 409.35 | |
| | 1200. Government Recording and Transfer Charges: | | | | | | | |
| 1201. | Recording fees: Deed $  ;Mortgage $  89.00  ;Releases $ | | | | | | 89.00 | |
| 1202. | City/county tax/stamps: Deed $  ;Mortgage $ | | | | | | | |
| 1203. | State tax/Stamps:  Deed $  ;Mortgage $ | | | | | | | |
| 1204. | | | | | | | | |
| 1205. | | | | | | | | |
| | 1300. Additional Settlement Charges: | | | | | | | |
| 1301. | Survey to | | | | | | | |
| 1302. | Pest inspection to | | | | | | | |
| 1303. | Notary Fee to REBECCA GARCIA | | | | | | 200.00 | |
| 1304. | Hazard Insurance to Oscar Jimenez Insurance Agency | | | | | | 1,056.06 | |
| 1305. | | | | | | | | |
| 1306. | | | | | | | | |
| 1307. | | | | | | | | |
| 1308. | | | | | | | | |
| 1309. | | | | | | | | |
| 1310. | | | | | | | | |
| 1311. | | | | | | | | |
| 1312. | | | | | | | | |
| 1313. | | | | | | | | |
| | 1400. Total Settlement Charges (Enter on line 103, Section J and line 502, Section K) | | | | | | 17,891.16 | |

Form No. 1582    (323) 315 5166 FAX    Page 2 of 2    SB-4-3538-000-1

(323) 855 9479 (ACE MORTGAGE)

EXHIBIT A, PAGE 26

| ATTACHMENT: TO HUD 1 | Escrow No.: | 06-053-SH |
| Settlement Date:  8/01/2006 | Title No.: | 600005346 |
| | Page: | 1 |

EXHIBIT A: (HUD Section 1100)
Title Charges:

| | Buyer Amount |
|---|---|
| Subescrow to SECURITY UNION TITLE COMPANY. | 37.50 |
| special messenger to SECURITY UNION TITLE COMPANY. | 21.85 |
| Doc/Copy/Pkg to Greenleaf Escrow, Inc. | 150.00 |
| Loan Tie In to Greenleaf Escrow, Inc. | 75.00 |
| Courier to Greenleaf Escrow, Inc. | 75.00 |
| Wire Fee to Greenleaf Escrow, Inc. | 50.00 |
| Total: | 409.35 |

EXHIBIT A, PAGE 26

**EXHIBIT B**

ADRMOP, E-Filing, RELATE

# U.S. District Court
## California Northern District (San Francisco)
## CIVIL DOCKET FOR CASE #: 3:07-cv-03880-MJJ

| | |
|---|---|
| Jeffries et al v. Wells Fargo Bank N.A. et al | Date Filed: 07/30/2007 |
| Assigned to: Hon. Martin J. Jenkins | Jury Demand: None |
| Relate Case Case: 3:07-cv-04309-MJJ | Nature of Suit: 480 Consumer Credit |
| Cause: 42:405 Fair Housing Act | Jurisdiction: Federal Question |

**Plaintiff**

**Nancy Jeffries**
*on behalf of Themselves and All Others
Similarly Situated*

represented by **Shawn A. Williams**
Coughlin Stoia Geller Rudman &
Robbins LLP
100 Pine Street Suite 2600
San Francisco, CA 94111
415-288-4545
Fax: 415-288-4534
Email: shawnw@csgrr.com
*LEAD ATTORNEY
ATTORNEY TO BE NOTICED*

**Gary Edward Klein**
Roddy Klein & Roddy
727 Atlantic Avenue
2nd Floor
Boston, MA 02111
(617) 357-5500
Email: Klein@roddykleinryan.com
*ATTORNEY TO BE NOTICED*

**Mark S. Reich**
Coughlin Stoia Geller Rudman &
Robbins LLP
58 South Service Road
Suite 200
Melville, NY 11747
1631-367-7100
Fax: 1631-367-1173
Email: mreich@csgrr.com
*ATTORNEY TO BE NOTICED*

**Robert M. Rothman**
Coughlin Stoia Geller Rudman &
Robbins LLP

58 South Service Road
Suite 200
Melville, NY 11747
631-367-7100
Email: rrothman@lerachlaw.com
*ATTORNEY TO BE NOTICED*

**Samuel H. Rudman**
Coughlin Stoia Geller Rudman &
Robbins LLP
58 South Service Road
Suite 200
Melville, NY 11747
631-367-7100
Fax: 631-367-1173
Email: srudman@csgrr.com
*ATTORNEY TO BE NOTICED*

**Shennan Kavanagh**
Roddy Klein & Ryan
727 Atlantic Avenue
2nd Floor
Boston, MA 02111
(617) 357-5500 ext 12
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Johnny Jeffries**
*on behalf of Themselves and All Others
Similarly Situated*

represented by **Shawn A. Williams**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Gary Edward Klein**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mark S. Reich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert M. Rothman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Samuel H. Rudman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Shennan Kavanagh**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Plaintiff**
**Tracy D. Ventura**                    represented by   **Wendy Jacobsen Harrison**
                                                          Bonnett, Fairbourn, Friedman & Balint,
                                                          P.C.
                                                          2901 North Central Avenue
                                                          Suite 1000
                                                          Phoenix, AZ 85012
                                                          602-274-1100
                                                          Fax: 602-274-1199
                                                          Email: wharrison@bffb.com
                                                          *ATTORNEY TO BE NOTICED*

**Plaintiff**
**Gilbert Ventura, Sr.**                represented by   **Wendy Jacobsen Harrison**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

V.

**Defendant**
**Wells Fargo Bank N.A.**               represented by   **David S. Reidy**
                                                          Attorney at Law
                                                          Two Embarcadero Center
                                                          Suite 2000
                                                          San Francisco, CA 94111
                                                          (415) 659-5933
                                                          Email: dreidy@reedsmith.com
                                                          *ATTORNEY TO BE NOTICED*

**Defendant**
**Mortgage Direct, Inc.**

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 07/30/2007 | 1 | COMPLAINT against Wells Fargo Bank N.A., Mortgage Direct, Inc. ( Filing fee $ 350, receipt number 34611008852; summons issued). Filed by Nancy Jeffries, Johnny Jeffries. (sv, COURT STAFF) (Filed on 7/30/2007) Additional attachment(s) added on 10/4/2007 (slh, COURT STAFF). (Entered: 08/01/2007) |
| 07/30/2007 | 2 | ADR SCHEDULING ORDER: Case Management Statement due by 10/30/2007. Case Management Conference set for 11/6/2007 02:00 PM. (Attachments: # 1 Standing Order for Judge Jenkins# 2 Standing Order for all Judges)(sv, COURT STAFF) (Filed on 7/30/2007) (Entered: 08/01/2007) |
| 07/30/2007 |   | Summons Issued as to Wells Fargo Bank N.A., Mortgage Direct, Inc.. |

| | | (sv, COURT STAFF) (Filed on 7/30/2007) (Entered: 08/01/2007) |
|---|---|---|
| 07/30/2007 | | CASE DESIGNATED for Electronic Filing. (sv, COURT STAFF) (Filed on 7/30/2007) (Entered: 08/01/2007) |
| 08/17/2007 | 3 | CLERK'S NOTICE re: Failure to E-File and/or Failure to Register as an E-Filer re 1 . (slh, COURT STAFF) (Filed on 8/17/2007) (Entered: 08/17/2007) |
| 09/25/2007 | 4 | STIPULATION *Stipulation Extending Time for Defendant Wells Fargo Bank, N.A. to Respond to Complaint* by Wells Fargo Bank N.A.. (Reidy, David) (Filed on 9/25/2007) (Entered: 09/25/2007) |
| 09/27/2007 | 5 | CLERK'S NOTICE re: Failure to E-File and/or Failure to Register as an E-Filer 1 . (slh, COURT STAFF) (Filed on 9/27/2007) (Entered: 09/27/2007) |
| 10/01/2007 | 6 | STIPULATION AND ORDER extending time to respond to complaint.Signed by Judge Martin J. Jenkins on 09/28/07. (rbe, COURT STAFF) (Filed on 10/1/2007) (Entered: 10/01/2007) |
| 10/02/2007 | 7 | NOTICE by Nancy Jeffries, Johnny Jeffries *NOTICE OF FIRM NAME CHANGE* (Williams, Shawn) (Filed on 10/2/2007) (Entered: 10/02/2007) |
| 10/02/2007 | 9 | MOTION of Samuel H. Rudman for leave to appear in Pro Hac Vice (Filing fee $ 210, receipt number 34611011063) filed by Nancy Jeffries, Johnny Jeffries. (slh, COURT STAFF) (Filed on 10/2/2007) (Entered: 10/04/2007) |
| 10/02/2007 | 10 | MOTION of Mark S. Reich for leave to appear in Pro Hac Vice (Filing fee $ 210, receipt number 34611011061) filed by Nancy Jeffries, Johnny Jeffries. (slh, COURT STAFF) (Filed on 10/2/2007) (Entered: 10/04/2007) |
| 10/02/2007 | 11 | MOTION of Robert M. Rothman for leave to appear in Pro Hac Vice ( Filing fee $ 210, receipt number 346110110622) filed by Nancy Jeffries, Johnny Jeffries. (slh, COURT STAFF) (Filed on 10/2/2007) (Entered: 10/04/2007) |
| 10/04/2007 | 8 | MOTION to Relate Case filed by Tracy D. Ventura, Gilbert Ventura, Sr. (Attachments: # 1 Proposed Order)(Harrison, Wendy) (Filed on 10/4/2007) (Entered: 10/04/2007) |
| 10/05/2007 | 12 | ANSWER to Complaint *Answer of Defendant Wells Fargo Bank, N.A., to Plaintiffs' Complaint* by Wells Fargo Bank N.A.. (Reidy, David) (Filed on 10/5/2007) (Entered: 10/05/2007) |
| 10/05/2007 | 13 | Certificate of Interested Entities by David S. Reidy *Corporate Disclosure and Certificate of Interested Parties of Defendant Wells Fargo Bank, N.A.* (Reidy, David) (Filed on 10/5/2007) (Entered: 10/05/2007) |
| 10/09/2007 | 14 | ORDER by Judge Martin J. Jenkins granting 9 Motion for Pro Hac Vice of Samuel H. Rudman. (rbe, COURT STAFF) (Filed on 10/9/2007) (Entered: 10/09/2007) |
| | | |

| 10/09/2007 | 15 | ORDER by Judge Martin J. Jenkins granting 10 Motion for Pro Hac Vice of Mark S. Reich. (rbe, COURT STAFF) (Filed on 10/9/2007) (Entered: 10/09/2007) |
|---|---|---|
| 10/09/2007 | 16 | ORDER by Judge Martin J. Jenkins granting 11 Motion for Pro Hac Vice of Robert M. Rothman. (rbe, COURT STAFF) (Filed on 10/9/2007) (Entered: 10/09/2007) |
| 10/10/2007 | 17 | **\*\*\* FILED IN ERROR. PLEASE SEE DOCKET # 23 ; . \*\*\*** Statement of Non-Opposition re 8 MOTION to Relate Case filed by Wells Fargo Bank N.A.. (Related document(s) 8 ) (Reidy, David) (Filed on 10/10/2007) Modified on 10/25/2007 (ewn, COURT STAFF). **DOCUMENT REMOVED PURSUANT TO ORDER 27 .** Modified on 11/5/2007 (slh, COURT STAFF). (Entered: 10/10/2007) |
| 10/12/2007 | 18 | ORDER RELATING CASES 07-3880 MJJ and C07-4309 EMC by Judge Martin J. Jenkins; granting 8 Motion to Relate Case. (ls, COURT STAFF) (Filed on 10/12/2007) (Entered: 10/15/2007) |
| 10/16/2007 | 19 | ADR Certification (ADR L.R. 3-5b) of discussion of ADR options *for Plaintiffs Nancy and Johnny Jeffries* (Reich, Mark) (Filed on 10/16/2007) (Entered: 10/16/2007) |
| 10/16/2007 | 20 | NOTICE of need for ADR Phone Conference (ADR L.R. 3-5 d) (Reich, Mark) (Filed on 10/16/2007) (Entered: 10/16/2007) |
| 10/23/2007 | 21 | Ex Parte Application re 2 ADR Scheduling Order *Ex Parte Motion to Modify Case Management Order; Declaration of David S. Reidy in Support Thereof* filed by Wells Fargo Bank N.A.. (Reidy, David) (Filed on 10/23/2007) (Entered: 10/23/2007) |
| 10/23/2007 | 22 | Proposed Order re 21 Ex Parte Application re 2 ADR Scheduling Order *Ex Parte Motion to Modify Case Management Order; Declaration of David S. Reidy in Support Thereof* by Wells Fargo Bank N.A.. (Reidy, David) (Filed on 10/23/2007) (Entered: 10/23/2007) |
| 10/23/2007 | 23 | Statement of Non-Opposition re 17 Statement of Non-Opposition *Qualified Non-Opposition of Defendant Wells Fargo Bank, N.A., to Plaintiffs' Administrative Motion to Consider Whether Cases Should be Related - filed to replace docket 17 filed in error* filed by Wells Fargo Bank N.A.. (Related document(s) 17 ) (Reidy, David) (Filed on 10/23/2007) Modified on 10/24/2007 (ewn, COURT STAFF). Modified on 10/25/2007 (ewn, COURT STAFF). (Entered: 10/23/2007) |
| 10/25/2007 | 24 | MOTION to Remove Incorrectly Filed Document filed by Wells Fargo Bank N.A.. (Reidy, David) (Filed on 10/25/2007) (Entered: 10/25/2007) |
| 10/30/2007 | 25 | STIPULATION by Wells Fargo Bank N.A.. (Reidy, David) (Filed on 10/30/2007) (Entered: 10/30/2007) |
| 10/30/2007 | 26 | STIPULATION and ORDER by Judge Martin J. Jenkins granting 21 Ex Parte Application. The case management conference is continued to 12/18/07 at 2:00 PM. (rbe, COURT STAFF) (Filed on 10/30/2007) (Entered: 10/30/2007) |

| 11/01/2007 | 27 | ORDER by Judge Martin J. Jenkins granting 24 Motion to Remove Incorrectly Filed Document. (rbe, COURT STAFF) (Filed on 11/1/2007) (Entered: 11/01/2007) |
|---|---|---|
| 11/05/2007 | 28 | MOTION of Gary Klein for leave to appear in Pro Hac Vice (Filing fee $ 210, receipt number 34611012155) filed by Nancy Jeffries, Johnny Jeffries. (slh, COURT STAFF) (Filed on 11/5/2007) (Entered: 11/06/2007) |
| 11/05/2007 | 29 | MOTION of Shennan Kavanagh for leave to appear in Pro Hac Vice (Filing fee $ 210, receipt number 34611012155) filed by Nancy Jeffries, Johnny Jeffries. (slh, COURT STAFF) (Filed on 11/5/2007) (Entered: 11/06/2007) |
| 11/05/2007 | 30 | CERTIFICATE OF SERVICE by Nancy Jeffries, Johnny Jeffries re 28 MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 210, receipt number 3461101215.), 29 MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 210, receipt number 3461101215.) (slh, COURT STAFF) (Filed on 11/5/2007) (Entered: 11/06/2007) |
| 11/19/2007 | 31 | ORDER by Judge Martin J. Jenkins GRANTING 28 Motion for Pro Hac Vice admission of attorney Gary Klein. (slh, COURT STAFF) (Filed on 11/19/2007) (Entered: 11/20/2007) |
| 11/19/2007 | 32 | ORDER by Judge Martin J. Jenkins GRANTING 29 Motion for Pro Hac Vice admission of attorney Shennan Kavanagh. (slh, COURT STAFF) (Filed on 11/19/2007) (Entered: 11/20/2007) |
| 12/05/2007 | 35 | CERTIFICATE OF SERVICE by Nancy Jeffries, Johnny Jeffries re 32 Order on Motion for Pro Hac Vice. (slh, COURT STAFF) (Filed on 12/5/2007) (Entered: 12/11/2007) |
| 12/10/2007 | 33 | ADR Clerks Notice Setting ADR Phone Conference on 12/17/07 at 11:00 a.m. Please take note that plaintiff's counsel initiates the call to all parties. (tjs, COURT STAFF) (Filed on 12/10/2007) (Entered: 12/10/2007) |
| 12/11/2007 | 34 | JOINT CASE MANAGEMENT STATEMENT *Joint Rule 26(F) Report and Case Management Conference Statement* filed by Wells Fargo Bank N.A.. (Reidy, David) (Filed on 12/11/2007) (Entered: 12/11/2007) |
| 12/17/2007 |  | ADR Remark: ADR Phone Conference conducted on 12/17/07 by DB. (tjs, COURT STAFF) (Filed on 12/17/2007) (Entered: 12/17/2007) |
| 12/18/2007 | 36 | Minute Entry: Initial Case Management Conference held on 12/18/2007 before Judge Martin J. Jenkins. Telephonic Status Conference set for 2/26/2008 01:45 PM in Courtroom 11, 19th Floor, San Francisco. (not reported) (rbe, COURT STAFF) (Date Filed: 12/18/2007) (Entered: 12/18/2007) |

| PACER Service Center |
|---|
| Transaction Receipt |
|  |

|  |  | 12/26/2007 12:35:25 |  |
|---|---|---|---|
| **PACER Login:** | rs0055 | **Client Code:** | 843455/60047/5151 |
| **Description:** | Docket Report | **Search Criteria:** | 3:07-cv-03880-MJJ |
| **Billable Pages:** | 4 | **Cost:** | 0.32 |

ADRMOP, E-Filing, PRVADR, RELATE

# U.S. District Court
## California Northern District (San Francisco)
## CIVIL DOCKET FOR CASE #: 3:07-cv-04309-MJJ

Ventura et al v. Wells Fargo Bank NA
Assigned to: Hon. Martin J. Jenkins
Relate Case Case: 3:07-cv-03880-MJJ
Cause: 42:405 Fair Housing Act

Date Filed: 08/21/2007
Jury Demand: None
Nature of Suit: 443 Civil Rights:
Accomodations
Jurisdiction: Federal Question

**Plaintiff**

**Gilbert Ventura, Sr.**

represented by **Andrew S. Friedman**
Bonnett Fairbourn Friedman & Balint,
P.C
2901 N. Central Avenue
Suite 1000
Phoenix, AZ 85012
602-274-1100
Fax: 602-274-1199
Email: afriedman@bffb.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark Andrew Chavez**
Chavez & Gertler LLP
42 Miller Avenue
Mill Valley, CA 93941
415-381-5599
Fax: 415-381-5572
Email: mark@chavezgertler.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wendy Jacobsen Harrison**
Bonnett, Fairbourn, Friedman & Balint,
P.C.
2901 North Central Avenue
Suite 1000
Phoenix, AZ 85012
602-274-1100
Fax: 602-274-1199
Email: wharrison@bffb.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Nance Felice Becker
Chavez & Gertler LLP
42 Miller Avenue
Mill Valley, CA 94941
415-381-5599
Fax: 415-381-5572
Email: nance@chavezgertler.com
*ATTORNEY TO BE NOTICED*

Theodore Joseph Pintar
Coughlin Stoia Geller Rudman &
Robbins LLP
655 West Broadway
Suite 1900
San Diego, CA 92101
(619) 231-1058
Fax: 619-231-7423
Email: TedP@csgrr.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Tracy D. Ventura**                  represented by  **Andrew S. Friedman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark Andrew Chavez**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wendy Jacobsen Harrison**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nance Felice Becker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Theodore Joseph Pintar**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Wells Fargo Bank NA**              represented by  **David S. Reidy**
Attorney at Law

Two Embarcadero Center
Suite 2000
San Francisco, CA 94111
(415) 659-5933
Email: dreidy@reedsmith.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/21/2007 | 1 | COMPLAINT; summons issued against Wells Fargo Bank NA (Filing fee $ 350, receipt number 34611009684). Filed by Gilbert Ventura, Sr, Tracy D. Ventura. (slh, COURT STAFF) (Filed on 8/21/2007) Additional attachment(s) added on 11/7/2007 (sv, COURT STAFF). Additional attachment(s) added on 11/13/2007 (slh, COURT STAFF). (Entered: 08/22/2007) |
| 08/21/2007 | 2 | Administrative MOTION to Consider Whether Case Should be Related filed by Gilbert Ventura, Sr, Tracy D. Ventura. (slh, COURT STAFF) (Filed on 8/21/2007) (Entered: 08/22/2007) |
| 08/21/2007 | 3 | ADR SCHEDULING ORDER: Case Management Statement due by 11/21/2007. Case Management Conference set for 11/28/2007 01:30 PM. (Attachments: # 1 EMC Standing Order; # 2 Case Management Standing Order)(slh, COURT STAFF) (Filed on 8/21/2007) (Entered: 08/22/2007) |
| 08/21/2007 | | CASE DESIGNATED for Electronic Filing. (slh, COURT STAFF) (Filed on 8/21/2007) (Entered: 08/22/2007) |
| 09/13/2007 | 5 | MOTION of Andrew S. Friedman for leave to appear in Pro Hac Vice (Filing fee $ 210, receipt number 34611010492) filed by Gilbert Ventura, Sr, Tracy D. Ventura. (slh, COURT STAFF) (Filed on 9/13/2007) (Entered: 09/14/2007) |
| 09/14/2007 | 4 | ORDER GRANTING APPLICATION FOR ADMISSION OF ATTORNEY PRO HAC VICE (ANDREW S. FRIEDMAN). Signed by Judge Edward M. Chen on 9/14/07. (bpf, COURT STAFF) (Filed on 9/14/2007) (Entered: 09/14/2007) |
| 09/26/2007 | 6 | STIPULATION *Stipulation Extending Time for Defendant Wells Fargo Bank, N.A. to Respond to Complaint* by Wells Fargo Bank NA. (Reidy, David) (Filed on 9/26/2007) (Entered: 09/26/2007) |
| 09/27/2007 | 7 | ORDER re 6 Stipulation filed by Wells Fargo Bank NA. Signed by Judge Edward M. chen on 9/27/07. (bpf, COURT STAFF) (Filed on 9/27/2007) (Entered: 09/27/2007) |
| 10/05/2007 | 8 | ANSWER to Complaint *Answer of Defendant Wells Fargo Bank, N.A., to Plaintiffs' Complaint* by Wells Fargo Bank NA. (Reidy, David) (Filed on 10/5/2007) (Entered: 10/05/2007) |
| 10/05/2007 | 9 | Certificate of Interested Entities by David S. Reidy *Corporate Disclosure and Certificate of Interested Parties of Defendant Wells Fargo Bank,* |

| | | |
|---|---|---|
| | | *N.A.* (Reidy, David) (Filed on 10/5/2007) (Entered: 10/05/2007) |
| 10/12/2007 | 10 | ORDER RELATING CASES C07-3880 MJJ AND C07-4309 EMC by Judge Martin J. Jenkins granting 2 Motion to Relate Case. (ls, COURT STAFF) (Filed on 10/12/2007) (Entered: 10/15/2007) |
| 10/17/2007 | | Case Reassigned to Judge Martin J. Jenkins and Martin J. Jenkins. Judge Edward M. Chen no longer assigned to the case. (as, COURT STAFF) (Filed on 10/17/2007) (Entered: 10/17/2007) |
| 10/18/2007 | 11 | CLERK'S NOTICE: Initial Case Management Conference set for 12/18/2007 02:00 PM. (rbe, COURT STAFF) (Filed on 10/18/2007) (Entered: 10/18/2007) |
| 10/30/2007 | 12 | NOTICE of Appearance by Theodore Joseph Pintar *and John J. Stoia, Jr.* (Pintar, Theodore) (Filed on 10/30/2007) (Entered: 10/30/2007) |
| 11/02/2007 | 13 | CLERK'S NOTICE re: Failure to E-File. (sv, COURT STAFF) (Filed on 11/2/2007) (Entered: 11/02/2007) |
| 11/08/2007 | 14 | NOTICE by Gilbert Ventura, Sr, Tracy D. Ventura *Setting CMC on Reassignment* (Becker, Nance) (Filed on 11/8/2007) (Entered: 11/08/2007) |
| 11/20/2007 | 15 | ADR Certification (ADR L.R. 3-5b) of discussion of ADR options (Attachments: # 1 Signature Page (Declarations/Stipulations))(Harrison, Wendy) (Filed on 11/20/2007) (Entered: 11/20/2007) |
| 11/21/2007 | 16 | ADR Certification (ADR L.R. 3-5b) of discussion of ADR options *ADR Certification by Parties and Counsel* (Reidy, David) (Filed on 11/21/2007) (Entered: 11/21/2007) |
| 11/21/2007 | 17 | STIPULATION *STIPULATION RE SELECTING ADR PROCESS* by Wells Fargo Bank NA. (Reidy, David) (Filed on 11/21/2007) (Entered: 11/21/2007) |
| 11/27/2007 | 18 | STIPULATION and ORDER selecting ADR process. REFERRING CASE to Private ADR. Signed by Judge Martin J. Jenkins on 11/26/07. (rbe, COURT STAFF) (Filed on 11/27/2007) (Entered: 11/27/2007) |
| 12/07/2007 | 19 | JOINT CASE MANAGEMENT STATEMENT *Joint Rule 26(F) Report and Case Management Conference Statement* filed by Wells Fargo Bank NA. (Reidy, David) (Filed on 12/7/2007) (Entered: 12/07/2007) |
| 12/11/2007 | 20 | STIPULATION *Stipulation and [Proposed] Protective Order Regarding Private Consumer Information* by Wells Fargo Bank NA. (Reidy, David) (Filed on 12/11/2007) (Entered: 12/11/2007) |
| 12/11/2007 | 21 | STIPULATION *Stipulation and [Proposed] Protective Order Regarding Confidential and Trade Secret Information* by Wells Fargo Bank NA. (Reidy, David) (Filed on 12/11/2007) (Entered: 12/11/2007) |
| 12/17/2007 | 22 | ORDER REGARDING PROTECTIVE ORDER. Signed by Judge Martin J. Jenkins on 12/17/2007. (mjjlc1, COURT STAFF) (Filed on 12/17/2007) (Entered: 12/17/2007) |

| 12/17/2007 | 23 | ORDER REGARDING PROTECTIVE ORDER. Signed by Judge Martin J. Jenkins on 12/17/2007. (mjjlc1, COURT STAFF) (Filed on 12/17/2007) (Entered: 12/17/2007) |
| 12/18/2007 | 24 | Minute Entry: Initial Case Management Conference held on 12/18/2007 before Judge Martin J. Jenkins. Telephonic Status Conference set for 2/26/2008 01:45 PM in Courtroom 11, 19th Floor, San Francisco. (not reported) (rbe, COURT STAFF) (Date Filed: 12/18/2007) (Entered: 12/18/2007) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 12/26/2007 12:52:42 | | |
| PACER Login: | rs0055 | Client Code: | 843455/60047/5151 |
| Description: | Docket Report | Search Criteria: | 3:07-cv-04309-MJJ |
| Billable Pages: | 3 | Cost: | 0.24 |

VALDEZ

# United States District Court
## Northern District of Illinois - CM/ECF LIVE, Ver 3.0 (Chicago)
## CIVIL DOCKET FOR CASE #: 1:07-cv-06342

Williams v. Wells Fargo Bank, N.A.                 Date Filed: 11/08/2007
Assigned to: Honorable Samuel Der-Yeghiayan        Jury Demand: Plaintiff
Cause: 42:1983 Civil Rights Act                    Nature of Suit: 440 Civil Rights: Other
                                                   Jurisdiction: Federal Question

## Plaintiff

**Judy Williams**                    represented by   **Joseph A. Weeden**
*individually and on behalf of all others*           Schiffrin,Barroway, Topaz & Kessler,
*similarly situated*                                 LLP
                                                     280 King of Prussia Road
                                                     Radnor, PA 19807
                                                     (610) 667-7706
                                                     Email: jweeden@sbtklaw.com
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Bruce C. Howard**
                                                     Robert D. Allison & Associates
                                                     122 South Michigan Avenue
                                                     Suite 1850
                                                     Chicago, IL 60603
                                                     (312) 427-7600
                                                     Email: bchoward@ix.netcom.com
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Edward W Ciolko**
                                                     Schiffrin, Barroway, Topaz & Kessler,
                                                     LLP
                                                     280 King of Prussia Road
                                                     Radnor, PA 19807
                                                     (610) 667-7706
                                                     Email: eciolko@sbclasslaw.com
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Robert D. Allison**
                                                     Robert D. Allison & Associates
                                                     122 S. Michigan Avenue
                                                     Ste 1850
                                                     Chicago, IL 60603
                                                     427-4500
                                                     Email: rdalaw@ix.netcom.com
                                                     *ATTORNEY TO BE NOTICED*

**Steven Paul Schneck**
Robert D. Allison & Associates
122 South Michigan Ave.
Suite 1850
Chicago, IL 60603
(312) 427-7600
Email: spschneckjazzlaw@yahoo.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Wells Fargo Bank, N.A.**                   represented by   **David Zev Smith**
Reed Smith LLP
10 South Wacker Drive
40th Floor
Chicago, IL 60606
(312) 207-1000
Email: dzsmith@reedsmith.com
*ATTORNEY TO BE NOTICED*

**Robert D. Phillips, Jr.**
Reed Smith LLP
Two Embarcadero Center
Suite 2000
San Francisco, CA 94111
(415) 543-8700
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/08/2007 | 1 | COMPLAINT filed by Judy Williams; Jury Demand. Filing fee $ 350. (mjc, ) (Entered: 11/13/2007) |
| 11/08/2007 | 2 | CIVIL Cover Sheet. (mjc, ) (Entered: 11/13/2007) |
| 11/08/2007 | 3 | ATTORNEY Appearance for Plaintiff Judy Williams by Joseph A. Weeden. (mjc, ) (Entered: 11/13/2007) |
| 11/08/2007 | 4 | ATTORNEY Appearance for Plaintiff Judy Williams by Robert D. Allison. (mjc, ) (Entered: 11/13/2007) |
| 11/08/2007 | 5 | ATTORNEY Appearance for Plaintiff Judy Williams by Bruce C. Howard. (mjc, ) (Entered: 11/13/2007) |
| 11/08/2007 | 6 | ATTORNEY Appearance for Plaintiff Judy Williams by Steven Paul Schneck. (mjc, ) (Entered: 11/13/2007) |
| 11/08/2007 | 8 | SUMMONS Issued as to Defendant Wells Fargo Bank, N.A. (mjc, ) (Entered: 11/13/2007) |
| | | |

| 11/14/2007 | 11 | MINUTE entry before Judge Samuel Der-Yeghiayan: Initial status hearing set for 1/9/2008 at 9:00 A.M. At least four working days before the initial status hearing, the parties shall conduct a FRCP 26(f) conference and file a joint written Initial Status Report, not to exceed five pages in length, and file the Court's Joint Jurisdictional Status Report and deliver courtesy copies to this Court's chambers three(3) days before the initial status hearing. The Court's standing orders on the Initial Status Report and Joint Jurisdictional Status Report may be obtained from Judge Der-Yeghiayan's web page or from this Court's Courtroom Deputy. Mailed notice by judge's staff. (srb,) (Entered: 11/19/2007) |
|---|---|---|
| 11/15/2007 | 9 | ATTORNEY Appearance by Plaintiff Judy Williams. (mjc, ) (Entered: 11/19/2007) |
| 11/15/2007 | 10 | ATTORNEY Appearance for Plaintiff Judy Williams by Edward W Ciolko. (mjc, ) (Entered: 11/19/2007) |
| 11/28/2007 | 12 | CERTIFICATE of Service by Plaintiff Judy Williams *of Summons and Class Action Complaint on Defendant* (Ciolko, Edward) (Entered: 11/28/2007) |
| 12/06/2007 | 13 | ATTORNEY Appearance for Defendant Wells Fargo Bank, N.A. by David Zev Smith (Smith, David) (Entered: 12/06/2007) |
| 12/06/2007 | 14 | MOTION by Defendant Wells Fargo Bank, N.A. for extension of time to file answer *(AGREED)* (Smith, David) (Entered: 12/06/2007) |
| 12/06/2007 | 15 | NOTICE of Motion by David Zev Smith for presentment of motion for extension of time to file answer 14 before Honorable Samuel Der-Yeghiayan on 12/11/2007 at 09:00 AM. (Smith, David) (Entered: 12/06/2007) |
| 12/11/2007 | 16 | MINUTE entry before Judge Samuel Der-Yeghiayan :Defendant's agreed motion for extension of time to respond to plaintiff's complaint is granted to and including 01/04/08. Initial status hearing reset to 01/16/08 at 9:00 a.m. Status hearing set for 01/09/08 is stricken. Mailed notice (mw, ) (Entered: 12/11/2007) |
| 12/13/2007 | 17 | APPLICATION for Leave to Appear Pro Hac Vice on behalf of Wells Fargo Bank, N.A. by Robert D. Phillips, Jr; Order entered granting leave by Judge Samuel Der-Yeghiayan. Filing fee $ 50 paid, receipt number 1115783. (mjc, ) (Entered: 12/18/2007) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 12/26/2007 14:40:45 | | |
| **PACER Login:** | rs0055 | **Client Code:** | 843455/60047/5151 |
| **Description:** | Docket Report | **Search Criteria:** | 1:07-cv-06342 |
| **Billable Pages:** | 2 | **Cost:** | 0.16 |

Case 3:07-cv-02063-MMC    Document 3-17    Filed 08/20/2008    Page 2 of 8

(AJWx), DISCOVERY, MANADR

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## (Western Division - Los Angeles)
## CIVIL DOCKET FOR CASE #: 2:07-cv-06780-CAS-AJW

Juan Rodriguez et al v. Wells Fargo Bank, N.A.
Assigned to: Judge Christina A. Snyder
Referred to: Magistrate Judge Andrew J. Wistrich
Cause: 15:1681 Fair Credit Reporting Act

Date Filed: 10/18/2007
Jury Demand: Plaintiff
Nature of Suit: 480 Consumer Credit
Jurisdiction: Federal Question

**Plaintiff**

**Juan Rodriguez**
*individually, and on the class of all
others similarly situated*

represented by **Timothy P Dillon**
Timothy P Dillon Law Offices
361 Forest Avenue, Suite 205
Laguna Beach, CA 92651
949-376-2800
Email: timothy@dillonlaw.net
*LEAD ATTORNEY
ATTORNEY TO BE NOTICED*

**Plaintiff**

**Josefina Rodriguez**
*individually, and on the class of others
similarly situated*

represented by **Timothy P Dillon**
(See above for address)
*LEAD ATTORNEY
ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Wells Fargo Bank, N.A.**

| Date Filed | # | Docket Text |
|---|---|---|
| 10/18/2007 | 1 | COMPLAINT against Defendant Wells Fargo Bank, N.A. (Filing fee $ 350 PAID.) Jury Demanded., filed by Plaintiffs Juan Rodriguez, Josefina Rodriguez. (et) (Entered: 10/29/2007) |
| 10/18/2007 | | 20 DAY Summons Issued re Complaint - (Discovery) [1] as to Wells Fargo Bank, N.A. (et) (Entered: 10/29/2007) |
| 10/18/2007 | 2 | CERTIFICATION AND NOTICE of Interested Parties filed by Plaintiffs Juan Rodriguez, Josefina Rodriguez. (et) (Entered: 10/29/2007) |
| 10/18/2007 | 3 | NOTICE TO PARTIES OF ADR PILOT PROGRAM filed. (et) (Entered: 10/29/2007) |
| | | |

Case 2:08-mc-00264-JWL Document 17    Filed 04/30/2008    Page 9 of 9

| 10/18/2007 | | FAX number for Attorney Timothy P Dillon is 949-376-2808. (et) (Entered: 10/29/2007) |
| 10/25/2007 | 4 | NOTICE TO COUNSEL by Judge Christina A. Snyder: This case has been assigned to the calendar of Judge Christina A. Snyder. Counsel are advised that the Court expects strict compliance with the provisions of the Local Rules and the Federal Rules of Civil Procedure. See document for details. (gk) (Entered: 10/29/2007) |

| PACER Service Center | | | |
| --- | --- | --- | --- |
| Transaction Receipt | | | |
| 12/26/2007 12:39:29 | | | |
| PACER Login: | rs0055 | Client Code: | 843455/60047/5151 |
| Description: | Docket Report | Search Criteria: | 2:07-cv-06780-CAS-AJW |
| Billable Pages: | 2 | Cost: | 0.16 |

**EXHIBIT A**

**Before the Judicial Panel on Multidistrict Litigation**
**MDL-___ - In re Wells Fargo Mortgage Lending Practices Litigation**

### SCHEDULE OF ACTIONS

| Name of Action | District Court and Division | Civil Number | Judge (if assigned) |
|---|---|---|---|
| Nancy and Johnny Jeffries on Behalf of Themselves and All Others Similarly Situated v. Wells Fargo Bank, N.A. and Mortgage Direct, Inc. | United States District Court for the Northern District of California (San Francisco Division) | 07cv3880 | Hon. Martin J. Jenkins |
| Gilbert Ventura, Sr. and Tracy D. Ventura v. Wells Fargo Bank, N.A. | United States District Court for the Northern District of California (San Francisco Division) | 07cv4309 | Hon. Martin J. Jenkins |
| Judy Williams, individually and on behalf of all others similarly situated v. Wells Fargo Bank, N.A. | United States District Court for the Northern District of Illinois (Eastern Division) | 07cv6342 | Hon. Samuel Der-Yeghiayan |
| Juan Rodriguez and Josefina Rodriguez, individually, and on the class of all others similarly situated v. Wells Fargo Bank, N.A. | United States District Court for the Central District of California (Western Division) | 07cv6780 | Hon. Christina A. Snyder |

BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

In re: Wells Fargo Mortgage Lending Practices : MDL No.: 1836
Litigation                                         :
                                                       :
                                                       :

## **EXHIBIT VOLUME**

**[IN SUPPORT OF MOTION OF WELLS FARGO BANK, N.A. UNDER 28 U.S.C. § 1407 TO TRANSFER FOR CONSOLIDATED AND COORDINATED PRETRIAL PROCEEDINGS]**

Defendants Wells Fargo Bank, N.A. submits the following exhibits in support of its Motion to Transfer for Consolidated and Coordinated Pretrial Proceedings:

A.      Schedule of Actions

B.      Docket sheets from the following cases:

- *Nancy and Johnny Jeffries on Behalf of Themselves and All Others Similarly Situated v. Wells Fargo Bank, N.A. and Mortgage Direct, Inc.*, 07cv3880 (N.D. Cal. 2007)
- *Gilbert Ventura, Sr. and Tracy D. Ventura v. Wells Fargo Bank, N.A.*, 07cv4309 (N.D. Cal. 2007)

- *Judy Williams, individually and on behalf of all others similarly situated v. Wells Fargo Bank, N.A.*, 07cv6342 (N.D. Ill. 2007)

- *Juan Rodriguez and Josefina Rodriguez, individually, and on the class of all others similarly situated v. Wells Fargo Bank, N.A.*, 07cv6780 (C.D. Cal. 2007)

C.     Complaints from the following cases:

- *Nancy and Johnny Jeffries on Behalf of Themselves and All Others Similarly Situated v. Wells Fargo Bank, N.A. and Mortgage Direct, Inc.*, 07cv3880 (N.D. Cal. 2007)

- *Gilbert Ventura, Sr. and Tracy D. Ventura v. Wells Fargo Bank, N.A.*, 07cv4309 (N.D. Cal. 2007)

- *Judy Williams, individually and on behalf of all others similarly situated v. Wells Fargo Bank, N.A.*, 07cv6342 (N.D. Ill. 2007)

- *Juan Rodriguez and Josefina Rodriguez, individually, and on the class of all others similarly situated v. Wells Fargo Bank, N.A.*, 07cv6780 (C.D. Cal. 2007)

Dated: January 3, 2008

David Z. Smith
REED SMITH SACHNOFF & WEAVER
10 South Wacker Drive
40th Floor
Chicago, Illinois 60606-7507
(312) 207 1000
(312) 207 6400 facsimile


REED SMITH LLP

Robert D. Phillips, Jr.
Two Embarcadero Center
Suite 2000
San Francisco, California 94111
(415) 543-8700
(415) 391-8269 facsimile

Attorneys for Defendant Wells Fargo Bank, N.A.

**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

In re: Wells Fargo Mortgage Lending Practices  :  MDL No.: _____
Litigation                                       :
                                                 :
                                                 :

---

**MOTION OF WELLS FARGO, N.A. UNDER 28 U.S.C. § 1407 TO TRANSFER
FOR CONSOLIDATED AND COORDINATED PRETRIAL PROCEEDINGS**

1.　　　Defendant Wells Fargo, N.A. ("Wells Fargo") hereby moves for an Order for

Consolidation and Transfer of those cases listed on Exhibit A of the Exhibit Volume to a United

States District Court with the capacity and experience necessary to handle the litigation.

2.　　　Pursuant to Rule 7.2 of the Rules of Procedures of the Judicial Panel on

Multidistrict Litigation, a Schedule of Actions is submitted herewith as Exhibit A in the

accompanying Exhibit Volume.  The complaints and docket sheets in the actions for which

transfer is sought are submitted herewith as Exhibits B (complaints) and C (docket sheets) to the

Exhibit Volume.

3.      As set forth more fully in the accompanying brief, as of the date of this filing, at least four separate putative class actions involving allegations of discriminatory lending practices against Wells Fargo have been filed in various federal courts since July 2007.

4.      All of the actions are against the same principal defendant, Wells Fargo Bank, N.A., and they share allegations that plaintiffs were injured as a result of alleged lending practiced by Wells Fargo. The plaintiffs allege in each action that Wells Fargo adopted and intentionally employed a practice of discriminating against plaintiffs on the basis of their race in the financing of residential home purchases. Specifically, the actions claim that, in addition to objective criteria used to determine the cost of a home mortgage loan, Wells Fargo used discretionary fees and charges to increase the cost of financing. The plaintiffs allege that such practices result in minority borrowers having higher loans that similarly situation non-minority borrowers. Each action contends that such practices are in violation of the Equal Credit Opportunity Act and the Fair Housing Act. Three of the four complaints also allege that the practices violate the Civil Rights Act, Sections 1981 and 1982.

5.      Additionally, the plaintiffs in each action seek class certification and purport to represent similar classes of people. Three actions seek certification of classes comprising minority homeowners in the United States who have been subjected to and harmed by allegedly discriminatory practices by Wells Fargo in obtaining their residential mortgage loans. The fourth action seeks certification of essentially the same class, but limited to African-American borrowers.

6.      The earliest action, *Jeffries v. Wells Fargo Bank, N.A. et al.*, was filed in the United States District Court for the Northern District of California on July 30, 2007.

2

7.    Since then, three additional putative class action cases have been filed in federal court against Wells Fargo:  (1) *Ventura v. Wells Fargo Bank, N.A.*, filed on August 21, 2007 also in the United States District Court for the Northern District of California; (2) *Rodriguez v. Wells Fargo Bank, N.A.*, filed in the United States District Court for the Central District of California on October 18, 2007 (but as of the date of this motion, has not yet been served); and (3) *Williams v. Wells Fargo Bank, N.A.*, filed on November 8, 2007 in the Northern District of Illinois.

8.    Plaintiffs Nancy and Johnny Jeffries and Plaintiff Judy Williams reside in Chicago, Illinois.  Plaintiffs Juan and Josefina Rodriguez reside in Los Angeles, California. Plaintiffs Gilbert and Tracy Ventura reside in Casa Grande, Arizona.  Among the four actions, none of the plaintiffs resides within the Northern District of California.

9.    Plaintiffs have sued Wells Fargo Bank N.A. alleging discriminatory residential mortgage lending practices.  The Wells Fargo division that engages is the business of residential mortgage lending is Wells Fargo Home Mortgage, which is headquartered and has its principle place of business in Des Moines, Iowa.

10.    As explained more fully in the accompanying memorandum of points and authorities supporting this motion, coordination of these actions for pretrial discovery proceedings will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the actions.

11.    Coordinated pretrial proceedings will permit coordinated discovery, which would allow all plaintiffs access to relevant witnesses and documents while also avoiding duplication of efforts.

12.     Coordination for pretrial proceedings also would prevent inconsistent pretrial rulings (potentially including on the issue of class certification) and conserve the resources of the parties, their counsel, and the judiciary.

13.     As explained more fully in the accompanying memorandum, the following districts emerge as potential transferee districts:  the Northern District of Illinois, the Southern District of Iowa, the Northern District of California, the Central District of California, and the District of Arizona.  There currently are cases pending in three of these districts: the Northern District of Illinois, and the Northern and Central Districts of California.

14.     As explained more fully in the accompanying memorandum, the Northern District of Illinois is the most appropriate transferee district.  One of the actions – *Williams v. Wells Fargo Bank, N.A.* – is already pending in the Northern District of Illinois, and the district embraces the geographical area where two of the plaintiffs (Jeffries and Williams) reside and where the Jeffries and Williams loan transactions occurred.  Moreover, the Northern District of Illinois has favorable docket conditions and is the only district among those listed above which currently has multidistrict litigation related to mortgage lending practices.  Finally, Wells Fargo's principal place of business is nearby in Des Moines, Iowa.

15.     The Southern District of Iowa is also a suitable transferee district, because it embraces the geographical area where Wells Fargo Home Mortgage is headquartered and where potentially relevant witnesses and documents are located.  None of the four actions is pending in the Southern District of Iowa.

4

16.    The Central District of California embraces the geographical area where one alleged loan transaction occurred and where plaintiffs in one of the four actions reside.  There is one action pending in the Central District of California, *Rodriguez v. Wells Fargo Bank, N.A.*

17.    The District of Arizona embraces the geographical area where one alleged loan transaction occurred and where plaintiffs in one of the four actions reside.  None of the four actions is pending in the District of Arizona.

18.    There is no known connection between any of the four actions and the Northern District of California, other than the location of counsel in the two actions pending in that district, *Jeffries v. Wells Fargo Bank, N.A.* and *Ventura v. Wells Fargo Bank, N.A.*  No plaintiff resides within the Northern District of California, and no alleged loan transactions occurred within the Northern District of California.  Contrary to the allegations of the complaints, the Wells Fargo home mortgage business is headquartered in Des Moines, not San Francisco.

19.    The first scheduled trial is tentatively set in *Jeffries v. Wells Fargo Bank, N.A.* for November 2009, in the Northern District of California.

20.    A copy of this motion, the memorandum in support, and the accompanying Exhibit Volume was served on each party to each action set forth in the Schedule of Actions, and a copy has been filed in each district court in which an action potentially affected by this motion is pending.

Dated: January 3, 2008

David Z. Smith
REED SMITH SACHNOFF & WEAVER
10 South Wacker Drive
40th Floor
Chicago, Illinois 60606-7507
(312) 207 1000
(312) 207 6400 facsimile


REED SMITH LLP

_Robert D. Phillips, Jr._
Robert D. Phillips, Jr.
Two Embarcadero Center
Suite 2000
San Francisco, California 94111
(415) 543-8700
(415) 391-8269 facsimile

Attorneys for Defendant Wells Fargo Bank, N.A.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JUDY WILLIAMS, individually and on behalf of all others similarly situated,<br><br>              Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A.<br><br>              Defendant. | CASE NO.:  07-cv-6342<br><br><br><br>**NOTICE OF MOTION** |

TO:    David Zev Smith, Esq.            Robert D. Phillips, Jr., Esq.
          Reed Smith, LLP                 Reed Smith, LLP
          10 South Wacker Drive,       Two Embarcadero Center
          40th Floor                       Suite 2000
          Chicago, IL  60606            San Francisco, CA  94111

PLEASE TAKE NOTICE that on Wednesday, March 26, 2008, at 9:30 a.m. or as soon thereafter as counsel may be heard, the undersigned shall appear before the Honorable Samuel Der-Yeghiayan or any other Judge sitting in his place in the courtroom usually occupied by him in Room 1903 of the Everett McKinley Dirksen Building, 219 South Dearborn Street, Chicago, IL 60604, and shall then and there present the attached Motion of Plaintiff to Dismiss.

Dated: March 19, 2008            Respectfully submitted,

                                    **SCHIFFRIN BARROWAY**
                                    **TOPAZ & KESSLER, LLP**

                           ___*/s/ Edward W. Ciolko*____
                           Joseph H. Meltzer
                           Edward W. Ciolko
                           Katherine B. Bornstein

Joseph A. Weeden
280 King of Prussia Road
Radnor, Pennsylvania 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

**ROBERT D. ALLISON & ASSOCIATES**
Robert D. Allison, I.D. #36749
Bruce C. Howard
Steven P. Schneck
122 S. Michigan Ave., Suite 1850
Chicago, IL 60603
Telephone: (312) 427-7600
Facsimile: (312) 427-1850

*Attorneys for Judy Williams*

**ROBERT D. ALLISON &
ASSOCIATES**
Robert D. Allison, I.D. #36749
Bruce C. Howard
Steven P. Schneck
122 S. Michigan Ave., Suite 1850
Chicago, IL 60603
Telephone: (312) 427-7600
Facsimile: (312) 427-1850

*Attorneys for Judy Williams*

# EXHIBIT A

BEFORE THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | |
|---|---|
| In Re: Wells Fargo Lending Mortgage Lending Practices | : MDL Docket No. 1930 : : |

PLAINTIFF JUDY WILLIAMS'S MEMORANDUM IN RESPONSE
TO DEFENDANT WELLS FARGO BANK, N.A.'S MOTION
UNDER 28 U.S.C. § 1407 TO TRANSFER FOR CONSOLIDATED
AND COORDINATED PRETRIAL PROCEEDINGS

I.     INTRODUCTION

Pursuant to the Rules of Procedure for the Judicial Panel on Multidistrict Litigation and the January 8, 2008 correspondence from the Clerk of the Panel, Judy Williams ("Plaintiff" or "Williams"), on behalf of herself and a class of all others similarly situated, respectfully submits this Memorandum in Response to Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo" or "Defendant") Motion Under 28 U.S.C. § 1407 to Transfer for Consolidated and Coordinated Pretrial Proceedings ("Motion").

Plaintiff Williams is the named plaintiff in a putative class action filed against *Wells Fargo* in the United States District Court, Northern District of Illinois, Civil Action No.07cv6342, currently pending before the Honorable Samuel Der-Yeghiayan (the "Williams Action").

The Williams Action, filed on November 8, 2007, alleges violations of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, the Equal Credit Opportunity Act, 15 U.S.C. § 1691, *et seq.*, and the Civil Rights Act, 42 U.S.C. §§ 1981, 1982 *et seq.* Williams asserts, that Wells Fargo has violated those statutes by, *inter alia*, allegedly having an established pattern and practice of discriminating against minority mortgage borrowers, including Williams and the putative class, on the basis of their race in the financing of residential home purchases by giving them mortgages with less favorable terms than it gave to similarly situated non-minority borrowers.

Williams, a resident of Chicago, filed her action in the Northern District of Illinois. Under 28 U.S.C. § 1391(b), venue is appropriate in the Northern District of Illinois because (a) Defendant resides in this district and this division, (b) a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district and this division, and (c) a substantial part of property that is the subject of this action is situated in this district and this division.

Defendants Answered on or about January 4, 2008. Thereafter, the parties met and conferred and timely submitted to the Court: (i) a Joint Initial Status Report; and (ii) a Joint Jurisdictional Status Report, in accordance with Judge Der-Yeghiayan's procedures and Orders. The parties appeared before the Court for a status conference on January 16, 2008. At the status conference, the Court, in light of Defendant's Motion before the Panel, ordered that the parties return on April 29, 2008 (or possibly later, if the Panel has not yet issued its ruling).

Plaintiff, while reserving her right to contest Wells Fargo's specific characterizations in its supporting Memorandum of Law in Support of its Motion ("Def. Mem.," agrees that (1) the related actions should be coordinated given the similarity in claims and the early procedural juncture of each case; and (2) the Northern District of Illinois is an appropriate venue for such coordination due to its relatively central location and the ample capabilities of the district and the Court.

## II    ARGUMENT

Plaintiff concurs with Defendant that: (1) the core allegations underlying each of the purported class actions are common (Def. Mem. at 6-7); (2) litigation before one district judge will serve the convenience of the parties and witnesses (*id.* at 7-8); and (3) the requested consolidation will lead to a just and efficient resolution of the dispute (*id.* at 8-9). Plaintiff Williams further agrees with Defendant that the Northern District of Illinois is the best transferee forum as it is more than capable of managing the actions given its centralized location and sophistication of the Courthouse and clerk's office.

The Northern District of Illinois will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigations. First and foremost, Chicago is a geographically central location for this nationwide litigation. In weighing convenience of all parties, counsel, and witnesses, the Northern District of Illinois would be best for all parties. *See e.g., In re McDonald's French Fries Litig.*, 444 F. Supp. 2d 1342 (J.P.M.L. 2006) ("[G]iven the geographic dispersal of the constituent actions, the Northern District of Illinois offers a relatively geographically central and accessible forum for this litigation."); *In re "Factor VIII or IX Concentrate Blood Prods." Prods. Liab. Litig.*, 853 F. Supp. 454 (J.P.M.L. 1993) (transferring to the Northern District of Illinois for pretrial in products liability actions against blood product

manufacturers because the location was geographically central, the assigned judge had experience trying similar suit, and two of the four defendants were located there); *see also In re Air Crash Disaster at Sioux City*, 128 F.R.D. 131, 132 (J.P.M.L. 1989) (concluding that the Northern District of Illinois, and not the Eastern District of Pennsylvania, Northern District of Ohio, Northern District of California or Central District of California of California, was the appropriate transferee forum because it was conveniently located for many parties and witnesses.)

Two of the four plaintiffs in the respective actions subject to Defendants' motion are residents of Chicago and have counsel in Chicago. Def. Mem. at 6. Furthermore, the majority of documents related to Plaintiffs' claims, as well as party witnesses, are located in the neighboring state of Iowa. Def. Mem. at 11. Wells Fargo Home Mortgage's headquarters and principal place of business is located in Iowa, which is conveniently located in close proximity to the Northern District of Illinois. Def. Mem. at 6. Defendant anticipates, and Plaintiff Williams agrees, that written discovery requests, as well as notices of depositions regarding Wells Fargo's home mortgage business, will be directed to corporate witnesses located in Iowa. Def. Mem. at 8. Thus, the Northern District of Illinois is close to where many witnesses and documents will be located. Defendant, which seeks to transfer all proceedings to the Northern District of Illinois, has obviously taken these factors into consideration in requesting the Panel to transfer these related actions to the Northern District of Illinois.

Moreover, the Northern District of Illinois is located in Chicago, one of the country's largest cities with all of the conveniences attendant thereto. For example, Chicago is a transportation hub with two major international airports. O'Hare International Airport ("O'Hare"), one of the busiest airports in the world, is a major airport serving numerous

4

domestic and international destinations, with many direct flights from both coasts. O'Hare is a hub for United Airlines and American Airlines. Chicago Midway International Airport ("Midway") is a major hub for Southwest Airlines, as well as a focus city for ATA Airlines and AirTran Airways, all of which offer budget-minded travel options. With two major airports, Chicago is the most convenient centralized location for parties, attorneys and witnesses, many of whom are located across the country and will need to fly to the District that the Panel selects for this litigation.

The Southern District of Iowa would not be convenient for a large number of parties and witnesses, especially the plaintiffs. With all due respect, the airport in Des Moines is a relatively small operation. As opposed to the two major metropolitan airports servicing Chicago, Des Moines airport has only 19 non-stop connections to major airline hubs across the country. These non-stop destinations do not include any locations in Northern California or Eastern Pennsylvania, which are the locations of counsel for two of the four plaintiffs.[1] Also, Des Moines does not offer the same amenities as a large city such as Chicago. Finally there are 45 district judges, senior district judges and magistrate judges in the Northern District of Illinois, as opposed to 10 judges in the Southern District of Iowa.[2]

Furthermore, new technology available to lawyers practicing in its courtrooms militates in favor of transfer to the Northern District of Illinois. *See e.g., In re Sulfuric Acid Antitrust Litig.*, 270 F. Supp. 2d 1379 (J.P.M.L. 2003) ("In concluding that the Northern District of Illinois is an appropriate forum for this docket, we note that the Illinois district i) is an accessible and

---

[1] Counsel for Plaintiff Nancy Jeffries is at Coughlin Stoia Geller Rudman & Robbins LLP, located at 100 Pine Street, Suite 2600, San Francisco, CA 94111.

[2] Likewise, the Northern District of California would not be an appropriate transferee forum. None of the plaintiffs reside in the Northern District of California (*see* Def. Mem. at pp. 3-5. And Wells Fargo's residential mortgage business is not based in San Francisco. *Id.* There is also no compelling reason to transfer these related actions to the Central District of California.

geographically central location for both the domestic and foreign MDL-1536 parties, and ii) is equipped with the resources that this complex antitrust docket is likely to require."). In recognition of the benefits of video and other evidence presentation technologies, the Northern District of Illinois is able to provide new equipment and presentation capabilities in many of its existing and newly redesigned courtrooms, which allows lawyers to present and display many types of evidence and testimony to the judge and jury in clearer and more comprehensible ways.

The systems rely on the integration of video and digital display technology to give the trial attorney the capability of: (1) visually emphasizing critical physical evidence on display monitors in front of the judge and jury; (2) displaying video evidence through a video cassette recorder or DVD player with freeze frame capabilities; (3) allowing a witness or counsel to demonstrate or annotate situations or scenarios using a light pen directly on a monitor; (4) conducting live video presentations of witnesses who cannot be physically present for a trial or hearing; and (5) creating slide show presentations to enhance arguments.

Finally, Plaintiff Williams adopts Defendant's arguments that the Northern District of Illinois has the most favorable docket conditions and significant experience in managing multidistrict litigation related to mortgage lending. Def. Mem. at 12. These factors along with Plaintiff William's arguments above, demonstrate that the Northern District of Illinois is the best location and more than capable to accept this litigation.

III.    CONCLUSION

For the foregoing reasons, Plaintiff Williams respectfully submits that the Northern

District of Illinois is the most appropriate forum for the coordination of the related actions.

Dated: January 28, 2008

Respectfully submitted,

**SCHIFFRIN BARROWAY
TOPAZ & KESSLER, LLP**

Joseph H. Meltzer
Edward W. Ciolko
Katherine B. Bornstein
Joseph A. Weeden
280 King of Prussia Road
Radnor, Pennsylvania 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

**ROBERT D. ALLISON & ASSOCIATES**
Robert D. Allison, I.D. #36749
Bruce C. Howard
Steven P. Schneck
122 S. Michigan Ave., Suite 1850
Chicago, IL 60603
Telephone: (312) 427-7600
Facsimile: (312) 427-1850

*Attorneys for Judy Williams*

BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT
LITIGATION

| | |
|---|---|
| In re Wells Fargo Mortgage Lending Practices Litigation | MDL Docket No. 1930 |

## CERTIFICATE OF SERVICE

I hereby certify that on Monday, January 28, 2008, a true and correct copy of the
foregoing Memorandum of Judy Williams in Response to Defendant Wells Fargo Bank, N.A.'s
Motion under 28 U.S.C. § 1407 to Transfer for Consolidated and Coordinated Pretrial
Proceedings was served by first class mail, postage prepaid, upon the following counsel:

David Z. Smith, Esq.
Reed Smith Sachnoff & Weaver
10 South Wacker Drive, 40th Floor
Chicago, IL 60606
*Attorney for Defendant Wells Fargo Bank, N.A.*

Robert D. Phillips, Jr., Esq.
Reed Smith, LLP
Two Embarcadero Center, Suite 2000
San Francisco, CA 94111
*Attorney for Defendant Wells Fargo Bank, N.A.*

Shawn Williams, Esq.
Lerach Coughlin Stoia Geller Rduman & Robbins, LLP
100 Pine Street, 26th Floor
San Francisco, CA 94111
*Attorneys for Plaintiffs Nancy and John Jeffries*

Samuel Rudman, Esq.
Robert Rudman, Esq.
Mark Reich, Esq.
Lerach Coughlin Stoia Geller Rduman& Robbins, LLP
58 South Service Road, Suite 200
Melville, NY 11747
*Attorneys for Plaintiffs Nancy and John Jeffries*

Gary Klein, Esq.
Shennan Kavanagh, Esq.
Gillian Feiner, Esq.
Roddy, Klein & Ryan
727 Atlantic Avenue
Boston, MA 02111
*Attorneys for Plaintiffs Nancy and John Jeffries*

Marvin Miller, Esq.
Matthew Vantine, Esq.
Lori Fanning, Esq.
Miller Law, LLC
115 South LaSalle Street, Suite 29810
Chicago, IL 60603
*Attorneys for Plaintiffs Nancy and John Jeffries*

Thomas Sobol, Esq.
Gregory Matthews, Esq.
Hagens Berman Sobol Shapiro, LLP
One Main Street, 4th Floor
Boston, MA 02142
*Attorneys for Plaintiffs Nancy and John Jeffries*

Agent for Service of Process
Mortgage Direct, Inc.
360 W. Butterfield Road, Suite 320
Elmhurst, IL 60126

Andrew Friedman, Esq.
Wendy Harrison, Esq.
Bonnet, Fairbourn, Friedman and Balint, PC
2901 North Central Avenue, Suite 1000
Phoenix, AZ  85012
*Attorneys for Plaintiffs Gilbert and Tracy Ventura*

Mark Chavez, Esq.
Nance Becker, Esq.
Chavez & Gertler, LLP
42 Miller Avenue
Mill Valley, CA  94941
*Attorneys for Plaintiffs Gilbert and Tracy Ventura*

Theodore Joseph Pintar, Esq.
Coughlin Stoia Geller Rudman & Robbins, LLP
655 West Broadway, Suite 1900
San Diego, CA  92101
*Attorneys for Plaintiffs Gilbert and Tracy Ventura*

Timothy Dillon, Esq.
361 Forst Avenue, Suite 205
Laguna Beach, CA  92651
*Attorneys for Plaintiffs Juan and Josefina Rodriguez*

Edward W. Ciolko

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| JUDY WILLIAMS, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 07 CV 6342 |
| v. | ) ) | Judge Der-Yeghiayan Magistrate Judge Valdez |
| WELLS FARGO BANK, N.A., | ) ) | |
| Defendant. | ) ) | |

### OPPOSITION OF DEFENDANT WELLS FARGO BANK, N.A., TO PLAINTIFF'S MOTION TO DISMISS

Defendant Wells Fargo Bank, N.A. ("Wells Fargo") submits this memorandum in opposition to Plaintiff Judy Williams' ("Williams") motion to dismiss this action ("Motion").

## I.    INTRODUCTION

Williams' Motion is only nominally a motion to dismiss. In fact, Williams admits that her true purpose is to transfer venue to the Northern District of California where she can "labor amicably" as a "named plaintiff" with plaintiffs in the other related actions. But a motion to transfer venue (Wells Fargo's "MDL Motion") *is already pending* before the Judicial Panel on Multidistrict Litigation ("MDL Panel"). Indeed, Williams, who lives in Chicago, filed a response to the MDL Motion in January, in which she supported consolidation and sang the praises of the Northern District of Illinois as the best possible venue for the consolidated actions.

Now, after mysterious "consultations" with counsel for the plaintiffs in the California actions, Williams has done an about-face and insists that her case should not proceed in this District (where she filed it), but should be prosecuted in California instead. In other words, Williams seeks to achieve multidistrict consolidation and transfer through this Court, even though the MDL Panel is exclusively charged with adjudicating such questions. As such, the Motion is a cynical attempt to do an end-run around the MDL Panel, and it should be denied.

## II.    ARGUMENT

### A.    Williams Has Argued for Transfer and Consolidation to this District

On January 8, 2008, Wells Fargo filed its MDL Motion.  On January 28, 2008, Williams filed her response to the MDL Motion ("MDL Response"), a true and correct copy of which is attached hereto as Exhibit A.

In her MDL Response, Williams agreed fully with Wells Fargo's position that consolidation of the actions – including this *Williams* case – was appropriate, and that the consolidated actions should be transferred here, to the Northern District of Illinois.  In support of this argument, Williams pointed out that her own loan transaction and those of other named plaintiffs were consummated in Chicago, where she lives; she acknowledged the convenience of having "Wells Fargo Home Mortgage's headquarters and principal place of business" located in nearby Iowa; she described this District as "the best transferee forum," and extolled the "sophistication of the Courthouse and clerk's office"; and she even listed Chicago's airports and the airlines that service them, in support of her argument that "Chicago is the most convenient centralized location for parties, attorneys and witnesses."

Her support for this District was not halfhearted:

> Plaintiff Williams further agrees with Defendant that *the Northern District of Illinois is the best transferee forum as it is more than capable of managing the actions given its centralized location and sophistication of the Courthouse and clerk's office*.  […] First and foremost, Chicago is a geographically central location for this nationwide litigation.  In weighing convenience of all parties, counsel, and witnesses, the Northern District of Illinois would be best for all parties.  [Citations.]
>
> *Two of the four plaintiffs in the respective actions subject to Defendants' motion are residents of Chicago and have counsel in Chicago*.  Furthermore, *the majority of documents related to Plaintiffs' claims, as well as party witnesses, are located in the neighboring state of Iowa*.  *Wells Fargo Home Mortgage's headquarters and principal place of business is located in Iowa, which is conveniently located in close proximity to the Northern District of Illinois.*  Defendant anticipates, and Plaintiff Williams agrees, that written discovery requests, as well as notices of depositions regarding Wells Fargo's home mortgage business, will

- 2 -

> be directed to corporate witnesses located in Iowa. Thus, the Northern District of Illinois is close to where many witnesses and documents will be located. [...]
>
> Finally, *Plaintiff Williams adopts Defendant's arguments that the Northern District of Illinois has the most favorable docket conditions and significant experience in managing multidistrict litigation related to mortgage lending. These factors along with Plaintiff William's arguments above, demonstrate that the Northern District of Illinois is the best location and more than capable to accept this litigation.*

(Ex. A at 3-5 (emphasis added).)

Now, suddenly, "the most appropriate venue for this action ... is the Northern District of California," and "Wells Fargo is headquartered in San Francisco." (Mot. at 5.) Despite the fact that none of the named plaintiffs' loan transactions occurred in San Francisco, Williams now believes that the pricing policies at issue somehow "emanated" from that city, and that "relevant documentation and witnesses will likely be situated there, as well as in Chicago, Illinois." (*Id.*) The Motion doesn't mention Iowa.

Williams' 180-degree turn implicates the doctrine of judicial estoppel, "a doctrine intended to prevent the perversion of the judicial process." *See In re Cassidy*, 892 F.2d 637, 641 (7th Cir. 1990) (citation omitted). Judicial estoppel holds that where a party "assumes a certain position in a legal proceeding and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (citation omitted). "The purpose of judicial estoppel is *to protect the courts from being manipulated by chameleonic litigants* who seek to prevail, twice, on opposite theories." *United States v. Hook*, 195 F.3d 299, 306 (7th Cir. 1999) (internal quotations and citation omitted) (emphasis added). The doctrine is applied where, as here, "intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum designed for suitors seeking justice, to prevent litigants from playing fast and loose with the courts." *Cassidy*, 892 F.2d at 641 (internal quotations and citation omitted).

With the filing of her current Motion, Williams has taken diametrically opposite positions at the same time in two separate judicial proceedings – one position in this action and the other before the MDL Panel. Her Motion should be denied on that basis alone. In addition, the Motion is replete with falsehood. Williams' claim that "Wells Fargo is headquartered in San Francisco" is deliberately misleading, since she knows that the mortgage division (and its employees and documents) are all in Iowa, and *repeatedly* cited that fact in her MDL Response. Her claim that "comprehensive discovery requests have been served and are outstanding" in the California actions is also deliberately misleading, as it omits the fact that the discovery has been stayed pursuant to stipulation of the parties, pending a ruling on the MDL Motion. Finally, the claim that a "pretrial schedule is in place" in the California actions is just flat wrong: Judge Chesney's Case Management Orders in the California actions schedule a new joint case management conference on May 2, 2008, and require the parties to meet and confer and submit a new joint case management statement, which will result in a new schedule at that time.

When it was convenient, Williams argued strenuously in favor of transfer and consolidation of all actions to this District, and Wells Fargo relied on that position. Indeed, Wells Fargo cited Williams' MDL Response in its reply brief submitted to the MDL Panel. Now, plaintiffs seek to obtain an unfair advantage in the MDL Motion by playing "fast and loose" with the courts. This Court should not sanction such tactics and should deny the Motion.

**B.    Williams' Motion Unfairly Prejudices Wells Fargo**

Where, as here, the defendant has filed an answer, the Federal Rules of Civil Procedure require court approval for voluntary dismissal. Fed. R. Civ. P. 41(a)(2); and 23(e). A motion for voluntary dismissal "calls for the exercise of judicial discretion *to avoid an unfair effect on anyone else incident upon such a termination of the suit.*" *Beaver Assoc. v. Cannon*, 59 F.R.D. 508, 510 (S.D.N.Y. 1973) (emphasis added). "The fact that the suit will be dismissed with prejudice to the plaintiff *is not the only consideration before the Court; the possible effect on*

*others must be considered*." *Id.* (emphasis added). Thus, dismissal is improper where it would unfairly prejudice a defendant. *Tyco Labs. v. Koppers Co.*, 627 F.2d 54, 56 (7th Cir. 1980).

As stated above, Wells Fargo has filed and the parties have extensively briefed the MDL Motion. The MDL Motion asks the Panel to adjudicate two questions: (1) whether consolidation of multiple actions is appropriate; and (2) where to transfer the consolidated proceedings. The actions at issue in the MDL Motion are pending in three districts: the Central District of California (*Rodriguez*); the Northern District of California (*Jeffries, Ventura and Brown*); and the Northern District of Illinois (*Williams*). According to the statute, the MDL Panel's determination of venue should be based on "the convenience of parties and witnesses" and must "promote the just and efficient conduct of such actions." *See* 28 U.S.C. § 1407.

By her Motion, Williams seeks to dismiss the only case pending in the Northern District of Illinois. Not by coincidence, the *Rodriguez* plaintiffs have also concurrently filed a motion to dismiss their case (pending in the Central District of California).[1] Although, collectively, plaintiffs claim to act in the interests of the parties' convenience, their true purpose is clear: to eliminate any action not pending in the Northern District of California, so that they can argue to the Panel that the MDL Motion is moot and the actions should be consolidated there. The fact that Williams sees herself as a "named plaintiff" in California only confirms that the Motion is a blatant effort at forum shopping, and certainly does not reflect any change in the posture of the cases since the filing of the MDL Motion.

In fact, the only development since Williams' full-throated support for transfer and consolidation in this District in January – other than the back-room "consultations" among would-be class counsel – is the reassignment of the Northern District of California cases from

---

[1]    A true and correct copy of the *Rodriguez* motion to dismiss is attached hereto as Exhibit B. While Wells Fargo was initially inclined to stipulate to the dismissal of *Rodriguez*, the scheme among plaintiffs' counsel to manipulate the MDL process did not become apparent until the simultaneous filing of motions to dismiss all but the Northern District of California cases. Wells Fargo now opposes dismissal of the *Rodriguez* case.

one judge to another. This reinforces the appearance of judge shopping, a universally condemned practice. *See Freeman v. Kohl & Vick Mach. Works, Inc.*, 673 F.2d 196, 198 n.2 (7th Cir. 1982) (noting "the strong federal policy against collusion and forum shopping").

As such, the Motion is an improper attempt to manipulate this Court and the MDL Panel for the sole purpose of gaining advantage in litigation. Indeed, the timing of the Motion confirms this improper purpose, set as it is for a hearing on March 26th – just one day before the hearing on Wells Fargo's MDL Motion. Williams' efforts could all be for naught, however, since as a matter of law no case need be pending in a district in order for the MDL Panel to transfer the case to that district. *See In re U. S. Fin. Secs. Litig.*, 375 F. Supp. 1403, 1404 (JPML 1974). Nonetheless, Williams' stunt plainly implicates the MDL Motion, and it contradicts her position taken previously in her MDL Response. This duplicity and the misleading impression Williams is attempting to create, cause undeniable prejudice to Wells Fargo, which is litigating in good faith before the MDL Panel and relied on positions that Williams has taken before that tribunal. Dismissal is therefore not justified. *See Tyco Labs.*, 627 F.2d at 56.

Furthermore, Wells Fargo has incurred fees and costs briefing the MDL Motion, as well as in litigating this case. As Williams points out, Wells Fargo has filed its Answer in this case, met and conferred with opposing counsel, and appeared before this Court for the January 16, 2008, status conference. Any ruling dismissing this action before the Panel rules on the MDL Motion would therefore be patently unfair and prejudicial to Wells Fargo. Accordingly, this Court should deny the Motion or, at the very least, defer to the MDL Panel and delay any ruling until a decision has been rendered on Wells Fargo's MDL Motion.

### C.     If the Court Dismisses this Action, Wells Fargo Should be Awarded its Fees and Costs

It is well-settled that a district court may condition a voluntary dismissal without prejudice on payment of attorneys' fees and costs to the defendant. Fed. R. Civ. P. 41(a)(2); *see Cauley v. Wilson*, 754 F.2d 769, 771 (7th Cir. 1985); *Yoffe v. Keller Indus., Inc.*, 580 F.2d 126,

129 (5th Cir. 1978). If this Court grants Williams' Motion, Wells Fargo therefore requests that the Court award Wells Fargo its reasonable fees and costs incurred in defending this action.

For some months now, Wells Fargo has believed that Williams intended to prosecute her case in this District. Wells Fargo has incurred the cost of appearing in the action and complying fully with its pretrial obligations. Williams should not be allowed to abruptly change her mind without absorbing the cost needlessly imposed on Wells Fargo by this litigation.

### III.    CONCLUSION

Williams' Motion does not truly seek dismissal, but rather is a transparent attempt to influence the MDL Panel in its deliberations on Wells Fargo's MDL Motion. As such, the Motion is designed to achieve an improper purpose and would prejudice Wells Fargo unfairly. The Motion should be denied.

Dated:  March 20, 2008                    Respectfully submitted,

                                          WELLS FARGO BANK, N.A.,
                                          *Defendant*

                                          By: /s/   David Z. Smith
                                              One of Its Attorneys

David Z. Smith (ARDC  No. 6256687)
REED SMITH LLP
10 S. Wacker Drive, 40th Floor
Chicago, IL 60606-7507
(312) 207-1000
(312) 207-6400 fax
dzsmith@reedsmith.com

Robert D. Phillips, Jr. (*Admitted Pro Hac Vice*)
REED SMITH LLP
Two Embarcadero Center, Suite 2000
San Francisco, California 94111
Telephone: (415) 543-8700
Fax: (415) 391-8269
rphillips@reedsmith.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2008, I electronically filed the foregoing **OPPOSITION OF DEFENDANT WELLS FARGO BANK, N.A., TO PLAINTIFF'S MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Robert D. Allison
Robert D. Allison & Associates
rdalaw@ix.netcom.com

Bruce C. Howard
Robert D. Allison & Associates
bchoward@ix.netcom.com

Steven Paul Schneck
Robert D. Allison & Associates
spschneckjazzlaw@yahoo.com

Edward W. Ciolko
Schiffrin, Barroway, Topaz & Kessler LLP
eciolko@sbclasslaw.com

Katherine B. Bronstein
Schiffrin, Barroway, Topaz & Kessler LLP
kbornstein@sbtklaw.com

Joseph H. Meltzer
Schiffrin, Barroway, Topaz & Kessler LLP
jmeltzer@sbtklaw.com

Joseph A. Weeden
Schiffrin, Barroway, Topaz & Kessler LLP
jweeden@sbtklaw.com

/s/ David Z. Smith
David Z. Smith (ARDC No. 6256687)
REED SMITH LLP
10 S. Wacker Drive, 40th Floor
Chicago, IL 60606-7507
(312) 207-1000
(312) 207-6400 fax
dzsmith@reedsmith.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JUDY WILLIAMS, individually and on behalf of all others similarly situated, | CASE NO.: 07-cv-6342 |
| Plaintiff, | |
| v. | **[PROPOSED] ORDER** |
| WELLS FARGO BANK, N.A. | |
| Defendant. | |

AND NOW, this _____ day of _____, 2008, upon consideration of the foregoing Motion of Plaintiffs to Dismiss Pursuant to Federal Rule of Civil Procedure 41(a)(2), it is hereby ORDERED and DECREED that Plaintiff's Motion is hereby GRANTED and that this matter is hereby DISMISSED WITHOUT PREJUDICE.

_____
J.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| JUDY WILLIAMS, individually and on behalf of all others similarly situated, | CASE NO.: 07-cv-6342 |
| Plaintiff, | |
| v. | **CERTIFICATE OF SERVICE** |
| WELLS FARGO BANK, N.A. | |
| Defendant. | |

I hereby certify that a true and correct copy of the foregoing Motion to Dismiss was served upon counsel for the Defendants by way of the Court's electronic filing system.

Dated: March 19, 2008

Respectfully submitted,

**SCHIFFRIN BARROWAY
 TOPAZ & KESSLER, LLP**

___*/s/ Edward W. Ciolko*_____
Joseph H. Meltzer
Edward W. Ciolko
Katherine B. Bornstein
Joseph A. Weeden
280 King of Prussia Road
Radnor, Pennsylvania 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

**ROBERT D. ALLISON &
ASSOCIATES**
Robert D. Allison, I.D. #36749
Bruce C. Howard

Steven P. Schneck
122 S. Michigan Ave., Suite 1850
Chicago, IL 60603
Telephone: (312) 427-7600
Facsimile: (312) 427-1850

*Attorneys for Judy Williams*

**ROBERT D. ALLISON & ASSOCIATES**
Robert D. Allison, I.D. #36749
Bruce C. Howard
Steven P. Schneck
122 S. Michigan Ave., Suite 1850
Chicago, IL 60603
Telephone: (312) 427-7600
Facsimile: (312) 427-1850

*Attorneys for Judy Williams*

3

# EXHIBIT A

BEFORE THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

In Re WELLS FARGO MORTGAGE  )  MDL No. 1930
LENDING PRACTICES  )
  )
—————————————————— )

**PLAINTIFFS NANCY AND JOHNNY JEFFRIES AND GILBERT AND TRACY
VENTURA'S SUPPLEMENTAL RESPONSE TO MOTION OF WELLS FARGO, N.A.
UNDER 28 U.S.C. §1407 TO TRANSFER FOR CONSOLIDATED AND
COORDINATED PRETRIAL PROCEEDINGS**

Plaintiffs and respondents Nancy and Johnny Jeffries (the "*Jeffries* plaintiffs") and Gilbert Ventura, Sr. and Tracy Ventura (the "*Ventura* plaintiffs") respectfully submit this Supplemental Response to the Motion by Defendant Wells Fargo ("Wells Fargo") to transfer for consolidated and coordinated pretrial proceedings. Plaintiffs submit this Supplemental Response to address relevant events that transpired after the filing of the *Jeffries* and *Ventura* plaintiffs' initial Response on January 28, 2008 (the "Response"). These recent developments further confirm that the Northern District of California -- where the earliest filed and largest number of cases are pending, and where Wells Fargo's business headquarters and senior trial counsel are located – is by far the most appropriate forum for consolidated proceedings in these related actions.

The Panel should therefore transfer the cases to the Northern District of California for coordinated proceedings or, alternatively, dismiss the transfer motion because it will be moot upon dismissal of the cases currently pending outside the Northern District of California.

## I.     With the Dismissal of *Rodriguez* and *Williams* All of the Cases Will be Pending in the Northern District of California

When the motion for transfer was initially filed, there were four related cases pending in the Northern District of California (*Jeffries* and *Ventura*), one case in the Central District of California (*Rodriguez*) and one case in the Northern District of Illinois (*Williams*). Since then, motions to dismiss have been filed in *Rodriquez* and *Williams* [1] and a new action against Wells Fargo was filed in the Northern District of California (*Brown*). All three of the cases in the Northern District of California are consolidated before a single judge, the Honorable Maxine Chesney, where a

---

[1] On March 19, 2008, Plaintiff in the *Rodriguez* action filed a motion to voluntarily dismiss the case. On March 19, 2008, Plaintiff in *Williams* filed a motion to voluntarily dismiss that action.

1

leadership structure of plaintiffs' counsel has been established and a comprehensive pretrial schedule is in place.[2]

Indeed, counsel for Plaintiffs in *Rodriguez* and *Williams* decided to dismiss their actions precisely because a majority of the cases are pending in the Northern District of California, Co-Lead counsel already have been appointed and the cases are proceeding under an established pretrial schedule. Copies of the motions to dismiss in *Rodriguez v. Wells Fargo Bank, N.A.*, CV07-6780 CAS (AJWx) (C.D. Ca.) *Williams v. Wells Fargo Bank, N.A.*, 07-cv-6342 (N.D. Ill.) are attached hereto as Exhibit A. Counsel for Plaintiffs in each of the pending actions agree that the Northern District of California is the most appropriate forum for the MDL proceedings and that these related actions will proceed most efficiently and expeditiously through cooperative coordination among Plaintiffs' counsel. *See*, Manual for Complex Litigation Fourth, § 10.22 at 24 ('[i]n some cases the [plaintiffs'] attorneys coordinate their activities without the court's assistance, and such efforts should be encouraged").

With the dismissal of *Rodriquez* and *Williams*, all of the cases that are the subject of the MDL transfer motion will be pending before Judge Chesney in the Northern District of California. Accordingly, the cases should be transferred to the Northern District of California for coordinated proceedings or, alternatively, the transfer motion should be denied as unnecessary in light of the pending motions to dismiss *Rodriquez* and *Williams*, the only cases outside the Northern District of California.

---

[2] As explained below, after Judge Martin J. Jenkins was appointed to serve on the California Court of Appeals, the consolidated *Jeffries* and *Ventura* cases were reassigned to Judge Chesney and all subsequently filed related cases against Wells Fargo have been transferred to her in accordance with Pretrial Order No. 1 entered by Judge Jenkins.

2

## II.    The Northern District of California is the Center of Gravity for Pending Mortgage Lending Discrimination Cases

In addition to the three mortgage lending discrimination cases pending against Wells Fargo in the Northern District of California, there are at least five other substantially similar cases in the Northern District of California alleging comparable discrimination claims under ECOA and the FHA against major mortgage lenders.  Class action cases asserting race discrimination claims have been filed in the Northern District of California against World Savings,[3] Washington Mutual,[4] Greenpoint Mortgage,[5] IndyMac[6] and First Franklin.[7]  With the exception of the World Savings case, all of these cases were filed in the Northern District after the MDL transfer motion was filed here.

Given this concentration of mortgage lending discrimination cases alleging common claims and legal theories, the Northern District of California is clearly the geographic center of gravity of this litigation. *In re TMJ Implants Prods. Liab. Litig.*, 844 F. Supp. 1553, 1554 (J.P.M.L. 1994) (forum with closest center of gravity for the litigation is generally preferred transferee forum); *In re Natural Resources Fund, Inc. Securities Litig.*, 372 F. Supp. 1403, 1404-05 (J.P.M.L. 1974) (same).

## III.    Judge Chesney Has the Requisite Expertise and Ability to Preside Over These MDL Proceedings

By Reassignment Orders in the consolidated *Jeffries* and *Ventura* actions dated February 15, 2008 (the "Reassignment Orders"), those two actions were reassigned to Judge Maxine M. Chesney. *See* Exhibits B and C hereto.  On February 21, 2008, a subsequent related matter entitled *Brown v.*

---

[3] *Zamora v. World Savings*

[4] *Lopez v. Washington Mutual*

[5] *Ramirez v. Greenpoint Mortgage*

[6] *Ware v. IndyMac*

[7] *Rodriguez v. First Franklin*

*Wells Fargo Bank, N.A.*, Civ. No. 08-cv-0492 (N.D. Cal.), was also transferred to Judge Chesney, as a related case. *See* Exhibit D hereto.

Judge Chesney is well-suited to oversee these MDL proceedings. Judge Chesney has more than thirty years experience as a judge and twelve years as a U.S. District Court judge. Judge Chesney routinely presides over discrimination actions,[8] and has presided over many complex class action cases.[9] Because Judge Chesney does not currently preside over any MDL proceeding, transfer of this MDL to her will not present an undue burden.

## IV. The Consolidated Cases Pending in the Northern District of California Remain as the Most Advanced Proceedings

As noted in the Response, after holding an initial status conference in the *Jeffries* and *Ventura* actions, District Judge Martin J. Jenkins entered a Pretrial Order on Case Management on January 8, 2008, which adopted a pretrial schedule for the Consolidated Actions that had been proposed by the parties. On that same date, Judge Jenkins entered a Pre-Trial Order No. 1, which appointed plaintiffs' co-lead and liaison interim class counsel.

---

[8] *See, e.g., Kalra v. Mineta*, No. C-00-2243 MMC (Title VII and Age Discrimination in Employment Act); *Veronda v. Calif. Dept. of Forestry & Fire Protection*, No. C-99-5244 MMC (Title VII); *Harvey v. Alameda County Medical Center*, No. C-02-1382 MMC (N.D. Cal.) (Section 1983); *Johnson v. Peralta Community College Dist.*, No. C-94-4255 MMC (N.D. Cal.) (Americans with Disabilities Act and Title VII).

[9] *See, e.g., In re Sorbates Direct Purchaser Antitrust Litig.*, Master File No. C 98-4886 MMC (N.D. Cal.) (price-fixing class action); *In re Veritas Software Corp. Secs. Litig.*, No. C-03-0283-MMC (N.D. Cal.) (class action alleging violations of federal securities law); *Lane v. Residential Funding Corp.*, No. 96-cv-3331 (N.D. Cal.) (class action alleging prohibited kickbacks under Real Estate Settlement Procedure Act); *Bowman v. UBS Fin. Servs.*, Case No. 3:04-cv-03525 (N.D. Cal.) (class action alleging wage and hour violations).

On reassignment, the then-scheduled second Case Management Conference in the *Jeffries* and *Ventura* actions was vacated.[10] Thereafter, on February 21 and 25, 2008, Judge Chesney issued Orders scheduling a joint Case Management Conference in the *Jeffries*, *Ventura* and *Brown* actions, on May 2, 2008, at 10:30 a.m. *See* Exhibits E, F and G hereto.

Under the Reassignment Orders, other than the aforementioned status conferences, "all scheduled matters, including discovery cut-off dates, document disclosure dates, deadline for filing pretrial documents, pretrial conference and trial date" ... "remain in effect, unless otherwise ordered by the newly assigned Judge." *See* Exhibits. B and C. Wells Fargo speculates in its Reply that because of the Reassignment of the consolidated cases to Judge Chesney, "the current pretrial schedules will be abandoned." Def. Mem. at 2. The governing orders, however, state otherwise.

Thus, the consolidated actions before Judge Chesney remain as the most advanced cases that are the subject of the MDL transfer motion. A pretrial schedule is in place, the Court has appointed co-lead counsel for plaintiffs, protective orders for the orderly advancement of discovery have been entered, Wells Fargo has answered the complaint and comprehensive discovery requests have been served and are outstanding. By contrast, there has been no activity of any kind in the other two actions against Wells Fargo, nor will there be in light of the pending motions for voluntary dismissal.

## V.    Conclusion

Based on the foregoing and for the reasons set forth in the Response, the Panel should transfer all of the subject actions  to Judge Chesney in the Northern of California for coordinated proceedings with the already-consolidated *Jeffries, Ventura* and *Brown* actions. With the greatest number, earliest filed and most advanced actions pending in the Northern District of California, Wells Fargo's headquarters and primary counsel there and the only other two actions poised for

---

[10]  Pursuant to Judge Jenkins' Pretrial Order on Case Management, a continued Case Management Conference in *Jeffries* and *Ventura* was to be held before Judge Jenkins on February 26, 2008.

dismissal, the Northern District of California is the most convenient, efficient and appropriate location for these MDL proceedings. Alternatively, because the only two actions pending outside the Northern District of California are in the process of being dismissed, the Panel may elect to simply deny the Petition as unnecessary.

DATED: March 19, 2008                    Respectfully submitted,

                                        BONNETT, FAIRBOURN, FRIEDMAN
                                          & BALINT, P.C.
                                          ANDREW S. FRIEDMAN
                                          WENDY J. HARRISON

                                          2901 N. Central Avenue, Suite 1000
                                          Phoenix, AZ 85012
                                          Telephone: 602/274-1100
                                          602/274-1199 (fax)

                                          COUGHLIN STOIA GELLER
                                          RUDMAN & ROBBINS LLP
                                          JOHN J. STOIA, JR.
                                          THEODORE J. PINTAR
                                          LESLIE E. HURST
                                          655 West Broadway, Suite 1900
                                          San Diego, CA 92101
                                          Telephone: 619/231-1058
                                          619/231-7423 (fax)

                                          COUGHLIN STOIA GELLER
                                          RUDMAN & ROBBINS LLP
                                          SHAWN A. WILLIAMS
                                          100 Pine Street, 26th Floor
                                          San Francisco, CA 94111
                                          Telephone: 415/288-4545
                                          415/288-4534 (fax)

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

RODDY KLEIN & RYAN
GARY KLEIN
SHENNAN KAVANAGH
GILLIAN FEINER
727 Atlantic Avenue
Boston, MA  02111-2810
Telephone:  617/357-5500
617/357-5030 (fax)

MILLER LAW LLC
MARVIN A. MILLER
MATTHEW E. VANTINE
LORI A. FANNING
115 South Lasalle Street, Suite 2910
Chicago, IL  60603
Telephone:  312/332-3400
312/676-2676 (fax)

HAGENS BERMAN SOBOL SHAPIRO LLP
THOMAS M. SOBOL
GREGORY MATTHEWS
One Main Street, 4th Floor
Boston, MA  02142
Telephone:  617/475-1950
617/482-3003 (fax)

CHAVEZ & GERTLER, L.L.P.
MARK A. CHAVEZ
42 Miller Avenue
Mill Valley, CA  94941
Telephone:  415/381-5599

# EXHIBIT A

1    Timothy P. Dillon (CSB No. 123953)
2    LAW OFFICES OF
     TIMOTHY P. DILLON
3    361 Forest Avenue, Suite 205
4    Laguna Beach, California 92651
     (949) 376-2800
5    (949) 376-2808 Facsimile
6    timothy@dillonlaw.net

7    Attorneys for Plaintiffs
8    Juan Rodriguez and Josefina Rodriguez

9

10

11              UNITED STATES DISTRICT COURT

12              CENTRAL DISTRICT OF CALIFORNIA

13                   WESTERN DIVISION

14

15   JUAN RODRIGUEZ and JOSEFINA        Case No. CV 07-06780 CAS(AJWx)
16   RODRIGUEZ, individually, and on the   Honorable Christina A. Snyder
     class of all others similarly situated,
17                                       **NOTICE OF MOTION AND
                                         MOTION TO DISMISS
18              Plaintiffs,              PURSUANT TO FED. R. CIV. P.
                                         41(a)(2); MEMORANDUM OF
19        v.                             POINTS AND AUTHORITIES IN
                                         SUPPORT THEREOF**
20
     WELLS FARGO BANK, N.A.,
21                                       Date :   April 21, 2008
22              Defendant.               Time :   10:00 a.m.
                                         Place :  Courtroom 5
23

24

25

26

27

28

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2    PLEASE TAKE NOTICE that on April 21, 2008 at 10:00 a.m., or as soon

3    thereafter as the matter can be heard, in Courtroom 5 of the above-entitled Court,

4    located at 312 North Spring Street, Los Angeles, California, before the Honorable

5    Christina A. Snyder, United States District Court Judge, Plaintiffs, in accordance

6    with Federal Rules of Civil Procedures 41(a)(2), will and do hereby move for the

7    voluntary dismissal of this action without prejudice.

8        In deference to the actions pending and already consolidated in the Northern

9    District of California, where Defendant Wells Fargo Bank, N.A. ("Wells Fargo") is

10   headquartered, Plaintiffs in this action seek to dismiss this action without

11   prejudice. The claims of Plaintiffs can be effectively litigated in the Northern

12   District of California and Wells Fargo will not be prejudiced in any way by the

13   dismissal of this action without prejudice.

14       This motion is made following the conference of counsel pursuant to Local

15   Rule 7-3 which took place on March 14, 2008.

16       This motion is based upon this notice of motion and motion, the

17   accompanying memorandum of points and authorities, and all of the pleadings and

18   records on file in this action and such further, and other evidence as may be

19   presented at or before the hearing of this motion.

20

21                              Respectfully submitted,

22   Date: March 19, 2008        LAW OFFICES OF TIMOTHY P. DILLON

23                               By: _____

24                                   Timothy P. Dillon
                                     Attorneys for Plaintiffs Juan Rodriguez and
25                                   Josefina Rodriguez

26

27

28

1

1 | **MEMORANDUM OF POINTS AND AUTHORITIES**

2

3 | I.   INTRODUCTION

4 |     Plaintiffs Juan Rodriguez and Josefina Rodriguez respectfully request

5 | dismissal of this action without prejudice. Federal Rules of Civil Procedure 41(a)

6 | governs the voluntary dismissal of actions by a plaintiffs. Rule 41(a)(1)(A)(i)

7 | permits a unilateral voluntary dismissal by the plaintiff "before the opposing party

8 | serves either an answer or a motion for summary judgment." However, as

9 | Defendant Wells Fargo Bank, N.A. ("Wells Fargo") has served an answer in this

10 | action, Plaintiffs seek dismissal of this action pursuant to Rule 41(a)(2), which

11 | permits dismissal of an action at the plaintiff's request, pursuant to an order of the

12 | court. *See, e.g., Wojtas v. Capital Guardian Trust Co.*, 477 F.3d 924, 927 (7th Cir.

13 | 2007); *Chavez v. Ill. State Police*, 251 F.3d 612 , 654 (7th Cir. 2001).

14 |     Rule 41(a)(2) provides the Court with broad discretion to grant the dismissal

15 | of this action at Plaintiffs' request. *See e.g., Hamilton v. Firestone Tire & Rubber*

16 | *Company, Inc.* 679 F.2d 143, 145 (9th Cir. 1982) ("The Ninth Circuit has long held

17 | that the decision to grant a voluntary dismissal under Rule 41(a)(2) is addressed to

18 | the sound discretion of the District Court, and its order will not be reversed unless

19 | the District Court has abused its discretion."); *Tyco Laboratories, Inc. v. Koppers*

20 | *Co., Inc.*, 627 F.2d 54, 56 (7th Cir. 1980) ("The express language of the rule makes

21 | it clear that the determination of whether to grant a motion for voluntary dismissal

22 | rests within the sound discretion of the district court."); *Pontenberg v. Boston Sci.*

23 | *Corp.*, 252 F.3d 1253, 1255 (11th Cir. 2001) ("The district court enjoys broad

24 | discretion in determining whether to allow a voluntary dismissal under Rule

25 | 41(a)(2)").

26 |     Further, a motion to dismiss pursuant to Fed. R. Civ. P. 41(a)(2) should be

27 | granted unless the defendant will suffer clear legal prejudice. *See Hamilton v.*

28 | *Firestone Tire, supra,* 679 F.3d at 145; *United States of America v. OutBoard*

1

1 | *Marine Corp.,* 789 F.2d 497, 502 (7th Cir. 1986) (the Court abuses its discretion
2 | only when it can be established that the Defendant will suffer "plain legal
3 | prejudice" as a result of the dismissal of the Plaintiffs' litigation).

4 |       Even the mere prospect of subsequent litigation is insufficient for denial of a
5 | plaintiff's Rule 41(a)(2) motion. *See Hamilton v. Firestone Tire, supra,* 679 F.2d
6 | at 145 ("Plain legal prejudice, however, does not result simply when defendant
7 | faces the prospect of a second lawsuit or when plaintiff merely gains some tactical
8 | advantage."); *Pontenberg, supra,* 252 F.3d at 1255 (quoting *McCants v. Ford*
9 | *Motor Co., Inc.,* 781 F.2d 855, 856-57 (11th Cir. 1986) (court affirmed the district
10 | court's decision to dismiss the case without prejudice)); *See also In re Vale,* 180
11 | B.R. 1017, 1023 (N.D. Ind. 1994).

12 | II.    BACKGROUND

13 |       On October 18, 2007, Plaintiffs Juan Rodriguez and Josefina Rodriguez filed
14 | this action against Defendant Wells Fargo. This action alleges violations of the
15 | Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, the Equal Credit Opportunity Act, 15
16 | U.S.C. § 1691, *et seq.*, and the Civil Rights Act, 42 U.S.C. §§ 1981, 1982 *et seq.*
17 | Specifically, Plaintiffs assert that Defendant Wells Fargo has violated those
18 | statutes by, *inter alia*, having an established pattern and practice of discriminating
19 | against minority mortgage borrowers, including Plaintiffs and the putative class, on
20 | the basis of their race in the financing of residential home purchases by giving
21 | them mortgages with less favorable and more expensive terms than it gave to
22 | similarly situated non-minority borrowers.

23 |    Juan Rodriguez and Josefina Rodriguez, residents of the County of Los
24 | Angeles, filed their action in the Central District of California. Pursuant to 28
25 | U.S.C. § 1391(b), venue was and is appropriate in the Central District of California
26 | because (a) Wells Fargo resides in this district and this division; (b) a substantial
27 | part of the events or omissions giving rise to Plaintiffs' claims occurred in this
28 |

2

1   district and this division; and (c) a substantial part of property that is the subject of

2   this action is situated in this district and this division.

3          On January 3, 2008, Wells Fargo filed a motion before the Judicial Panel on

4   Multidistrict Litigation (the "MDL Motion") requesting transfer for consolidation

5   and coordination of similar putative class actions pending in federal district courts

6   against Wells Fargo to a single transferee district.  On March 6, 2008, in this

7   action, Wells Fargo filed an answer to the Plaintiffs' complaint.  Subsequently,

8   based on the stipulation of the parties in light of Defendant's MDL Motion, by

9   order dated March 14, 2008, this Court continued the scheduling conference in this

10   action until May 19, 2008.

11   III.    SIMILAR ACTIONS ARE PENDING IN THE NORTHERN DISTRICT

12         OF CALIFORNIA

13          Wells Fargo's MDL Motion is currently pending.  In short, at least five

14   federal class action lawsuits challenging Wells Fargo's alleged discriminatory

15   lending practices are pending in three federal district courts.  In addition to this

16   action, three cases were pending at the time Wells Fargo filed its MDL Motion,

17   listed in order of filing:

18       1.    *Jeffries v. Wells Fargo Bank N.A.*, No. 07cv3880 (N.D. Cal. 2007);

19       2.    *Ventura v. Wells Fargo Bank, N.A.*, No. 07cv4309 (N.D. Cal. 2007);

20         and

21       3.    *Williams v. Wells Fargo Bank, N.A.*, No. 07cv6342 (N.D. Ill. 2007).

22          Subsequent to the filing of the MDL Motion, a fifth case, *Brown v. Wells*

23   *Fargo Bank, N.A.*, No. 08-cv0492 was filed against Wells Fargo in the Northern

24   District of California alleging the same discriminatory lending practices, along

25   with an administrative motion to relate the case to the *Jeffries* action and the

26   *Ventura* action.

27          The cases each challenge Wells Fargo's mortgage pricing policies and

28   procedures that result in minorities receiving home loans with higher fees, rates

1 and costs than similarly situated non-minority borrowers. The cases are each
2 national in scope and are brought on behalf of overlapping classes.

3        On January 8, 2008, Judge Martin J. Jenkins of the Northern District of
4 California entered a pre-trial order consolidating the *Jeffries* and *Ventura* actions.
5 Further, Judge Jenkins appointed two firms to serve as Co-Lead and Liaison
6 Interim Class Counsel.

7        On February 15, 2008, the *Jeffries* and *Ventura* actions were reassigned from
8 United States District Court Judges Martin J. Jenkins to United States District
9 Court Judge Maxine M. Chesney. The *Jeffries* action was assigned new case
10 number C 07-03880 MMC and the *Ventura* action was assigned new case number
11 C 07-04309 MMC. On February 21, 2008, the *Brown* action was ordered related
12 to the *Jeffries* action and the *Ventura* action and was reassigned from United States
13 District Court Judges Jeffrey S. White to Judge Chesney.

14        Thus, three actions similar to the *Rodriguez* action are currently pending in
15 the Northern District of California before the same judge and the plaintiff in the
16 *Brown* action pending in the Northern District of Illinois has filed a motion to
17 dismiss that action without prejudice in deference to the actions consolidated
18 pending against Wells Fargo in the Northern District of California.

19 IV.    PLAINTIFFS CLAIMS WILL BE EFFECTIVELY LITIGATED IN THE
20        NORTHERN DISTRICT OF CALIFORNIA

21        Plaintiffs have met and conferred with the Co-Lead and Interim Class
22 Counsel appointed by Judge Jenkins and pursuant to such good faith consultations,
23 in the interests of the putative class and the efficient and expeditious prosecution of
24 the putative class' claims, Plaintiffs Rodriguez, through their counsel, have agreed
25 that the most appropriate venue for this action at this time is the Northern District
26 of California. In furtherance of the effective and zealous prosecution of this case,
27 Plaintiffs Rodriguez, as named plaintiffs, and their undersigned counsel have
28 agreed to work amicably with the Co-Lead and Interim Class Counsel appointed

1 | by Judge Jenkins.  In the three cases are currently before Judge Chesney, a joint
2 | case management conference is scheduled for May 2, 2008.

3 |     Further, the Northern District of California is an extremely appropriate
4 | forum for the effective litigation of the claims of Plaintiffs and putative class.
5 | First, Wells Fargo issues more home loans to consumers in the State of California
6 | than in any other state.  Second, Defendants Wells Fargo is headquartered in San
7 | Francisco.  Plaintiffs believe that "discretionary pricing policy" that resulted in
8 | minorities paying higher fees and interest rates on their home loans emanated from
9 | Wells Fargo's corporate San Francisco headquarters–therefore relevant
10 | documentation and witnesses will likely be situated there.  Plaintiffs believe that it
11 | is Wells Fargo non-delegable duty to ensure that its mortgage financing structure
12 | and policies do not have a disparate impact on legally protected minority groups—
13 | regardless of where they or any of its lending subsidiaries are located.

14 |     Lastly, the dismissal of this action may, effectively, moot the pending MDL
15 | Motion and thereby conserve the resources of the MDL Panel.  Further, as the
16 | MDL's decision will likely obviate the need for the continued scheduling
17 | conference in this action, Defendant will suffer no prejudice by dismissal and the
18 | Court will not have expended significant resources in overseeing this litigation.

19 |     Accordingly, Plaintiffs believe that consenting to the litigation of their
20 | claims in the Northern District of California will expedite resolution of their and
21 | the proposed class' claims, conserve judicial resources, serve the convenience of
22 | both parties and reduce the risk of inconsistent pretrial rulings.

23 |     Thus, Plaintiffs' interests, at this time given the events that have transpired
24 | since the filing of the instant complaint, will be served—and their claims both
25 | effectively and more efficiently litigated—in the district where Wells Fargo is
26 | headquartered.

27

28

1  V.    WELLS FARGO WILL NOT BE PREJUDICED BY THE DISMISSAL OF
2         THIS ACTION

3         As described herein, at least four similar actions are pending against Wells
4  Fargo, three of which have already been consolidated in the Northern District of
5  California. Regardless of whether this action proceeds, Wells Fargo must defend
6  the claims alleged herein. As: (a) Wells Fargo is headquartered in the Northern
7  District of California; (b) the claims alleged herein allege conduct that emanated,
8  in part, from Wells Fargo's San Francisco headquarters; and (c) the consolidated
9  actions in California are currently further advanced than this action, Wells Fargo
10 will suffer no harm by the dismissal of this action. If anything, Wells Fargo will
11 benefit by being able to litigate these claims in a more convenient forum vis-à-vis
12 its national headquarters.

13        Further, Wells Fargo has accrued minimal expense with respect to this
14 action. To date, no discovery requests have been served and no issues have been
15 briefed. Even where there has substantial pretrial activity, the courts have still
16 granted voluntary dismissals without prejudice. *E.g., Resorts International, Inc. v*
17 *Lowenschuss*, 67 F.3d 1394, 1400-01 (9th Cir. 1995) ("At most, Lowenschuss has
18 been inconvenienced by expending time and resources in preparing for the trial and
19 we have held that '[t]he inconvenience of defending another lawsuit or the fact that
20 the defendant has already begun trial preparations does not constitute prejudice'.");
21 *Tyco Laboratories, Inc., supra,* 627 F.2d at 56-57 ("We cannot agree, however,
22 that the fact that a pretrial motion for summary judgment had been filed by some of
23 the defendants as to one of Tyco's asserted grounds for relief is equivalent to an
24 'imminent' resolution on the merits of the action.").

25
26
27
28

6

1  VI.   CONCLUSION

2           For the foregoing reasons, Plaintiffs Juan Rodriguez and Josefina Rodriguez

3  respectfully submit that their action be dismissed without prejudice.

4

5                                          Respectfully submitted,

6  Date:  March 19, 2008                   LAW OFFICES OF TIMOTHY P. DILLON

7                                          By: _____

8                                                  Timothy P. Dillon
                                           Attorneys for Plaintiffs Juan Rodriguez and
9                                          Josefina Rodriguez

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| JUDY WILLIAMS, individually and on behalf of all others similarly situated, | CASE NO.: 07-cv-6342 |
| Plaintiff, |  |
| v. | **PLAINTIFF'S MOTION TO DISMISS PURSUANT TO FED.R. CIV. P. 41(a)(2)** |
| WELLS FARGO BANK, N.A. |  |
| Defendant. |  |

For the reasons set forth in the attached memorandum, Plaintiff Judy Williams hereby moves the Court, pursuant to Fed. R. Civ. P. 41(a)(2), for an order granting Plaintiff's request to voluntarily dismiss this action without prejudice.

Dated: March 19, 2008

Respectfully submitted,

**SCHIFFRIN BARROWAY
TOPAZ & KESSLER, LLP**

_____*/s/ Edward W. Ciolko*_____
Joseph H. Meltzer
Edward W. Ciolko
Katherine B. Bornstein
Joseph A. Weeden
280 King of Prussia Road
Radnor, Pennsylvania 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

**ROBERT D. ALLISON &
ASSOCIATES**
Robert D. Allison, I.D. #36749
Bruce C. Howard
Steven P. Schneck
122 S. Michigan Ave., Suite 1850
Chicago, IL 60603
Telephone: (312) 427-7600
Facsimile: (312) 427-1850

*Attorneys for Judy Williams*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JUDY WILLIAMS, individually and on behalf of all others similarly situated, | CASE NO.: 07-cv-6342 |
| Plaintiff, | |
| v. | MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS PURSUANT TO FED.R. CIV. P. 41(a)(2) |
| WELLS FARGO BANK, N.A. | |
| Defendant. | |

## I.    Introduction

For the reasons outlined herein, Plaintiff Judy Williams respectfully requests dismissal of this action, without prejudice. Fed. R. Civ. P. 41(a) governs the voluntary dismissal of actions by a plaintiff. Rule 41(a)(1)(A)(i) permits a unilateral voluntary dismissal by the plaintiff "before the opposing party serves either an answer or a motion for summary judgment." However, as Defendant Wells Fargo Bank, N.A. ("Wells Fargo") has served an answer in this action, Plaintiff seeks dismissal of this action pursuant to Rule 41(a)(2), which permits dismissal of an action at the plaintiff's request, pursuant to an order of the court. *See, e.g., Wojtas v. Capital Guardian Trust Co.*, 477 F.3d 924, 927 (7th Cir. 2007); *Chavez v. Ill. State Police*, 251 F.3d 612, 654 (7th Cir. 2001).

Rule 41(a)(2) provides the court with broad discretion to grant the dismissal of this action at Plaintiff Williams' request. *See Tyco Laboratories, Inc. v. Koppers Co., Inc.*, 627 F.2d 54, 56 (7th Cir. 1980) ("The express language of the rule makes it clear

that the determination of whether to grant a motion for voluntary dismissal rests within the sound discretion of the district court"); *Pontenberg v. Boston Sci. Corp.*, 252 F.3d 1253 (11th Cir. 2001) ("The district court enjoys broad discretion in determining whether to allow a voluntary dismissal under Rule 41(a)(2)").

Further, a motion to dismiss pursuant to Fed. R. Civ. P. 41(a)(2) should be granted unless the defendant will suffer clear legal prejudice. *See United States of America v. OutBoard Marine Corp.,* 789 F.2d 497, 502 (7th Cir. 1986) (the Court abuses its discretion only when it can be established that the Defendant will suffer "plain legal prejudice" as a result of the dismissal of the Plaintiff's litigation). Even the mere prospect of subsequent litigation is insufficient for denial of a plaintiff's Rule 41(a)(2) motion. *See Pontenberg,* 252 F.3d 1253 (quoting *McCants v. Ford Motor Co., Inc.*, 781 F.2d 855, 856-57 (11th Cir. 1986) (court affirmed the district court's decision to dismiss the case without prejudice)); See also *In re Vale,* 180 B.R. 1017, 1023 (N.D. Ind. 1994).

## II.    Background on the Williams Action

On November 8, 2007, Plaintiff Judy Williams filed this action (the "Williams Action") against Wells Fargo. The Williams Action alleges violations of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, the Equal Credit Opportunity Act, 15 U.S.C. § 1691, *et seq.*, and the Civil Rights Act, 42 U.S.C. §§ 1981, 1982 *et seq.* Specifically, Williams asserts that Wells Fargo has violated those statutes by, *inter alia*, having an established pattern and practice of discriminating against minority mortgage borrowers, including Williams and the putative class, on the basis of their race in the financing of residential home purchases by giving them mortgages with less favorable terms than it gave to similarly situated non-minority borrowers.

2

Williams, a resident of Chicago, filed her action in the Northern District of Illinois. Pursuant to 28 U.S.C. § 1391(b), venue was and is appropriate in the Northern District of Illinois because (a) Wells Fargo resides in this district and this division, (b) a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district and this division, and (c) a substantial part of property that is the subject of this action is situated in this district and this division.

On January 3, 2008, Wells Fargo filed a motion before the Judicial Panel on Multidistrict Litigation (the "MDL Motion") requesting transfer for consolidation and coordination of similar putative class actions pending in federal district courts against Wells Fargo to a single transferee district. Wells Fargo filed an answer to the Plaintiff Williams' complaint on January 4, 2008. Subsequently, the parties to the Williams action appeared before the Court for a status conference on January 16, 2008. At the status conference, the Court, in light of Defendant's MDL Motion, ordered that the parties return on April 29, 2008 (or possibly later, if the Panel has not yet issued its ruling).

**III.    Similar Actions are Pending in California**

Wells Fargo's MDL Motion is currently pending. In short, at least five federal class action lawsuits challenging Wells Fargo's alleged discriminatory lending practices are pending in three federal district courts. In addition to the Williams action, three cases were pending at the time Wells Fargo filed its MDL Motion, listed in order of filing:

1.    *Jeffries v. Wells Fargo Bank N.A.*, No. 07cv3880 (N.D. Cal. 2007);

2.    *Ventura v. Wells Fargo Bank, N.A.*, No. 07cv4309 (N.D. Cal. 2007); and

3.    *Rodriguez v. Wells Fargo Bank, N.A.*, No. 07cv6780 (C.D. Cal. 2007).

Subsequent to the filing of the MDL Motion, a fifth case, *Brown v. Wells Fargo Bank, N.A.*, No. 08-cv0492 was filed against Wells Fargo in the Northern District of

California, alleging the same discriminatory lending practices, along with an administrative motion to relate the case to *Jeffries* and *Ventura*.

The cases each challenge Wells Fargo's mortgage pricing policies and procedures that result in minorities receiving home loans with higher fees, rates and costs than similarly situated non-minority borrowers. The cases are each national in scope and are brought on behalf of overlapping classes.

On January 8, 2008, Judge Martin J. Jenkins of the Northern District of California entered a pre-trial order consolidating *Jeffries* and *Ventura*. Further, Judge Jenkins appointed two firms to serve as Co-Lead and Liaison Interim Class Counsel, as further described in the order, a copy of which is attached hereto as Exhibit A.

On February 15, 2008, *Jeffries* and *Ventura* were reassigned from United States District Court Judges Martin J. Jenkins to United States District Court Judge Maxine M. Chesney. *Jeffries* was assigned new case number C 07-03880 MMC and *Ventura* was assigned new case number C 07-04309 MMC. On February 21, 2008, *Brown* was ordered related to *Jeffries* and *Ventura* and was reassigned from United States District Court Judges Jeffrey S. White to Judge Chesney. *See* Exhibit B attached hereto.

On reassignment, the then-scheduled second Case Management Conference in the *Jeffries* and *Ventura* actions was vacated.[1] Thereafter, on February 21 and 25, 2008, Judge Chesney issued Orders scheduling a joint Case Management Conference in the *Jeffries*, *Ventura* and *Brown* actions, on May 2, 2008, at 10:30 a.m. *See* Exhibits C, D and E attached hereto.

---

[1]  Pursuant to Judge Jenkins' Pretrial Order on Case Management, a continued Case Management Conference in *Jeffries* and *Ventura* was to be held before Judge Jenkins on February 26, 2008.

With respect to the consolidated actions before Judge Chesney, a pretrial schedule is in place, the court has appointed co-lead counsel for plaintiffs, protective orders for the orderly advancement of discovery have been entered and comprehensive discovery requests have been served and are outstanding.

Thus, the three similar actions in the Northern District of California are currently in a more advanced stage of litigation than the Williams action.

## IV.    Plaintiff Williams' Claims Will be Effectively Litigated in the Northern District of California

Plaintiff Judy Williams, through counsel, has met and conferred with the Co-Lead and Interim Class Counsel appointed by Judge Jenkins and pursuant to such good faith consultations, in the interests of the putative class and the efficient and expeditious prosecution of the putative class' claims, Plaintiff Williams, through counsel, has agreed that the most appropriate venue for this action at this time is the Northern District of California. In furtherance of the effective and zealous prosecution of this case, Plaintiff Williams, as a named plaintiff, and her undersigned counsel have agreed to labor amicably with the Co-Lead and Interim Class Counsel appointed by Judge Jenkins.

Further, the Northern District of California is unarguably an appropriate forum for the effective litigation of the claims of Plaintiff Williams and putative class. First, Wells Fargo issues more home loans to consumers in the State of California than in any other state. Second, Wells Fargo is headquartered in San Francisco. Plaintiff Williams believes that the "discretionary pricing policies" that resulted in minorities paying higher fees and interest rates on their home loans emanated from Wells Fargo's corporate San Francisco headquarters – therefore relevant documentation and witnesses will likely be situated there, as well as in Chicago, Illinois. Plaintiff believes that it is Wells Fargo non-

5

delegable duty to ensure that its mortgage financing structure and policies do not have a disparate impact on legally protected minority groups—regardless of where they or any of its lending subsidiaries are located.

Lastly, the dismissal of this action will, essentially, moot the pending MDL Motion and, accordingly, conserve the resources of the MDL Panel. As this Court was awaiting the MDL Panel's decision before setting any schedule for the prosecution of the instant action, Defendant will suffer no prejudice by dismissal and the Court will not have expended significant resources in overseeing the litigation.

Accordingly, Plaintiff Williams believes that consenting to the litigation of her claims in the Northern District of California will expedite resolution of her and the proposed class' claims, conserve judicial resources, serve the convenience of both parties and reduce the risk of inconsistent pretrial rulings.

Thus, Plaintiff Williams' interests, at this time given the events that have transpired since the filing of the instant complaint, will be served—and her claims both effectively and more efficiently litigated—in the district where Wells Fargo is headquartered.

## V.     Wells Fargo Will Not Be Prejudiced by the Dismissal of this Action

As described herein, at least four similar actions are pending against Wells Fargo, three of which have already been consolidated in the Northern District of California. Regardless of whether this action proceeds, Wells Fargo must defend the claims alleged herein. As: (a) Wells Fargo is headquartered in the Northern District of California; (b) the claims alleged herein allege conduct that emanated, in part, from Wells Fargo's San Francisco headquarters; and (c) the consolidated actions in California are currently

6

further advanced than this action, Wells Fargo will suffer no harm by the dismissal of this action. If anything, Wells Fargo will benefit by being able to litigate these claims in a more convenient forum vis-à-vis its national headquarters.

Further, Wells Fargo has accrued minimal expense with respect to this action. In *Tyco*, even where discovery had been taken and class certification had briefed, the Seventh Circuit held that, because the discovery pursued in the case had not been overly extensive, the amount of discovery which had taken place during the litigation did not render a voluntary dismissal of the litigation impermissibly prejudicial to the defendant. *See Tyco Laboratories, Inc.*, 627 F.2d at 56. In the *Williams* action, to date, no discovery requests have been served and no issues have been briefed. The parties have simply attended one status conference, where the Court essentially delayed further litigation of this action, pending the resolution of Wells Fargo's MDL Motion.

## VI.     Conclusion

For the foregoing reasons, Plaintiff Williams respectfully submits that her action be dismissed, without prejudice.

Dated: March 19, 2008                    Respectfully submitted,

                                         **SCHIFFRIN BARROWAY**
                                         **TOPAZ & KESSLER, LLP**


                                         ___/s/ Edward W. Ciolko___
                                         Joseph H. Meltzer
                                         Edward W. Ciolko
                                         Katherine B. Bornstein
                                         Joseph A. Weeden
                                         280 King of Prussia Road
                                         Radnor, Pennsylvania 19087
                                         Telephone: (610) 667-7706
                                         Facsimile: (610) 667-7056

**ROBERT D. ALLISON &
ASSOCIATES**
Robert D. Allison, I.D. #36749
Bruce C. Howard
Steven P. Schneck
122 S. Michigan Ave., Suite 1850
Chicago, IL 60603
Telephone: (312) 427-7600
Facsimile: (312) 427-1850

*Attorneys for Judy Williams*

# EXHIBIT A

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
Andrew S. Friedman (*Pro Hac Vice*)
Wendy J. Harrison (CA SBN 151090)
2901 North Central Avenue, Suite 1000
Phoenix, Arizona 85012
Telephone: (602) 274-1100

CHAVEZ & GERTLER, L.L.P.
Mark A. Chavez (CA SBN 90858)
42 Miller Avenue
Mill Valley, California 94941
(415) 381-5599

RODDY KLEIN & RYAN
Gary Klein (*Pro Hac Vice*)
Shennan Kavanagh (*Pro Hac Vice*)
727 Atlantic Avenue
Boston, MA 02111-2810
Telephone: 617/357-5500

COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
Shawn A. Williams
100 Pine Street Suite 2600
San Francisco, CA 94111
Telephone: 415/288-4545

COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
Samuel H. Rudman (*Pro Hac Vice*)
Robert M. Rothman (*Pro Hac Vice*)
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: WELLS FARGO RESIDENTIAL MORTGAGE LENDING DISCRIMINATION LITIGATION | [PROPOSED] PRE-TRIAL ORDER NO. 1 |
| | Honorable Martin J. Jenkins |
| | Date Action Filed: July 30, 2007 |
| This document relates to: | |
| ALL ACTIONS | Lead Case No: C 07-03880 MJJ |
| | Related Case No: C 07-04309 MJJ |

2

In order to promote the just, expeditious and cost-effective resolution of this litigation, IT IS HEREBY ORDERED as follows:

I.    RULE 42 CONSOLIDATION, MASTER FILE AND MASTER DOCKET

A.    Pursuant to Federal Rule of Civil Procedure 42(a), the Clerk of Court shall consolidate the action *Jeffries et al. v. Wells Fargo Bank N.A. et al.,* C 07-03880 MJJ, and Related Case *Ventura et al. v. Wells Fargo Bank N.A.,* C 07-04309 MJJ for pretrial proceedings (the "Consolidated Actions").

B.    The *Jeffries* action, C 07-03880 MJJ, as the first filed action, is the lead case and will now be referred to as "In Re Wells Fargo Residential Mortgage Lending Discrimination Litigation."

C.    Pursuant to LR 3-4(b), when a pleading or other captioned document is filed which is intended to be applicable to all these Consolidated Actions, the paper shall be filed with a caption denoting the new title caption, further denoting the lead case number (C 07-03880 MJJ) above all consolidated case numbers, and indicating that it is applicable to "All Actions." Duplicate originals need not be submitted for associated cases.

D.    When such a pleading or other paper is filed stating that it is applicable to "All Actions," the Clerk of Court ("Clerk") is directed to file such pleading or paper in C 07-03880 MJJ as the Master File, and enter such filing in the docket for C 07-03880 MJJ as the Master Docket.

3

E.    An original of this Order and every subsequent Order shall be filed by the Clerk in the Master File and entered upon the Master Docket.

F.    When a pleading or other captioned document is intended to be applicable only to one or more, but fewer than all, of these Consolidated Actions, the paper shall be filed with a caption indicating the actions which it is applicable to through use of the last name of the first-named plaintiff in that action and that action's case-specific number, and with an additional duplicate original for each of the individual actions so identified.

G.    When such a pleading or other paper is filed stating that it is applicable to fewer than all of these Consolidated Actions, the Clerk is directed to file such pleading or paper in the docket(s) for such action(s).  The Clerk shall also note on the Master Docket those actions to which the document relates.

II.    APPOINTMENT AND ORGANIZATION OF PLAINTIFFS' CO-LEAD AND LIAISON INTERIM CLASS COUNSEL

A.    The organizational structure of Plaintiffs' counsel established under paragraph III.B. hereof shall apply to all such Plaintiffs' counsel in all of these Consolidated Actions, and including subsequently filed actions.

B.    Pursuant to Federal Rule of Civil Procedure 23(g), the following counsel are designated to act on behalf of Plaintiffs and the Class in these Consolidated Actions and all subsequently filed actions unless otherwise ordered by the Court ("Co-Lead and Liaison Interim Class Counsel"):

4

1.     BONNETT FAIRBOURN FRIEDMAN & BALINT, P.C.
       ANDREW S. FRIEDMAN
       2901 N. Central Avenue
       Suite 1000
       Phoenix, AZ 85012
       Telephone: 602/274-1100

       *Co-Lead Interim Class Counsel*

2.     RODDY KLEIN & RYAN
       GARY KLEIN
       727 Atlantic Avenue
       Boston, MA 02111-2810
       Telephone: 617/357-5500

       *Co-Lead Interim Class Counsel*

3.     Coughlin Stoia Geller Rudman & Robbins LLP
       SHAWN A. WILLIAMS
       100 Pine Street Suite 2600
       San Francisco, CA 94111
       Telephone: 415/288-4545

       Coughlin Stoia Geller Rudman & Robbins LLP
       SAMUEL H. RUDMAN
       ROBERT M. ROTHMAN
       58 South Service Road
       Suite 200
       Melville, NY 11747
       Telephone: 631/367-7100

       *Liaison Interim Class Counsel*

C.     Co-Lead and Liaison Interim Class Counsel are directed to mail a

copy of this Order to all counsel of record in each of these consolidation actions.

D.     Co-Lead and Liaison Interim Class Counsel are expected to maintain

communications and promote harmonious dealings among all Plaintiffs' counsel.

5

Co-Lead and Liaison Interim Class Counsel shall provide general supervision of
the activities of Plaintiffs' counsel and shall have the following responsibilities and
duties to perform or delegate as appropriate:

       1.     to brief and argue motions;

       2.     to initiate and conduct discovery, including, without limitation,
coordination of discovery with Defendants' counsel, the preparation of written
interrogatories, requests for admissions and requests for production of documents;

       3.     to direct and coordinate the examination of witnesses in
depositions;

       4.     to act as spokesperson at pretrial conferences;

       5.     to call and chair meetings of counsel as appropriate or
necessary from time to time;

       6.     to initiate and conduct any settlement negotiations with counsel
for Defendants;

       7.     to provide general coordination of the activities of Plaintiffs'
counsel and to delegate work responsibilities to selected counsel as may be
required in such a manner as to lead to the orderly and efficient prosecution of this
litigation and to avoid duplication or unproductive effort;

       8.     to consult with and employ experts;

     9.    to receive and review periodic time reports of all attorneys on behalf of Plaintiffs and to determine if the time is being spent appropriately and for the benefit of Plaintiffs; and

     10.    to perform such other duties as may be expressly authorized by further order of this Court.

    E.    Defendants' counsel may rely upon all agreements made with Plaintiffs' Co-Lead and Liaison Interim Class Counsel and such agreements shall be binding on Plaintiffs and Plaintiffs' counsel in these Consolidated Actions and any subsequent related actions.

III.    **LATER FILED CASES IN THIS COURT**

    A.    When a case that relates to the same subject matter as these actions is hereafter filed in this Court or transferred here from another court, the Clerk of this Court shall:

     1.    File a copy of this Order in the separate file for such action.

     2.    Mail a copy of the Order of assignment to counsel for plaintiffs and counsel for each defendant in the actions consolidated herewith.

     3.    Make an appropriate entry in the Master Docket.

     4.    Mail to the attorneys for the plaintiff(s) in the newly filed or transferred case a copy of this Order.

Case 3:07-cv-02363-MMC   Document 42-2-26   Filed 06/25/2008   Page 67 of 71

Case 1:07-cv-06342     Document 36-4     Filed 03/19/2008     Page 16 of 30
Case 3:07-cv-03880-MMC     Document 52     Filed 01/08/2008     Page 7 of 10

5.      Upon the first appearance of any new defendant(s) mail to the

attorneys for the defendant(s) in such newly filed or transferred case a copy of this

Order.

B.      Counsel for plaintiffs and defendants in the consolidated actions shall

cooperate in calling to the attention of the Clerk any newly filed or transferred

case.

## IV.    APPLICATION OF THIS ORDER TO SUBSEQUENT ACTIONS

A.      This Order shall apply to each case alleging claims similar to those set

forth in these consolidated actions, which is filed in or transferred to this Court

after the date of this Order, unless a party objecting to the consolidation of that

case or to any other provision of this Order serves an application for relief from

this Order or from any of its provisions within ten (10) days after the date on which

the Clerk mails a copy of this Order to counsel for that party.

B.      Because additional cases may be consolidated with these Consolidated

Actions in this Court, this Court will issue orders to the extent practicable calling

for such matters to proceed in a manner consistent with the schedule in these

Consolidated Actions.

C.      All future plaintiffs' counsel consolidated in this action must be

authorized in advance by Co-Lead and Liaison Interim Class Counsel to assume

8

responsibilities related to those of the firms designated above as Co-Lead and Liaison Interim Class Counsel.

## V.    PRESERVATION OF EVIDENCE

A.    The Court reminds the parties of their duty to preserve evidence that may be relevant to these Consolidated Actions.

B.    This duty extends to documents, data and tangible things (to be interpreted broadly) in the possession, custody and control of the parties to this action, and the employees, agents, contractors or other non-parties who possess materials reasonably anticipated to be subject to discovery in these consolidated actions. Counsel are under an obligation to exercise efforts to identify and notify such non-parties, including employees.

C.    Preservation of evidence is to be interpreted broadly to accomplish the goal of maintaining the integrity of all documents, data and tangible things reasonably anticipated to be subject to discovery in these Consolidated Actions.

D.    Counsel are directed to inquire of their respective clients if the business practices of any party involve the routine destruction, recycling, relocation or mutation of such materials and, if so, direct the party, to the extent practicable for the pendency of this order, either to (1) halt such business processes; (2) sequester or remove such material from the business process; or (3)

9

Case 3:07-cv-02363-MMC Document 42-26 Filed 06/25/2008 Page 897 of 71

Case 1:07-cv-06342 Document 36-4 Filed 03/19/2008 Page 18 of 30
Case 3:07-cv-03880-MMC Document 52 Filed 01/08/2008 Page 9 of 10

arrange for the preservation of complete and accurate duplicates or copies of such

material, suitable for later discovery if requested.

     E.    The most senior lawyer or lead trial counsel representing Defendant

and a representative for Co-Lead and Liaison Interim Class Counsel shall, not later

than _____, 2008, submit to the Court under seal and pursuant to Federal

Rule of Civil Procedure 11, a statement that the directive in paragraph IV(D)

above, has been carried out.

VI.   MISCELLANEOUS

     A.    Counsel for all parties are directed to cooperate with one another,

whenever possible, to promote the expeditious handling of pretrial proceedings in

these Consolidated Actions.

     B.    All subsequent pretrial orders issued in these Consolidated Actions

shall be numbered consecutively. Any reference to an Order of this Court in any

document filed with the Court shall include the proper number of the Order.

     C.    This Order may be amended by the Court on its own motion, and any

party may apply at any time to this Court for a modification or exception to this

Order.

     D.    Service of any pleading, motion or other paper shall be made by hand

delivery, facsimile, overnight delivery or by United States mail to counsel for

Defendant and to the firms appointed as Co-Lead and Liaison Interim Class

10

Case 3:07-cv-02663-MMC Document 42-26 Filed 06/25/2008 Page 40 of 71

Case 1:07-cv-06342     Document 36-4     Filed 03/19/2008     Page 19 of 30
Case 3:07-cv-03880-MMC     Document 52     Filed 01/08/2008     Page 10 of 10

Counsel, as well as by e-mail to the designated e-mail distribution lists submitted by each party, as updated.

E.     All Plaintiffs' counsel in these Consolidated Actions and counsel of any future matter consolidated with this case shall submit a record of the time expended on these matters on a monthly basis in a manner prescribed by Co-Lead and Liaison Interim Class Counsel.

IT IS SO ORDERED.

DATED: ___January 8_____, 2008.

MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE

11

# EXHIBIT B

Case 3:07-cv-02063-MMC Document 42-26 Filed 06/25/2008 Page 42 of 71

Case 1:07-cv-06342    Document 36-4    Filed 03/19/2008    Page 21 of 30
Case 3:07-cv-03880-MMC    Document 70    Filed 02/21/2008    Page 1 of 1

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

**RELATED CASE ORDER**

An Administrative Motion has been filed, stating that the following cases may be related within the meaning of Civil L.R. 3-12:

C 07-3880 MMC    **Jeffries, et al. v. Wells Fargo Bank, N.A., et al.**
C 07-4309 MMC    **Ventura, et al. v. Wells Fargo Bank**
C 08-0492 JSW    **Brown v. Wells Fargo Bank, N.A.**

**ORDER**

On the basis of the material submitted to the Court, as the Judge assigned to the earliest filed case, I find that the cases:

[  ] **ARE NOT RELATED** as defined by Civil L.R. 3-12(a).

[ X ] **ARE RELATED** as defined by Civil L.R. 3-12(a). Counsel are instructed that all future filings in <u>Brown v. Wells Fargo Bank, N.A.</u> are to bear the initials **MMC** immediately after the case number. Any case management conference in the reassigned case will be rescheduled by the Court. Any dates for hearing noticed motions are vacated and must be re-noticed by the moving party before the undersigned; any deadlines set by the ADR Local Rules remain in effect; and any deadlines established in a case management order continue to govern, except dates for any appearance in court, which will be rescheduled by the undersigned.

**DATED:** February 21, 2008

MAXINE M. CHESNEY
United States District Judge

**EXHIBIT C**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| NANCY JEFFRIES, et al., | ) | |
| | ) | |
| | ) | |
| Plaintiff(s), | ) | NO.  C-07-3880  MMC |
| | ) | |
| vs. | ) | |
| | ) | CASE MANAGEMENT |
| WELLS FARGO BANK, et al., | ) | CONFERENCE ORDER |
| | ) | |
| Defendant(s), | ) | |
| _____ | ) | |

IT IS HEREBY ORDERED that, pursuant to Rule 16(b), Federal Rules of Civil Procedure, and Civil L.R. 16-2, a Case Management Conference will be held in this case before the Honorable Maxine M. Chesney on   Friday, May 2, 2008            at 10:30 a.m. in Courtroom No. 7, 19th floor Federal Building.

Plaintiff(s) shall serve copies of this Order and the Court's Standing Orders at once on all parties to this action, and on any parties subsequently joined, in accordance with the provisions of Fed.R.Civ.P. 4 and 5.   Following service, plaintiff(s) shall file a certificate of service with the Clerk of this Court.

Counsel are directed to confer in advance of the Case Management Conference with respect to all of the agenda items listed in the *Standing Order for All Judges of the Northern District of California/Contents of Joint Case Management Statement.* Not less than seven days before the conference, counsel shall file a joint case management statement addressing each agenda item.  Failure to file a joint statement shall be accompanied by a signed declaration setting forth the grounds for such failure.

Each party shall be represented at the Case Management Conference by counsel prepared to address all of the matters referred to in this Order, and with authority to enter stipulations and make admissions pursuant to this Order.

Any request to reschedule the above dates shall be made in writing, and, if

possible, by stipulation. Unless impracticable, such request shall be made not less than ten days before the conference date.  Good cause must be shown.

    Failure to comply with this Order or the Local Rules of this Court may result in sanctions.  <u>See</u> Fed.R.Civ.P. 16(f); Civil L.R. 1-4.

    IT IS SO ORDERED.

Dated:   February 27, 2007.

**MAXINE M. CHESNEY**
**United States District Judge**

# **EXHIBIT D**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| GILBERT VENTURA, SR., et al., | ) | |
| | ) | |
| | ) | |
| Plaintiff(s), | ) | NO.  C-07-4309  MMC |
| | ) | |
| vs. | ) | |
| | ) | CASE MANAGEMENT |
| WELLS FARGO BANK, | ) | CONFERENCE ORDER |
| | ) | |
| Defendant(s), | ) | |
| | ) | |

        IT IS HEREBY ORDERED that, pursuant to Rule 16(b), Federal Rules of Civil
Procedure, and Civil L.R. 16-2, a Case Management Conference will be held in this case
before the Honorable Maxine M. Chesney on   Friday, May 2, 2008         at 10:30 a.m.
in Courtroom No. 7, 19th floor Federal Building.

        Plaintiff(s) shall serve copies of this Order and the Court's Standing Orders at
once on all parties to this action, and on any parties subsequently joined, in accordance
with the provisions of Fed.R.Civ.P. 4 and 5.   Following service, plaintiff(s) shall file a
certificate of service with the Clerk of this Court.

        Counsel are directed to confer in advance of the Case Management Conference
with respect to all of the agenda items listed in the *Standing Order for All Judges of the
Northern District of California/Contents of Joint Case Management Statement.* Not less
than seven days before the conference, counsel shall file a joint case management
statement addressing each agenda item.   Failure to file a joint statement shall be
accompanied by a signed declaration setting forth the grounds for such failure.

        Each party shall be represented at the Case Management Conference by counsel
prepared to address all of the matters referred to in this Order, and with authority to
enter stipulations and make admissions pursuant to this Order.

        Any request to reschedule the above dates shall be made in writing, and, if

possible, by stipulation. Unless impracticable, such request shall be made not less than ten days before the conference date.  Good cause must be shown.

      Failure to comply with this Order or the Local Rules of this Court may result in sanctions.  <u>See</u> Fed.R.Civ.P. 16(f); Civil L.R. 1-4.

      **IT IS SO ORDERED.**

Dated:   February 27, 2007.

                                   **MAXINE M. CHESNEY**
                                   **United States District Judge**

# **EXHIBIT E**

Case 3:08-cv-02063-MMC Document 12-26 Filed 06/25/2008 Page 50 of 71
Case 1:07-cv-06342 Document 36-4 Filed 03/19/2008 Page 29 of 30
Case 3:08-cv-00492-MMC Document 10 Filed 02/25/2008 Page 1 of 2

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RUBY KATHRYN BROWN,　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　　　Plaintiff(s),　　)　　　NO. C-08-0492 MMC
　　　　　　　　　　　　　　　　)
　　vs.　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　)　　　CASE MANAGEMENT
WELLS FARGO BANK, N.A.,　　　　)　　　CONFERENCE ORDER
　　　　　　　　　　　　　　　　)
　　　　　　　　Defendant(s),　　)
_____)

IT IS HEREBY ORDERED that, pursuant to Rule 16(b), Federal Rules of Civil Procedure, and Civil L.R. 16-2, a Case Management Conference will be held in this case before the Honorable Maxine M. Chesney on   Friday, May 2, 2008   at 10:30 a.m. in Courtroom No. 7, 19th floor Federal Building.

Plaintiff(s) shall serve copies of this Order and the Court's Standing Orders at once on all parties to this action, and on any parties subsequently joined, in accordance with the provisions of Fed.R.Civ.P. 4 and 5.   Following service, plaintiff(s) shall file a certificate of service with the Clerk of this Court.

Counsel are directed to confer in advance of the Case Management Conference with respect to all of the agenda items listed in the *Standing Order for All Judges of the Northern District of California/Contents of Joint Case Management Statement.* Not less than seven days before the conference, counsel shall file a joint case management statement addressing each agenda item.   Failure to file a joint statement shall be accompanied by a signed declaration setting forth the grounds for such failure.

Each party shall be represented at the Case Management Conference by counsel prepared to address all of the matters referred to in this Order, and with authority to enter stipulations and make admissions pursuant to this Order.

Any request to reschedule the above dates shall be made in writing, and, if

possible, by stipulation. Unless impracticable, such request shall be made not less than ten days before the conference date.  Good cause must be shown.

Failure to comply with this Order or the Local Rules of this Court may result in sanctions.  See Fed.R.Civ.P. 16(f); Civil L.R. 1-4.

IT IS SO ORDERED.

Dated:   February 27, 2007.

MAXINE M. CHESNEY
United States District Judge

# EXHIBIT B

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

CASE NUMBER: C 07-03880 MJJ

TITLE: JEFFRIES et al -v- WELLS FARGO BANK N.A. et al

**REASSIGNMENT ORDER**
Assignment Plan - Paragraph J

GOOD CAUSE APPEARING THEREFOR,

IT IS ORDERED that this case is reassigned to the Honorable Judge Maxine M. Chesney at the San Francisco Division for all further proceedings.

This case has been assigned the following new number: C 07-03880 MMC. All future filings should reflect this number. Please change all records accordingly.

**ALL PREVIOUSLY NOTICED MOTIONS MUST BE RENOTICED BEFORE THE ABOVE-NAMED JUDGE. ANY PAPERS PREVIOUSLY FILED IN SUPPORT OF OR IN OPPOSITION TO A MOTION NEED NOT BE REFILED. PREVIOUSLY SCHEDULED STATUS AND CASE MANAGEMENT CONFERENCES ARE VACATED. COUNSEL WILL RECEIVE NOTICE FROM THE CLERK RESETTING ANY STATUS OR CASE MANAGEMENT CONFERENCES IN CIVIL CASES, AND ANY OTHER HEARINGS IN CRIMINAL CASES. ALL OTHER SCHEDULED MATTERS, INCLUDING DISCOVERY CUT-OFF DATES, DOCUMENT DISCLOSURE DATES, DEADLINE FOR FILING PRETRIAL DOCUMENTS, PRETRIAL CONFERENCE AND TRIAL DATE AND ADR SETTINGS AND DEADLINES, SHALL REMAIN IN EFFECT, UNLESS OTHERWISE ORDERED BY THE NEWLY ASSIGNED JUDGE. MATTERS PREVIOUSLY REFERRED TO A MAGISTRATE JUDGE SHALL REMAIN BEFORE THAT MAGISTRATE JUDGE.**

DATED: February 15, 2008                    FOR THE EXECUTIVE COMMITTEE:

Richard W. Wieking
Clerk

# EXHIBIT C

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

CASE NUMBER: C 07-04309 MJJ

TITLE: VENTURA et al -v- WELLS FARGO BANK NA et al

**REASSIGNMENT ORDER**
Assignment Plan - Paragraph J

GOOD CAUSE APPEARING THEREFOR,

IT IS ORDERED that this case is reassigned to the Honorable Judge Maxine M. Chesney at the San Francisco Division for all further proceedings.

This case has been assigned the following new number: C 07-04309 MMC. All future filings should reflect this number. Please change all records accordingly.

**ALL PREVIOUSLY NOTICED MOTIONS MUST BE RENOTICED BEFORE THE ABOVE-NAMED JUDGE. ANY PAPERS PREVIOUSLY FILED IN SUPPORT OF OR IN OPPOSITION TO A MOTION NEED NOT BE REFILED. PREVIOUSLY SCHEDULED STATUS AND CASE MANAGEMENT CONFERENCES ARE VACATED. COUNSEL WILL RECEIVE NOTICE FROM THE CLERK RESETTING ANY STATUS OR CASE MANAGEMENT CONFERENCES IN CIVIL CASES, AND ANY OTHER HEARINGS IN CRIMINAL CASES. ALL OTHER SCHEDULED MATTERS, INCLUDING DISCOVERY CUT-OFF DATES, DOCUMENT DISCLOSURE DATES, DEADLINE FOR FILING PRETRIAL DOCUMENTS, PRETRIAL CONFERENCE AND TRIAL DATE AND ADR SETTINGS AND DEADLINES, SHALL REMAIN IN EFFECT, UNLESS OTHERWISE ORDERED BY THE NEWLY ASSIGNED JUDGE. MATTERS PREVIOUSLY REFERRED TO A MAGISTRATE JUDGE SHALL REMAIN BEFORE THAT MAGISTRATE JUDGE.**

DATED: February 15, 2008          FOR THE EXECUTIVE COMMITTEE:

Richard W. Wieking
Clerk

# EXHIBIT D

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

### RELATED CASE ORDER

An Administrative Motion has been filed, stating that the following cases may be related within the meaning of Civil L.R. 3-12:

| | |
|---|---|
| C 07-3880 MMC | Jeffries, et al. v. Wells Fargo Bank, N.A., et al. |
| C 07-4309 MMC | Ventura, et al. v. Wells Fargo Bank |
| C 08-0492 JSW | Brown v. Wells Fargo Bank, N.A. |

### ORDER

On the basis of the material submitted to the Court, as the Judge assigned to the earliest filed case, I find that the cases:

[  ] **ARE NOT RELATED** as defined by Civil L.R. 3-12(a).

[ X ] **ARE RELATED** as defined by Civil L.R. 3-12(a). Counsel are instructed that all future filings in Brown v. Wells Fargo Bank, N.A. are to bear the initials **MMC** immediately after the case number. Any case management conference in the reassigned case will be rescheduled by the Court. Any dates for hearing noticed motions are vacated and must be re-noticed by the moving party before the undersigned; any deadlines set by the ADR Local Rules remain in effect; and any deadlines established in a case management order continue to govern, except dates for any appearance in court, which will be rescheduled by the undersigned.

DATED: February 21, 2008

MAXINE M. CHESNEY
United States District Judge

# EXHIBIT E

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| NANCY JEFFRIES, et al., | ) | |
| | ) | |
| Plaintiff(s), | ) | NO. C-07-3880 MMC |
| | ) | |
| vs. | ) | |
| | ) | CASE MANAGEMENT |
| WELLS FARGO BANK, et al., | ) | CONFERENCE ORDER |
| | ) | |
| Defendant(s), | ) | |
| | ) | |

IT IS HEREBY ORDERED that, pursuant to Rule 16(b), Federal Rules of Civil Procedure, and Civil L.R. 16-2, a Case Management Conference will be held in this case before the Honorable Maxine M. Chesney on ___Friday, May 2, 2008___ at 10:30 a.m. in Courtroom No. 7, 19th floor Federal Building.

Plaintiff(s) shall serve copies of this Order and the Court's Standing Orders at once on all parties to this action, and on any parties subsequently joined, in accordance with the provisions of Fed.R.Civ.P. 4 and 5. Following service, plaintiff(s) shall file a certificate of service with the Clerk of this Court.

Counsel are directed to confer in advance of the Case Management Conference with respect to all of the agenda items listed in the *Standing Order for All Judges of the Northern District of California/Contents of Joint Case Management Statement.* Not less than seven days before the conference, counsel shall file a joint case management statement addressing each agenda item. Failure to file a joint statement shall be accompanied by a signed declaration setting forth the grounds for such failure.

Each party shall be represented at the Case Management Conference by counsel prepared to address all of the matters referred to in this Order, and with authority to enter stipulations and make admissions pursuant to this Order.

Any request to reschedule the above dates shall be made in writing, and, if

possible, by stipulation. Unless impracticable, such request shall be made not less than ten days before the conference date.  Good cause must be shown.

Failure to comply with this Order or the Local Rules of this Court may result in sanctions.  See Fed.R.Civ.P. 16(f); Civil L.R. 1-4.

IT IS SO ORDERED.

Dated:  February 27, 2007.

MAXINE M. CHESNEY
United States District Judge

# EXHIBIT F

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GILBERT VENTURA, SR., et al.,    )
                            )
                            )
          Plaintiff(s),    )    NO:  C-07-4309  MMC
                            )
      vs.                    )
                            )    CASE MANAGEMENT
WELLS FARGO BANK,        )    CONFERENCE ORDER
                            )
          Defendant(s).    )
_____)

     IT IS HEREBY ORDERED that, pursuant to Rule 16(b), Federal Rules of Civil
Procedure, and Civil L.R. 16-2, a Case Management Conference will be held in this case
before the Honorable Maxine M. Chesney on __Friday, May 2, 2008__ at 10:30 a.m.
in Courtroom No. 7, 19th floor Federal Building.

     Plaintiff(s) shall serve copies of this Order and the Court's Standing Orders at
once on all parties to this action, and on any parties subsequently joined, in accordance
with the provisions of Fed.R.Civ.P. 4 and 5.  Following service, plaintiff(s) shall file a
certificate of service with the Clerk of this Court.

     Counsel are directed to confer in advance of the Case Management Conference
with respect to all of the agenda items listed in the *Standing Order for All Judges of the
Northern District of California/Contents of Joint Case Management Statement.* Not less
than seven days before the conference, counsel shall file a joint case management
statement addressing each agenda item.  Failure to file a joint statement shall be
accompanied by a signed declaration setting forth the grounds for such failure.

     Each party shall be represented at the Case Management Conference by counsel
prepared to address all of the matters referred to in this Order, and with authority to
enter stipulations and make admissions pursuant to this Order.

     Any request to reschedule the above dates shall be made in writing, and, if

possible, by stipulation. Unless impracticable, such request shall be made not less than ten days before the conference date.  Good cause must be shown.

Failure to comply with this Order or the Local Rules of this Court may result in sanctions.  See Fed.R.Civ.P. 16(f); Civil L.R. 1-4.

IT IS SO ORDERED.

Dated:  February 27, 2007.

MAXINE M. CHESNEY
United States District Judge

# EXHIBIT G

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RUBY KATHRYN BROWN, | ) | |
| | ) | |
| | ) | |
| Plaintiff(s), | ) | NO.  C-08-0492   MMC |
| | ) | |
| vs. | ) | |
| | ) | CASE MANAGEMENT |
| WELLS FARGO BANK, N.A., | ) | CONFERENCE ORDER |
| | ) | |
| Defendant(s), | ) | |
| _____ | ) | |

     IT IS HEREBY ORDERED that, pursuant to Rule 16(b), Federal Rules of Civil Procedure, and Civil L.R. 16-2, a Case Management Conference will be held in this case before the Honorable Maxine M. Chesney on   Friday, May 2, 2008   at 10:30 a.m. in Courtroom No. 7, 19th floor Federal Building.

     Plaintiff(s) shall serve copies of this Order and the Court's Standing Orders at once on all parties to this action, and on any parties subsequently joined, in accordance with the provisions of Fed.R.Civ.P. 4 and 5.   Following service, plaintiff(s) shall file a certificate of service with the Clerk of this Court.

     Counsel are directed to confer in advance of the Case Management Conference with respect to all of the agenda items listed in the *Standing Order for All Judges of the Northern District of California/Contents of Joint Case Management Statement.* Not less than seven days before the conference, counsel shall file a joint case management statement addressing each agenda item.  Failure to file a joint statement shall be accompanied by a signed declaration setting forth the grounds for such failure.

     Each party shall be represented at the Case Management Conference by counsel prepared to address all of the matters referred to in this Order, and with authority to enter stipulations and make admissions pursuant to this Order.

     Any request to reschedule the above dates shall be made in writing, and, if

possible, by stipulation. Unless impracticable, such request shall be made not less than ten days before the conference date.  Good cause must be shown.

      Failure to comply with this Order or the Local Rules of this Court may result in sanctions.  <u>See</u> Fed.R.Civ.P. 16(f); Civil L.R. 1-4.

      IT IS SO ORDERED.

Dated:   February 27, 2007.


                              **MAXINE M. CHESNEY**
                              **United States District Judge**

BEFORE THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

In Re WELLS FARGO MORTGAGE )    MDL No. 1930
LENDING PRACTICES            )
                             )    CERTIFICATE OF SERVICE
————————————————————————— )

I, Wendy J. Harrison, hereby certify that on March 19, 2008, a copy of the following was

served by United States mail, postage prepaid, on the parties listed on the attached Panel Attorney

Service List:

**PLAINTIFFS NANCY AND JOHNNY JEFFRIES AND GILBERT AND TRACY
VENTURA'S SUPPLEMENTAL RESPONSE TO MOTION OF WELLS FARGO,
N.A. UNDER 28 U.S.C. §1407 TO TRANSFER FOR CONSOLIDATED AND
COORDINATED PRETRIAL PROCEEDINGS**

BONNETT, FAIRBOURN, FRIEDMAN
  & BALINT, P.C.
ANDREW S. FRIEDMAN
WENDY J. HARRISON

Andrew S. Friedman
Wendy J. Harrison
2901 N. Central Avenue, Suite 1000
Phoenix, AZ 85012
Telephone: 602/274-1100
602/274-1199 (fax)

- 1 -

RODDY KLEIN & RYAN
GARY KLEIN
SHENNAN KAVANAGH
GILLIAN FEINER
727 Atlantic Avenue
Boston, MA  02111-2810
Telephone:  617/357-5500
617/357-5030 (fax)

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
SHAWN A. WILLIAMS
100 Pine Street, 26th Floor
San Francisco, CA  94111
Telephone:  415/288-4545
415/288-4534 (fax)

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

Judicial Panel on Multidistrict Litigation - Panel Attorney Service List .                    Page 1

Docket: 1930 - IN RE: Wells Fargo Mortgage Lending Practices Litigation
Status:  Pending on  / /
Transferee District:        Judge:                                        Printed on 01/25/2008

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| Ciolko, Edward W.<br>SCHIFFRIN BARROWAY TOPAZ & KESSLER LLP<br>280 King of Prussia Road<br>Radnor, PA 19087 | =>Phone: (610) 667-7706 Fax: (610) 667-7056 Email: eciolko@sbtklaw.com<br>Williams, Judy* |
| Dillon, Timothy P.<br>LAW OFFICES OF TIMOTHY P DILLON<br>361 Forest Avenue<br>Suite 205<br>Laguna Beach, CA 92651 | =>Phone: (949) 376-2800 Fax: (949) 376-2808 Email: timothy@dillonlaw.net<br>Rodriguez, Josefina*; Rodriguez, Juan* |
| Friedman, Andrew C.<br>BONNETT FAIRBOURN FRIEDMAN & BALINT PC<br>2901 N. Central Avenue<br>Suite 1000<br>Phoenix, AZ 85012 | =>Phone: (602) 274-1100 Fax: (602) 274-1199 Email: afriedman@bffb.com<br>Ventura, Sr., Gilbert*; Ventura, Tracy D.* |
| Mortgage Direct, Inc.,<br>360 West Butterfield Road<br>Suite 320<br>Elmhurst, IL 60126 | =><br>Mortgage Direct, Inc. |
| Phillips, Jr., Robert D.<br>REED SMITH LLP<br>Two Embarcadero Center<br>Suite 2000<br>San Francisco, CA 94111 | =>Phone: (415) 543-8700 Fax: (415) 391-8269 Email: rphillips@reedsmith.com<br>Wells Fargo Bank, N.A.* |
| Rothman, Robert M.<br>COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP<br>58 South Service Road<br>Suite 200<br>Melville, NY 11747 | =>Phone: (631) 367-7100 Fax: (631) 367-1173 Email: rrothman@csgrr.com<br>Jeffries, Johnny*; Jeffries, Nancy* |

Copies also sent to:

Lori E. Andrus
Andrus Liberty & Anderson LLP
1438 Market Street
San Francisco, CA 94102

Phone: (415) 896-1000  Fax (415) 896-2249 Email:
lori@libertylaw.com
Ruby Kathryn Brown, California Northern District
Case No. C-08-0492-EDL

Note: Please refer to the report title page for complete report scope and key.

## SCHEDULE A

*Nancy Jeffries, et al. v. Wells Fargo Bank, N.A., et al., C.A. No. 3:07-3880*
United States District Court for the Northern District of California (San Francisco Division)

Shawn Williams
Coughlin Stoia Geller Rudman & Robbins LLP
100 Pine Street, 26th Floor
San Francisco, CA 94111
**Attorney for Plaintiffs**

Marvin Miller
Matthew Vantine
Lori Fanning
Miller Law LLC
115 South LaSalle Street, Suite 2910
Chicago, IL 60603
**Attorney for Plaintiffs**

Thomas Sobol
Gregory Matthews
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Boston, MA 02142
**Attorneys for Plaintiffs**

*Gilbert Ventura, Sr., et al. v. Wells Fargo Bank, N.A., C.A. No. 3:07-4309*
United States District Court for the Northern District of California (San Francisco Division)

Mark Chavez
Nance Becker
Chavez & Gertler L.L.P.
42 Miller Avenue
Mill Valley, CA 94941
**Attorneys for Plaintiffs**

Leslie E. Hurst
Theodore Joseph Pintar
Coughlin Stoia Geller Rudman & Robbins LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
**Attorneys for Plaintiffs**

*Judy Williams v. Wells Fargo Bank, N.A., C.A. No. 1:07-6342*
United States District Court for the Northern District of California (Western Division)

Robert Allison
Bruce Howard
Steven Schneck
Robert D. Allison & Associates
122 S. Michigan Ave., Suite 1850
Chicago, IL 60603
**Attorneys for Plaintiffs**


*Ruby Kathryn Brown v. Wells Fargo Bank, N.A., C.A. No. 3:08-00492*
United States District Court for the Northern District of California (San Francisco Division)

Lori Erin Andrus
Micha Star Liberty
Jenny Lee Anderson
Andrus Liberty & Anderson LLP
1438 Market Street
San Francisco, CA 94102
**Attorneys for Plaintiff**

Barry W. Walker
The Walker Law Firm
Two 20th Street North, Suite 1320
Birmingham, AL 35203
**Attorney for Plaintiff**

# EXHIBIT B

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
Andrew S. Friedman (*Pro Hac Vice*)
Wendy J. Harrison (CA SBN 151090)
2901 North Central Avenue, Suite 1000
Phoenix, Arizona 85012
Telephone: (602) 274-1100

CHAVEZ & GERTLER, L.L.P.
Mark A. Chavez (CA SBN 90858)
42 Miller Avenue
Mill Valley, California 94941
(415) 381-5599

RODDY KLEIN & RYAN
Gary Klein (*Pro Hac Vice*)
Shennan Kavanagh (*Pro Hac Vice*)
727 Atlantic Avenue
Boston, MA 02111-2810
Telephone: 617/357-5500

COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
Shawn A. Williams
100 Pine Street Suite 2600
San Francisco, CA 94111
Telephone: 415/288-4545

COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
Samuel H. Rudman (*Pro Hac Vice*)
Robert M. Rothman (*Pro Hac Vice*)
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

In re: WELLS FARGO
RESIDENTIAL MORTGAGE
LENDING DISCRIMINATION
LITIGATION

This document relates to:

ALL ACTIONS

[PROPOSED] PRE-TRIAL ORDER
NO. 1

Honorable Martin J. Jenkins

Date Action Filed: July 30, 2007

Lead Case No: C 07-03880 MJJ

Related Case No: C 07-04309 MJJ

2

In order to promote the just, expeditious and cost-effective resolution of this litigation, IT IS HEREBY ORDERED as follows:

## I.    RULE 42 CONSOLIDATION, MASTER FILE AND MASTER DOCKET

A.    Pursuant to Federal Rule of Civil Procedure 42(a), the Clerk of Court shall consolidate the action *Jeffries et al. v. Wells Fargo Bank N.A. et al.,* C 07-03880 MJJ, and Related Case *Ventura et al. v. Wells Fargo Bank N.A.*, C 07-04309 MJJ for pretrial proceedings (the "Consolidated Actions").

B.    The *Jeffries* action, C 07-03880 MJJ, as the first filed action, is the lead case and will now be referred to as "In Re Wells Fargo Residential Mortgage Lending Discrimination Litigation."

C.    Pursuant to LR 3-4(b), when a pleading or other captioned document is filed which is intended to be applicable to all these Consolidated Actions, the paper shall be filed with a caption denoting the new title caption, further denoting the lead case number (C 07-03880 MJJ) above all consolidated case numbers, and indicating that it is applicable to "All Actions."  Duplicate originals need not be submitted for associated cases.

D.    When such a pleading or other paper is filed stating that it is applicable to "All Actions," the Clerk of Court ("Clerk") is directed to file such pleading or paper in C 07-03880 MJJ as the Master File, and enter such filing in the docket for C 07-03880 MJJ as the Master Docket.

3

E.    An original of this Order and every subsequent Order shall be filed by the Clerk in the Master File and entered upon the Master Docket.

F.    When a pleading or other captioned document is intended to be applicable only to one or more, but fewer than all, of these Consolidated Actions, the paper shall be filed with a caption indicating the actions which it is applicable to through use of the last name of the first-named plaintiff in that action and that action's case-specific number, and with an additional duplicate original for each of the individual actions so identified.

G.    When such a pleading or other paper is filed stating that it is applicable to fewer than all of these Consolidated Actions, the Clerk is directed to file such pleading or paper in the docket(s) for such action(s).  The Clerk shall also note on the Master Docket those actions to which the document relates.

II.    APPOINTMENT AND ORGANIZATION OF PLAINTIFFS' CO-LEAD AND LIAISON INTERIM CLASS COUNSEL

A.    The organizational structure of Plaintiffs' counsel established under paragraph III.B. hereof shall apply to all such Plaintiffs' counsel in all of these Consolidated Actions, and including subsequently filed actions.

B.    Pursuant to Federal Rule of Civil Procedure 23(g), the following counsel are designated to act on behalf of Plaintiffs and the Class in these Consolidated Actions and all subsequently filed actions unless otherwise ordered by the Court ("Co-Lead and Liaison Interim Class Counsel"):

4

1.    BONNETT FAIRBOURN FRIEDMAN & BALINT, P.C.
       ANDREW S. FRIEDMAN
       2901 N. Central Avenue
       Suite 1000
       Phoenix, AZ 85012
       Telephone: 602/274-1100

       *Co-Lead Interim Class Counsel*

2.    RODDY KLEIN & RYAN
       GARY KLEIN
       727 Atlantic Avenue
       Boston, MA 02111-2810
       Telephone: 617/357-5500

       *Co-Lead Interim Class Counsel*

3.    Coughlin Stoia Geller Rudman & Robbins LLP
       SHAWN A. WILLIAMS
       100 Pine Street Suite 2600
       San Francisco, CA 94111
       Telephone: 415/288-4545

       Coughlin Stoia Geller Rudman & Robbins LLP
       SAMUEL H. RUDMAN
       ROBERT M. ROTHMAN
       58 South Service Road
       Suite 200
       Melville, NY 11747
       Telephone: 631/367-7100

       *Liaison Interim Class Counsel*

C.    Co-Lead and Liaison Interim Class Counsel are directed to mail a

copy of this Order to all counsel of record in each of these consolidation actions.

D.    Co-Lead and Liaison Interim Class Counsel are expected to maintain

communications and promote harmonious dealings among all Plaintiffs' counsel.

5

Co-Lead and Liaison Interim Class Counsel shall provide general supervision of
the activities of Plaintiffs' counsel and shall have the following responsibilities and
duties to perform or delegate as appropriate:

      1.    to brief and argue motions;

      2.    to initiate and conduct discovery, including, without limitation,
coordination of discovery with Defendants' counsel, the preparation of written
interrogatories, requests for admissions and requests for production of documents;

      3.    to direct and coordinate the examination of witnesses in
depositions;

      4.    to act as spokesperson at pretrial conferences;

      5.    to call and chair meetings of counsel as appropriate or
necessary from time to time;

      6.    to initiate and conduct any settlement negotiations with counsel
for Defendants;

      7.    to provide general coordination of the activities of Plaintiffs'
counsel and to delegate work responsibilities to selected counsel as may be
required in such a manner as to lead to the orderly and efficient prosecution of this
litigation and to avoid duplication or unproductive effort;

      8.    to consult with and employ experts;

9.      to receive and review periodic time reports of all attorneys on behalf of Plaintiffs and to determine if the time is being spent appropriately and for the benefit of Plaintiffs; and

10.     to perform such other duties as may be expressly authorized by further order of this Court.

E.      Defendants' counsel may rely upon all agreements made with Plaintiffs' Co-Lead and Liaison Interim Class Counsel and such agreements shall be binding on Plaintiffs and Plaintiffs' counsel in these Consolidated Actions and any subsequent related actions.

III.    LATER FILED CASES IN THIS COURT

A.      When a case that relates to the same subject matter as these actions is hereafter filed in this Court or transferred here from another court, the Clerk of this Court shall:

1.      File a copy of this Order in the separate file for such action.

2.      Mail a copy of the Order of assignment to counsel for plaintiffs and counsel for each defendant in the actions consolidated herewith.

3.      Make an appropriate entry in the Master Docket.

4.      Mail to the attorneys for the plaintiff(s) in the newly filed or transferred case a copy of this Order.

      5.     Upon the first appearance of any new defendant(s) mail to the attorneys for the defendant(s) in such newly filed or transferred case a copy of this Order.

      B.     Counsel for plaintiffs and defendants in the consolidated actions shall cooperate in calling to the attention of the Clerk any newly filed or transferred case.

IV.    APPLICATION OF THIS ORDER TO SUBSEQUENT ACTIONS

      A.     This Order shall apply to each case alleging claims similar to those set forth in these consolidated actions, which is filed in or transferred to this Court after the date of this Order, unless a party objecting to the consolidation of that case or to any other provision of this Order serves an application for relief from this Order or from any of its provisions within ten (10) days after the date on which the Clerk mails a copy of this Order to counsel for that party.

      B.     Because additional cases may be consolidated with these Consolidated Actions in this Court, this Court will issue orders to the extent practicable calling for such matters to proceed in a manner consistent with the schedule in these Consolidated Actions.

      C.     All future plaintiffs' counsel consolidated in this action must be authorized in advance by Co-Lead and Liaison Interim Class Counsel to assume

8

responsibilities related to those of the firms designated above as Co-Lead and
Liaison Interim Class Counsel.

V.     PRESERVATION OF EVIDENCE

A.     The Court reminds the parties of their duty to preserve evidence that
may be relevant to these Consolidated Actions.

B.     This duty extends to documents, data and tangible things (to be
interpreted broadly) in the possession, custody and control of the parties to this
action, and the employees, agents, contractors or other non-parties who possess
materials reasonably anticipated to be subject to discovery in these consolidated
actions.  Counsel are under an obligation to exercise efforts to identify and notify
such non-parties, including employees.

C.     Preservation of evidence is to be interpreted broadly to accomplish the
goal of maintaining the integrity of all documents, data and tangible things
reasonably anticipated to be subject to discovery in these Consolidated Actions.

D.     Counsel are directed to inquire of their respective clients if the
business practices of any party involve the routine destruction, recycling,
relocation or mutation of such materials and, if so, direct the party, to the extent
practicable for the pendency of this order, either to (1) halt such business
processes; (2) sequester or remove such material from the business process; or (3)

9

arrange for the preservation of complete and accurate duplicates or copies of such

material, suitable for later discovery if requested.

     E.    The most senior lawyer or lead trial counsel representing Defendant

and a representative for Co-Lead and Liaison Interim Class Counsel shall, not later

than _____, 2008, submit to the Court under seal and pursuant to Federal

Rule of Civil Procedure 11, a statement that the directive in paragraph IV(D)

above, has been carried out.

VI.    MISCELLANEOUS

     A.    Counsel for all parties are directed to cooperate with one another,

whenever possible, to promote the expeditious handling of pretrial proceedings in

these Consolidated Actions.

     B.    All subsequent pretrial orders issued in these Consolidated Actions

shall be numbered consecutively.  Any reference to an Order of this Court in any

document filed with the Court shall include the proper number of the Order.

     C.    This Order may be amended by the Court on its own motion, and any

party may apply at any time to this Court for a modification or exception to this

Order.

     D.    Service of any pleading, motion or other paper shall be made by hand

delivery, facsimile, overnight delivery or by United States mail to counsel for

Defendant and to the firms appointed as Co-Lead and Liaison Interim Class

Counsel, as well as by e-mail to the designated e-mail distribution lists submitted
by each party, as updated.

E.     All Plaintiffs' counsel in these Consolidated Actions and counsel of
any future matter consolidated with this case shall submit a record of the time
expended on these matters on a monthly basis in a manner prescribed by Co-Lead
and Liaison Interim Class Counsel.

IT IS SO ORDERED.

DATED:   January 8                    , 2008.

_____

MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE

11

# EXHIBIT C

ADRMOP, E-Filing, PRVADR, REFSET-JCS, RELATE

# U.S. District Court
## California Northern District (San Francisco)
### CIVIL DOCKET FOR CASE #: 3:07-cv-04309-MMC

Ventura et al v. Wells Fargo Bank NA
Assigned to: Hon. Maxine M. Chesney
Relate Case Case: 3:07-cv-03880-MMC
Cause: 42:405 Fair Housing Act

Date Filed: 08/21/2007
Jury Demand: None
Nature of Suit: 443 Civil Rights:
Accomodations
Jurisdiction: Federal Question

**Plaintiff**

**Gilbert Ventura, Sr.**

represented by **Andrew S. Friedman**
Bonnett Fairbourn Friedman &
Balint, P.C
2901 N. Central Avenue
Suite 1000
Phoenix, AZ 85012
602-274-1100
Fax: 602-274-1199
Email: afriedman@bffb.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark Andrew Chavez**
Chavez & Gertler LLP
42 Miller Avenue
Mill Valley, CA 93941
415-381-5599
Fax: 415-381-5572
Email: mark@chavezgertler.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wendy Jacobsen Harrison**
Bonnett, Fairbourn, Friedman &
Balint, P.C.
2901 North Central Avenue
Suite 1000
Phoenix, AZ 85012
602-274-1100
Fax: 602-274-1199
Email: wharrison@bffb.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Leslie E. Hurst
Coughlin Stoia Geller Rudman &
Robbins LLP
655 West Broadway
Suite 1900
San Diego, CA 92101
619-231-1058
Fax: 619-231-7423
Email: LeslieH@csgrr.com
*ATTORNEY TO BE NOTICED*

Nance Felice Becker
Chavez & Gertler LLP
42 Miller Avenue
Mill Valley, CA 94941
415-381-5599
Fax: 415-381-5572
Email: nance@chavezgertler.com

*ATTORNEY TO BE NOTICED*

Theodore Joseph Pintar
Coughlin Stoia Geller Rudman &
Robbins LLP
655 West Broadway
Suite 1900
San Diego, CA 92101
(619) 231-1058
Fax: 619-231-7423
Email: TedP@csgrr.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Tracy D. Ventura**     represented by **Andrew S. Friedman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark Andrew Chavez**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wendy Jacobsen Harrison**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leslie E. Hurst**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Nance Felice Becker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Theodore Joseph Pintar**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Wells Fargo Bank NA**             represented by **David S. Reidy**
Attorney at Law
Two Embarcadero Center
Suite 2000
San Francisco, CA 94111
(415) 659-5933
Email: dreidy@reedsmith.com
*ATTORNEY TO BE NOTICED*

**Robert D. Phillips, Jr.**
Reed Smith LLP
1999 Harrison Street
Suite 2400
Oakland, CA 94612-3572
510-763-2000
Fax: 510-273-8832
Email:
RPhillips@ReedSmith.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 08/21/2007 | 1 | COMPLAINT; summons issued against Wells Fargo Bank NA (Filing fee $ 350, receipt number 34611009684). Filed by Gilbert Ventura, Sr, Tracy D. Ventura. (slh, COURT STAFF) (Filed on 8/21/2007) Additional attachment(s) added on 11/7/2007 (sv, COURT STAFF). Additional attachment(s) added on 11/13/2007 (slh, COURT STAFF). (Entered: 08/22/2007) |
| 08/21/2007 | 2 | Administrative MOTION to Consider Whether Case Should be Related filed by Gilbert Ventura, Sr, Tracy D. Ventura. (slh, COURT STAFF) (Filed on 8/21/2007) (Entered: 08/22/2007) |
| 08/21/2007 | 3 | ADR SCHEDULING ORDER: Case Management |

| | | Statement due by 11/21/2007. Case Management Conference set for 11/28/2007 01:30 PM. (Attachments: # 1 EMC Standing Order; # 2 Case Management Standing Order)(slh, COURT STAFF) (Filed on 8/21/2007) (Entered: 08/22/2007) |
|---|---|---|
| 08/21/2007 | | CASE DESIGNATED for Electronic Filing. (slh, COURT STAFF) (Filed on 8/21/2007) (Entered: 08/22/2007) |
| 09/13/2007 | 5 | MOTION of Andrew S. Friedman for leave to appear in Pro Hac Vice (Filing fee $ 210, receipt number 34611010492) filed by Gilbert Ventura, Sr, Tracy D. Ventura. (slh, COURT STAFF) (Filed on 9/13/2007) (Entered: 09/14/2007) |
| 09/14/2007 | 4 | ORDER GRANTING APPLICATION FOR ADMISSION OF ATTORNEY PRO HAC VICE (ANDREW S. FRIEDMAN). Signed by Judge Edward M. Chen on 9/14/07. (bpf, COURT STAFF) (Filed on 9/14/2007) (Entered: 09/14/2007) |
| 09/26/2007 | 6 | STIPULATION Stipulation Extending Time for Defendant Wells Fargo Bank, N.A. to Respond to Complaint by Wells Fargo Bank NA. (Reidy, David) (Filed on 9/26/2007) (Entered: 09/26/2007) |
| 09/27/2007 | 7 | ORDER re 6 Stipulation filed by Wells Fargo Bank NA. Signed by Judge Edward M. chen on 9/27/07. (bpf, COURT STAFF) (Filed on 9/27/2007) (Entered: 09/27/2007) |
| 10/05/2007 | 8 | ANSWER to Complaint Answer of Defendant Wells Fargo Bank, N.A., to Plaintiffs' Complaint by Wells Fargo Bank NA. (Reidy, David) (Filed on 10/5/2007) (Entered: 10/05/2007) |
| 10/05/2007 | 9 | Certificate of Interested Entities by David S. Reidy Corporate Disclosure and Certificate of Interested Parties of Defendant Wells Fargo Bank, N.A. (Reidy, David) (Filed on 10/5/2007) (Entered: 10/05/2007) |
| 10/12/2007 | 10 | ORDER RELATING CASES C07-3880 MJJ AND C07-4309 EMC by Judge Martin J. Jenkins granting 2 Motion to Relate Case. (ls, COURT STAFF) (Filed on 10/12/2007) (Entered: 10/15/2007) |
| 10/17/2007 | | Case Reassigned to Judge Martin J. Jenkins and Martin J. Jenkins. Judge Edward M. Chen no longer assigned to the case. (as, COURT STAFF) (Filed on 10/17/2007) (Entered: 10/17/2007) |
| 10/18/2007 | 11 | CLERK'S NOTICE: Initial Case Management Conference set for 12/18/2007 02:00 PM. (rbe, COURT STAFF) |

| | | |
|---|---|---|
| | | (Filed on 10/18/2007) (Entered: 10/18/2007) |
| 10/30/2007 | 12 | NOTICE of Appearance by Theodore Joseph Pintar *and John J. Stoia, Jr.* (Pintar, Theodore) (Filed on 10/30/2007) (Entered: 10/30/2007) |
| 11/02/2007 | 13 | CLERK'S NOTICE re: Failure to E-File. (sv, COURT STAFF) (Filed on 11/2/2007) (Entered: 11/02/2007) |
| 11/08/2007 | 14 | NOTICE by Gilbert Ventura, Sr, Tracy D. Ventura *Setting CMC on Reassignment* (Becker, Nance) (Filed on 11/8/2007) (Entered: 11/08/2007) |
| 11/20/2007 | 15 | ADR Certification (ADR L.R. 3-5b) of discussion of ADR options (Attachments: # 1 Signature Page (Declarations/Stipulations))(Harrison, Wendy) (Filed on 11/20/2007) (Entered: 11/20/2007) |
| 11/21/2007 | 16 | ADR Certification (ADR L.R. 3-5b) of discussion of ADR options *ADR Certification by Parties and Counsel* (Reidy, David) (Filed on 11/21/2007) (Entered: 11/21/2007) |
| 11/21/2007 | 17 | STIPULATION *STIPULATION RE SELECTING ADR PROCESS* by Wells Fargo Bank NA. (Reidy, David) (Filed on 11/21/2007) (Entered: 11/21/2007) |
| 11/27/2007 | 18 | STIPULATION and ORDER selecting ADR process. REFERRING CASE to Private ADR. Signed by Judge Martin J. Jenkins on 11/26/07. (rbe, COURT STAFF) (Filed on 11/27/2007) (Entered: 11/27/2007) |
| 12/07/2007 | 19 | JOINT CASE MANAGEMENT STATEMENT *Joint Rule 26(F) Report and Case Management Conference Statement* filed by Wells Fargo Bank NA. (Reidy, David) (Filed on 12/7/2007) (Entered: 12/07/2007) |
| 12/11/2007 | 20 | STIPULATION *Stipulation and [Proposed] Protective Order Regarding Private Consumer Information* by Wells Fargo Bank NA. (Reidy, David) (Filed on 12/11/2007) (Entered: 12/11/2007) |
| 12/11/2007 | 21 | STIPULATION *Stipulation and [Proposed] Protective Order Regarding Confidential and Trade Secret Information* by Wells Fargo Bank NA. (Reidy, David) (Filed on 12/11/2007) (Entered: 12/11/2007) |
| 12/17/2007 | 22 | ORDER REGARDING PROTECTIVE ORDER. Signed by Judge Martin J. Jenkins on 12/17/2007. (mjjlc1, COURT STAFF) (Filed on 12/17/2007) (Entered: 12/17/2007) |
| 12/17/2007 | 23 | ORDER REGARDING PROTECTIVE ORDER. Signed by Judge Martin J. Jenkins on 12/17/2007. (mjjlc1, COURT STAFF) (Filed on 12/17/2007) (Entered: |

| | | 12/17/2007) |
|---|---|---|
| 12/18/2007 | 24 | Minute Entry: Initial Case Management Conference held on 12/18/2007 before Judge Martin J. Jenkins. Telephonic Status Conference set for 2/26/2008 01:45 PM in Courtroom 11, 19th Floor, San Francisco. (not reported) (rbe, COURT STAFF) (Date Filed: 12/18/2007) (Entered: 12/18/2007) |
| 01/03/2008 | 25 | NOTICE by Wells Fargo Bank NA - - *Defendant Wells Fargo Bank, N.A.'s Notice of Filing Copies of Its Motion to Transfer Before Judicial Panel on Multidistrict Litigation* (Phillips, Robert) (Filed on 1/3/2008) (Entered: 01/03/2008) |
| 01/03/2008 | 26 | NOTICE by Wells Fargo Bank NA *to Transfer Actions for Consolidated and Coordinated Pretrial Proceedings Pursuant to 28 USC 1407* (Phillips, Robert) (Filed on 1/3/2008) (Entered: 01/03/2008) |
| 01/03/2008 | 27 | MOTION to Transfer Case - *Under 28 USC 1407 - Motion to Transfer for Consolidated and Coordinated Pretrial Proceedings* filed by Wells Fargo Bank NA. (Phillips, Robert) (Filed on 1/3/2008) (Entered: 01/03/2008) |
| 01/03/2008 | 28 | EXHIBITS re 27 MOTION to Transfer Case - *Under 28 USC 1407 - Motion to Transfer for Consolidated and Coordinated Pretrial Proceedings* filed by Wells Fargo Bank NA. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C1, # 4 Exhibit C2, # 5 Exhibit C3, # 6 Exhibit C4)(Related document(s) 27 ) (Phillips, Robert) (Filed on 1/3/2008) (Entered: 01/03/2008) |
| 01/03/2008 | 29 | Brief - *Memorandum In Support of Motion of Wells Fargo, N.A. Under 28 USC 1407 to Transfer for Consolidated and Coordinated Pretrial Proceedings* filed by Wells Fargo Bank NA. (Phillips, Robert) (Filed on 1/3/2008) (Entered: 01/03/2008) |
| 01/03/2008 | 30 | NOTICE of Appearance by Robert D. Phillips, Jr (Phillips, Robert) (Filed on 1/3/2008) (Entered: 01/03/2008) |
| 01/03/2008 | 31 | Brief - *Reasons Why Oral Argument Should Be Heard* filed by Wells Fargo Bank NA. (Phillips, Robert) (Filed on 1/3/2008) (Entered: 01/03/2008) |
| 01/03/2008 | 32 | Brief - - *Corporate Disclosure Statement* filed by Wells Fargo Bank NA. (Phillips, Robert) (Filed on 1/3/2008) (Entered: 01/03/2008) |
| 01/03/2008 | 33 | CERTIFICATE OF SERVICE by Wells Fargo Bank NA re 27 MOTION to Transfer Case - *Under 28 USC 1407 - Motion to Transfer for Consolidated and Coordinated* |

| | | |
|---|---|---|
| | | *Pretrial Proceedings*, 29 Brief, 31 Brief, 30 Notice of Appearance, 32 Brief, 28 Exhibits, 26 Notice (Other) (Phillips, Robert) (Filed on 1/3/2008) (Entered: 01/03/2008) |
| 01/08/2008 | 34 | PRETRIAL ORDER. ORDER REFERRING CASE to Magistrate Judge for Settlement. Signed by Judge Martin J. Jenkins on 1/8/2008. Telephone Status Conference set for 2/26/2008 01:45 PM. (mat, COURT STAFF) (Filed on 1/8/2008) (Entered: 01/10/2008) |
| 01/08/2008 | 35 | ORDER granting 48 Proposed Pretial Order No. 1. Signed by Judge Martin J. Jenkins on 1/8/2008. (mat, COURT STAFF) (Filed on 1/8/2008) (Entered: 01/10/2008) |
| 01/28/2008 | 36 | ORDER GRANTING (54 in 3:07-cv-03880-MJJ) Stipulation Continuing Deadline To Make Initial Disclosures filed by Wells Fargo Bank N.A.. Signed by Judge Martin J. Jenkins on 1/28/2008. (mat, COURT STAFF) (Filed on 1/28/2008) (Entered: 01/29/2008) |
| 01/30/2008 | 37 | NOTICE of Appearance by Leslie E. Hurst (Hurst, Leslie) (Filed on 1/30/2008) (Entered: 01/30/2008) |
| 02/13/2008 | 38 | ORDER granting (66 in 3:07-cv-03880-MJJ) Stipulation to Continue Briefing Schedule filed by Wells Fargo Bank N.A.. Signed by Judge Martin J. Jenkins on 2/13/2008. (mat, COURT STAFF) (Filed on 2/13/2008) (Entered: 02/13/2008) |
| 02/15/2008 | 39 | ORDER REASSIGNING CASE. Case reassigned to Judge Hon. Maxine M. Chesney for all further proceedings. Judge Hon. Martin J. Jenkins no longer assigned to case. Signed by the Executive Committee on 2/15/08. (aaa, Court Staff) (Filed on 2/15/2008) (Entered: 02/19/2008) |
| 02/21/2008 | 40 | RELATED CASE ORDER. Brown v. Wells Fargo Bank, N.A., C-08-492 JSW, is related to Jeffries v. Wells Fargo Bank, N.A., C-07-3880 MMC and to Ventura v. Wells Fargo Bank, C-07-4309 MMC. Counsel are instructed that all future filings in Brown v. Wells Fargo Bank, N.A., are to bear the initials MMC immediately after the case number. Signed by Judge Maxine M. Chesney on February 21, 2008. (mmclc1, COURT STAFF) (Filed on 2/21/2008) (Entered: 02/21/2008) |
| 02/21/2008 | 41 | CASE MANAGEMENT SCHEDULING ORDER: Case Management Conference set for 5/2/2008 10:30 AM. Case Management Statement due by 4/25/2008.. Signed by Judge Maxine M. Chesney on 2/27/2007. (Attachments: # 1 Judge Chesney's Standing Orders)(tl, COURT STAFF) (Filed on 2/21/2008) (Entered: 02/21/2008) |

| 02/22/2008 | <u>42</u> | CERTIFICATE OF SERVICE by Gilbert Ventura, Sr, Tracy D. Ventura re <u>41</u> Terminate Hearings,, Case Management Scheduling Order, (Chavez, Mark) (Filed on 2/22/2008) (Entered: 02/22/2008) |
|---|---|---|
| 03/24/2008 | <u>43</u> | ORDER GRANTING DEFENDANT'S MOTION TO STAY PROCEEDINGS PENDING DECISION ON TRANSFER; VACATING HEARING. The Case Management Conference remains as scheduled for May 2, 2008. In the event the JPML has not issued a ruling by April 25, 2008, the parties may submit a stipulation and a proposed order to continue the Case Management Conference. Signed by Judge Maxine M. Chesney on March 24, 2008. (mmclc1, COURT STAFF) (Filed on 3/24/2008) (Entered: 03/24/2008) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 03/25/2008 06:47:40 | | | |
| **PACER Login:** | sb0415 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:07-cv-04309-MMC |
| **Billable Pages:** | 4 | **Cost:** | 0.32 |

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JUDY WILLIAMS, individually and on behalf of all others similarly situated, | CASE NO.: 07-cv-6342 |
| Plaintiff, | |
| v. | REPLY IN FURTHER SUPPORT OF PLAINTIFF'S MOTION TO DISMISS PURSUANT TO FED.R. CIV. P. 41(a)(2) |
| WELLS FARGO BANK, N.A. | |
| Defendant. | |

## I.   INTRODUCTION

Plaintiff Judy Williams seeks dismissal of this action pursuant to Rule 41(a)(2), which permits dismissal of an action at the plaintiff's request, pursuant to an order of the court.  *See, e.g., Wojtas v. Capital Guardian Trust Co*., 477 F.3d 924, 927 (7th Cir. 2007); *Chavez v. Ill. State Police*, 251 F.3d 612 , 654 (7th Cir. 2001).   A motion to dismiss pursuant to FED.R.CIV.P. 41(a)(2) should be granted unless the defendant will suffer clear *legal* prejudice.  *See United States of America v. OutBoard Marine Corp.,* 789 F.2d 497, 502 (7th Cir. 1986) (the Court abuses its discretion only when it can be established that the Defendant will suffer "plain legal prejudice" as a result of the dismissal of the Plaintiff's litigation).  Even the prospect of subsequent litigation is insufficient for denial of a plaintiff's Rule 41(a)(2) motion.  *See Pontenberg v. Boston Scientific Corp.,* 252 F.3d 1253 (11th Cir. 2001)(quoting *McCants v. Ford Motor Co., Inc.*, 781 F.2d 855, 856-57 (11th Cir. 1986) (court affirmed the district court's decision to dismiss the case without prejudice)); *See also, In re Vale*, 180 B.R. 1017, 1023 (N.D. Ind. 1994).

The Opposition of Defendant Wells Fargo Bank, N.A. ("Def. Opp.") to Plaintiff's Motion to Dismiss is an exercise in groundless vitriol *completely devoid* of any basis in substantive law or discussion of the practical points and jurisprudence set forth by Plaintiff in her Memorandum of Law in Support of Plaintiff's Motion to Dismiss ("Pl. Mem."). Instead of constructive legal argument, Defendant resorts to calumny, mischaracterization and empty accusation. This type of mudslinging should not be countenanced much less given any consideration by this Court.

The simple facts are this: Plaintiff Williams filed her case in the Northern District of Illinois. She has never argued that this venue is not proper. She initially believed this venue to be a good potential candidate for consolidation of analogous cases filed in the federal district courts of California. It is uncontested that she initially supported such consolidation and transfer requested in Defendant's pending motion before the Judicial Panel on Multi-District Litigation ("JPMDL").[1] Plaintiff wants to make clear that she did not make her decision to dismiss this action and withdraw support for Defendant's JPMDL motion lightly or without great deliberation.

---

[1] In addition to Plaintiff's action, three cases were pending at the time Defendant filed its MDL Motion, listed in order of filing:

1. *Jeffries v. Wells Fargo Bank N.A.*, No. 07cv3880 (N.D. Cal. 2007);

2. *Ventura v. Wells Fargo Bank, N.A.*, No. 07cv4309 (N.D. Cal. 2007); and

3. *Rodriguez v. Wells Fargo Bank, N.A.*, No. 07cv6780 (C.D. Cal. 2007).

Subsequent to the filing of the MDL Motion, a fifth case, *Brown v. Wells Fargo Bank, N.A.*, No. 08-cv0492 was filed against Wells Fargo in the Northern District of California, alleging the same discriminatory lending practices, along with an administrative motion to relate the case to *Jeffries* and *Ventura*.

But, in the interim between Plaintiff initially supporting transfer of analogous cases to this Court and the filing of her Motion to Dismiss, she has learned that a court in the Northern District of California has appointed co-lead interim counsel for a directly analogous proposed class pursuant to FED. R. CIV. P. 23(g), discovery in that case had begun, and that the majority of the nine or so plaintiffs' firms involved in the other four related actions had agreed to prosecute the cases together, supporting the leadership structure referenced above. Plaintiff Williams strongly desires to be a named plaintiff in any consolidated action and be intimately involved, with her counsel, in the prosecution of the class' claims. Therefore, as "encouraged" by the Manual for Complex Litigation (4th ed. 2004), Plaintiff and her counsel have had extensive discussions with counsel in the other Wells Fargo actions, including the two counsel named interim lead counsel for the proposed class. Such "private ordering" of related complex class cases, without the need of excessive expenditure of the Court's time, should be *applauded*, not condemned – especially when the *only* goal is to get a consolidated action moving expeditiously with all interested named plaintiffs leading the way.

For the reasons stated in her Memorandum and by the California Plaintiffs in the JPMDL proceedings, the Northern District of California is unarguably an appropriate venue for the adjudication of Plaintiff's class claims.[2] Upon dismissal, she plans to refile her own action in that district and relate it to the *Ventura* action – which has been restyled

---

[2] As further explication on the appropriateness of the Northern District of California for the prosecution of any consolidated action, Plaintiff attaches "Plaintiffs Nancy and Johnny Jeffries and Gilbert and Tracy Ventura's Supplemental Response to Motion of Wells Fargo, N.A. under 28 U.S.C. § 1407 to Transfer For Consolidated and Coordinated Pretrial Proceedings," filed with the JPMDL on March 19, 2008, as Exhibit A.

*In re: Wells Fargo Residential Mortgage Lending Discrimination Litigation* – as anticipated by the Pretrial Order No. 1 entered in that case.[3]

## II.    ARGUMENT

        "In federal practice, voluntary dismissals sought [as here] in good faith are generally granted 'unless the defendant would suffer prejudice ***other than the prospect of a second lawsuit or some tactical advantage***.'" *In re Vitamins Antitrust Litig.*, 198 F.R.D. 296, 304 (D. D.C. 2000) (citing *Conafay v. Wyeth Labs.*, 793 F.2d 350, 353 (D.C. Cir. 1986) (emphasis added). In the Seventh Circuit, "factors that may be considered in examining motions to dismiss may properly include 'defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient need for the need to take a dismissal, and the fact that a motion for summary judgment" has been filed. *Tyco Labs., Inc. v. Koppers Co. Inc.*, 627 F.2d 54, 56 (7th Cir. 1980) (citing *Pace v. Southern Express Co.*, 409 F.2d. 331 (7th Cir. 1969)).[4]

        ***None*** of these factors supports Defendant's Opposition.  No summary judgment has been filed. Indeed, only an answer has been filed (in all likelihood substantively similar to those filed in the analogous cases filed earlier in California) and a joint Initial Status Report negotiated – which will likely be utilized[5] in drafting an anticipated Case

_____

[3] Attached as Exhibit B.

[4] Plaintiff notes that the Court need not resolve every factor in her favor to find that a dismissal without prejudice is warranted.  *See Tyco Labs., Inc. v. Koppers Co.,* 627 F.2d 54, 56 (7th Cir. 1980).

[5] *See Walter Kidde Portable Equip., Inc. v. Universal Sec. Instruments, Inc.*, 479 F.3d 1330, 1337 (Fed. Cir. 2007) (noting that it is not a "waste of resources" to grant a voluntary dismissal when work defendants engaged in the first filed action can be utilized in a subsequent action).

Management Report in a "Consolidated California Action." Defendant has expended minimal resources in defending this action and Plaintiff has filed her Motion while this litigation is in its nascent stages.[6] Plaintiff's reasoning for requesting dismissal is set out in detail in her Memorandum, and further explicated herein.

Further, it matters not that Plaintiff will re-file her case in another venue, to be consolidated with the other related actions. "The prospect of a second lawsuit . . . is insufficient to justify denying [] [P]laintiff's motion to dismiss." *Futch v. AIG, Inc.*, No. 07-cv-402-GPM, 2007 WL 1752200, *3 (S.D. Ill. June 15, 2007) (citing *Quad/Graphics, Inc. v. Fass*, 724 F.2d 1230, 1233 (7th Cir. 1983)).

## A. Defendant's Effort and Expense

Given the nascent stage of the instant litigation – Defendant has merely filed an answer, which it *already had* filed in two of the California cases,[7] and the parties negotiated a joint status report, which can be utilized as a basis for of an anticipated Case Management Statement in a consolidated action in the Northern District of California – there is no colorable argument to be made that Defendant will suffer *any* legal prejudice from the dismissal of the instant action, or deserve any award of costs or fees. The only real expenditure of *any unique* time and effort by Defendant has been: (1) negotiating the Joint Status Report, the substance of which can be useful in any consolidated action no matter where it is litigated and (2) in its desperate attacks on Plaintiff in it's Opposition.

---

[6] "Most denials of voluntary dismissals are justified by the fact that defendants had already filed motions for summary judgment or that the parties were on the eve of trial." *In re Vitamins Antitrust Litig,*, 198 F.R.D. 296, 305 (D. D.C. 2000) (citing as an example *Pace v. Southern Express Co.*, 409 F.2d 331, 334 (7th Cir. 1969)).

[7] *See* docket sheets as of March 25, 2008 for the *Jeffries* and *Ventura* cases, attached as Exhibit C.

This Court, in light of Defendant's MDL Motion, has stayed this action and ordered that the parties return on April 29, 2008 (or possibly later, if the Panel has not yet issued its ruling). Unlike the related cases in California, no discovery has been propounded in the instant action, no protective order negotiated and filed, and only one short appearance before the Court has been made by the parties.

### B. Plaintiff More Than Adequately Supports "Need" for Dismissal

### 1. Appropriateness of Plaintiff's Actions and Goals

Attorneys' coordination of their activities in multi-party complex litigation such as this "should be encouraged." Manual, § 10.22. Private ordering amongst potentially competing counsel, here quite numerous, is "by far the most common" approach to organizing large, complex class cases on the plaintiffs' side. *Id*. at 21.272.

Further, any implication of forum or judge shopping by Defendant is simply absurd. Plaintiff, in order to ensure her continued presence at the forefront of any consolidated action, simply followed Rule 23(g), the Manual and the realities of the related litigation and engaged in "private ordering" of a presumed consolidated action. These activities are not nefarious meetings in back rooms . . . they are blessed by the Manual and courts around the nation as efficient methods to organize and efficiently and expeditious prosecute complex cases. If the JPMDL is mooted and a consolidated action moves forward forthwith in the Northern District of California without being hindered by competing Rule 23(g) motions, that would be a *good result* for all parties and courts involved, including the JPMDL. Resources would be conserved across the board and the Court with the longest exposure to the most related suits would preside over one action.

If there were no *earlier filed*[8] *and farther progressed* analogous cases or interim

lead counsel selected in another appropriate venue, Plaintiff would be thrilled to continue

litigating in this Court.  Indeed, even if the JPMDL motion is mooted, as noted above,

nothing precludes Defendant from filing a motion to transfer the consolidated action to

this district.[9]  Plaintiff would never expect Defendant to certify in open court at the outset

of the litigation that, as this case progresses and the facts/ruling on the ground change,

that it will *never* change it's litigation positions or arguments.  Plaintiff Williams, while

remaining forthright and candid, likewise will always strive to represent the proposed

class with appropriate zealousness and vigor.

Given the lack of any real progress in this litigation, the appropriateness of

Plaintiff's filing in this district initially, and her desire to ensure her continuing

participation in the prosecution of any consolidated action, her actions to date can in no

way be characterized as a "perversion of the judicial process."  Def. Opp. at 3 (citing *In

re Cassidy*, 892 F.2d 637, 641 (7th Cir. 1990)).  No one is "playing fast and loose with the

courts." *Id.*

      **2.**    **"Judicial Estoppel" Is Wholly Inapplicable to the Instant
Motion – Plaintiff Filed Motion Before Relevant Ruling on
Venue by Any Court**

---

[8] Plaintiff Williams filed this action on November 8, 2007.  The *Jeffries* action was filed
on July 30, 2007 and the *Ventura* action on August 21, 2007.

[9] Indeed, Plaintiff is aware that this Court recently rendered a decision in a somewhat
analogous action, *Newman v. Apex Fin. Group*, No. 07-cv-4475, 2008 WL 130924 (N.D.
Ill. Jan. 11, 2008).

Despite all its protestations of harm, Defendant has not explained *in any way* what "unfair advantage" will be gained by dismissal of this action[10] or how the doctrine of "judicial estoppel" is implicated here. This is Defendant's only true "legal" argument. It fails.

Defendant's own (limited) citations undercuts its arguments. Two of the primary factors this Court would utilize in assessing whether invocation of "judicial estoppel" is appropriate are: (1) whether Plaintiff would derive an "unfair advantage" from the Court's granting of her motion and, more importantly, (2) whether this Court (or the JPMDL, for that matter) had specifically "accepted" an earlier, somehow contrary, litigating position so that the dismissal would somehow create a risk of inconsistent judicial decisions. *See New Hampshire v. Maine*, 532 U.S. 742, 750-751 (2001).

Defendant has not pointed out *any* real and tangible "unfair advantage" that would be enjoyed by Plaintiff resulting from the Court's dismissal of her claims. Nor could it. The only "harm" alleged is that Defendant might lose its JPMDL motion and have to litigate a consolidated action in their home town.[11] This can't be a serious argument. Plaintiffs in all of the cases could have appropriately filed their actions in the Northern District of California. If Defendant truly believes it will be prejudiced by litigating this case in the N.D. Cal., upon any mooting of the JPMDL motion, it can file the same briefs

---

[10] *But see Walter Kidde Portable Equip. Inc. v. Universal Sec. Instruments, Inc.*, 479 F.3d 1330, 1337 (Fed. Cir. 2007) (noting that it is well within a district court's authority to grant a plaintiff's motion for voluntary dismissal **even if it will give plaintiff a tactical advantage** in future litigation) (citing *Davis v. USX Corp.*, 819 F.2d 1270, 1275 (4th Cir. 1987)).

[11] Plaintiff notes that neither she, any California Plaintiff, nor Defendant disagrees that all cases subject to the JPMDL should be consolidated together in one action. The only disagreement is as to venue.

with Judge Chesney in support of a Motion to Transfer pursuant to 28 U.S.C. § 1404. While this will never happen given the futility of such a motion, Defendant is not estopped from bringing it if all related cases are consolidated in the Northern District of California.

More importantly, neither this Court, which has effectively stayed the instant action pending the decision of the JPMDL on Defendant's motion, or the JPMDL itself, has "accepted" Plaintiff Williams' earlier position regarding an appropriate venue for any consolidated action. No decision has been made on the issue in either forum. "Absent success in a prior proceeding, a party's later inconsistent position introduces no 'risk of inconsistent court determinations,' *United States v. C.I.T. Constr. Inc.*, 944 F.2d 253, 259 (5th Cir. 1991), and thus poses little threat to judicial integrity." *Id.* (citing, among other authority, *United States v. Hook*, 195 F.3d 299, 306 (7th Cir. 1999)). Plaintiff specifically withdrew her support of Defendant's JPMDL Motion on March 19, 2008, well before oral argument on the Motion was even heard (it is scheduled for March 27, 2008). No Court has "accepted" Plaintiff's early venue selection. No potentially inconsistent judicial positions have been adopted. The doctrine of judicial estoppel does not apply.

### 3. Defendant's Baseless Attacks

Plaintiff Williams is simply insulted and incensed by Defendant's unseemly and completely baseless accusations of her essentially lying to the Court. *See* Opp. at 4. Without wasting too much of the Court's time, Plaintiff challenges Defendant to point out *any* "falsehoods" in *any* of her filing. It is undeniable that Defendant's national headquarters is in the Northern District of California. Defendant cannot seriously suggest that pointing out the location of its corporate headquarters is somehow misleading; nor

can they seriously question the appropriateness of suing a corporate entity *where it is headquartered*. If Plaintiff's allegations prove meritorious, it is inconceivable that witnesses, extensive documentation and possibly additional individual defendants will not "emanate" from Wells Fargo's San Francisco base.  Defendant's alleged nationwide discriminatory lending scheme, if proven, could not have been perpetrated without the planning, coordination or, at the very least, knowing acceptance of the executives charged with running the company in San Francisco.

Has Plaintiff pointed out that the company's mortgage division is located in Iowa, making the Northern District of Illinois a potentially good venue for a consolidated action?  Yes. But other relevant factors regarding the efficient prosecution of Plaintiff's claims have intervened to change the relevant calculus.  The practical realities of the progress of the cases filed in the Northern District of California counsel that Plaintiff and the proposed class  would be best served by going forward in *another* appropriate venue.

Next, Plaintiff strenuously notes that it is Defendant, *not* Plaintiff, who has mischaracterized the litigation posture and timing of discovery in the Consolidated California Action. Despite Defendant's protestations, it is undeniable that discovery requests have been served in the Consolidated California Action, and two FED. R. CIV. P. 30(b)(6) depositions were noticed.   Judge Chesney entered an Order Staying Proceedings pending the JPMDL decision on Defendant's motion to transfer *only on **March 24, 2008***. While the Rule 30(b)(6) depositions have been taken off calendar, all parties to the Consolidated California Action indicated to Judge Chesney in the briefing of Defendant's Motion to Stay that action, that plaintiffs had given defendant a "significant extension to

respond to the discovery." Therefore, discovery was indeed propounded and *remains* outstanding.

As noted above, the Order staying the Consolidated California Action was stayed *yesterday*. It is in that Order that the court set a new date – May 2, 2008, for a renewed Case Management Conference with a date of April 25, 2008 for a new Case Management Statement. As Plaintiff noted, the parties in the *Ventura* case (which would become the Consolidated California Action) filed an initial Joint Case Management Statement/Rule 26(f) Report on **December 7, 2007**. *See* Docket for *Ventura v. Wells Fargo Bank, N.A.*, No. 3:07-cv-04309, Exhibit C. Where and how did Plaintiff ever "mislead" this Court or the JPMDL with regard to the progress of the California Consolidated Action? She has not.

### C.      Costs and Fees

Defendant's request for costs and fees are equally hollow and unsupportable, as evidenced by the cursory nature of their request. As noted above, the only real work they have done is (1) file an answer which they had done previously in earlier filed analogous cases in California and (2) negotiate an Initial Status Report that will immediately be of benefit if the cases are consolidated in the Northern District. "Where a plaintiff seeks voluntary dismissal in one forum to pursue pending litigation against the defendant in another forum, the defendant is not entitled to reimbursement for expenses incurred in preparing work product that has been or will be useful in the continuing litigation." *McLaughlin v. Cheshire*, 676 F.2d 855, 857 (D.C. Cir. 1982).

As to fees, the Court, if it were to do so, "should only award those fees representing legal work that could not be used in subsequent litigation." *Spar Gas, Inc. v.*

*AP Propane, Inc.*, 972 F.2d 348, 1992 WL 172129, at *2 (6th Cir. 1992). As noted, the "legal work" in this case either is derived from work done in prior filed cases or will undoubtedly be useful in expediting the prosecution of a consolidated action.

## III.   CONCLUSION

For the reasons set forth herein and in her Memorandum in Support of her Motion to Dismiss, Plaintiff Williams respectfully submits that her action be dismissed, without prejudice with each side bearing its own costs.

Dated: March 25, 2008                    Respectfully submitted,

**SCHIFFRIN BARROWAY**
 **TOPAZ & KESSLER, LLP**


        */s/ Edward W. Ciolko*
Joseph H. Meltzer
Edward W. Ciolko
Katherine B. Bornstein
Joseph A. Weeden
280 King of Prussia Road
Radnor, Pennsylvania 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

**ROBERT D. ALLISON &**
**ASSOCIATES**
Robert D. Allison, I.D. #36749
Bruce C. Howard
Steven P. Schneck
122 S. Michigan Ave., Suite 1850
Chicago, IL 60603
Telephone: (312) 427-7600
Facsimile: (312) 427-1850

*Attorneys for Judy Williams*



A CERTIFIED TRUE COPY

ATTEST

By Mecca Thompson on Apr 10, 2008

FOR THE UNITED STATES
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

UNITED STATES
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

**Apr 10, 2008**

FILED
CLERK'S OFFICE

**UNITED STATES JUDICIAL PANEL**
on
**MULTIDISTRICT LITIGATION**

IN RE: WELLS FARGO MORTGAGE
LENDING PRACTICES LITIGATION

MDL No. 1930

**FILED**

APR 1 0 2008
APR 10 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**TRANSFER ORDER**

# 07 C 6342

   **Before the entire Panel**[*]: Defendant Wells Fargo Bank, N.A. (Wells Fargo) has moved, pursuant to 28 U.S.C. § 1407, for coordinated or consolidated pretrial proceedings of this litigation in either the Northern District of Illinois or Southern District of Iowa. Plaintiffs in all four actions agree that centralization is appropriate. Plaintiff in the Illinois action supports selection of the Illinois district as transferee forum, while plaintiffs in the three California actions suggest selection of the Northern District of California as transferee district.

   This litigation presently consists of four actions listed on Schedule A and pending in three districts as follows: two actions in the Northern District of California and one action each in the Central District of California and the Northern District of Illinois.[1]

   On the basis of the papers filed and hearing session held, we find that the actions in this litigation involve common questions of fact, and that centralization under Section 1407 in the Northern District of California will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. All actions share factual questions relating to whether Wells Fargo engaged in discriminatory residential lending practices, including the imposition of discretionary fees/charges which increased the cost of financing resulting in higher loans for minority borrowers than similarly situated non-minority borrowers. Centralization under Section 1407 will eliminate duplicative discovery; avoid inconsistent pretrial rulings, especially on the issue of class certification; and conserve the resources of the parties, their counsel and the judiciary.

   We further find that the Northern District of California is an appropriate transferee district for this litigation, because (1) three of the five known actions–including the first-filed action–are pending in this district; and (2) Wells Fargo is headquartered in San Francisco and relevant documents and witnesses could be found there.

---

   [*] Judge Scirica took no part in the disposition of this matter.

   [1] The Panel has been notified that one other related action has recently been filed in the Northern District of California. This action will be treated as a potential tag-along action. See Rules 7.4 and 7.5, R.P.J.P.M.L., 199 F.R.D. 425, 435-36 (2001).

I hereby certify that the annexed instrument is a true and correct copy of the original on file in my office.

RICHARD W. WIEKING
Clerk, U.S. District Court
Northern District of California
By _Simone Volte_
Deputy Clerk
Date _4-10-08_

- 2 -

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, the actions listed on Schedule A and pending outside the Northern District of California are transferred to the Northern District of California and, with the consent of that court, assigned to the Honorable Maxine M. Chesney for coordinated or consolidated pretrial proceedings with the actions pending there and listed on Schedule A.

PANEL ON MULTIDISTRICT LITIGATION

_____
John G. Heyburn II
Chairman

D. Lowell Jensen          J. Frederick Motz
Robert L. Miller, Jr.     Kathryn H. Vratil
David R. Hansen           Anthony J. Scirica

**IN RE: WELLS FARGO MORTGAGE
LENDING PRACTICES LITIGATION**                    MDL No. 1930

## SCHEDULE A

Central District of California

Juan Rodriguez, et al. v. Wells Fargo Bank, N.A., C.A. No. 2:07-6780

Northern District of California

Nancy Jeffries, et al. v. Wells Fargo Bank, N.A., et al., C.A. No. 3:07-3880
Gilbert Ventura, Sr., et al. v. Wells Fargo Bank, N.A., C.A. No. 3:07-4309

Northern District of Illinois

Judy Williams v. Wells Fargo Bank, N.A., C.A. No. 1:07-6342

# CIVIL COVER SHEET

The civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**(a) PLAINTIFFS**
JUDY WILLIAMS, individually and on behalf of all others similarly situated

**DEFENDANTS**
WELLS FARGO BANK, N.A.

**(b)** County of Residence of First Listed Plaintiff   Cook County, Illinois
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**FILED**

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Schiffrin Barroway Topaz & Kessler, LLP
280 King of Prussia Rd.
Radnor, PA 19087 (phone: 610-667-7706 )

J.N

Attorneys (If Known)

NOV X 8 2007
NOV X 8 2007
CLERK, U.S. DISTRICT COURT

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

☐1 U.S. Government Plaintiff
■3 Federal Question (U.S. Government Not a Party)
☐2 U.S. Government Defendant
☐4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)

07cv6342
JUDGE DER-YEGHIAYAN
MAG. JUDGE VALDEZ

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

(nature of suit checkbox grid omitted)

**V. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)
■1 Original Proceeding

**VI. CAUSE OF ACTION**
Racial discrimination in mortgage financing. Fair Housing Act, 42 USC Sec. 3601; Equal Credit Opportunity Act, 15 USC Sec. 1691; and Civil Rights Act, 42 USC Secs. 1981, 1982

**VII. PREVIOUS BANKRUPTCY MATTERS**

**VIII. REQUESTED IN COMPLAINT:** ■ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
JURY DEMAND: ■Yes ☐No

**IX. This case** ■ is not a refiling of a previously dismissed action.
☐ is a refiling of case number _____, previously dismissed by Judge _____

DATE   11-8-07